IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **HUNT CONSTRUCTION GROUP, INC.** | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 1:06CV01850 |
| v. | | Judge: James Robertson |
| | * | |
| **THE POOLE AND KENT CORPORATION** | * | |
| | * | |
| Defendant/Third Party Plaintiff | * | |
| | * | |
| v. | * | |
| | | |
| **HUNT CONSTRUCTION GROUP, INC.** | * | |
| | * | |
| Third Party Defendant | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## THE POOLE AND KENT CORPORATION'S ANSWER TO COMPLAINT AND COUNTERCLAIM

The Poole and Kent Corporation, Defendant, ("P&K"), by undersigned counsel, Answers the Complaint filed by Plaintiff, Hunt Construction Group, Inc. ("Hunt"), and for grounds states as follows:

1.     The allegation in paragraph 1 of the Complaint is a conclusory statement purporting to summarize the Complaint; in response P&K states that the Complaint speaks for itself.

2.     P&K denies that the subcontract was entered into on November 19, 2003 as alleged in paragraph 2 of the Complaint. The Subcontract bears the printed date of November 19, 2003, but it was not fully executed by the parties until June 16, 2004. P&K admits that it entered into a subcontract agreement with Hunt for certain construction work to be performed in

connection with the construction of the Embassy Suites Hotel in Washington, D.C., however, in response to the Plaintiff's characterization of the work required under the subcontract P&K states that the document speaks for itself.

3.  P&K denies the allegations in paragraph 3 of the Complaint.

4.  The allegations in paragraph 4 of the Complaint are conclusory statements purporting to summarize the Complaint; in response P&K states that the Complaint speaks for itself. To the extent that paragraph 4 requires a response, P&K denies that Hunt is entitled to any relief and denies that Hunt has suffered any damages.

5.  P&K does not have sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 5 of the Complaint.

6.  P&K admits the allegations in paragraph 6 of the Complaint except that the location of the principal place of business is in Baltimore County, Maryland.

7.  Paragraph 7 of the Complaint states a legal conclusion to which no response is required. However, to the extent that it may subsequently be determined that a response is required, P&K states that it does not have sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 7 of the Complaint.

8.  Paragraph 8 of the Complaint states a legal conclusion to which no response is required. However, to the extent that it may subsequently be determined that a response is required, P&K admits that this Court may properly exercise personal jurisdiction over it.

9.  Paragraph 9 of the Complaint states a legal conclusion to which no response is required. However, to the extent that it may subsequently be determined that a response is required, P&K admits that this Court may properly exercise venue in this matter.

10. P&K admits that Hunt served at times as the general contractor on the Project and denies the remaining allegations in paragraph 10 of the Complaint.

11. P&K admits that it entered into a subcontract with Hunt to perform mechanical work on the project as alleged in the first sentence of paragraph 11 of the Complaint. The second sentence purports to characterize the nature of the subcontract and in response P&K denies the characterization as an oversimplification and states that the subcontract speaks for itself.

12. P&K denies the allegations of paragraph 12 of the Complaint.

13. The Complaint omits paragraph 13.

## COUNT I

14. P&K incorporates its responses to paragraphs 1 through 13 in response to paragraph 14 of the Complaint.

15. P&K denies the allegations of paragraph 15 of the Complaint.

16. P&K denies the allegations of paragraph 16 of the Complaint.

17. P&K denies the allegations of paragraph 17 of the Complaint.

18. P&K denies the allegations of paragraph 18 of the Complaint and denies that the Plaintiff is entitled to any of the relief requested.

## COUNT II

19. P&K incorporates its responses to paragraphs 1 through 18 in response to paragraph 19 of the Complaint.

20. Paragraph 20 of the Complaint states a legal conclusion to which no response is required. However, to the extent that it may subsequently be determined that a response is required, P&K denies the allegations in paragraph 20 of the Complaint.

21. P&K denies the allegations in paragraph 21 of the Complaint.

22.  P&K denies the allegations in paragraph 22 of the Complaint and denies that the Plaintiff is entitled to any of the relief requested.

## COUNT III

23.  P&K incorporates its responses to paragraphs 1 through 22 in response to paragraph 23 of the Complaint.

24.  P&K denies the allegations in paragraph 24 of the Complaint.

25.  P&K denies the allegations in paragraph 25 of the Complaint and denies that the Plaintiff is entitled to any of the relief requested.

## COUNT IV

26.  P&K incorporates its responses to paragraphs 1 through 25 in response to paragraph 26 of the Complaint.

27.  In response to paragraph 27 of the Complaint, P&K admits that it disputes the allegations of the Complaint as set forth in its responses above.

28.  P&K denies the allegations of paragraph 28 of the Complaint.

29.  P&K denies the allegations of paragraph 29 of the Complaint.

30.  P&K denies the allegations of paragraph 30 of the Complaint.

WHEREFORE, for the reasons set forth herein, P&K denies that the Plaintiff is entitled to any of the relief sought in the Complaint and respectfully demands that this action be dismissed with prejudice and/or that this Honorable Court grant judgment in favor of P&K.

## PRELIMINARY DEFENSE

The Complaint should be dismissed, in whole or in part, for failure to state a claim upon which relief can be granted.

## AFFIRMATIVE DEFENSES

1. Plaintiff's claims are barred by waiver.

2. Plaintiff's claims are barred by Plaintiff's failure to mitigate its alleged damages.

3. Plaintiff's claims are barred by Plaintiff's material breach of the Subcontract.

4. Plaintiff's claims are barred by Plaintiff's interference and hindrance of P&K's performance of the Subcontract.

5. Plaintiff's claims are barred by the doctrine of cardinal change.

6. Plaintiff's claims are barred by Hunt's material breach of its contract with the Project Owner.

7. Plaintiff's claims are barred by estoppel.

8. Plaintiff's claims are barred in whole or in part by set-off and/or recoupment.

9. Plaintiff's claims are barred by Plaintiff's negligence.

10. P&K fully reserves the right to assert any other defense available to it.

## COUNTERCLAIM

The Poole and Kent Corporation ("P&K"), by its undersigned counsel, hereby files its Counterclaim against Hunt Construction Group, Inc. ("Hunt") and for grounds states as follows:

## FACTS

1. P&K entered into a subcontract (the "Subcontract") with Hunt for construction services related to the heating, ventilating, air conditioning, and plumbing systems for a new Embassy Suites hotel, located at 1000 K Street NW, Washington, D.C. (the "Project").

2. The Project consisted of four levels underground for parking and other services and fifteen levels above ground. The hotel has in excess of 400 guest rooms, a swimming pool, ballroom, meeting rooms, commercial kitchen, restaurant, offices and guest common areas. The

mechanical equipment such as boilers, chillers, cooling towers, pumps and other equipment was located in the penthouse level at the top of the structure.

3.      Constructing a Project of this size requires significant coordination, supervision and management of the various construction trade subcontractors such as the concrete contractor, electrical contractor, masonry contractor, drywall contractor, mechanical contractor and others. Further, constructing a project of this magnitude also requires significant coordination, management and supervision of the flow of materials and supplies.  It was Hunt's duty and obligation as the general contractor for the Project to provide the necessary coordination, supervision and management for the Project and to properly schedule and orchestrate the various trade contractors so that the building could be constructed in an orderly and efficient manner. Such coordination by the general contractor is normal and customary activity in the industry and was a contractual requirement of Hunt's contract with the Project owner.

4.      However, from the very beginning, Hunt failed to properly coordinate, supervise and manage the Project and allowed certain trade contractors to perform work in a manner that hindered, interfered with and prevented P&K from performing its work in the manner contemplated by P&K at the time P&K bid on the Project and was awarded the Subcontract and in a manner that is normal and customary in the industry.

5.      Hunt's refusal and inability to properly control and coordinate the Project caused significant and serious damages to P&K.

6.      P&K repeatedly provided written and verbal notice to Hunt that Hunt's failure to properly coordinate, supervise and/or manage the Project was hindering, interfering with and preventing P&K from performing its work.

7.      Hunt did not attempt to remedy the situation nor did it even respond to the majority of P&K's notices.

8.      Hunt's disregard of P&K's repeated notices of the problems being experienced on the Project, which were caused by Hunt, constitutes active, intentional and willful interference and hindrance and constitutes a breach of Hunt's duty of good faith and fair dealing as well as a material breach and abandonment of Hunt's contractual duties and obligations to P&K under the terms and conditions of the Subcontract.

9.      As a direct and proximate cause of Hunt's acts and omissions, P&K suffered substantial repeated and on-going financial damage and losses on the Project.

10.     In addition, to Hunt's mismanagement and lack of coordination, Hunt also deliberately, intentionally and willfully failed and refused to fully pay sums due to P&K under the Subcontract for work performed, despite the fact that such payment was due and owing. Hunt deliberately, intentionally and willfully failed and refused to process all but one change order for additional work performed by P&K.

## COUNT I – BREACH OF CONTRACT

11.     P&K incorporates by reference the allegations set forth in paragraphs 1 through 10 as if fully set forth herein.

12.     P&K entered into a Subcontract with Hunt to provide construction services related to the heating, ventilating, air conditioning, and plumbing systems for the Project.

13.     P&K performed the work as agreed in the Subcontract and submitted invoices for payment.

14.     P&K also performed additional and extra work at the request and direction of Hunt and the Owner.

15. Hunt materially breached the Subcontract with P&K by willfully and intentionally failing to properly coordinate, manage and supervise the Project; willfully and intentionally failing to properly and timely make progress payments; willfully and intentionally failing to properly and timely consider and act upon change order requests; and willfully and intentionally interfering and hindering P&K's performance of its work.

16. Hunt has failed and refused to pay P&K, without cause or justification.

17. Hunt has accepted the labor, services and materials provided by P&K and Hunt has received the benefit of P&K's services; Hunt is now obligated to pay for that labor, service and materials.

18. P&K has fully performed all of its obligations under the contract and has met all conditions precedent and provided all notices required and is entitled to immediate payment from Hunt.

WHEREFORE, The Poole and Kent Corporation demands judgment against Hunt Construction Group, Inc. for breach of contract in an amount to be determined at trial, but over Seventy Five Thousand Dollars ($75,000.00), plus interest, fees, court costs and whatever other amount this Court deems proper and in the interests of justice.

### COUNT II – BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

19. P&K incorporates by reference the allegations set forth in paragraphs 1 through 18 as if fully set forth herein.

20. Every contract contains a duty of good faith and fair dealing and neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits and benefits bargained for in the contract.

21. Hunt breached the implied duty of good faith and fair dealing by failing to properly coordinate, manage and supervise the Project; failing to properly and timely make progress payments; failing to properly and timely consider and act upon change order requests; and interfering and hindering P&K's performance of its work.

WHEREFORE, The Poole and Kent Corporation demands judgment against Hunt Construction Group, Inc. for breach of the implied duty of good faith and fair dealing in an amount to be determined at trial, but over Seventy Five Thousand Dollars ($75,000.00), plus interest, fees, court costs and whatever other amount this Court deems proper and in the interests of justice.

### COUNT III – QUANTUM MERUIT

22. P&K incorporates by reference the allegations set forth in paragraphs 1 through 21 as if fully set forth herein.

23. Hunt materially breached and abandoned the Subcontract with P&K by willfully and intentionally failing to properly coordinate, manage and supervise the Project; willfully and intentionally failing to properly and timely make progress payments; willfully and intentionally failing to properly and timely consider and act upon change order requests; and willfully and intentionally interfering and hindering P&K's performance of its work.

24. Hunt's willful and intentional acts and/or omissions were beyond all actual and reasonable anticipation and expectation of P&K at the time the Subcontract was entered into and was not contemplated by the parties when entering into the Subcontract.

25. As a result of Hunt's willful and intentional acts and/or omissions and the substantial damages to P&K caused as a result thereof, the Subcontract between P&K and Hunt was materially breached and abandoned. In the face of such abandonment, P&K was compelled

to continue to provide substantial services to and for the benefit of Hunt as described above in an effort to avoid and mitigate further damages.

26. P&K provided the labor, services and materials with the expectation that it would be paid by Hunt.

27. The labor, services and materials provided by P&K resulted in substantial benefit to Hunt and Hunt was aware of, accepted, and profited from P&K's labor, services and materials.

28. The receipt of the labor, services and materials and associated benefits, without making payment in full to P&K is inequitable, unjust and contrary to basic commercial fairness and reasonableness, and in violation of traditional notions of justice.

29. Accordingly, P&K is entitled to recover the reasonable value of the labor, services and materials it provided to Hunt.

WHEREFORE, the Poole and Kent Corporation demands judgment against Hunt Construction Group, Inc. for quantum meruit in an amount to be determined at trial, but over Seventy Five Thousand Dollars ($75,000.00), plus interest, fees, court costs and whatever other amount this Court deems proper and in the interests of justice.

## COUNT IV – QUANTUM MERUIT

30. P&K incorporates by reference the allegations set forth in paragraphs 1 through 29 as if fully set forth herein.

31. Hunt willfully and intentionally failed to properly coordinate, manage and supervise the Project; willfully and intentionally failed to properly and timely make progress payments; willfully and intentionally failed to properly and timely consider and act upon change order requests; and willfully and intentionally interfered and hindered P&K's performance of its work.

32. Hunt's willful and intentional acts and/or omissions were beyond all actual and reasonable anticipation and expectation of P&K at the time the Subcontract was entered into and was not contemplated by the parties when entering into the Subcontract.

33. As a result of Hunt's willful and intentional acts and/or omissions and the substantial and massive impact and damages to P&K caused as a result thereof, a cardinal change to the Subcontract between P&K and Hunt has been effectuated. In the face of such cardinal change, P&K was compelled to continue to provide substantial services to and for the benefit of Hunt as described above in an effort to avoid and mitigate further damages.

34. P&K provided the labor, services and materials with the expectation that it would be paid by Hunt.

35. The labor, services and materials provided by P&K resulted in substantial benefit to Hunt. Hunt was aware of, accepted, and profited from P&K's labor, services and materials.

36. The receipt of the labor, services and materials and associated benefits, without making payment in full to P&K is inequitable, unjust and contrary to basic commercial fairness and reasonableness and in violation of traditional notions of justice.

37. Accordingly, P&K is entitled to recover the reasonable value of the labor, services and materials it provided to Hunt.

WHEREFORE, the Poole and Kent Corporation demands judgment against Hunt Construction Group, Inc. for quantum meruit in an amount to be determined at trial, but over Seventy Five Thousand Dollars ($75,000.00), plus interest, fees, court costs and whatever other amount this Court deems proper and in the interests of justice.

### COUNT V - UNJUST ENRICHMENT

38. P&K incorporates by reference the allegations set forth in paragraphs 1 through 37 as if fully set forth herein.

39. P&K provided substantial labor, services and materials to and for the benefit of Hunt as described above.

40. P&K provided the labor, services and materials with the expectation that it would be paid by Hunt.

41. The labor, services and materials provided by P&K resulted in substantial benefit to Hunt. Hunt was aware of, accepted and profited from P&K's labor, services and materials.

42. The receipt of the labor, services and materials and associated benefits, without making payment in full to P&K is inequitable, unjust and contrary to basic commercial fairness and reasonableness, and in violation of traditional notions of justice.

43. Accordingly, P&K is entitled to recover the reasonable value of the labor, services and materials it provided to Hunt.

WHEREFORE, the Poole and Kent Corporation demands judgment against Hunt Construction Group, Inc. for unjust enrichment in an amount to be determined at trial, but over Seventy Five Thousand Dollars ($75,000.00), plus interest, fees, court costs and whatever other amount this Court deems proper and in the interests of justice.

/s/ _____
Robert F. Carney (Bar No. 436999)
Nichole M. Velasquez (Bar No. 495315)
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202
(410) 347-8700
(410) 347-9412 (fax)

        Attorneys for The Poole and Kent Corporation

OF COUNSEL:
Michael A. Stover
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202
(410) 347-8700
(410) 347-9412 (fax)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of November, 2006 a copy of the foregoing Answer and Counterclaim was served by first class United States Mail, postage prepaid and by electronic mail pursuant to the Court's Standing Order regarding electronic filing to:

> David T. Dekker, Esquire
> Jeffrey R. Gans, Esquire
> Michael S. McNamara, Esquire
> Thelen Reid & Priest, LLP
> 701 Eighth Street, N.W.
> Washington, D.C. 20001

/s/Nichole M. Velasquez

*1706907v3*