IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HUNT CONSTRUCTION GROUP, INC. | * | |
| Plaintiff/Counter Defendant | * | |
| v. | * | Civil Court Action No:     1:06CV1850 |
| | | Judge James Robertson |
| THE POOLE AND KENT CORPORATION | * | |
| Defendant/Counter Plaintiff | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## THE POOLE AND KENT CORPORATION'S
## DESIGNATION OF REPLY EXPERT WITNESSES
## AND RULE 26(a)(2) DISCLOSURES

The Poole and Kent Corporation ("Poole and Kent"), by its undersigned counsel, hereby submits this Designation of Reply Expert Witnesses and Rule 26(a)(2) Disclosures in accordance with the Federal Rules of Civil Procedure, applicable Local Rules, and the Scheduling Order issued in this case.

Poole and Kent intends to call the following reply expert witness(es) who may testify and offer expert opinions regarding the issues in this case as set forth below:

(a)   Thomas A. MacPhee
      The Poole and Kent Corporation
      4530 Hollins Ferry Road
      Baltimore, Maryland 21227

Mr. MacPhee has over 27 years of experience in the construction industry with specific emphasis on scheduling, delay and impact analysis. He holds a Bachelor of Science degree in Civil Engineering from the New Jersey Institute of Technology, 1983. Mr. MacPhee has also performed course work on a Masters Degree at George

Washington University from 1984 - 1987 in Engineering/Construction Administration. A copy of Mr. MacPhee's Curriculum Vitae was previously submitted as Exhibit A to Poole and Kent's Designation of Expert Witnesses. Mr. MacPhee is currently the Director of Project Controls, Dispute Avoidance & Resolution for Poole and Kent. Mr. MacPhee has testified as an expert witness on several occasions in the past four years, as previously disclosed. Mr. MacPhee has not published any books, articles, papers or treatises. Mr. MacPhee is not specially compensated above his normal salary for providing expert testimony on behalf of Poole and Kent.

On behalf of Poole and Kent, Mr. MacPhee was directly and personally involved with the Embassy Suites Hotel project which is the subject of this litigation (the "Project"). He visited the Project on numerous occasions periodically from May 2004 through September 2005. In addition, Mr. MacPhee was in regular contact with the Poole and Kent Project Management team throughout the duration of the Project, including the Project Executive, Project Manager and Project Foremen through correspondence, meetings and conferences. Mr. MacPhee has reviewed the Poole and Kent project files, cost and accounting records, as well as select documents which were obtained in discovery from Hunt, the Owner and various subcontractors. Mr. MacPhee has also reviewed the deposition transcripts of Thomas Page, David Langhoff, Art Sheppard, Jeff Lynch, Jerry Kerr, Tim Vaughn and Larry Weisman. Mr. MacPhee has reviewed the Complaint, Answer, Counter-Complaint, Responses to Requests for Admission, Poole and Kent's Answers to Interrogatories, and Hunt's Answers to Interrogatories. Mr. MacPhee has also reviewed the alleged back-charges asserted by

Hunt and the supporting documentation provided by Hunt. Mr. MacPhee has reviewed the "Response to Poole and Kent's Expert Report" and exhibits prepared by Lawrence Hazen.

Mr. MacPhee will testify based upon his personal knowledge, skill, training, education and experience, as well as the work he performed, documents reviewed, observations made, discussions with Poole and Kent personnel, information he reviewed and/or considered and applicable industry standards. Mr. MacPhee will testify as an expert regarding the mechanical and plumbing industry practice and standards in general with respect to planning, scheduling, sequencing and analysis of labor productivity, impact and costs. Mr. MacPhee will also testify regarding the general industry practice and standards for general contracting, project scheduling, project management, documentation of claims and costs, control, sequencing and coordination. In replying to Mr. Hazen's Report, Mr. MacPhee will provide opinions, comments, and conclusions consistent with those set forth in his Reply Report which is attached hereto and incorporated herein by references.

The areas of testimony listed above for the witnesses are provided as a guide to the opinions and testimony that will likely be elicited; the description is not intended to be a limitation on the scope or subject matter of the testimony. Poole and Kent reserves the right to supplement this disclosure, expand the areas of testimony and/or designate new expert witnesses as information becomes available. Finally, Poole and Kent reserves its right to call any expert witness identified by any other party to elicit expert and/or factual information.

Respectfully submitted,

/s/Robert F. Carney
Robert F. Carney (Bar No. 436999)
Michael A. Stover (Pro Hac Vice)
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202
(410) 347-8700

Attorneys for The Poole and Kent Corporation

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of October, 2007, a copy of the foregoing Expert Witness Disclosure was served electronically to counsel of record.

>David T. Dekker, Esquire
>Jeffrey R. Gans, Esquire
>Michael S. McNamara, Esquire
>Thelen Reid & Priest, LLP
>701 Eighth Street, N.W.
>Washington, D.C. 20001
>
>Donna M. Crowe
>Bradley Arant Rose & White LLP
>1133 Connecticut Avenue, N.W., 12th Floor
>Washington, D.C.  20036

>/s/  Robert F. Carney
>Robert F. Carney

*1752949v6*

## REPLY REPORT OF THOMAS MACPHEE

This Reply Report is provided pursuant to the requirements of Federal Rule of Civil Procedure 26(a)(2)(B) and the Scheduling Order entered in this case. My prior Expert Report and Opposition Expert Report are incorporated herein by reference. The purpose of this report is to provide opinions, comments, and conclusions regarding the "Response to Poole & Kent's Expert Report" prepared by Lawrence M. Hazen. Mr. Hazen's Response addresses my initial Expert Report in this matter. Mr. Hazen did not dispute any of the facts upon which my initial opinions were based. Mr. Hazen's Report is devoid of any factual investigation into the project and it appears that he has conducted no investigation of the facts and circumstances included in my Expert Report. I will not respond herein to each and every point asserted by Mr. Hazen in his 59 page report but rather will focus on the methodological flaws that consistently appear in the repetitive report whether with regard to costs incurred for Poole and Kent or for its subcontractors.

Mr. Hazen begins his report by establishing a standard of proof for Poole and Kent's claims that is not supported by law, contract, or experience in the construction industry. Mr. Hazen requires that the claims be proven beyond any reasonable doubt and calculated with complete exactness, neither of which is an industry standard or a legal or contractual requirement. Further, Mr. Hazen renders opinions as to the legal interpretation of selected portions of selected subcontract provisions to assert opinions as to the legal obligations of the parties. Mr. Hazen has shown no qualifications as an

expert in the interpretation of legal contracts. He selectively quotes and misapplies contractual provisions in a self-serving manner. As one example, Mr. Hazen continually ignores Poole and Kent's right to provide scheduling input which Hunt was required to incorporate into the schedule. Poole and Kent consistently provided such scheduling input which was never incorporated into the schedule by Hunt.

On numerous occasions, Mr. Hazen criticizes my reliance upon personal observation or individual recollections as evidence to support the conclusions that I have reached. Mr. Hazen contends that such conclusions are "unsubstantiated". This is not a situation where evidence does not exist to support my conclusions, it is merely a situation where Mr. Hazen does not like the evidence. It is my opinion and experience that reliance upon personal observations and individual recollections is very valuable in the preparation and presentation of construction claims. Further, it is necessary in some circumstances to rely upon such evidence given the fact that Hunt destroyed documentation being kept by Poole and Kent to support these claims when Hunt removed and disposed of all the documents from the plumbing foreman's office.

I disagree with Mr. Hazen's methodology of consistently comparing different data sets to determine what he terms "correct averages" for standard and overtime rates. His methodology of comparing different data sets comprised of different individuals at different rates results in anomalies such as his contention that four dollars an hour is the premium portion of overtime wages for union plumbers in Washington, D.C.

I further disagree with the methodology of comparing the "previous budget" and "actual costs" from an isolated Labor Update Form as a means for determining the extent of damages suffered by Poole and Kent. First, Mr. Hazen has not established any relationship between the "previous budget" line item and the bid cost. While I understand the methodology of comparing total cost with the original bid as a means of determining damages, the approach is incorrectly utilized by Mr. Hazen because of his failure to establish a connection between the "previous budget" line items and the bid. Further, Mr. Hazen's approach is incorrect because it does not take into consideration how Poole and Kent could have performed but for the impacts described in my prior reports. Poole and Kent is not in business to break even on a construction project. Rather, Poole and Kent is in the business of generating profits and our management strives to do better than its bid on each and every project. There is sufficient data included in my prior reports demonstrating that Poole and Kent's labor was substantially disrupted and its efficiency was substantially impacted causing increases in Poole and Kent's labor costs. Those impacts prevented Poole and Kent from profiting on its labor. There is even information contained in Mr. Hazen's charts (like the charts on pages 22 and 35) demonstrating Poole and Kent's increased efficiency in areas experiencing the least amount of disruptions such as the sleeves and inserts on floors 3, 4, and 5 and fixtures on the ninth floor. Finally, I do not agree with his adjustment for supervision at six percent, he appears to have made incorrect assumptions as to the amount of supervision included in the bid.

Mr. Hazen's assertion towards application of the Mechanical Contractors' Association of America ("MCAA") factors impacting labor productivity is incorrect. The MCAA factors have been applied through personal evaluation of the job by myself and the Poole and Kent management team. Application of these factors is supported by letters, daily reports, schedule analysis, personal observations, and other project documentation. The MCAA factors are not applied solely based upon "documentation" or "analysis" but rather incorporate experience and discretion of the evaluator. Because he has not conducted any factual investigation, Mr. Hazen is not in a position to determine how the factors should be applied. Mr. Hazen has ignored all supporting documentation that was provided to utilize the MCAA factors. For example, Mr. Hazen comments that each individual factor is not separately quantified. Because each factor is neither mutually exclusive nor fully inclusive of the other factors, quantification of the individual factors is not appropriate, especially in this matter.

I also disagree with Mr. Hazen's comments about adjustment of actual hours as set forth on page 29 to 30 of his Report. First, there is no need to deduct time and materials hours because no time and materials change orders have been paid by Hunt for the time periods in question. Second, no significant time was spent during the impact period repairing work due to the lack of permanent water. Alleged defects in Poole and Kent's work were found and fixed at a later time period. Third, there are no change orders paid that include loss of productivity because Hunt has not paid any of the change orders requested by Poole and Kent with one exception. Fourth, there are no executed change orders with one inapplicable exception. Fifth, all crews were

affected by loss of productivity during the time periods in question. Sixth, we are not aware of any bid errors. Had Mr. Hazen performed a factual investigation, he would have understood that no adjustments needed to be made for these items.

Mr. Hazen's methodology for pricing time extensions is without contractual, legal, or factual support. Mr. Hazen does not address the schedule or provide a schedule analysis despite having (I would presume) full access to electronic versions of the schedule and to any expert reports in Hunt's litigation with National Wrecking. Time extensions are priced when the delay occurs, not at the end of the job during the normal tail in a subcontractor's field office overhead. The methodology I utilized is industry standard and provides fair compensation to a subcontractor for delays caused by the owner, general contractor, or other subcontractors. It is undisputed by Mr. Hazen or for that matter by Hunt that the delays occurred during the performance of the project at time frames when Poole and Kent was incurring full field office overhead costs on a daily basis. The delays did not occur at the end of the job. Mr. Hazen's position is without merit and appears to be taken solely as a litigation strategy rather than an effort to determine the facts.

In summary, Mr. Hazen's Report does not include any factual investigation or refutation of the facts upon which I have relied to issue my Report. Mr. Hazen's Report relies upon flawed assumptions and ignores key contractual provisions, the basis for Poole and Kent's claims for entitlement, and the facts as to what really occurred on the project. Mr. Hazen's methodology for calculation of Poole and Kent's damages is incorrect in many instances because of his use of comparisons between different data

sets. While the total cost approach that Mr. Hazen utilizes is a recognized methodology for determining damages, his application of the methodology is erroneous. Further, his discussion of application of the MCAA factors demonstrates a lack of understanding of the factors and how to apply them. His methodology for pricing time extensions is without merit.

_____
Thomas MacPhee

October 18, 2007
Date

1759119