UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HUNT CONSTRUCTION GROUP, INC., <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> THE POOLE AND KENT CORPORATION, <br><br> Defendant/Counterclaim Plaintiff/ <br> Third Party Plaintiff, <br><br> v. <br><br> UNITED STATES FIDELITY AND <br> GUARANTY COMPANY, et al. <br><br> Third Party Defendants. | Civil Action No. 1:06cv01850 <br> Hon. James Robertson, U.S.D.J. |

## AFFIDAVIT OF E. MATTHEW MALTBY

I, E. MATTHEW MALTBY, am over 18 years of age and competent to testify to all matters set forth herein based upon my personal knowledge. I hereby make this Affidavit under oath and state:

1. During the time period of January 2004 through December 2005 I was employed by the Poole & Kent Corporation ("Poole & Kent") as a Project Manager and I was the Project Manager assigned to the Embassy Suites project located in Washington, D.C. (the "Project") which is the subject of this litigation.

2. As Project Manager for Poole & Kent on the Project, it was my responsibility, among other things, to maintain the business records of Poole & Kent for the Project and to communicate with the various project representatives for Hunt Construction Group ("Hunt") including Hunt's Project Manager, Thomas Page.

3. Beginning in May 2004, another employee with Poole & Kent, Mr. Thomas MacPhee, began to conduct periodic inspections of the Project to determine the status of the Project, review and critique the project schedules, assess levels of completion, assess delay on the Project and assess impact to Poole & Kent's productivity and costs on the Project.

4. As part of Mr. MacPhee's inspections and analysis he generated written documents setting forth his analysis and observations which he then provided to me. These documents, <u>as identified below,</u> were then provided by me to Hunt's Project Manager, Thomas Page, for the purpose of providing notice of claims, impact and damage to Hunt and for the purpose of providing Hunt with Poole & Kent's input on the scheduling of the Project.

5. The documents that were generated by Mr. MacPhee which I provided to Mr. Page included, but are not limited to the following: June 14, 2004, August 3, 2004, September 17, 2005, February 2, 2005, May 18, 2005, June 8, 2005, July 6, 2005, July 23, 2005 and August 9, 2005 (collectively the "MacPhee Notices").

6. In addition to the MacPhee Documents, I also authored and provided to Mr. Page numerous notice letters which detailed the claims, impacts and damages that Poole & Kent was incurring on the Project. Those letters include, but are not limited to the following: October 19, 2004, December 8, 2004, February 28, 2005, April 29, 2005 and three separate letters dated May 25, 2005 (collectively the "Maltby Notices"). .

6. No one from Hunt ever responded to the MacPhee Notices or the Maltby Notices I provided to Mr. Page. No one from Hunt ever disputed the information provided in the MacPhee Notices or the Maltby Notices; no one from Hunt ever requested additional information

or supplemental information in connection with the MacPhee Notices or the Maltby Notices and no one from Hunt ever denied that Poole & Kent was incurring the delays, impacts and damages that were identified in the MacPhee Notices or the Maltby Notices. Until May 20, 2005, when Mr. Page indicated verbally that he believed that Poole & Kent was responsible for delay on the Project and that Hunt would pursue Poole & Kent for damages, no one from Hunt ever indicated that Poole & Kent had caused any delay to the Project or any damages to Hunt on the Project.

7. Hunt did not incorporate the schedule input that Poole & Kent provided in the MacPhee Notices or the Maltby Notices into the master schedule for the Project.

8. During the spring and summer of 2004, the Project fell behind schedule mainly because of delays in the excavation work required to be performed on the Project. Hunt repeatedly acknowledged during this period at progress meetings and in conversations that it was aware of the delays and that it would make-up the lost time by accelerating the concrete subcontractor, such that the earlier delays would not impact the master schedule. Ultimately, Hunt was unable to accelerate the concrete work in the structure sufficiently to make-up the delays.

NOW THEREFORE, I solemnly affirm under the penalties of perjury that the contents of the foregoing Affidavit are true and accurate, based upon my personal knowledge.

_____
E. Matthew Maltby