

1997 Edition -Electronic Format

AIA Document A101-1997

*Standard Form of Agreement Between Owner and Contractor*

*where the basis of payment is a* STIPULATED SUM

AGREEMENT made as of the First day of October in the year of 2003
*(In words, indicate day, month and year)*

BETWEEN the Owner:
*(Name, address and other information)*
1000K, LLC
1750 New York Avenue NW
Washington, D.C. 20006

and the Contractor:
*(Name, address and other information)*
Hunt Construction Group, Inc.
214 Carnegy Center, Suite 103
Princeton, NJ 08540

The Project is:
*(Name and location)*
1000K Street NW
Washington, D.C.

The Architect is:
*(Name, address and other information)*
BBGM
1030 15th Street, NW Suite 900
Washington, D.C. 20005

The Owner and Contractor agree as follows.

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.

## ARTICLE 1 THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 8.

## ARTICLE 2 THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

## ARTICLE 3 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

3.1    The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.



©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by the American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates US copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: owner contract.aia -- 10/29/2003. AIA License Number 1001624, which expires on 3/2/2004.

1

*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*
October 1, 2003

If, prior to the commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:

3.2    The Contract Time shall be measured from the date of commencement.

3.3    The Contractor shall achieve Substantial Completion of the entire Work not later than days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*
August 31, 2005

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time or for bonus payments for early completion of the Work.)*

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

AIA Document A101-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.

## ARTICLE 4 CONTRACT SUM
4.1    The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be <u>Fifty Two Million Nine Hundred Twenty Four Thousand Two Hundred Fifty Two</u> Dollars ( $ <u>52,924,252.00</u> ), subject to additions and deductions as provided in the Contract Documents.

4.2    The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires)*

4.3    Unit prices, if any, are as follows:

## ARTICLE 5 PAYMENTS
5.1      PROGRESS PAYMENTS
5.1.1    Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

5.1.2    The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

5.1.3    Provided that an Application for Payment is received by the Architect not later than the day of a month, the Owner shall make payment to the Contractor not later than the day of the month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than days after the Architect receives the Application for Payment.

5.1.4    Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of



©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates US copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: owner contract.aia -- 10/29/2003. AIA License Number 1001624, which expires on 3/2/2004.

2

values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

5.1.5    Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

5.1.6    Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1    Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of  percent (  %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Subparagraph 7.3.8 of AIA Document A201-1997.

.2    Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of  percent (  %);

.3    Subtract the aggregate of previous payments made by the Owner; and

.4    Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of AIA Document A201-1997.

5.1.7    The progress payment amount determined in accordance with Subparagraph 5.1.6 shall be further modified under the following circumstances:

.1    Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and
*(Subparagraph 9.8.5 of AIA Document A201-1997 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

.2    Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Subparagraph 9.10.3 of AIA Document A201-1997.

5.1.8    Reduction or limitation of retainage, if any, shall be as follows:
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Clauses 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*



5.1.9    Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

5.2    FINAL PAYMENT
5.2.1    Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

*This document has been approved and endorsed by The Associated General Contractors of America.*

©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates US copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: owner contract.aia -- 10/29/2003. AIA License Number 1001624, which expires on 3/2/2004.

3

.1    the Contractor has fully performed the Contract except for the Contractor's
responsibility to correct Work as provided in Subparagraph 12.2.2 of AIA Document
A201-1997, and to satisfy other requirements, if any, which extend beyond final
payment; and

.2    a final Certificate for Payment has been issued by the Architect.

5.2.2    The Owner's final payment to the Contractor shall be made no later than 30 days after
the issuance of the Architect's final Certificate for Payment, or as follows:

## ARTICLE 6 TERMINATION OR SUSPENSION

6.1    The Contract may be terminated by the Owner or the Contractor as provided in
Article 14 of AIA Document A201-1997.

6.2    The Work may be suspended by the Owner as provided in Article 14 of AIA Document
A201-1997.

## ARTICLE 7 MISCELLANEOUS PROVISIONS

7.1    Where reference is made in this Agreement to a provision of AIA Document A201-1997
or another Contract Document, the reference refers to that provision as amended or
supplemented by other provisions of the Contract Documents.

7.2    Payments due and unpaid under the Contract shall bear interest from the date
payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing
from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

*Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and
other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere
may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications,
and also regarding requirements such as written disclosures or waivers.)*

7.3    The Owner's representative is:
*(Name, address and other information)*
Jeff Lynch
KMI Realty Advisors, Inc.
30 S. Meridian Street, Suite 1100
Indianapolis, IN 46204

7.4    The Contractor's representative is:
*(Name, address and other information)*
Pete Clark
Hunt Construction Group, Inc.
214 Carnegy Center, Suite 103
Princeton, NJ 08540

7.5    Neither the Owner's nor the Contractor's representative shall be changed without ten
days written notice to the other party.

7.6    Other provisions:

## ARTICLE 8 ENUMERATION OF CONTRACT DOCUMENTS

8.1    The Contract Documents, except for Modifications issued after execution of this
Agreement, are enumerated as follows:

*THIS DOCUMENT HAS IMPORTANT LEGAL
CONSEQUENCES. CONSULTATION WITH
AN ATTORNEY IS ENCOURAGED WITH
RESPECT TO ITS COMPLETION OR
MODIFICATION. AUTHENTICATION OF
THIS ELECTRONICALLY DRAFTED AIA
DOCUMENT MAY BE MADE BY USING AIA
DOCUMENT D401.*

*AIA Document A201-1997, General
Conditions of the Contract for
Construction, is adopted in this document
by reference. Do not use with other
general conditions unless this document is
modified.*

*This document has been approved and
endorsed by The Associated General
Contractors of America.*



©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of
Architects. Reproduction of the material herein or substantial quotation of its provisions without written
permission of the AIA violates the copyright laws of the United States and will subject the violator to legal
prosecution. WARNING: Unlicensed photocopying violates US copyright laws and will subject the
violator to legal prosecution. This document was electronically produced with permission of the AIA and
can be reproduced in accordance with your license without violation until the date of expiration as noted
below. User Document: owner contract.aia -- 10/29/2003. AIA License Number 1001624, which expires on
3/2/2004.

4

HU00007214

**8.1.1**   The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A101-1997.

**8.1.2**   The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.

**8.1.3**   The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated  , and are as follows:

Document                            Title                            Pages

**8.1.4**   The Specifications are those contained in the Project Manual dated as in Subparagraph 8.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

Section                             Title                            Pages

**8.1.5**   The Drawings are as follows, and are dated  unless a different date is shown below:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

Number                             Title                            Date

**8.1.6**   The Addenda, if any, are as follows:

Number              Date                            Pages

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 8.

**8.1.7**   Other documents, if any, forming part of the Contract Documents are as follows:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

HUNT CONSTRUCTION GROUP, INC.

CONTRACTOR *(Signature)*

*Agent for* OWNER *(Signature)*

Robert G. Hunt, CEO

*(Printed name and title)*

Jeff  Lynch

*(Printed name and title)*

Reviewed & Approved by
J. M. Plonknagura

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.

©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.  WARNING: Unlicensed photocopying violates US copyright laws and  will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: owner contract.aia -- 10/29/2003. AIA License Number 1001624, which expires on 3/2/2004.

5

HU00007215

1997 Edition - Electronic Format

AIA Document A201 - 1997

# General Conditions of the Contract for Construction

## TABLE OF ARTICLES

1. GENERAL PROVISIONS

2. OWNER

3. CONTRACTOR

4. ADMINISTRATION OF THE CONTRACT

5. SUBCONTRACTORS

6. CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7. CHANGES IN THE WORK

8. TIME

9. PAYMENTS AND COMPLETION

10. PROTECTION OF PERSONS AND PROPERTY

11. INSURANCE AND BONDS

12. UNCOVERING AND CORRECTION OF WORK

13. MISCELLANEOUS PROVISIONS

14. TERMINATION OR SUSPENSION OF THE CONTRACT

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*

INDEX

Acceptance of Nonconforming Work
9.6.6, 9.9.3, 12.3
Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
Access to Work
3.16, 6.2.1, 12.1
Accident Prevention
4.2.3, 10
Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 4.3.8, 4.4.1, 8.3.1, 9.5.1, 10.2.5, 13.4.2, 13.7, 14.1

Addenda
1.1.1, 3.11
Additional Costs, Claims for
4.3.4, 4.3.5, 4.3.6, 6.1.1, 10.3
Additional Inspections and Testing
9.8.3, 12.2.1, 13.5
Additional Time, Claims for
4.3.4, 4.3.7, 8.3.2
ADMINISTRATION OF THE CONTRACT
3.1.3, 4, 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1

©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

Aesthetic Effect
4.2.13, 4.5.1
Allowances
3.8
All-risk Insurance
11.4.1.1
Applications for Payment
4.2.5, 7.3.8, 9.2, 9.3, 9.4, 9.5.1, 9.6.3, 9.7.1, 9.8.5,
9.10, 11.1.3, 14.2.4, 14.4.3
Approvals
2.4, 3.1.3, 3.5, 3.10.2, 3.12, 4.2.7, 9.3.2, 13.4.2,
13.5
Arbitration
4.3.3, 4.4, 4.5.1, 4.5.2, 4.6, 8.3.1, 9.7.1, 11.4.9,
11.4.10
Architect
4.1
Architect, Definition of
4.1.1
Architect, Extent of Authority
2.4, 3.12.7, 4.2, 4.3.6, 4.4, 5.2, 6.3, 7.1.2, 7.3.6,
7.4, 9.2, 9.3.1, 9.4, 9.5, 9.8.3, 9.10.1, 9.10.3, 12.1,
12.2.1, 13.5.1, 13.5.2, 14.2.2, 14.2.4
Architect, Limitations of Authority and
Responsibility
2.1.1, 3.3.3, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1,
4.2.2, 4.2.3, 4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13,
4.4, 5.2.1, 7.4, 9.4.2, 9.6.4, 9.6.6
Architect's Additional Services and Expenses
2.4, 11.4.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4
Architect's Administration of the Contract
3.1.3, 4.2, 4.3.4, 4.4, 9.4, 9.5
Architect's Approvals
2.4, 3.1.3, 3.5.1, 3.10.2, 4.2.7
Architect's Authority to Reject Work
3.5.1, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.6
Architect's Decisions
4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.3.4, 4.4.1,
4.4.5, 4.4.6, 4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2,
9.4, 9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4
Architect's Inspections
4.2.2, 4.2.9, 4.3.4, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5
Architect's Instructions
3.2.3, 3.3.1, 4.2.6, 4.2.7, 4.2.8, 7.4.1, 12.1, 13.5.2
Architect's Interpretations
4.2.11, 4.2.12, 4.3.6
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.6, 3.1.3, 3.2.1, 3.2.2, 3.2.3, 3.3.1, 3.4.2,
3.5.1, 3.7.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3,
4.2, 4.3.4, 4.4.1, 4.4.7, 5.2, 6.2.2, 7, 8.3.1, 9.2,
9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3,
11.4.7, 12, 13.4.2, 13.5
Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.4.7
Architect's Representations
9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
4.2.2, 4.2.5, 4.2.9, 4.3.4, 9.4.2, 9.5.1, 9.9.2,
9.10.1, 13.5
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
Award of Subcontracts and Other Contracts for
Portions of the Work
5.2
Basic Definitions
1.1
Bidding Requirements
1.1.1, 1.1.7, 5.2.1, 11.5.1
Boiler and Machinery Insurance
11.4.2
Bonds, Lien
9.10.2
Bonds, Performance, and Payment
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5
Building Permit
3.7.1
Capitalization
1.3
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5
Certificates for Payment
4.2.5, 4.2.9, 9.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7.1,
9.10.1, 9.10.3, 13.7, 14.1.1.3, 14.2.4
Certificates of Inspection, Testing or Approval
13.5.4
Certificates of Insurance
9.10.2, 11.1.3
Change Orders
1.1.1, 2.4.1, 3.4.2, 3.8.2.3, 3.11.1, 3.12.8, 4.2.8,
4.3.4, 4.3.9, 5.2.3, 7.1, 7.2, 7.3, 8.3.1, 9.3.1.1,
9.10.3, 11.4.1.2, 11.4.4, 11.4.9, 12.1.2
Change Orders, Definition of
7.2.1
CHANGES IN THE WORK
3.11, 4.2.8, 7, 8.3.1, 9.3.1.1, 11.4.9
Claim, Definition of
4.3.1
Claims and Disputes
3.2.3, 4.3, 4.4, 4.5, 4.6, 6.1.1, 6.3, 7.3.8, 9.3.3,
9.10.4, 10.3.3
Claims and Timely Assertion of Claims
4.6.5
Claims for Additional Cost
3.2.3, 4.3.4, 4.3.5, 4.3.6, 6.1.1, 7.3.8, 10.3.2
Claims for Additional Time

THIS DOCUMENT HAS IMPORTANT LEGAL
CONSEQUENCES. CONSULTATION WITH AN
ATTORNEY IS ENCOURAGED WITH
RESPECT TO ITS COMPLETION OR
MODIFICATION. AUTHENTICATION OF THIS
ELECTRONICALLY DRAFTED AIA
DOCUMENT MAY BE MADE BY USING AIA
DOCUMENT D401.

This document has been approved and
endorsed by The Associated General
Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The
American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial
quotation of its provisions without written permission of the AIA violates the copyright laws of the United
States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S.
copyright laws and will subject the violator to legal prosecution. This document was electronically produced
with permission of the AIA and can be reproduced in accordance with your license without violation until
the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number
1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

2

3.2.3, 4.3.4, **4.3.7**, 6.1.1, 8.3.2, 10.3.2
Claims for Concealed or Unknown Conditions
**4.3.4**
Claims for Damages
3.2.3, 3.18, 4.3.10, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3,
11.1.1, 11.4.5, 11.4.7, 14.1.3, 14.2.4
Claims Subject to Arbitration
4.4.1, 4.5.1, 4.6.1
Cleaning Up
**3.15**, 6.3
Commencement of Statutory Limitation Period
**13.7**
Commencement of the Work, Conditions
Relating to
2.2.1, 3.2.1, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 4.3.5, 5.2.1,
5.2.3, 6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.4.1, 11.4.6,
11.5.1
Commencement of the Work, Definition of
8.1.2
Communications Facilitating Contract
Administration
3.9.1, **4.2.4**
Completion, Conditions Relating to
1.6.1, 3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8,
9.9.1, 9.10, 12.2, 13.7, 14.1.2
**COMPLETION, PAYMENTS AND**
**9**
Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3,
9.10.4.2, 12.2, 13.7
Compliance with Laws
1.6.1, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8,
4.6.4, 4.6.6, 9.6.4, 10.2.2, 11.1, 11.4, 13.1, 13.4,
13.5.1, 13.5.2, 13.6, 14.1.1, 14.2.1.3
Concealed or Unknown Conditions
4.3.4, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 1.1.7, 6.1.1, 6.1.4
Consent, Written
1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2,
9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2
**CONSTRUCTION BY OWNER OR BY**
**SEPARATE CONTRACTORS**
1.1.4, **6**
Construction Change Directive, Definition of
7.3.1
Construction Change Directives
1.1.1, 3.12.8, 4.2.8, 4.3.9, 7.1, **7.3**, 9.3.1.1
Construction Schedules, Contractor's
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3
Contingent Assignment of Subcontracts
**5.4**, 14.2.2.2
Continuing Contract Performance
**4.3.3**
Contract, Definition of

1.1.2
**CONTRACT, TERMINATION OR**
**SUSPENSION OF THE**
5.4.1.1, 11.4.9, **14**
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions
Relating to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.4.6, 11.5.1
Contract Documents, The
**1.1**, 1.2
Contract Documents, Copies Furnished and Use
of
1.6, 2.2.5, 5.3
Contract Documents, Definition of
1.1.1
Contract Sum
3.8, 4.3.4, 4.3.5, 4.4.5, 5.2.3, 7.2, 7.3, 7.4, **9.1**,
9.4.2, 9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.4.1, 14.2.4,
14.3.2
Contract Sum, Definition of
9.1
Contract Time
4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1.3, 7.3, 7.4, 8.1.1,
8.2, 8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 14.3.2
Contract Time, Definition of
8.1.1
**CONTRACTOR**
**3**
Contractor, Definition of
3.1, 6.1.2
Contractor's Construction Schedules
1.4.1.2, **3.10**, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3
Contractor's Employees
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2,
10.3, 11.1.1, 11.4.7, 14.1, 14.2.1.1,
Contractor's Liability Insurance
**11.1**
Contractor's Relationship with Separate
Contractors and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.4.7, 12.1.2, 12.2.4
Contractor's Relationship with Subcontractors
1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2,
11.4.1.2, 11.4.7, 11.4.8
Contractor's Relationship with the Architect
1.1.2, 1.6, 3.1.3, 3.2.1, 3.2.2, 3.2.3, 3.3.1, 3.4.2,
3.5.1, 3.7.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3,
4.2, 4.3.4, 4.4.1, 4.4.7, 5.2, 6.2.2, 7, 8.3.1, 9.2,
9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3,
11.4.7, 12, 13.4.2, 13.5
Contractor's Representations
1.5.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2
Contractor's Responsibility for Those
Performing the Work
3.3.2, 3.18, 4.2.3, 4.3.8, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1,
10

THIS DOCUMENT HAS IMPORTANT LEGAL
CONSEQUENCES. CONSULTATION WITH AN
ATTORNEY IS ENCOURAGED WITH
RESPECT TO ITS COMPLETION OR
MODIFICATION. AUTHENTICATION OF THIS
ELECTRONICALLY DRAFTED AIA
DOCUMENT MAY BE MADE BY USING AIA
DOCUMENT D401.

This document has been approved and
endorsed by The Associated General
Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The
American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial
quotation of its provisions without written permission of the AIA violates the copyright laws of the United
States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S.
copyright laws and will subject the violator to legal prosecution. This document was electronically produced
with permission of the AIA and can be reproduced in accordance with your license without violation until
the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number
1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

3

HU00007218

Contractor's Review of Contract Documents
1.5.2, 3.2, 3.7.3
Contractor's Right to Stop the Work
9.7
Contractor's Right to Terminate the Contract
4.3.10, 14.1
Contractor's Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.6, 9.2, 9.3,
9.8.2, 9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.5.2
Contractor's Superintendent
3.9, 10.2.6
Contractor's Supervision and Construction
Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 4.3.3, 6.1.3,
6.2.4, 7.1.3, 7.3.4, 7.3.6, 8.2, 10, 12, 14
Contractual Liability Insurance
11.1.1.8, 11.2, 11.3
Coordination and Correlation
1.2, 1.5.2, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and
Specifications
1.6, 2.2.5, 3.11
Copyrights
1.6, 3.17
Correction of Work
2.3, 2.4, 3.7.4, 4.2.1, 9.4.2, 9.8.2, 9.8.3, 9.9.1,
12.1.2, 12.2, 13.7.1.3
Correlation and Intent of the Contract
Documents
1.2
Cost, Definition of
7.3.6
Costs
2.4, 3.2.3, 3.7.4, 3.8.2, 3.15.2, 4.3, 5.4.2, 6.1.1,
6.2.3, 7.3.3.3, 7.3.6, 7.3.7, 7.3.8, 9.10.2, 10.3.2,
10.5, 11.3, 11.4, 12.1, 12.2.1, 12.2.4, 13.5, 14
Cutting and Patching
6.2.5, 3.14
Damage to Construction of Owner or Separate
Contractors
3.14.2, 6.2.4, 9.2.1.5, 10.2.1.2, 10.2.5, 10.6, 11.1,
11.4, 12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.6, 11.4, 12.2.4
Damages, Claims for
3.2.3, 3.18, 4.3.10, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3,
11.1.1, 11.4.5, 11.4.7, 14.1.3, 14.2.4
Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
Date of Commencement of the Work,
Definition of
8.1.2
Date of Substantial Completion, Definition of
8.1.3
Day, Definition of
8.1.4
Decisions of the Architect

4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.3.4, 4.4.1,
4.4.5, 4.4.6, 4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2,
9.4, 9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4
Decisions to Withhold Certification
9.4.1, 9.5, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance,
Rejection and Correction of
2.3, 2.4, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6,
9.8.2, 9.9.3, 9.10.4, 12.2.1, 13.7.1.3
Defective Work, Definition of
3.5.1
Definitions
1.1, 2.1.1, 3.1, 3.5.1, 3.12.1, 3.12.2, 3.12.3, 4.1.1,
4.3.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 7.3.6, 8.1, 9.1, 9.8.1
Delays and Extensions of Time
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1,
7.4.1, 7.5.1, 8.3, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Disputes
4.1.4, 4.3, 4.4, 4.5, 4.6, 6.3, 7.3.8
Documents and Samples at the Site
3.11
Drawings, Definition of
1.1.5
Drawings and Specifications, Use and
Ownership of
1.1.1, 1.3, 2.2.5, 3.11, 5.3
Effective Date of Insurance
8.2.2, 11.1.2
Emergencies
4.3.5, 10.6, 14.1.1.2
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2,
10.3, 11.1.1, 11.4.7, 14.1, 14.2.1.1
Equipment, Labor, Materials and
1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3,
9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3, 3.4, 3.5, 3.7,
3.10, 3.12, 3.14, 4.2.2, 4.2.3, 4.3.3, 6.2.2, 7.1.3,
7.3.4, 8.2, 9.5, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3
Extensions of Time
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3,
7.4.1, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Failure of Payment
4.3.6, 9.5.1.3, 9.7, 9.10.2, 14.1.1.3, 14.2.1.2, 13.6
Faulty Work
  (See Defective or Nonconforming Work)
Final Completion and Final Payment
4.2.1, 4.2.9, 4.3.2, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1,
11.4.5, 12.3.1, 13.7, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.5
Fire and Extended Coverage Insurance
11.4

GENERAL PROVISIONS

THIS DOCUMENT HAS IMPORTANT LEGAL
CONSEQUENCES. CONSULTATION WITH AN
ATTORNEY IS ENCOURAGED WITH
RESPECT TO ITS COMPLETION OR
MODIFICATION. AUTHENTICATION OF THIS
ELECTRONICALLY DRAFTED AIA
DOCUMENT MAY BE MADE BY USING AIA
DOCUMENT D401.

This document has been approved and
endorsed by the Associated General
Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The
American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial
quotation of its provisions without written permission of the AIA violates the copyright laws of the United
States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S.
copyright laws and will subject the violator to legal prosecution. This document was electronically produced
with permission of the AIA and can be reproduced in accordance with your license without violation until
the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number
1014645, which expires on 5/30/2004.

4

1

Governing Law
13.1
Guarantees (See Warranty)
Hazardous Materials
10.2.4, 10.3, 10.5
Identification of Contract Documents
1.5.1
Identification of Subcontractors and Suppliers
5.2.1
Indemnification
3.17, 3.18, 9.10.2, 10.3.3, 10.5, 11.4.1.2, 11.4.7
Information and Services Required of the Owner
2.1.2, 2.2, 3.2.1, 3.12.4, 3.12.10, 4.2.7, 4.3.3, 6.1.3,
6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3,
10.3.3, 11.2, 11.4, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4
Injury or Damage to Person or Property
4.3.8, 10.2, 10.6
Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.2,
9.8.3, 9.9.2, 9.10.1, 12.2.1, 13.5
Instructions to Bidders
1.1.1
Instructions to the Contractor
3.2.3, 3.3.1, 3.8.1, 4.2.8, 5.2.1, 7, 12, 8.2.2, 13.5.2
Insurance
3.18.1, 6.1.1, 7.3.6, 8.2.1, 9.3.2, 9.8.4, 9.9.1,
9.10.2, 9.10.5, 11
Insurance, Boiler and Machinery
11.4.2
Insurance, Contractor's Liability
11.1
Insurance, Effective Date of
8.2.2, 11.1.2
Insurance, Loss of Use
11.4.3
Insurance, Owner's Liability
11.2
Insurance, Project Management Protective Liability
11.3
Insurance, Property
10.2.5, 11.4
Insurance, Stored Materials
9.3.2, 11.4.1.4
INSURANCE AND BONDS
11
Insurance Companies, Consent to Partial Occupancy
9.9.1, 11.4.1.5
Insurance Companies, Settlement with
11.4.10
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4
Interest

13.6
Interpretation
1.2.3, 1.4, 4.1.1, 4.3.1, 5.1, 6.1.2, 8.1.4
Interpretations, Written
4.2.11, 4.2.12, 4.3.6
Joinder and Consolidation of Claims Required
4.6.4
Judgment on Final Award
4.6.6
Labor and Materials, Equipment
1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13,
3.15.1, 42.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3,
9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.6, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6,
9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1,
13.5.2, 13.6, 14
Liens
2.1.2, 4.4.8, 8.2.2, 9.3.3, 9.10
Limitation on Consolidation or Joinder
4.6.4
Limitations, Statutes of
4.6.3, 12.2.6, 13.7
Limitations of Liability
2.3, 3.2.1, 3.5.1, 3.7.3, 3.12.8, 3.12.10, 3.17, 3.18,
4.2.6, 4.2.7, 4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7,
9.10.4, 10.3.3, 10.2.5, 11.1.2, 11.2.1, 11.4.7, 12.2.5,
13.4.2
Limitations of Time
2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1,
4.2.7, 4.3, 4.4, 4.5, 4.6, 5.2, 5.3, 5.4, 6.2.4, 7.3,
7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8,
9.9, 9.10, 11.1.3, 11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5,
13.7, 14
Loss of Use Insurance
11.4.3
Material Suppliers
1.6, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6,
9.10.5
Materials, Hazardous
10.2.4, 10.3, 10.5
Materials, Labor, Equipment and
1.1.3, 1.1.6, 1.6.1, 3.4, 3.5.1, 3.8.2, 3.8.23, 3.12, 3.13,
3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3,
9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Means, Methods, Techniques, Sequences and Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
4.4.8
Mediation
4.4.1, 4.4.5, 4.4.6, 4.4.8, 4.5, 4.6.1, 4.6.2, 8.3.1,
10.5
Minor Changes in the Work

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

5

HU00007220

1.1.1, 3.12.8, 4.2.8, 4.3.6, 7.1, **7.4**

**MISCELLANEOUS PROVISIONS**
13

Modifications, Definition of
1.1.1

Modifications to the Contract
1.1.1, 1.1.2, 3.7.3, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7, 10.3.2, 11.4.1

Mutual Responsibility
6.2

Nonconforming Work, Acceptance of
9.6.6, 9.9.3, 12.3

Nonconforming Work, Rejection and Correction of
2.3, 2.4, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.8.2, 9.9.3, 9.10.4, 12.2.1, 13.7.1.3

Notice
2.2.1, 2.3, 2.4, 3.2.3, 3.3.1, 3.7.2, 3.7.4, 3.12.9, 4.3, 4.4.8, 4.6.5, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 11.1.3, 11.4.6, 12.2.2, 12.2.4, 13.3, 13.5.1, 13.5.2, 14.1, 14.2

Notice, Written
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 4.3, 4.4.8, 4.6.5, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 11.4.6, 12.2.2, 12.2.4, **13.3,** 14

Notice of Testing and Inspections
13.5.1, 13.5.2

Notice to Proceed
8.2.2

Notices, Permits, Fees and
2.2.2, **3.7,** 3.13, 7.3.6.4, 10.2.2

Observations, Contractor's
1.5.2, 3.2, 3.7.3, 4.3.4

Occupancy
2.2.2, 9.6.6, 9.8, 11.4.1.5

Orders, Written
1.1.1, 2.3, 3.9, 4.3.6, 7, 8.2.2, 11.4.9, 12.1, 12.2, 13.5.2, 14.3.1

**OWNER**
2

Owner, Definition of
2.1

Owner, Information and Services Required of the
2.1.2, **2.2,** 3.2.1, 3.12.4, 3.12.10, 4.2.7, 4.3.3, 6.1.3, 6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.4, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4

Owner's Authority
1.6, 2.1.1, 2.3, 2.4, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2, 4.1.3, 4.2.4, 4.2.9, 4.3.6, 4.4.7, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3, 7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1, 9.9.1, 9.10.2, 10.3.2, 11.1.3, 11.3.1, 11.4.3, 11.4.10, 12.2.2, 12.3.1, 13.2.2, 14.3, 14.4

Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.5

Owner's Liability Insurance
11.2

Owner's Loss of Use Insurance
11.4.3

Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2

Owner's Right to Carry Out the Work
**2.4,** 12.2.4, 14.2.2.2

Owner's Right to Clean Up
6.3

Owner's Right to Perform Construction and to Award Separate Contracts
6.1

Owner's Right to Stop the Work
2.3

Owner's Right to Suspend the Work
14.3

Owner's Right to Terminate the Contract
14.2

Ownership and Use of Drawings, Specifications and Other Instruments of Service
1.1.1, **1.6,** 2.2.5, 3.2.1, 3.11.1, 3.17.1, 4.2.12, 5.3

Partial Occupancy or Use
9.6.6, **9.9,** 11.4.1.5

Patching, Cutting and
**3.14,** 6.2.5

Patents
3.17

Payment, Applications for
4.2.5, 7.3.8, 9.2, **9.3,** 9.4, 9.5.1, 9.6.3, 9.7.1, 9.8.5, 9.10.1, 9.10.3, 9.10.5, 11.1.3, 14.2.4, 14.4.3

Payment, Certificates for
4.2.5, 4.2.9, 9.3.3, **9.4,** 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1, 9.10.3, 13.7, 14.1.1.3, 14.2.4

Payment, Failure of
4.3.6, 9.5.1.3, **9.7,** 9.10.2, 14.1.1.3, 14.2.1.2, 13.6

Payment, Final
4.2.1, 4.2.9, 4.3.2, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, 11.4.5, 12.3.1, 13.7, 14.2.4, 14.4.3

Payment Bond, Performance Bond and
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, **11.5**

Payments, Progress
4.3.3, 9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3

**PAYMENTS AND COMPLETION**
9

Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 11.4.8, 14.2.1.2

PCB
10.3.1

Performance Bond and Payment Bond
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, **11.5**

Permits, Fees and Notices
2.2.2, **3.7,** 3.13, 7.3.6.4, 10.2.2

**PERSONS AND PROPERTY, PROTECTION**

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007221

OF
10

Polychlorinated Biphenyl
    10.3.1
Product Data, Definition of
    3.12.2
Product Data and Samples, Shop Drawings
    3.11, **3.12**, 4.2.7
Progress and Completion
    4.2.2, 4.3.3, **8.2**, 9.8, 9.9.1, 14.1.4
Progress Payments
    4.3.3, 9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3
Project, Definition of the
    1.1.4
Project Management Protective Liability
Insurance
    **11.3**
Project Manual, Definition of the
    1.1.7
Project Manuals
    2.2.5
Project Representatives
    4.2.10
Property Insurance
    10.2.5, **11.4**
PROTECTION OF PERSONS AND
PROPERTY
    10
Regulations and Laws
    1.6, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.**8**, 4.6,
    9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1,
    13.5.2, 13.6, 14
Rejection of Work
    3.5.1, 4.2.6, 12.2.1
Releases and Waivers of Liens
    9.10.2
Representations
    1.5.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1,
    9.8.2, 9.10.1
Representatives
    2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.10, 5.1.1, 5.1.2,
    13.2.1
Resolution of Claims and Disputes
    **4.4**, 4.5, 4.6
Responsibility for Those Performing the Work
    3.3.2, 3.18, 4.2.3, 4.3.8, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1,
    10
Retainage
    9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
Review of Contract Documents and Field
Conditions by Contractor
    1.5.2, **3.2**, 3.7.3, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and
Architect
    3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2

Review of Shop Drawings, Product Data and
Samples by Contractor
    3.12
Rights and Remedies
    1.1.2, 2.3, 2.4, 3.5.1, 3.15.2, 4.2.6, 4.3.4, 4.5, 4.6,
    5.3, 5.4, 6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3,
    12.2.2, 12.2.4, **13.4**, 14
Royalties, Patents and Copyrights
    **3.17**
Rules and Notices for Arbitration
    4.6.2
Safety of Persons and Property
    **10.2**, 10.6
Safety Precautions and Programs
    3.3.1, 4.2.2, 4.2.7, 5.3.1, **10.1**, 10.2, 10.6
Samples, Definition of
    3.12.3
Samples, Shop Drawings, Product Data and
    3.11, **3.12**, 4.2.7
Samples at the Site, Documents and
    **3.11**
Schedule of Values
    **9.2**, 9.3.1
Schedules, Construction
    1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3
Separate Contracts and Contractors
    1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 4.6.4, 6, 8.3.1,
    11.4.7, 12.1.2, 12.2.5
Shop Drawings, Definition of
    3.12.1
Shop Drawings, Product Data and Samples
    3.11, **3.12**, 4.2.7
Site, Use of
    3.13, 6.1.1, 6.2.1
Site Inspections
    1.2.2, 3.2.1, 3.3.3, 3.7.1, 4.2, 4.3.4, 9.4.2, 9.10.1,
    13.5
Site Visits, Architect's
    4.2.2, 4.2.9, 4.3.4, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Special Inspections and Testing
    4.2.6, 12.2.1, 13.5
Specifications, Definition of the
    1.1.6
Specifications, The
    1.1.1, **1.1.6**, 1.1.7, 1.2.2, 1.6, 3.11, 3.12.10, 3.17
Statute of Limitations
    4.6.3, 12.2.6, 13.7
Stopping the Work
    2.3, 4.3.6, 9.7, 10.3, 14.1
Stored Materials
    6.2.1, 9.3.2, 10.2.1.2, 10.2.4, 11.4.1.4
Subcontractor, Definition of
    5.1.1
SUBCONTRACTORS
    5

THIS DOCUMENT HAS IMPORTANT LEGAL
CONSEQUENCES. CONSULTATION WITH AN
ATTORNEY IS ENCOURAGED WITH
RESPECT TO ITS COMPLETION OR
MODIFICATION. AUTHENTICATION OF THIS
ELECTRONICALLY DRAFTED AIA
DOCUMENT MAY BE MADE BY USING AIA
DOCUMENT D401.

This document has been approved and
endorsed by The Associated General
Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The
American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial
quotation of its provisions without written permission of the AIA violates the copyright laws of the United
States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S.
copyright laws and will subject the violator to legal prosecution. This document was electronically produced
with permission of the AIA and can be reproduced in accordance with your license without violation until
the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number
1014645, which expires on 5/30/2004.

Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2, 9.6.7
Subcontractual Relations
5.3, 5.4, 9.3.1.2, 9.6, 9.10 10.2.1, 11.4.7, 11.4.8, 14.1, 14.2.1, 14.3.2
Submittals
1.6, 3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.6, 9.2, 9.3, 9.8, 9.9.1, 9.10.2, 9.10.3, 11.1.3
Subrogation, Waivers of
6.1.1, 11.4.5, 11.4.7
Substantial Completion
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 9.10.4.2, 12.2, 13.7
Substantial Completion, Definition of
9.8.1
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
4.1.3
Substitutions of Materials
3.4.2, 3.5.1, 7.3.7
Sub-subcontractor, Definition of
5.1.2
Subsurface Conditions
4.3.4
Successors and Assigns
13.1
Superintendent
3.9, 10.2.6
Supervision and Construction Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 4.3.3, 6.1.3, 6.2.4, 7.1.3, 7.3.6, 8.2, 8.3.1, 9.4.2, 10, 12, 14
Surety
4.4.7, 5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2
Surety, Consent of
9.10.2, 9.10.3
Surveys
2.2.3
Suspension by the Owner for Convenience
14.4
Suspension of the Work
5.4.2, 14.3
Suspension or Termination of the Contract
4.3.6, 5.4.1.1, 11.4.9, 14
Taxes
3.6, 3.8.2.1, 7.3.6.4
Termination by the Contractor
4.3.10, 14.1
Termination by the Owner for Cause
4.3.10, 5.4.1.1, 14.2
Termination of the Architect
4.1.3
Termination of the Contractor
14.2.2

TERMINATION OR SUSPENSION OF THE CONTRACT
14
Tests and Inspections
3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 10.3.2, 11.4.1.1, 12.2.1, 13.5
TIME
8
Time, Delays and Extensions of
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1, 7.4.1, 7.5.1, 8.3, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Time Limits
2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1, 4.2, 4.3, 4.4, 4.5, 4.6, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5, 13.7, 14
Time Limits on Claims
4.3.2, 4.3.4, 4.3.8, 4.4, 4.5, 4.6
Title to Work
9.3.2, 9.3.3
UNCOVERING AND CORRECTION OF WORK
12
Uncovering of Work
12.1
Unforeseen Conditions
4.3.4, 8.3.1, 10.3
Unit Prices
4.3.9, 7.3.3.2
Use of Documents
1.1.1, 1.6, 2.2.5, 3.12.6, 5.3
Use of Site
3.13, 6.1.1, 6.2.1
Values, Schedule of
9.2, 9.3.1
Waiver of Claims by the Architect
13.4.2
Waiver of Claims by the Contractor
4.3.10, 9.10.5, 11.4.7, 13.4.2
Waiver of Claims by the Owner
4.3.10, 9.9.3, 9.10.3, 9.10.4, 11.4.3, 11.4.5, 11.4.7, 12.2.2.1, 13.4.2, 14.2.4
Waiver of Consequential Damages
4.3.10, 14.2.4
Waiver of Liens
9.10.2, 9.10.4
Waivers of Subrogation
6.1.1, 11.4.5, 11.4.7
Warranty
3.5, 4.2.9, 4.3.5.3, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2, 13.7.1.3
Weather Delays
4.3.7.2

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007223

Work, Definition of
   1.1.3
Written Consent
   1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2,
   9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2
Written Interpretations
   4.2.11, 4.2.12, 4.3.6
Written Notice
   2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 4.3, 4.4.8,

   4.6.5, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3,
   11.4.6, 12.2.2, 12.2.4, 13.3, 14
Written Orders
   1.1.1, 2.3, 3.9, 4.3.6, 7, 8.2.2, 11.4.9, 12.1, 12.2,
   13.5.2, 14.3.1

# ARTICLE 1  GENERAL PROVISIONS
## 1.1    BASIC DEFINITIONS
### 1.1.1   THE CONTRACT DOCUMENTS

The Contract Documents consist of the Agreement between Owner and Contractor (hereinafter the Agreement), Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include other documents such as bidding requirements (advertisement or invitation to bid, Instructions to Bidders, sample forms, the Contractor's bid or portions of Addenda relating to bidding requirements).

### 1.1.2   THE CONTRACT

The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or Sub-subcontractor, (3) between the Owner and Architect or (4) between any persons or entities other than the Owner and Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

### 1.1.3   THE WORK

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

### 1.1.4   THE PROJECT

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner or by separate contractors.

### 1.1.5   THE DRAWINGS

The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

### 1.1.6   THE SPECIFICATIONS

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007224

The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

## 1.1.7   THE PROJECT MANUAL

The Project Manual is a volume assembled for the Work which may include the bidding requirements, sample forms, Conditions of the Contract and Specifications.

## 1.2   CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS

1.2.1     The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

1.2.2     Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

1.2.3     Unless otherwise stated in the Contract Documents, words which have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

## 1.3   CAPITALIZATION

1.3.1     Terms capitalized in these General Conditions include those which are (1) specifically defined, (2) the titles of numbered articles and identified references to Paragraphs, Subparagraphs and Clauses in the document or (3) the titles of other documents published by the American Institute of Architects.

## 1.4   INTERPRETATION

1.4.1     In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

## 1.5   EXECUTION OF CONTRACT DOCUMENTS

1.5.1     The Contract Documents shall be signed by the Owner and Contractor. If either the Owner or Contractor or both do not sign all the Contract Documents, the Architect shall identify such unsigned Documents upon request.

1.5.2     Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

## 1.6   OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE

1.6.1     The Drawings, Specifications and other documents, including those in electronic form, prepared by the Architect and the Architect's consultants are Instruments of Service through which the Work to be executed by the Contractor is described. The Contractor may retain one record set. Neither the Contractor nor any Subcontractor, Sub-subcontractor or material or equipment supplier shall own or claim a copyright in the Drawings, Specifications and other documents prepared by the Architect or the Architect's consultants, and unless otherwise indicated the Architect and the Architect's consultants shall be deemed the authors of

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

HU00007225

them and will retain all common law, statutory and other reserved rights, in addition to the copyrights. All copies of Instruments of Service, except the Contractor's record set, shall be returned or suitably accounted for to the Architect, on request, upon completion of the Work. The Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants, and copies thereof furnished to the Contractor, are for use solely with respect to this Project. They are not to be used by the Contractor or any Subcontractor, Sub-subcontractor or material or equipment supplier on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants. The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants appropriate to and for use in the execution of their Work under the Contract Documents. All copies made under this authorization shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' copyrights or other reserved rights.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

## ARTICLE 2 OWNER

### 2.1 GENERAL

2.1.1    The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Subparagraph 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

*This document has been approved and endorsed by the Associated General Contractors of America.*

2.1.2    The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

### 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER

2.2.1    The Owner shall, at the written request of the Contractor, prior to commencement of the Work and thereafter, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

2.2.2    Except for permits and fees, including those required under Subparagraph 3.7.1, which are the responsibility of the Contractor under the Contract Documents, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

2.2.3    The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.



2.2.4    Information or services required of the Owner by the Contract Documents shall be furnished by the Owner with reasonable promptness. Any other information or services relevant to the Contractor's performance of the Work under the Owner's control shall be

©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

11

furnished by the Owner after receipt from the Contractor of a written request for such information or services.

2.2.5   Unless otherwise provided in the Contract Documents, the Contractor will be furnished, free of charge, such copies of Drawings and Project Manuals as are reasonably necessary for execution of the Work.

## 2.3   OWNER'S RIGHT TO STOP THE WORK
2.3.1   If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents as required by Paragraph 12.2 or persistently fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Subparagraph 6.1.3.

## 2.4   OWNER'S RIGHT TO CARRY OUT THE WORK
2.4.1   If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may after such seven-day period give the Contractor a second written notice to correct such deficiencies within a three-day period. If the Contractor within such three-day period after receipt of such second notice fails to commence and continue to correct any deficiencies, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

## ARTICLE 3   CONTRACTOR
### 3.1   GENERAL
3.1.1   The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Contractor" means the Contractor or the Contractor's authorized representative.

3.1.2   The Contractor shall perform the Work in accordance with the Contract Documents.

3.1.3   The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons other than the Contractor.

### 3.2   REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR
3.2.1   Since the Contract Documents are complementary, before starting each portion of the Work, the Contractor shall carefully study and compare the various Drawings and other Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Subparagraph 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, any errors, inconsistencies or omissions discovered by the Contractor

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007227

shall be reported promptly to the Architect as a request for information in such form as the Architect may require.

**3.2.2** Any design errors or omissions noted by the Contractor during this review shall be reported promptly to the Architect, but it is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional unless otherwise specifically provided in the Contract Documents. The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations, but any nonconformity discovered by or made known to the Contractor shall be reported promptly to the Architect.

**3.2.3** If the Contractor believes that additional cost or time is involved because of clarifications or instructions issued by the Architect in response to the Contractor's notices or requests for information pursuant to Subparagraphs 3.2.1 and 3.2.2, the Contractor shall make Claims as provided in Subparagraphs 4.3.6 and 4.3.7. If the Contractor fails to perform the obligations of Subparagraphs 3.2.1 and 3.2.2, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. The Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents or for differences between field measurements or conditions and the Contract Documents unless the Contractor recognized such error, inconsistency, omission or difference and knowingly failed to report it to the Architect.

**3.3     SUPERVISION AND CONSTRUCTION PROCEDURES**
**3.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any resulting loss or damage.

**3.3.2** The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

**3.3.3** The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

**3.4     LABOR AND MATERIALS**
**3.4.1** Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

**3.4.2** The Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

13

3.4.3    The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.

## 3.5    WARRANTY

3.5.1    The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Contract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

## 3.6    TAXES

3.6.1    The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor which are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

## 3.7    PERMITS, FEES AND NOTICES

3.7.1    Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit and other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work which are customarily secured after execution of the Contract and which are legally required when bids are received or negotiations concluded.

3.7.2    The Contractor shall comply with and give notices required by laws, ordinances, rules, regulations and lawful orders of public authorities applicable to performance of the Work.

3.7.3    It is not the Contractor's responsibility to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations. However, if the Contractor observes that portions of the Contract Documents are at variance therewith, the Contractor shall promptly notify the Architect and Owner in writing, and necessary changes shall be accomplished by appropriate Modification.

3.7.4    If the Contractor performs Work knowing it to be contrary to laws, statutes, ordinances, building codes, and rules and regulations without such notice to the Architect and Owner, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

## 3.8    ALLOWANCES

3.8.1    The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

3.8.2    Unless otherwise provided in the Contract Documents:

.1    allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

HU00007229

.2  Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances;

.3  whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Clause 3.8.2.1 and (2) changes in Contractor's costs under Clause 3.8.2.2.

3.8.3  Materials and equipment under an allowance shall be selected by the Owner in sufficient time to avoid delay in the Work.

## 3.9  SUPERINTENDENT

3.9.1  The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor. Important communications shall be confirmed in writing. Other communications shall be similarly confirmed on written request in each case.

## 3.10  CONTRACTOR'S CONSTRUCTION SCHEDULES

3.10.1  The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

3.10.2  The Contractor shall prepare and keep current, for the Architect's approval, a schedule of submittals which is coordinated with the Contractor's construction schedule and allows the Architect reasonable time to review submittals.

3.10.3  The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

## 3.11  DOCUMENTS AND SAMPLES AT THE SITE

3.11.1  The Contractor shall maintain at the site for the Owner one record copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to record field changes and selections made during construction, and one record copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work.

## 3.12  SHOP DRAWINGS, PRODUCT DATA AND SAMPLES

3.12.1  Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

3.12.2  Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

3.12.3  Samples are physical examples which illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

HU00007230

3.12.4   Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. The purpose of their submittal is to demonstrate for those portions of the Work for which submittals are required by the Contract Documents the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents. Review by the Architect is subject to the limitations of Subparagraph 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals which are not required by the Contract Documents may be returned by the Architect without action.

3.12.5   The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors. Submittals which are not marked as reviewed for compliance with the Contract Documents and approved by the Contractor may be returned by the Architect without action.

3.12.6   By approving and submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents that the Contractor has determined and verified materials, field measurements and field construction criteria related thereto, or will do so, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

3.12.7   The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

3.12.8   The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

3.12.9   The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice the Architect's approval of a resubmission shall not apply to such revisions.

3.12.10   The Contractor shall not be required to provide professional services which constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

16

HU00007231

services, certifications or approvals performed by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Subparagraph 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance or design criteria required by the Contract Documents.

### 3.13   USE OF SITE

3.13.1   The Contractor shall confine operations at the site to areas permitted by law, ordinances, permits and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

### 3.14   CUTTING AND PATCHING

3.14.1   The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

3.14.2   The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

### 3.15   CLEANING UP

3.15.1   The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove from and about the Project waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials.

3.15.2   If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and the cost thereof shall be charged to the Contractor.

### 3.16   ACCESS TO WORK

3.16.1   The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

### 3.17   ROYALTIES, PATENTS AND COPYRIGHTS

3.17.1   The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

### 3.18   INDEMNIFICATION

3.18.1   To the fullest extent permitted by law and to the extent claims, damages, losses or expenses are not covered by Project Management Protective Liability insurance purchased by the Contractor in accordance with Paragraph 11.3, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007232

attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 3.18.

3.18.2   In claims against any person or entity indemnified under this Paragraph 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Subparagraph 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

ARTICLE 4    ADMINISTRATION OF THE CONTRACT
**4.1    ARCHITECT**
**4.1.1**    The Architect is the person lawfully licensed to practice architecture or an entity lawfully practicing architecture identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Architect" means the Architect or the Architect's authorized representative.

**4.1.2**    Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

**4.1.3**    If the employment of the Architect is terminated, the Owner shall employ a new Architect against whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the former Architect.

**4.2    ARCHITECT'S ADMINISTRATION OF THE CONTRACT**
**4.2.1**    The Architect will provide administration of the Contract as described in the Contract Documents, and will be an Owner's representative (1) during construction, (2) until final payment is due and (3) with the Owner's concurrence, from time to time during the one-year period for correction of Work described in Paragraph 12.2. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents, unless otherwise modified in writing in accordance with other provisions of the Contract.

**4.2.2**    The Architect, as a representative of the Owner, will visit the site at intervals appropriate to the stage of the Contractor's operations (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and deficiencies in the Work, and (3) to determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Subparagraph 3.3.1.

**4.2.3**    The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor,

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

HU00007233

Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

**4.2.4    Communications Facilitating Contract Administration.** Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

**4.2.5**    Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

**4.2.6**    The Architect will have authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Subparagraphs 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

**4.2.7**    The Architect will review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Paragraphs 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**4.2.8**    The Architect will prepare Change Orders and Construction Change Directives, and may authorize minor changes in the Work as provided in Paragraph 7.4.

**4.2.9**    The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion, will receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor, and will issue a final Certificate for Payment upon compliance with the requirements of the Contract Documents.

**4.2.10**    If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

**4.2.11**    The Architect will interpret and decide matters concerning performance under and requirements of, the Contract Documents on written request of either the Owner or

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



© 1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

HU00007234

Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If no agreement is made concerning the time within which interpretations required of the Architect shall be furnished in compliance with this Paragraph 4.2, then delay shall not be recognized on account of failure by the Architect to furnish such interpretations until 15 days after written request is made for them.

4.2.12   Interpretations and decisions of the Architect will be consistent with the intent of and reasonably inferable from the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good faith.

4.2.13   The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

4.3       CLAIMS AND DISPUTES
4.3.1    Definition.  A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

4.3.2    Time Limits on Claims. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.

4.3.3    Continuing Contract Performance. Pending final resolution of a Claim except as otherwise agreed in writing or as provided in Subparagraph 9.7.1 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

4.3.4    Claims for Concealed or Unknown Conditions. If conditions are encountered at the site which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, then notice by the observing party shall be given to the other party promptly before conditions are disturbed and in no event later than 21 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall so notify the Owner and Contractor in writing, stating the reasons. Claims by either party in opposition to such determination must be made within 21 days after the Architect has given notice of the decision. If the conditions encountered are materially different, the Contract Sum and Contract Time shall be equitably adjusted, but if the Owner and Contractor cannot agree on an adjustment in the Contract Sum or Contract Time, the adjustment shall be referred to the Architect for initial determination, subject to further proceedings pursuant to Paragraph 4.4.

4.3.5    Claims for Additional Cost.  If the Contractor wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007235

proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Paragraph 10.6.

4.3.6    If the Contractor believes additional cost is involved for reasons including but not limited to (1) a written interpretation from the Architect, (2) an order by the Owner to stop the Work where the Contractor was not at fault, (3) a written order for a minor change in the Work issued by the Architect, (4) failure of payment by the Owner, (5) termination of the Contract by the Owner, (6) Owner's suspension or (7) other reasonable grounds, Claim shall be filed in accordance with this Paragraph 4.3.

### 4.3.7    Claims for Additional Time

4.3.7.1   If the Contractor wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay only one Claim is necessary.

4.3.7.2   If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

### 4.3.8    Injury or Damage to Person or Property.   If either party to the Contract suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

4.3.9    If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

### 4.3.10    Claims for Consequential Damages.   The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes:

    .1    damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

    .2    damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Subparagraph 4.3.10 shall be deemed to preclude an award of liquidated direct damages, when applicable, in accordance with the requirements of the Contract Documents.

### 4.4    RESOLUTION OF CLAIMS AND DISPUTES

4.4.1    Decision of Architect.   Claims, including those alleging an error or omission by the Architect but excluding those arising under Paragraphs 10.3 through 10.5, shall be referred initially to the Architect for decision. An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007236

and Owner arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect. The Architect will not decide disputes between the Contractor and persons or entities other than the Owner.

**4.4.2**    The Architect will review Claims and within ten days of the receipt of the Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Architect is unable to resolve the Claim if the Architect lacks sufficient information to evaluate the merits of the Claim or if the Architect concludes that, in the Architect's sole discretion, it would be inappropriate for the Architect to resolve the Claim.

**4.4.3**    In evaluating Claims, the Architect may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Architect in rendering a decision. The Architect may request the Owner to authorize retention of such persons at the Owner's expense.

**4.4.4**    If the Architect requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either provide a response on the requested supporting data, advise the Architect when the response or supporting data will be furnished or advise the Architect that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Architect will either reject or approve the Claim in whole or in part.

**4.4.5**    The Architect will approve or reject Claims by written decision, which shall state the reasons therefor and which shall notify the parties of any change in the Contract Sum or Contract Time or both. The approval or rejection of a Claim by the Architect shall be final and binding on the parties but subject to mediation and arbitration.

**4.4.6**    When a written decision of the Architect states that (1) the decision is final but subject to mediation and arbitration and (2) a demand for arbitration of a Claim covered by such decision must be made within 30 days after the date on which the party making the demand receives the final written decision, then failure to demand arbitration within said 30 days' period shall result in the Architect's decision becoming final and binding upon the Owner and Contractor. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence, but shall not supersede arbitration proceedings unless the decision is acceptable to all parties concerned.

**4.4.7**    Upon receipt of a Claim against the Contractor or at any time thereafter, the Architect or the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Architect or the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

**4.4.8**    If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the Claim by the Architect, by mediation or by arbitration.

**4.5    MEDIATION**
**4.5.1**    Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5 shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia – 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

HU00007237

4.5.2   The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

4.5.3   The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

## 4.6    ARBITRATION

4.6.1   Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 4.5.

4.6.2   Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.

4.6.3   A demand for arbitration shall be made within the time limits specified in Subparagraphs 4.4.6 and 4.6.1 as applicable, and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Paragraph 13.7.

4.6.4   **Limitation on Consolidation or Joinder.** No arbitration arising out of or relating to the Contract shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a Claim not described therein or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

4.6.5   **Claims and Timely Assertion of Claims.** The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007238

**4.6.6  Judgment on Final Award.**  The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 5 SUBCONTRACTORS

### 5.1  DEFINITIONS

**5.1.1**  A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

**5.1.2**  A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

### 5.2  AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK

**5.2.1**  Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect will promptly reply to the Contractor in writing stating whether or not the Owner or the Architect, after due investigation, has reasonable objection to any such proposed person or entity. Failure of the Owner or Architect to reply promptly shall constitute notice of no reasonable objection.

**5.2.2**  The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection..

**5.2.3**  If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

**5.2.4**  The Contractor shall not change a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitute.

### 5.3  SUBCONTRACTUAL RELATIONS

**5.3.1**  By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia – 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

HU00007239

the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement which may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

**5.4    CONTINGENT ASSIGNMENT OF SUBCONTRACTS**
**5.4.1**    Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner provided that:

.1    assignment is effective only after termination of the Contract by the Owner for cause pursuant to Paragraph 14.2 and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing; and

.2    assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

**5.4.2**    Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

**ARTICLE 6 CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS**
**6.1    OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS**

**6.1.1**    The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Paragraph 4.3.

**6.1.2**    When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

**6.1.3**    The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules when directed to do so. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Other until subsequently revised.

**6.1.4**    Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights which apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.

**6.2    MUTUAL RESPONSIBILITY**

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by the American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

25

6.2.1    The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

6.2.2    If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

6.2.3    The Owner shall be reimbursed by the Contractor for costs incurred by the Owner which are payable to a separate contractor because of delays, improperly timed activities or defective construction of the Contractor. The Owner shall be responsible to the Contractor for costs incurred by the Contractor because of delays, improperly timed activities, damage to the Work or defective construction of a separate contractor.

6.2.4    The Contractor shall promptly remedy damage wrongfully caused by the Contractor to completed or partially completed construction or to property of the Owner or separate contractors as provided in Subparagraph 10.2.5.

6.2.5    The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Subparagraph 3.14.

## 6.3    OWNER'S RIGHT TO CLEAN UP
6.3.1    If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will allocate the cost among those responsible.

## ARTICLE 7 CHANGES IN THE WORK
### 7.1    GENERAL
7.1.1    Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

7.1.2    A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.

7.1.3    Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

### 7.2    CHANGE ORDERS
7.2.1    A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect, stating their agreement upon all of the following:

 .1    change in the Work;
 .2    the amount of the adjustment, if any, in the Contract Sum; and

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

HU00007241

.3   the extent of the adjustment, if any, in the Contract Time.

**7.2.2**   Methods used in determining adjustments to the Contract Sum may include those listed in Subparagraph 7.3.3.

## 7.3   CONSTRUCTION CHANGE DIRECTIVES

**7.3.1**   A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

**7.3.2**   A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

**7.3.3**   If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:

.1   mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;

.2   unit prices stated in the Contract Documents or subsequently agreed upon;

.3   cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

.4   as provided in Subparagraph 7.3.6.

**7.3.4**   Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

**7.3.5**   A Construction Change Directive signed by the Contractor indicates the agreement of the Contractor therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**7.3.6**   If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the method and the adjustment shall be determined by the Architect on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, a reasonable allowance for overhead and profit. In such case, and also under Clause 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Subparagraph 7.3.6 shall be limited to the following:

.1   costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

.2   costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

.3   rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

.4   costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

.5   additional costs of supervision and field office personnel directly attributable to the change.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

HU00007242

7.3.7    The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

7.3.8    Pending final determination of the total cost of a Construction Change Directive to the Owner, amounts not in dispute for such changes in the Work shall be included in Applications for Payment accompanied by a Change Order indicating the parties' agreement with part or all of such costs. For any portion of such cost that remains in dispute, the Architect will make an interim determination for purposes of monthly certification for payment for those costs. That determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a claim in accordance with Article 4.

7.3.9    When the Owner and Contractor agree with the determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and shall be recorded by preparation and execution of an appropriate Change Order.

## 7.4    MINOR CHANGES IN THE WORK

7.4.1    The Architect will have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order and shall be binding on the Owner and Contractor. The Contractor shall carry out such written orders promptly.

## ARTICLE 8  TIME

### 8.1    DEFINITIONS

8.1.1    Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

8.1.2    The date of commencement of the Work is the date established in the Agreement.

8.1.3    The date of Substantial Completion is the date certified by the Architect in accordance with Paragraph 9.8.

8.1.4    The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

### 8.2    PROGRESS AND COMPLETION

8.2.1    Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

8.2.2    The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance. Unless the date of commencement is established by the Contract Documents or a notice to proceed given by the Owner, the Contractor shall notify the Owner in writing not less than five days or other agreed period before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia – 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007243

8.2.3    The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

**8.3    DELAYS AND EXTENSIONS OF TIME**
8.3.1    If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Owner, or by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control, or by delay authorized by the Owner pending mediation and arbitration, or by other causes which the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.

8.3.2    Claims relating to time shall be made in accordance with applicable provisions of Paragraph 4.3.

8.3.3    This Paragraph 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.

**ARTICLE 9 PAYMENTS AND COMPLETION**
**9.1    CONTRACT SUM**
9.1.1    The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

**9.2    SCHEDULE OF VALUES**
9.2.1    Before the first Application for Payment, the Contractor shall submit to the Architect a schedule of values allocated to various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**9.3    APPLICATIONS FOR PAYMENT**
9.3.1    At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment for operations completed in accordance with the schedule of values. Such application shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and reflecting retainage if provided for in the Contract Documents.

9.3.1.1    As provided in Subparagraph 7.3.8, such applications may include requests for payment on account of changes in the Work which have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

9.3.1.2    Such applications may not include requests for payment for portions of the Work for which the Contractor does not intend to pay to a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

9.3.2    Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and

*THIS DOCUMENT HAS IMPORTANT LEG. CONSEQUENCES. CONSULTATION WITH. ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THI. ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architec
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

9.3.3    The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

## 9.4    CERTIFICATES FOR PAYMENT

9.4.1    The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Subparagraph 9.5.1.

9.4.2    The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

## 9.5    DECISIONS TO WITHHOLD CERTIFICATION

9.5.1    The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Subparagraph 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Subparagraph 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Subparagraph 3.3.2, because of:

    .1   defective Work not remedied;
    .2   third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;
    .3   failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007245

.4   reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;

.5   damage to the Owner or another contractor;

.6   reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or

.7   persistent failure to carry out the Work in accordance with the Contract Documents.

**9.5.2**   When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

## 9.6    PROGRESS PAYMENTS

**9.6.1**   After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**9.6.2**   The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of such Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**9.6.3**   The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**9.6.4**   Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor except as may otherwise be required by law.

**9.6.5**   Payment to material suppliers shall be treated in a manner similar to that provided in Subparagraphs 9.6.2, 9.6.3 and 9.6.4.

**9.6.6**   A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**9.6.7**   Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

## 9.7    FAILURE OF PAYMENT

**9.7.1**   If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by arbitration, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®

AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007246

the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

## 9.8    SUBSTANTIAL COMPLETION

9.8.1    Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

9.8.2    When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

9.8.3    Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

9.8.4    When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

9.8.5    The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

## 9.9    PARTIAL OCCUPANCY OR USE

9.9.1    The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Clause 11.4.1.5 and authorized by public authorities having jurisdiction over the Work. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Subparagraph 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

HU00007247

9.9.2 Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

9.9.3 Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

## 9.10    FINAL COMPLETION AND FINAL PAYMENT

9.10.1 Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Subparagraph 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

9.10.2 Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

9.10.3 If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

9.10.4 The making of final payment shall constitute a waiver of Claims by the Owner except those arising from:

    .1   liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

33

HU00007248

.2  failure of the Work to comply with the requirements of the Contract Documents; or

.3  terms of special warranties required by the Contract Documents.

9.10.5  Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

## ARTICLE 10 PROTECTION OF PERSONS AND PROPERTY

### 10.1  SAFETY PRECAUTIONS AND PROGRAMS

10.1.1  The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

### 10.2  SAFETY OF PERSONS AND PROPERTY

10.2.1  The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:

.1  employees on the Work and other persons who may be affected thereby;

.2  the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and

.3  other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

10.2.2  The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

10.2.3  The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

10.2.4  When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

10.2.5  The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Clauses 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Clauses 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Paragraph 3.18.

10.2.6  The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

34

10.2.7   The Contractor shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

## 10.3   HAZARDOUS MATERIALS

10.3.1   If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

10.3.2   The Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to verify that it has been rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up, which adjustments shall be accomplished as provided in Article 7.

10.3.3   To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Subparagraph 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

10.4   The Owner shall not be responsible under Paragraph 10.3 for materials and substances brought to the site by the Contractor unless such materials or substances were required by the Contract Documents.

10.5   If, without negligence on the part of the Contractor, the Contractor is held liable for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

## 10.6   EMERGENCIES

10.6.1   In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Paragraph 4.3 and Article 7.

## ARTICLE 11 INSURANCE AND BONDS
   11.1   CONTRACTOR'S LIABILITY INSURANCE

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

HU00007250

11.1.1    The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

    .1   claims under workers' compensation, disability benefit and other similar employee benefit acts which are applicable to the Work to be performed;

    .2   claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;

    .3   claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;

    .4   claims for damages insured by usual personal injury liability coverage;

    .5   claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

    .6   claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;

    .7   claims for bodily injury or property damage arising out of completed operations; and

    .8   claims involving contractual liability insurance applicable to the Contractor's obligations under Paragraph 3.18.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the Associated General Contractors of America.*

11.1.2    The insurance required by Subparagraph 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Work until date of final payment and termination of any coverage required to be maintained after final payment.

11.1.3    Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work. These certificates and the insurance policies required by this Paragraph 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment as required by Subparagraph 9.10.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness in accordance with the Contractor's information and belief.

## 11.2    OWNER'S LIABILITY INSURANCE

11.2.1    The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

## 11.3    PROJECT MANAGEMENT PROTECTIVE LIABILITY INSURANCE

11.3.1    Optionally, the Owner may require the Contractor to purchase and maintain Project Management Protective Liability insurance from the Contractor's usual sources as primary coverage for the Owner's, Contractor's and Architect's vicarious liability for construction operations under the Contract. Unless otherwise required by the Contract Documents, the Owner shall reimburse the Contractor by increasing the Contract Sum to pay the cost of purchasing and maintaining such optional insurance coverage, and the Contractor shall not be responsible for purchasing any other liability insurance on behalf of the Owner. The minimum limits of liability purchased with such coverage shall be equal to the aggregate of the limits required for Contractor's Liability Insurance under Clauses 11.1.1.2 through 11.1.1.5.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

36

**11.3.2** To the extent damages are covered by Project Management Protective Liability insurance, the Owner, Contractor and Architect waive all rights against each other for damages, except such rights as they may have to the proceeds of such insurance. The policy shall provide for such waivers of subrogation by endorsement or otherwise.

**11.3.3** The Owner shall not require the Contractor to include the Owner, Architect or other persons or entities as additional insureds on the Contractor's Liability Insurance coverage under Paragraph 11.1.

**11.4    PROPERTY INSURANCE**
**11.4.1** Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Paragraph 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Paragraph 11.4 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

**11.4.1.1** Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

**11.4.1.2** If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance which will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

**11.4.1.3** If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

**11.4.1.4** This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

**11.4.1.5** Partial occupancy or use in accordance with Paragraph 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

**11.4.2** Boiler and Machinery Insurance. The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007252

Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.

**11.4.3   Loss of Use Insurance.** The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused.

**11.4.4**   If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.

**11.4.5**   If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

**11.4.6**   Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Paragraph 11.4. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

**11.4.7   Waivers of Subrogation.** The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**11.4.8**   A loss insured under Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Subparagraph 11.4.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

**11.4.9**   If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by the American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

HU00007253

cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or in accordance with an arbitration award in which case the procedure shall be as provided in Paragraph 4.6. If after such loss no other special agreement is made and the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

**11.4.10** The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved as provided in Paragraphs 4.5 and 4.6. The Owner as fiduciary shall, in the case of arbitration, make settlement with insurers in accordance with directions of the arbitrators. If distribution of insurance proceeds by arbitration is required, the arbitrators will direct such distribution.

**11.5   PERFORMANCE BOND AND PAYMENT BOND**
**11.5.1**   The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.

**11.5.2**   Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall permit a copy to be made.

**ARTICLE 12   UNCOVERING AND CORRECTION OF WORK**
**12.1   UNCOVERING OF WORK**
**12.1.1**   If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if required in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

**12.1.2**   If a portion of the Work has been covered which the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

**12.2   CORRECTION OF WORK**
**12.2.1   BEFORE OR AFTER SUBSTANTIAL COMPLETION**
**12.2.1.1** The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

**12.2.2   AFTER SUBSTANTIAL COMPLETION**
**12.2.2.1**   In addition to the Contractor's obligations under Paragraph 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Subparagraph 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007254

correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Paragraph 2.4.

12.2.2.2 The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual performance of the Work.

12.2.2.3 The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Paragraph 12.2.

12.2.3 The Contractor shall remove from the site portions of the Work which are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

12.2.4 The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work which is not in accordance with the requirements of the Contract Documents.

12.2.5 Nothing contained in this Paragraph 12.2 shall be construed to establish a period of limitation with respect to other obligations which the Contractor might have under the Contract Documents. Establishment of the one-year period for correction of Work as described in Subparagraph 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

## 12.3   ACCEPTANCE OF NONCONFORMING WORK
12.3.1   If the Owner prefers to accept Work which is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

## ARTICLE 13   MISCELLANEOUS PROVISIONS
### 13.1      GOVERNING LAW
13.1.1   The Contract shall be governed by the law of the place where the Project is located.

### 13.2   SUCCESSORS AND ASSIGNS
13.2.1   The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Subparagraph 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

13.2.2   The Owner may, without consent of the Contractor, assign the Contract to an institutional lender providing construction financing for the Project. In such event, the lender

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by the Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007255

shall assume the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

## 13.3    WRITTEN NOTICE
**13.3.1**    Written notice shall be deemed to have been duly served if delivered in person to the individual or a member of the firm or entity or to an officer of the corporation for which it was intended, or if delivered at or sent by registered or certified mail to the last business address known to the party giving notice.

## 13.4 .    RIGHTS AND REMEDIES
**13.4.1**    Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

**13.4.2**    No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

## 13.5    TESTS AND INSPECTIONS
**13.5.1**    Tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of tests, inspections or approvals which do not become requirements until after bids are received or negotiations concluded.

**13.5.2**    If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Subparagraph 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Subparagraph 13.5.3, shall be at the Owner's expense.

**13.5.3**    If such procedures for testing, inspection or approval under Subparagraphs 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

**13.5.4**    Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

**13.5.5**    If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

**13.5.6**    Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by the Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007256

**13.6    INTEREST**

13.6.1  Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

**13.7    COMMENCEMENT OF STATUTORY LIMITATION PERIOD**

13.7.1  As between the Owner and Contractor:

.1  **Before Substantial Completion.** As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion;

.2  **Between Substantial Completion and Final Certificate for Payment.** As to acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of issuance of the final Certificate for Payment; and

.3  **After Final Certificate for Payment.** As to acts or failures to act occurring after the relevant date of issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of any act or failure to act by the Contractor pursuant to any Warranty provided under Paragraph 3.5, the date of any correction of the Work or failure to correct the Work by the Contractor under Paragraph 12.2, or the date of actual commission of any other act or failure to perform any duty or obligation by the Contractor or Owner, whichever occurs last.

**ARTICLE 14   TERMINATION OR SUSPENSION OF THE CONTRACT**

**14.1    TERMINATION BY THE CONTRACTOR**

14.1.1  The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

.1  issuance of an order of a court or other public authority having jurisdiction which requires all Work to be stopped;

.2  an act of government, such as a declaration of national emergency which requires all Work to be stopped;

.3  because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Subparagraph 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or

.4  the Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Subparagraph 2.2.1.

14.1.2  The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work by the Owner as described in Paragraph 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007257

14.1.3   If one of the reasons described in Subparagraph 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

14.1.4   If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has persistently failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Subparagraph 14.1.3.

**14.2    TERMINATION BY THE OWNER FOR CAUSE**

14.2.1   The Owner may terminate the Contract if the Contractor:

.1   persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

.2   fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;

.3   persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or

.4   otherwise is guilty of substantial breach of a provision of the Contract Documents.

14.2.2   When any of the above reasons exist, the Owner, upon certification by the Architect that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

.1   take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;

.2   accept assignment of subcontracts pursuant to Paragraph 5.4; and

.3   finish the Work by whatever reasonable method the Owner may deem expedient. Upon request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

14.2.3   When the Owner terminates the Contract for one of the reasons stated in Subparagraph 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

14.2.4   If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Architect, upon application, and this obligation for payment shall survive termination of the Contract.

**14.3    SUSPENSION BY THE OWNER FOR CONVENIENCE**

14.3.1   The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia -- 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

HU00007258

**14.3.2**   The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Subparagraph 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent:

    .1   that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or

    .2   that an equitable adjustment is made or denied under another provision of the Contract.

## 14.4   TERMINATION BY THE OWNER FOR CONVENIENCE

**14.4.1**   The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

**14.4.2**   Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall:

    .1   cease operations as directed by the Owner in the notice;

    .2   take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and

    .3   except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

**14.4.3**   In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 97a201.aia – 10/3/2003. AIA License Number 1014645, which expires on 5/30/2004.

HU00007259

SUPPLEMENTAL CONDITIONS
TO
STANDARD FORM OF AGREEMENT
BETWEEN 1000 K, L.L.C. AND HUNT CONSTRUCTION GROUP
(AIA DOCUMENT A101-1997)
AND
GENERAL CONDITIONS OF THE CONTRACT
FOR CONSTRUCTION (AIA DOCUMENT A201-1997)


A.     The terms and provisions herein set forth shall serve to modify, amend and/or supplement, as appropriate, the pre-printed provisions of the Standard Form of Agreement.

1.     Pursuant to that certain Investment Management (Development) Agreement dated August 23, 2001, KMI Realty Advisors, Inc. ("KMI") has the obligation, among its other obligations, to act as investment manager on Owner's behalf in connection with the development and construction of the Project and has the specific right and authority to enter into, acknowledge and deliver any and all contracts and agreements on behalf of the Owner in connection with the construction of the Project.  Accordingly, all notices to the Owner shall be given to the Owner c/o KMI Realty Advisors, Inc., 30 S. Meridian Street, Suite 1100, Indianapolis, Indiana 46204, Attention: John Kite, who shall be the Owner's representative pursuant to Paragraph 7.3.  From and after the date hereof, all approvals, agreements, consents and other actions required or permitted by the Owner pursuant to the Contract Documents shall be given by KMI, as Owner's representative, who has authority pursuant to the Investment Management (Development) Agreement referenced above to bind the Owner on any matter relating to this Contract.

2.     Pursuant to Paragraph 4.1, the lump sum Contract Sum shall include without limitation, the Cost of the Work, General Conditions, Fee, Payment and Performance Bond and Insurance.  In the event the Contractor recommends to Owner "value engineering" type changes to the Drawings and Specifications which have the effect of reducing the Cost of the Work without changing the Project or any component or aspect thereof which is accepted by the Owner, the Contract Sum shall be subject to reduction by an amount equal to the first $854,252 of the actual cost savings realized thereby, plus 75% of the actual cost savings in excess of $854,252 realized thereby, it being the intent of the parties that the first $854,252 of such cost savings shall inure to the benefit of the Owner and 75% of such cost savings in excess of the first $854,252 of such cost savings shall inure to the benefit of Owner and that 25% of such cost savings in excess of the first $854,252 of such costs savings shall inure to the benefit of the Contractor.

3.     The first sentence of Subparagraph 5.1.6.1 is amended and restated to read as follows:

Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003

completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of ten percent (10%) until the Work is fifty percent (50%) complete, with no retainage required thereafter, provided the Contractor is not in default of any of its obligations hereunder and is otherwise performing properly, as reasonably determined by the Owner.

4.      Subparagraph 5.1.6.2 is modified hereby to provide that the retainage on materials stored off-site at locations approved in advance by Owner shall be fifteen percent (15%). In addition, title to such materials stored off-site shall be deemed to pass to Owner upon payment therefor and the Contractor shall provide, as part of its Application for Payment which covers such materials, a bill of sale in form reasonably acceptable to Owner for all such materials to be stored off-site and paid for pursuant to such Application for Payment.

5.      Subparagraph 5.1.8 is modified to provide that any further reduction or limitation of retainage is subject to Owner's approval, which may be withheld in Owner's sole discretion. As a condition of any approval of a further reduction in retainage, Owner may require written approval of Contractor's surety under the payment and performance bond provided by Contractor pursuant to the Contract Documents.

6.      Paragraph 7.3 is supplemented by requiring copies of any notices sent to Owner's Representative be sent to Troutman Sanders LLP, 1660 International Drive, Suite 600, McLean, Virginia 22102, Attention: Allan B. Goldstein.

7.      Paragraph 8.1 is supplemented by addition of the following:

The "Contract Documents" shall consist of this Agreement, General Conditions, any Supplemental Conditions, the Drawings and Specifications (and related Addendums), the Project Schedule, the Request for Proposal (and related Addendums), the final TIF Documents (hereinafter defined), the final Clarifications and Exclusions provided by Contractor and approved by Owner and any exhibits to any of the foregoing documents. All such documents form this Agreement, and are as fully a part of this Agreement as if attached hereto or repeated herein. If any provisions in any Contract Document shall be in conflict with any provision of another Contract Document, the Contract Document with the higher priority shall control. This Agreement shall have the highest priority, and the other Contract Documents shall have priority as follows: Drawings and Specifications (and related Addendums) , Supplemental Conditions, General Conditions and Request for Proposal (and related Addendums). Terms defined in other Contract Documents but not herein defined

HU00007261

shall have such meanings in this Agreement. The construction
to be accomplished according to the Contract Documents shall
be referred to herein as the "Work."

8.    Subparagraph 8.1.3 is hereby deleted. Pursuant to Subparagraph
8.1.4, the Project Manual is dated January 27, 2003 (entitled Construction Set) and the
Specifications are more particularly described in Exhibit 1 attached hereto.

9.    Pursuant to Subparagraph 8.1.5, the Drawings are more
particularly described in Exhibit 2 attached hereto.

10.    All on-site work will be performed by trade union labor who are
members of trade unions affiliated with the AFL CIO Building Trades Department, and
evidence thereof shall be provided by Contractor to Owner's Representative.

11.    The General Contractor shall be required to carry and maintain
throughout its performance of the Work, insurance per the Insurance Specifications
attached hereto as Exhibit 3.

12.    In the event the Contractor fails to achieve Substantial
Completion of the Work as and when required pursuant to the provisions of the Contract
Documents, Owner shall be entitled to damages in an amount equal to $5,000.00 per day
of delay for the first thirty (30) days of delay and $7,500.00 per day thereafter.

13.    Attached hereto as Exhibit 4 is a list of any subcontractors retained
in connection with the performance of the Work, each of which is hereby approved by the
Owner's Representative. The Contractor hereby certifies that each such subcontractor
complies with the requirements of the Contract Documents.

14.    Exhibit 5 sets forth a list of Tie-Back, Overswing and other
Agreements which Owner has entered into with adjoining property owners, true and
correct copies of which Agreements previously have been provided to Contractor
(collectively, the "Adjoining Property Agreements"). Contractor agrees, to the extent it
relates to its performance of the Work, and as limited by its agreement with the Owner as
expressed in the Contract Documents (including, without limitation, the mutual waiver of
consequential damages contained in Subparagraph 4.3.10 of the General Conditions), to
comply with Owner's obligations and responsibilities pursuant to the Adjoining Property
Agreements (including, without limitation, the insurance requirements thereof) and to
advise Owner in writing promptly of becoming aware of any breach of either party's
obligations and responsibilities thereunder. The Contractor's liability insurance to be
maintained pursuant to the provisions hereof must include coverage for damage to
adjoining buildings.

15.    As the project site is compact, Contractor shall, at its own cost and
expense, identify to Owner's Representative and provide its own construction
staging/management area, and shall at all times during performance of the Work provide

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003

3

HU00007262

secure private office space, including desk and telephone service, to KMI personnel in the construction trailer located in such construction staging/management area.

16.    Unless caused by Owner's wrongful failure to pay pursuant to the Contract documents, in the event any lien is filed against the Project in connection with the Work, Contractor shall cause the same to be discharged by payment or bonding within ten (10) days of the filing thereof (or, if it is not legally possible to cause the same to be discharged by payment or bonding within ten (10) days after the filing thereof, such longer time as is reasonably necessary, but in no event later than twenty (20) days after filing), and shall indemnify, defend and hold the Owner harmless for all costs, including, but not limited to attorney's fees, together with interest from the date of payment of any such cost by Owner until reimbursed by Contractor at a per annum rate equal to six percent (6%). The foregoing shall be in addition to any right of Owner to proceed against the surety under the payment and performance bond provided by Contractor pursuant to the Contract Documents. The obligations of Contractor hereunder shall survive the expiration or termination of the Contract.

17.    Contractor acknowledges that the Project will be developed, in part, through the proceeds of Tax Increment Financing ("TIF") to be made available to Owner by the District of Columbia. Contractor further acknowledges that such TIF will be made available pursuant to the terms and conditions of a Development Agreement to be entered into by and between the Owner and the District of Columbia (the "TIF Development Agreement"), and that such TIF Development Agreement and the other documents entered into in connection therewith including, without limitation, a LSDBE Memorandum of Understanding and a First Source Employment Agreement (the TIF Development Agreement, the LSDBE Memorandum of Understanding, the First Source Employment Agreement and such other documents entered into in connection therewith being collectively referred to herein as the "TIF Documents"), the most current drafts of which have been provided to Contractor for review and comment, will likely include certain requirements applicable to the Contractor including, without limitation, requirements concerning the utilization of local, small and disadvantaged business enterprises. Contractor agrees hereby that it will comply with such requirements that are applicable to the Contractor. Owner agrees hereby to provide to Contractor a copy of the final TIF Development Agreement and the other TIF Documents as and when received, such documents to be deemed included as Contract Documents. If, within thirty (30) days after receipt of the final TIF Development Agreement and the other TIF Documents, and such documents impose additional materal obligations on the Contractor beyond those contained in the last drafts submitted to Contractor, and the Contractor reasonably determines that compliance with such additional obligations set forth in the final TIF Development Agreement and the other final TIF Documents causes Contractor to incur additional unanticipated costs, Contractor shall advise Owner in writing as to the anticipated amount of such additional costs, and if accepted by Owner, the Contract Sum shall be increased by appropriate change order. In addition, Contractor agrees to make such revisions to the Contract that may be required pursuant to such TIF Development Agreement and the other TIF Documents, provided same do not materially adversely affect the Contractor. Without limitation of the foregoing, Contractor hereby agrees as follows:

(a)     In addition to the insurance required hereby, Contractor will provide, prior to the commencement of any portion of the Work, and maintain during the performance thereof, the insurance required under Article X of the TIF Development Agreement.  Contractor shall procure an appropriate clause in, or endorsement on, any such policy of insurance carried by it pursuant to which the insurance company waives subrogation or consents to a waiver of right of recovery consistent with the release, discharge, exoneration and covenants not to sue contained herein.  Original Certificates of Insurance, which include the District of Columbia (and any successor in interest to the District) as an additional insured and denotes all insurance required of Contractor pursuant to the provisions hereof (the "Certificate of Insurance"), shall be furnished to Owner by Contractor in quadruplicate (each of which shall be original signed counterparts) prior to commencement of the Work.  The Contractor shall secure an original Certificate of Insurance from each of its sub-contractors and/or suppliers providing for commercially reasonable insurance coverage, consistent with the provisions hereof.

(b)     Contractor hereby waives all rights of recovery, claims, actions or causes of action against the District of Columbia (and any successor in interest to the District), and its elected and appointed officials, officers, employees (including contract employees), successors, assigns, and agents, for any loss or damage to property of Contractor which may occur at any time in connection with the Project.  Contractor shall require such waiver in contracts to be entered into with all subcontractors, sub-subcontractors and other parties to be retained in connection with the Project.

(c)     To the fullest extent permitted by law, Contractor shall, does, and will hereby defend, indemnify and hold harmless the District of Columbia (and any successor in interest to the District), its elected and appointed officials, officers, employees (including contract employees), successors, assigns, and agents, from and against any and all liability, claims, demands, damages, losses, fines, penalties, expenses and costs of every kind and nature, including, without limitation, costs of suit and attorneys' fees and disbursements (collectively, "Expenses"), resulting from or in any manner arising out of, in connection with or on account of:  (1) any act, omission, fault or neglect of Contractor, or anyone employed by it in connection with the Work or any phase thereof, or any of its agents, contractors, subcontractors, employees, invitees or licensees in connection with the Work, or anyone for whose acts any of them may be liable, (2) claims of injury (including physical, emotional, economic or otherwise) to or disease, sickness or death of persons or damage to property (including, without limitation, loss of use resulting therefrom) occurring or resulting directly or indirectly from the Work or any portion thereof or the activities of Contractor or anyone employed by it in connection with the Work, or any portion thereof, or any of its respective agents, contractors, subcontractors, employees, invitees or licensees in connection with the Work, or anyone for whose acts any of them may be liable, or (3) mechanics' or materialmen's or other liens or claims (and all costs or expenses associated therewith) asserted, filed or arising out of the Work or any phase thereof other than liens or claims arising out of Owner's failure to make the required payments properly due Contractor.  In no event shall Contractor be able to seek or be entitled to consequential damages against the District of Columbia (and any successor in interest to the District) (including, without limitation, loss of profits or loss of business opportunity) for claims

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003

HU00007264

arising hereunder or under the TIF Development Agreement. This indemnification obligation shall not be limited in any way by: (x) any limitation on the amount or type of damages, compensation or benefits payable to Contractor under worker's compensation acts, disability benefit acts or other employee benefit acts or other insurance provided for by this contract; or (y) the fact that the Expenses were caused in part by a party indemnified hereunder. The Contractor further agrees that this indemnification shall be made a part of all contracts and purchase orders with sub-contractors or material suppliers.

(d)    Contractor agrees that the District of Columbia shall not be a party to this Contract and will in no way be responsible to any party for any claims of any nature whatsoever arising or which may arise in connection with this Contract.

(e)    Contractor hereby agrees that notwithstanding that Contractor performs work at the Project or any part thereof, the District of Columbia shall not be liable in any manner for payment or otherwise to Contractor in connection with the work performed at the Project.

(f)    Contractor shall take good care of, and keep and maintain, the Project in good and safe order and condition, and shall make all repairs reasonably necessary to keep the Project in good and safe order and condition.

(g)    Contractor shall not commit, and shall use all reasonable efforts to prevent, waste, damage or injury to the Project except with respect to the construction of the Project (but subject, however, to the provisions of subparagraph (f) above).

(h)    Contractor shall keep reasonably clean and free from rubbish all areas of the Project site, except to the extent stored in a commercially reasonable manner in accordance with the Requirements (as defined in the TIF Development Agreement) and Section 7.13 of the TIF Development Agreement.

(i)    Contractor shall prepare and submit all reports as and when required pursuant to the TIF Documents with simultaneous copies to the Owner, and shall otherwise comply with all reporting requirements contained in the TIF Documents.

(j)    Contractor shall comply with the provisions of the Davis-Bacon Act, 40 U.S.C. § 276(a), and the Service Contract Act, 41 U.S.C. § 351(a) (the "Acts") in the construction of the Project in the following limited manner: All persons who are employed by Contractor or any other contractor or subcontractor in the construction of the Project shall be paid, without subsequent deduction or rebate unless expressly authorized by Requirements, not less than the relevant prevailing wage as prescribed by such Acts during the time that such Persons are working on the construction of the Project, but only with respect to their work on the construction of the Project, but the provisions of the Acts shall not apply to any construction or repair work performed subsequent to the Opening Date (as defined in the TIF Development Agreement). For purposes of this Agreement "the relevant prevailing wage as prescribed by such Acts during the time that such Persons are working on the construction of the Project" shall be deemed to be the relevant prevailing wage determined as of the date of the TIF Development

1UPAT_1000K(SupplementalCo.DOC 1UPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003

6

HU00007265

Agreement, provided, however, that in the event the Project shall not have been completed prior to the Completion Deadline (as defined in the TIF Development Agreement) the "relevant prevailing wage" applicable thereafter, to the extent required under the TIF Development Agreement, shall be the then-current wages as determined from time to time in accordance with the Acts.

     18.    Contractor further acknowledges that the Project will be developed, in part, through the proceeds of conventional construction financing, and in connection with any such financing the Contract will be assigned to the construction lender. Contractor agrees hereby to enter into such agreement(s) with such construction lender in connection with such assignment that are requested by such construction lender, provided the terms and conditions thereof are commercially reasonable and customary for such transactions.

    B.    The terms and provisions herein set forth shall serve to modify, amend and/or supplement, as appropriate, the pre-printed provisions of the General Conditions of the Contract.

    1.    Subparagraph 1.5.2 is amended and restated to read as follows:

1.5.2  By executing the Contract, the Contractor warrants that he has closely inspected the Project site as well as the conditions of adjacent properties and has recorded to his satisfaction the physical conditions of existing properties, familiarized himself with the local conditions under which the Work is to be performed, and correlated his observations with the requirements of the Contract Documents. Claims for additions to the Contract Time or the Contract Sum because of the failure of the Contractor to familiarize itself with readily ascertainable conditions at the Project site will not be allowed.

    2.    Subparagraph 2.4.1 is amended and restated to read as follows:

If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may after such seven-day period, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expense and compensation for the Architect's additional services made necessary by such default, neglect or failure. If payments then or thereafter due the Contractor are not sufficient to cover

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003

HU00007266

such amounts, the Contractor shall pay the difference to the Owner.

3.    Subparagraph 3.2.4 is added to read as follows:

3.2.4 The Contractor hereby specifically acknowledges and declares that its agreement as to the Contract Sum for the Work, constitutes a representation by it that the Contract Documents are sufficient to enable the Contractor to determine the cost of such work as shown in the Contract Documents, and to the best of the Contractor's knowledge the Drawings, Specifications and addenda do not vary with applicable laws, statutes, building codes and regulations. The Contractor further acknowledges that, having carefully examined all Drawings, Specifications and other documents, to the best of the Contractor's knowledge there are no material discrepancies among the Contract Documents. The Contractor agrees hereby to promptly notify the Owner and the Architect upon becoming aware of any such discrepancies.

4.    Subparagraphs 3.4.4 and 3.4.5 are added to read as follows:

3.4.4 The Contractor shall maintain an adequate labor force at all times for the expeditious and proper completion of the Work. All workmen and Subcontractors shall be skilled in their respective trades.

3.4.5 Any employee of the Contractor or any employee of a Subcontractor whose work is unsatisfactory to the Owner or who is considered by the Owner to be unskilled or who is otherwise objectionable to the Owner shall be dismissed from the Work by the Contractor upon written notice from the Owner.

5.    Subparagraph 3.5.1 is amended by adding after the word "Architect" in the last sentence "or Owner's representative." Subparagraph 3.5.1 is further amended by adding the following as the final sentence thereof:

Modifications, extensions, attachments to, completion of repair to systems in the Work by others (including the Owner), including without limiting the generality of the foregoing the electrical, HVAC, plumbing, security and sprinkler systems, shall not void the Contractor's warranty so long as the same are done in accordance with the original design and installation standards.

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003
8

6.     Subparagraph 3.5.2 is added to read as follows:

3.5.2  Contractor shall issue in writing to the Owner as a condition precedent to the Final Payment, a General Warranty reflecting the conditions of Subparagraph 3.5.1 for all Work under the Contract.

7.     Subparagraph 3.7.3 is amended by adding the following as the final sentence:

In addition to the foregoing, the Contractor shall inform itself fully of all such legal requirements relating to the performance of the Work, shall comply with all such legal requirements and shall cause all of its Subcontractors to similarly comply with all applicable legal requirements.

8.     Paragraph 3.9 is amended by changing the heading from "SUPERINTENDENT" to "PROJECT MANAGER."  The first sentence of Paragraph 3.9 is amended and restated to read as follows:

The Contractor shall employ a competent project manager, superintendent(s) and necessary assistants who shall be in attendance at the Project site during performance of the Work.

9.     Subparagraph 3.10.1 is amended and restated to read as follows

3.10.1  The Contractor has submitted to the Architect, Owner and Owner's Representative the detailed progress schedule for the entire Project ("Construction Schedule"), which includes (i) the number of activities and milestones reasonably required by the Owner; (ii) the expected starting and completion dates for each trade, (iii) the anticipated dates for receipt of permits and of Substantial Completion and final completion of the Work, (iv) the anticipated date upon which the Work will be ready for occupancy, (v) key interdependencies and a critical path analysis, and (vi) the scheduling of delivery and installation of Owner-furnished equipment or fixtures, if any. The Contractor's Construction Schedule shall provide for the Owner's testing (including critical structures testing) and for the duration and sequence of each major item of Work and function to be performed, including the review of Shop Drawings in accordance with a schedule approved by the Architect.  The Construction Schedule is attached as Exhibit 6 hereto and incorporated herein by this reference.

10.     Subparagraph 3.10.4 is added to read as follows:

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003

9

3.10.4  The Construction Schedule shall provide for the most expeditious and practicable execution of the Work.  The Contractor shall also work closely with the Owner to confirm that the Construction Schedule accurately reflects the status of the Project.  The Contractor's Construction Schedule shall be updated every month by the Contractor and submitted to the Owner's Representative.

3.10.4.1  Whenever it becomes apparent from the updated Construction Schedule that any critical path date previously established by the Construction Schedule may not be met through no fault of the Owner and for which the Contractor is not entitled to a time extension pursuant to the other terms of the Contract Documents, the Contractor shall, at the Owner's request, and to the extent reasonably practical, take any or all of the following actions with no increase to the Contract Sum or Contract Time (unless effected pursuant to Subparagraphs 4.3.5 or 4.3.7 of these General Conditions);

(a) Increase construction manpower to substantially eliminate the back-log of work and return the Project to schedule;

(b) Increase the number of working hours per shift, shifts per day or the amount of construction equipment or any combination of the foregoing which will substantially eliminate the back-log of work and return the Project to schedule;

(c) Reschedule activities to concurrently accomplish activities, to the maximum degree practicable, in the time required by the Contract Documents; or

(d) Such other action in order that Substantial Completion is not delayed.

11.    Subparagraph 3.10.5 is added to read as follows:

3.10.5  Each month the Contractor shall submit to Owner's Representative, in addition to the updated Construction Schedule, a monthly status report ("Monthly Status Report"). The Monthly Status Report shall summarize the work performed during the preceding month.

12.    Subparagraph 3.11.2 is added to read as follows:

3.11.2  The Contractor shall permit the Owner and anyone designated by Owner to enter upon the Project site, inspect the

HU00007269

Work and all materials to be used in the construction thereof, and examine all Drawings and Specifications, shop drawings and other Contract Documents which are or may be kept by the Contractor or its Subcontractors at the Project site.

13.    Subparagraph 3.12.11 is added to read as follows:

3.12.11  The Contractor shall assemble, for the Owner's approval, four (4) complete copies, in loose-leaf binders, of all operating and maintenance data from all manufacturers whose equipment is installed in the Project.

14.    Subparagraph 3.13.2 is added to read as follows:

3.13.2  The Contractor shall not block, encumber or prevent direct access to properties neighboring the Project site by the owners of such properties and their respective tenants, agents, invitees and guests to the extent reasonably possible. Contractor will closely coordinate any planned disruptions of the alley area which adjoins the Project with affected adjacent property owners or property managers.

15.    Subparagraph 3.16.1 is amended by adding ", KMI (as Owner's representative)" after "Owner."

16.    Subparagraph 3.18.1 is amended by deleting "Project Management Protective Liability insurance purchased by Contractor in accordance with Paragraph 11.3" and replacing it with "the insurance maintained by the Contractor pursuant to the Contract Documents" and by adding "Owner's Representative" after "Owner" in the first sentence.

17.    Subparagraph 4.2.1 is amended by adding "KMI (as Owner's representative)" after "Architect" in the first and second sentences, and deleting "one-year" from clause (3) of the first sentence.

18.    Subparagraph 4.2.2 is amended by adding ",but will make such inspections as are appropriate for projects similar to the Project, given the Architect's duties and responsibilities hereunder" after "Work" in the second sentence.  Subparagraph 4.2.2 is further amended by adding a final sentence to read as follows:

The administration of the Contract pursuant to this Subparagraph 4.2.2 will be primarily performed by KMI (as Owner's representative), who shall have primary responsibility for performance of the functions set forth in clauses (1), (2), and (3) of the first sentence hereof, and shall provide all approvals, agreements, consents and other actions required or

HU00007270

permitted by Owner pursuant to the Contract Documents, and accordingly, KMI may have its personnel on site or performing site visits throughout the performance of the Work to perform their respective functions in connection with the construction of the Project. In addition, to enable KMI to perform said functions, the Contractor shall provide to KMI during the performance of the Work, office space, a desk and a telephone in the on-site construction trailer.

19.    Subparagraph 4.2.3 is amended by adding "(but will have responsibility to the Owner pursuant to Subparagraph 4.2.2 above)" after "Contractor" in the second sentence.

20.    Subparagraph 4.2.4 is amended by deleting "Architect" and replacing it with "KMI (as Owner's representative)" in the first sentence, and by deleting "the Owner" replacing it with "KMI (as Owner's representative)" in the last sentence.

21.    Subparagraph 4.2.5 is amended by adding "observations of the Work and" after "Architect's" in the first line.

22.    Subparagraph 4.2.6 is amended by adding "or KMI (as Owner's representative)" after "Architect" in the first, second and third sentences.

23.    Subparagraph 4.2.8 is amended by deleting "and may authorize minor changes in the Work as provided in Paragraph 7.4".

24.    Subparagraph 4.3.3 is amended by adding "of undisputed amounts" after "payments" in the fourth line and by adding after "Contract Documents" the following:

, provided however, in the event of a default by Contractor hereunder and Owner's correction of any deficiencies pursuant to Subparagraph 2.4.1 hereof, Owner shall have the right to offset its reasonable costs against sums otherwise due the Contractor.

25.    Subparagraph 4.3.4 is amended by adding after "Contract Documents" in clauses (1) and (2) of the first sentence the following "and could not have been discovered upon a reasonable visual examination of the site or a review of the pertinent studies and reports provided by Owner to Contractor," and Subparagraph 4.3.4 is further amended by deleting "an" and adding "a material" after "cause" in the second sentence.

26.    Subparagraph 4.3.5 is deleted and replaced with the following:

HU00007271

### 4.3.5    CLAIMS FOR ADDITIONAL COST OR ADDITIONAL TIME

4.3.5.1  If the Contractor wishes to make a claim for an extension of time for achieving Substantial Completion, or an increase in the Contract Sum, Contractor shall give Owner written notice within ten (10) days after the Contractor has knowledge of, or should have had knowledge of, the occurrence of the event giving rise to such claim and before Contractor proceeds to perform any additional Work. Within ten (10) days after providing such written notice, the Contractor shall submit a written statement to the Owner setting forth in detail (1) the nature and cause of the claim, and (2) an itemized and substantiated statement of the time extension or claim amount requested. If requested by the Owner, the Contractor shall also submit a plan for recovery from the effect of the delay so as to achieve Substantial Completion on or before the date established by the Contract Documents. Any claim not made in strict compliance with the provisions of this Paragraph is waived. The filing of a claim by the Contractor pursuant to this Subparagraph 4.3.5 shall not excuse a stoppage of Work by the Contractor pursuant to Paragraph 9.7 or any other provisions of the Contract Documents, and the Contractor shall continue to perform the Work pursuant to the Contract Documents while any claim is being processed pursuant to this Subparagraph 4.3.5 so long as Owner continues to pay all undisputed amounts as and when required pursuant to the Contract Documents and grants all undisputed time extensions as and when required pursuant to the Contract Documents.

4.3.5.2  The requirements set forth in this Subparagraph 4.3.5 are of the essence. The Contractor shall have the burden to prove entitlement to any change in the Contract Sum or change in the Contract Time. Any change in the Contract Sum or Contract Time may only be effected by an authorized written Change Order signed by the Owner. No change in the Work requested by the Owner shall form the basis of a change to the Contract Sum or to any amounts due under the Contract Documents or to a change in the Contract Time unless and until authorized by a written Change Order executed and issued in strict compliance with the requirements of this Subparagraph 4.3.5 and Article 7 or by written authorization to proceed with such Owner-requested change in the Work signed by the Owner.

HU00007272

4.3.5.3  No course of conduct or dealing between the parties, nor express or implied acceptance of alterations or additions to the Work and no claim that the Owner has been unjustly enriched by any alteration or addition to the Work, whether or not any such unjust enrichment to the Work or to the Owner in fact exists, shall form the basis of any claim for an increase in any amount due under the Contract Documents or a change in the Contract.

27.    Subparagraph 4.4.1 is amended by deletion of "arbitration" in the second sentence.

28.    The last sentence of Subparagraph 4.4.5 is amended and restated to read as follows: "[T]he approval or rejection of a Claim by the Architect shall be subject to non-binding mediation."

29.    Subparagraph 4.4.6 is deleted in its entirety.

30.    Subparagraph 4.4.8 is amended by deleting ", by mediation or by arbitration" after "Architect" and replacing it with "or by non-binding mediation."

31.    Subparagraph 4.5.1 is amended by deleting "arbitration or" after "condition precedent to" in the next to last line.

32.    Subparagraph 4.5.2 is amended by deleting the third sentence in its entirety and replacing same with "[T]he above notwithstanding, legal proceedings may be filed, if the Claim is not sooner resolved, at any time after thirty (30) days after the date of filing or, if sooner, the date necessary to prevent the expiration of any limitation period."

33.    Paragraph 4.6 is deleted in its entirety.  In its place the following is inserted:

4.6  Attorneys' Fees.  Notwithstanding anything to the contrary in this Contract in the event that either Owner or Contractor, as the case may be, shall bring a lawsuit against the other party for breach of such party's obligations under the Contract, the losing party shall pay the prevailing party's reasonable attorneys' fees incurred in connection with such litigation.  The "prevailing party" shall be determined by the court hearing such matter.

34.    Subparagraph 5.2.1 is amended by adding the following after the first sentence:  "[E]ach proposed Subcontractor shall be financially sound and shall be experienced and skilled to perform its portion of the Work."  Subparagraph 5.2.1 is further amended by adding the following at the end thereof:  "[T]he Owner shall have the right to review copies of all executed Subcontracts and purchase orders to ensure compliance with the provisions of the Contract Documents."

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003

14

HU00007273

35.    Subparagraph 5.3.1 is amended by adding "written" after "appropriate" and by deleting "written where legally required for validity" in the first line. Subparagraph 5.3.1 is further amended by adding the following sentence at the end thereof:

> The Contractor shall include in every Subcontract a provision providing (a) for the assignment of all Subcontracts to the Owner, (b) that each Subcontractor agrees to perform its Work for the Owner upon such assignment, and (c) the Owner shall only be responsible for those obligations of Contractor accruing after the Owner's exercise of its right to accept assignment of the Subcontract. In addition, the Subcontract shall provide that the Subcontractor shall not be entitled to any additional payment in the event of an assignment, except as set forth in Subparagraph 5.4.2.

36.    Subparagraph 7.1.1 is amended by deletion of "or order for a minor change in the Work,". Subparagraph 7.1.1 is further amended by adding a sentence to read as follows: "[N]otwithstanding any provision of the Contract Document to the contrary, a Change Order that results in added cost to the Project shall be: (a) with respect to the Contractor, 5% of the cost of the work, (b) with respect to a subcontractor, 10% of the cost of the work if performed by its own forces, or 5% of the cost of the work when such work is performed by a sub-subcontractor, (c) with respect to a sub-subcontractor, 10% of the cost of the work when performed by the sub-subcontractor. In no instance shall the fee for any individual Change Order exceed 21.3% in the aggregate."

37.    Subparagraph 7.1.2 is amended by deletion of "an order for a minor change in the Work may be issued by the Architect alone".

38.    Subparagraph 7.1.3 is amended by deletion of "or order for a minor change in the Work".

39.    Subparagraph 7.2.3 is added to read as follows:

> 7.2.3  The Contractor shall not accept any request for a Change Order from any person other than the Owner's Representative, except as provided in subparagraph 7.2.4, and may not perform any work asserted to constitute a change in the Work until the Owner's Representative has approved the Change Order in writing, unless the Owner's Representative authorizes the Contractor, in writing, to proceed with a change prior to the Owner's Representative's final approval. Notwithstanding anything to the contrary herein, the Contractor shall not charge for overtime services in the performance of any Change Order Work, unless the Owner's Representative has specifically authorized overtime in writing.

HU00007274

40.    Subparagraph 7.2.4 is added to read as follows:

7.2.4  Owner may request additive and deductive changes in the Work by giving Contractor a written "Change Order Request" itself or through the Architect or through the Owner's Representative, setting forth in detail the nature of the requested change.  Upon receipt of a Change Order Request, Contractor shall promptly (but in no event later than ten (10) days after receipt of the Change Order Request) return to Owner, Owner's Representative and Architect three (3) completed copies of its "Change Order Proposal" setting forth in detail, with a suitable breakdown by trades and work classifications, Contractor's estimate of the changes in the Contract Sum (together with appropriate data acceptable to Owner's Representative supporting such estimate, including but not limited to bids, cost estimates, and applicable until prices) and a proposed adjustment to the Contract Time resulting from such Change Order Request.  If Owner's Representative approves in writing Contractor's Change Order Proposal, Owner's Representative will issue, and Contractor will execute and accept, a Change Order and the Contract Sum and the Contract Time shall be adjusted as set forth in such Change Order.  Agreement on any Change Order shall constitute a final settlement on all matters related to the change in the Work including, but not limited to, all direct and indirect costs associated with such changes and any and all adjustments to the Contract Sum and Contract Time, subject to performance thereof and payment therefor pursuant to the terms of this Contract.

41.    Subparagraph 7.2.5 is added to read as follows:

7.2.5  All Change Orders shall be processed on AIA Form G701.  There shall be no change in the Work, whether an alteration or addition to the Contract Sum or to any amounts due under the Contract Documents or to a change in the Contract Time, unless and until such alteration or addition has been authorized by a written Change Order or Construction Change Directive executed and issued in accordance and strict compliance with the requirements with this Article 7 or by written authorization to proceed with such change in the Work signed by the Owner.  The requirements set forth in this Subparagraph 7.2.5 are of the essence.  No course of conduct or dealing between the parties, nor express or implied acceptance of alterations or additions to the Work, and no claim that the Owner has been unjustly enriched by any

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003                                        16

alteration or addition to the Work, whether or not any such unjust enrichment to the Work or to the Owner in fact exists, shall form the basis of any claim for an increase in any amount due under the Contract Documents or a change in the Contract Time, and the terms of a fully-executed Change Order or Construction Change Directive shall be conclusive.

42.     Paragraph 7.4 is deleted in its entirety.

43.     Subparagraph 8.2.2 is amended by adding after "Article 11" in the first sentence "or elsewhere in the Contract Documents."

44.     Subparagraph 8.3.1 is amended by adding the following sentence at the end:

The Contractor shall notify the Owner in writing (with a copy to the District of Columbia pursuant to the notice provisions contained in the TIF Development Agreement) not later than ten (10) days after the Contractor knows of the occurrence of labor disputes, fire, unusual delays in deliveries, unavoidable casualties or other causes beyond the Contractor's control which delays Contractor in the commencement or progress of the Work.

45.     Subparagraph 9.2.1 is amended by adding "or Owner" after "Architect" in the first and second sentences, and by adding the following sentence at the end:

The Contractor shall update the Schedule of Values, showing actual performance as compared to the original projection, as part of the Monthly Status Report.

46.     Subparagraph 9.3.1 is amended by adding "Owner and Owner's Representative" after "Architect" in the second line and by adding the following sentence at the end thereof:

The Contractor's Application for Payment shall be accompanied and supported by a General Contractor lien waiver for all Work and/or materials for which payment has been made (including the current Application for Payment) and by Subcontractor lien waives covering all Work and/or materials covered through the previous Application for Payment.

47.     Subparagraph 9.4.1 is amended by adding the following at the end thereof:

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003

17

All Certificates for Payment, including those pursuant to a
pending claim, shall be subject to Owner's reasonable approval.

48.    Subparagraph 9.4.2 is amended by adding "and the Contractor"
after the "Architect" in the second line, by adding "and Contractor's" after "Architect's" in
the fourth line and by adding "(but Architect will be deemed to have made such
inspections as are reasonably appropriate)" after "Work" in clause (1).

49.    Subparagraph 9.5.1 is amended by adding clauses .8 and .9 to read
as follows:

.8  failure of the Contractor to provide updated Monthly
Status Reports, updated Construction Schedules and other
progress schedules, or

.9  the filing of a lien or attachment or receipt of written
notice that a lien or claim is to be filed, except if the lien is the
result of Owner's nonpayment of an amount contained in a
previously submitted pay application over which no good-faith
dispute exists between Owner and Contractor.

50.    Subparagraph 9.6.1 is amended by adding "reasonably approved
by Owner" after "Certificate for Payment",.

51.    Subparagraph 9.7.1 is amended and restated to read as follows:

9.7.1  If the Architect wrongfully fails to timely issue a
Certificate for Payment or if Owner for reasons other than
default of the Contractor including, but not limited to those
defaults set forth in Subparagraphs 9.5.1.1 through 9.5.1.9,
does not pay the Contractor within ten (10) days after the date
established in the Contract Documents for payment of the
amount properly due Contractor, then the Contractor may,
upon seven (7) additional days' written notice to the Owner
and Architect, stop the Work until payment of the amount
owing has been received. The Contract Time shall be
extended appropriately and the Contract Sum shall be
increased by the amount of the Contractor's reasonable costs
of shut-down, delay and start-up, plus interest on the unpaid
amount from the date it was due at a per annum rate equal to
six percent (6%).

52.    Subparagraph 9.8.1 as amended by adding the following at the
end thereof:

, all required governmental inspections have been conducted and all final approvals required for beneficial occupancy have been obtained from all public and quasi-public authorities with jurisdiction over the project, including a Certificate of Occupancy or other such use permit (it being acknowledged and agreed that a conditional or temporary Certificate of Occupancy will satisfy this requirement provided the Contractor shall be responsible for satisfaction of all conditions for issuance of the actual Certificate of Occupancy), all other conditions precedent to Substantial Completion as set forth in the Contract Documents have been satisfied, and all of the foregoing has been certified to by the Architect. The above notwithstanding, the requirement for a Certificate of Occupancy or other use permit will be waived if not issued by the pertinent governmental entity for reasons not due in whole or in part to the fault or neglect of the Contractor, its subcontractors or any other parties for whom the Contractor is directly or indirectly responsible.

     53.    Subparagraph 9.8.2 is amended to add "and Owner, Owner's Representative" after "Architect" in the third line.

     54.    Subparagraph 9.10.2 is amended by adding the following as clauses (6) through (13):

     (6) all governmental or other approvals and permits required for the beneficial use and occupancy of the Work as a first-class hotel, including a Certificate of Occupancy or Non-Residential Use Permit (it being acknowledged and agreed that a conditional or temporary Certificate of Occupancy will satisfy this requirement provided the Contractor shall be responsible for satisfaction of all conditions for issuance of the actual Certificate of Occupancy), if required, (7) two (2) sets of as-built record Drawings and Specifications, in form and substance satisfactory to the Owner, showing, without limitation, all utility lines, all piping, ducts and similar work installed or altered by the Contractor, (8) a final Contractor's sworn statement and final lien waiver from the Contractor, excluding pending claims identified in the Contractor's final Application for Payment, duly executed and acknowledged and evidencing that all Subcontractors have been fully paid or will be paid upon receipt of final payment, and similar sworn statements and lien waivers from all Subcontractors, Sub-subcontractors and material suppliers, conditioned upon receipt of final payment, (9) all guarantees and warranties required by the Contract Documents, endorsed as necessary by

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003

HU00007278

the Contractor to the Owner and any Owner bonds have been released, (10) certificates from the Contractor that the Project has been completed in accordance with the Contract Documents, (11) the Contractor's satisfactory cleaning of the site of the Work as required under the Contract Documents, (12) the notebooks identified in Subparagraph 3.12.12 herein; and (13) two (2) sets of Change Orders. The above notwithstanding, the requirement for a Certificate of Occupancy or other use permit will be waived if not issued by the pertinent governmental entity for reasons not due in whole or in part to the fault or neglect of the Contractor, its subcontractors or any other parties for whom the Contractor is directly or indirectly responsible.

55.    Subparagraph 9.10.4 is amended by adding the following as clauses .4 and .5:

.4  continuing obligations, liabilities or responsibilities of Contractor that would otherwise survive completion and acceptance of the Work and final payment by Owner including, without limitation, Contractor's indemnification obligations under the Contract Documents; or

.5  matters arising after final payment.

56.    Subparagraph 10.2.7 is amended by adding "or the safety of adjacent existing buildings" at the end thereof.

57.    Subparagraph 10.3.1 is amended and restated to read as follows:

If the Contractor reasonably believes, is notified of or encounters on or about the site, the presence of asbestos, PCB or any toxic or hazardous material, the Contractor shall immediately stop the Work in the affected area while proceeding with Work in all unaffected areas and taking all available steps to avoid or minimize any adverse impact on the Contract Time, and the Contractor shall give the Owner, KMI and the Architect immediate verbal and written notice that the Work has been stopped, including a detailed description of the area or areas of the site affected.

58.    Subparagraph 10.3.2 is amended by adding the following as the final sentence:

HU00007279

The Contractor agrees not to use any fill or other materials to be incorporated into the Work that are hazardous, toxic, or made up of any items that are hazardous or toxic.

59.    Subparagraphs 11.1.1, 11.1.2, 11.1.3, 11.3.1, 11.3.2, 11.3.3, 11.4.1, 11.4.1.1, 11.4.1.2, 11.4.1.3, 11.4.1.4, 11.4.1.5, 11.4.2, 11.4.4, 11.4.5, 11.4.6, 11.4.7, 11.4.8, 11.4.9 and 11.4.10 are deleted in their entirety.

60.    Subparagraph 11.5.1 is amended and restated to read as follows:

The Contractor shall furnish a Payment and Performance Bond in an amount and scope consistent with the Contract Sum, which shall be in a form and with a surety reasonably acceptable to Owner, and in accordance with the requirements of Owner's lender, the cost of which shall be included within the Contract Sum.

61.    Subparagraphs 12.1.1 and 12.1.2 are amended to include "or Owner" after "Architect" and "or Owner's" after "Architect's".

62.    Subparagraph 12.2.6 is added to read as follows:

12.2.6  In any case where, in fulfilling the requirements of the Contract Documents or of any guarantee embraced therein or required thereby, the Contractor damages any work performed under another contract, Contractor shall restore such damaged work to its predamaged condition to the Owner's reasonable satisfaction.

63.    Subparagraph 13.2.2 is amended by adding the following sentence at the end thereof:

Without limitation of the foregoing in the event of an assignment of the Contract to the lender, Contractor shall agree to perform its obligations under the Contract Documents on behalf of such lender and to accept such lender as a substitute for Owner under the Contract Documents upon the lender's written assumption of the Contract.

64.    Article 13 is amended by adding Paragraphs 13.8, 13.9, 13.10, 13.11, 13.12 and 13.13 to read as follows:

13.8 The Contractor shall be responsible for damages for patent infringements and costs of defending suits on account of same, except to the extent that such damages or costs shall have arisen out of the specification by the Architect of a

HU00007280

particular process or product of a particular manufacturer and the infringement was unknown to the Contractor, the Architect being responsible for such damages.

13.9 The Owner may elect to conduct tours during construction and to have early access to, and early occupancy of, portions of the Project. Such tours, early access and early occupancy shall be subject to the following limitations, restrictions and requirements:

(a) such tours shall be conducted at such times and in such areas as the Contractor may reasonably determine, taking into account safety and impact on construction activities;

(b) such tours shall be conducted by employees of the Owner in strict conformance with OSHA requirements and other rules promulgated by Contractor and approved by Owner;

(c) such tours shall be accompanied by a representative of Contractor, if requested by the Contractor; and

(d) such tours shall be permitted only when the Owner has procured insurance providing coverage for such activities.

13.10  MANUFACTURER'S WARRANTIES

13.10.1  The Contractor warrants that all manufacturer's or other warranties on all materials and equipment furnished by the Contractor shall run jointly to Owner and Contractor.

13.10.2  The Contractor warrants that the installation of all materials and equipment shall be in accordance with the manufacturers' requirements or specifications, as applicable, and that the materials and equipment shall function as intended by the manufacturer. The Contractor shall obtain a statement from the manufacturer approving the Contractor's installation of all materials and equipment where required by manufacturer for warranty purposes. If the Owner seeks to enforce a claim based upon a manufacturer's warranty and such manufacturer fails to honor its warranty based, in whole or in part, on a claim of defective installation, the Owner shall be entitled to enforce any claim for defective installation against the Contractor.

HU00007281

13.11  The headings contained in the Contract are inserted only for convenience and reference and are not meant to define, limit or describe the scope or intent of the Contract Documents or in any way to affect the terms and provisions set forth herein.

13.12  If any term or provision of the Contract, or the application thereof to any person or circumstance, shall be invalid or unenforceable to any extent, the remainder of the Contract, or the application of the Contract to persons or circumstances other than those against whom or which such term or provision is invalid or unenforceable, shall not be affected thereby; and each term and provision of the Contract shall be valid and enforceable to the fullest extent permitted by law.

13.13  All matters that relate to the termination or expiration of this Contract, or that in the normal course may not occur or be effectuated until after such termination or expiration, as well as all rights and obligations of the parties pertaining thereto whether or not specifically stated in a particular provision in this Contract, will survive any termination or expiration of this Contract and will be given full force and effect notwithstanding any termination or expiration of this Contract, but such survival will not operate to extend any applicable statute of limitations.

65.     Subparagraph 14.1.1 is amended by deleting "30" and replacing it with "60" in the first line.

66.     Clause .4 of Subparagraph 14.1.1.4 is amended by deleting "upon" and replacing it with "within 30 days of".

67.     Subparagraph 14.1.3 is amended by deleting "including reasonable overhead, profit and damages" and by replacing it with "including reasonable overhead and actual out of pocket third party termination expenses".

68.     Subparagraph 14.1.4 is amended by the addition of "(unless the Work is resumed during such 7 day period)" after "Contract" in the second to last line.

69.     Subparagraph 14.2.2 is amended by deleting ", upon certification by the Architect that sufficient cause exists to justify such action" after "Owner" in the first line.

70.     Subparagraph 14.2.5 is added to read as follows:

14.2.5  It is recognized that if the Contractor is adjudged bankrupt, makes a general assignment for the benefit of creditors, or if a receiver is appointed for the benefit of its creditors on account of the Contractor's insolvency, such circumstance could impair or frustrate the Contractor's performance of this Contract.  Accordingly, the parties to this Contract agree that upon the occurrence of any such event, the Owner shall be entitled to request of the Contractor or its successor in interest adequate assurance of future performance in accordance with the terms and conditions of the Contract Documents and the Contractor shall have seven (7) business days to provide such assurances.  The Contractor's failure to comply with such request shall entitle the Owner to terminate this Contract immediately and to the accompanying rights thereunder (including, without limitation, exercise of the Owner's rights pursuant to Paragraphs 5.3 and 5.4).  The Owner shall be entitled to recover its damages resulting from such termination including, but not limited to, all costs incurred by the Owner in excess of the Contract Sum and, if the Work is not completed by the scheduled date of Substantial Completion, liquidated damages for delay as set forth in the Contract Documents.

71.    Subparagraph 14.4.3 is amended by deletion of ", along with reasonable overhead and profit on the Work not executed".

[SIGNATURES APPEAR ON FOLLOWING PAGE]

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003
24

HU00007283

These Supplemental Conditions are agreed to as of the date first above written in the Standard Form of Agreement.

OWNER:

1000 K, L.L.C.
By: KMI Realty Advisors, Inc.,
    authorized agent

By: _____

DATE:


CONTRACTOR:

HUNT CONSTRUCTION GROUP, IN(

By: _____
    Robert G. Hunt, CEO
DATE: October 6, 2003


Reviewed & Approved by
J. M. Pienknagura

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003

25

HU00007284

EXHIBIT 1 TO SUPPLEMENTAL CONDITIONS

The Specifications

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003

26

HU00007285

Specification list
## Embassy Suites – 1000 K Street,  Washington, DC

Specifications issued as Construction Set – January 27, 2003:

## VOLUME I OF II

TOC      Table of Contents...................................................................5 pages
         Differentiation Checklist (dated June 14, 2002).......................15 pages

## DIVISION 1 - GENERAL REQUIREMENTS

01010    Summary Of Work..........................................................2 pages
01026    Unit Prices ..................................................................1 page
01027    Applications For Payment .................................................4 pages
01035    Modification Procedures....................................................2 pages
01040    Coordination.................................................................3 pages
01050    Field Engineering ...........................................................3 pages
01200    Project Meetings.............................................................4 pages
01300    Submittals ...................................................................6 pages
01400    Quality Control ..............................................................3 pages
01421    Reference Standards and Definition ......................................3 pages
01500    Construction Facilities and Temporary Controls....................9 pages
01600    Materials and Equipment .................................................4 pages
01631    Substitutions ...............................................................3 pages
01700    Contract Closeout ..........................................................4 pages
01740    Warranties ...................................................................2 pages

## DIVISION 2 - SITE CONSTRUCTION

02070    Selective Demolition........................................................5 pages
02110    Site Clearing..................................................................3 pages
02260    Excavation Support and Protection ......................................4 pages
02300    Earthwork ....................................................................13 pages
02511    Hot-Mixed Asphalt Paving.................................................5 pages
02668    Water/Fire Service Piping..................................................6 pages
02720    Sanitary and Public Space Storm Drain System ......................10 pages
02751    Portland Cement Concrete Pavement ...................................14 pages
02764    Pavement Joint Sealants ...................................................6 pages

## DIVISION 3 - CONCRETE

03300    Cast-In-Place Concrete....................................................23 pages
03365    Post-Tensioned Concrete...................................................9 pages
03450    Architectural Precast Concrete - Plant Cast ...........................12 pages
03490    Glass-Fiber-Reinforced Precast Concrete...............................9 pages

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003

HU00007286

03532     Concrete Floor Topping ..................................................................4 pages

## DIVISION 4 - MASONRY

04720     Cast Stone ...........................................................................................6 pages
04810     Unit Masonry ....................................................................................16 pages

## DIVISION 5 - METALS

05120     Structural Steel ..................................................................................7 pages
05400     Cold-Formed Metal Framing ...........................................................9 pages
05500     Metal Fabrications ..........................................................................10 pages
05521     Pipe and Tube Railings ....................................................................8 pages
05530     Gratings .............................................................................................7 pages
05700     Ornamental Metalwork .....................................................................4 pages
05720     Ornamental Handrails And Railings ................................................8 pages

## DIVISION 6 - WOOD AND PLASTICS

06105     Miscellaneous Carpentry ..................................................................5 pages
06402     Interior Architectural Woodwork ...................................................12 pages

## DIVISION 7 - THERMAL AND MOISTURE PROTECTION

07122     Hot Fluid-Applied Waterproofing.....................................................6 pages
07166     Crystalline Waterproofing ................................................................4 pages
07170     Bentonite Waterproofing ..................................................................6 pages
07210     Building Insulation ...........................................................................6 pages
07412     Manufactured Wall Panels.................................................................7 pages
07531     EPDM Single-Ply Membrane Roofing .............................................8 pages
07620     Sheet Metal Flashing And Trim........................................................6 pages
07720     Roof Accessories...............................................................................5 pages
07841     Through Penetration Firestop Systems .............................................7 pages
07920     Joint Sealants...................................................................................12 pages

## DIVISION 8 - DOORS AND WINDOWS

08110     Steel Doors And Frames ...................................................................6 pages
08211     Flush Wood Doors ............................................................................5 pages
08305     Access Doors ....................................................................................4 pages
08331     Overhead Coiling Doors....................................................................6 pages
08410     Aluminum Entrances And Storefronts ..............................................9 pages
08450     All-Glass Entrances ..........................................................................5 pages
08470     Revolving Entrance Doors ...............................................................10 pages
08630     Metal-Framed Skylights ...................................................................8 pages
08711     Door Hardware (Scheduled By Naming Products)..............................28 pages

HU00007287

08800    Glazing..................................................................................13 pages
08920    Glazed Aluminum Curtain Walls.........................................10 pages

## DIVISION 9 – FINISHES

09255    Gypsum Board Assemblies ..................................................15 pages
09265    Gypsum Board Shaft-Wall Assemblies ................................6 pages
09310    Ceramic Tile ......................................................................12 pages
09451    Interior Stone Facing.........................................................11 pages
09511    Acoustical Panel Ceilings ...................................................9 pages
09640    Wood Flooring....................................................................5 pages
09651    Resilient Tile Flooring ........................................................7 pages
09680    Carpet ................................................................................6 pages
09900    Painting..............................................................................21 pages
09950    Wall Coverings ...................................................................4 pages

## DIVISION 10 - SPECIALTIES

10155    Toilet Compartments .........................................................4 pages
10200    Louvers and Vents..............................................................8 pages
10265    Wall Surface Protection Systems.........................................5 pages
10350    Flagpoles ............................................................................3 pages
10425    Signs ..................................................................................5 pages
10505    Metal Lockers .....................................................................6 pages
10520    Fire-Protection Specialties .................................................5 pages
10605    Wire Mesh Partitions ..........................................................4 pages
10651    Operable Panel Partitions...................................................7 pages
10801    Toilet And Bath Accessories................................................4 pages
10991    Swimming Pool Lift .............................................................2 pages

## DIVISION 11 - EQUIPMENT

11160    Loading Dock Equipment ....................................................2 pages
         Food Service Equipment.......................................In Separate Volume

## DIVISION 12 – FURNISHINGS (NOT USED)

## DIVISION 13 - SPECIAL CONSTRUCTION

13052    Swimming Pools..................................................................4 pages
13100    Lightning Protection ..........................................................3 pages
13851    Fire Alarm ..........................................................................14 pages
13915    Fire-suppression System ....................................................14 pages
13921    Electric-drive, Horizontal Fire Pumps .................................9 pages

## DIVISION 14 - CONVEYING SYSTEMS

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003

HU00007288

14210    Electric Traction Elevators ................................................................11 pages
14240    Hydraulic Elevators ......................................................................12 pages
14560    Chutes...........................................................................................4 pages

i.    **VOLUME II OF II**

**DIVISION 15 – MECHANICAL**

15050    Basic Mechanical Materials and Methods ............................................12 pages
15055    Motors ...........................................................................................6 pages
15060    Hangers and Supports ....................................................................9 pages
15071    Mechanical Vibration and Seismic Controls.....................................8 pages
15075    Mechanical Identification................................................................8 pages
15081    Duct Insulation ..............................................................................13 pages
15082    Equipment Insulation .....................................................................9 pages
15083    Pipe Insulation ..............................................................................16 pages
15110    Valves.............................................................................................19 pages
15121    Pipe Expansion Fittings and Loops ..................................................7 pages
15122    Meters and Gages ...........................................................................13 pages
15140    Domestic Water Piping ...................................................................7 pages
15150    Sanitary Waste and Vent Piping.......................................................9 pages
15160    Storm Drainage Piping ...................................................................8 pages
15181    Hydronic Piping .............................................................................12 pages
15185    Hydronic Pumps .............................................................................8 pages
15189    HVAC Water Treatment...................................................................8 pages
15191    Fuel Oil Piping ...............................................................................7 pages
15194    Fuel Gas Piping ..............................................................................8 pages
15410    Plumbing Fixtures ..........................................................................6 pages
15430    Plumbing Specialties .......................................................................11 pages
15481    Compressed-Air Piping...................................................................5 pages
15486    Fuel-Fired, Domestic Water Heaters ...............................................6 pages
15518    Fire-Tube Boilers ...........................................................................9 pages
15550    Breechings, Chimneys, And Stacks..................................................10 pages
15625    Centrifugal Water Chillers...............................................................8 pages
15635    Refrigerant Monitoring And Safety Equipment ................................5 pages
15640    Packaged Cooling Towers ...............................................................7 pages
15710    Heat Exchangers .............................................................................4 pages
15725    Modular Indoor Air-Handling Units................................................10 pages
15752    Humidifiers ....................................................................................3 pages
15761    Air Coils .........................................................................................4 pages
15763    Fan-Coil Units.................................................................................6 pages
15766    Cabinet Unit Heaters.......................................................................5 pages
15767    Propeller Unit Heaters ....................................................................4 pages
15775    Electric Heating Cables...................................................................3 pages

HU00007289

| | | |
|---|---|---|
| 15812 | Fibrous-Glass Ducts | 7 pages |
| 15815 | Metal Ducts | 11 pages |
| 15820 | Duct Accessories | 8 pages |
| 15836 | Axial Fans | 7 pages |
| 15837 | Centrifugal Fans | 7 pages |
| 15838 | Power Ventilators | 13 pages |
| 15845 | Air Terminals | 7 pages |
| 15855 | Diffusers, Registers, And Grilles | 3 pages |
| 15861 | Air Filters | 7 pages |
| 15870 | Commercial Kitchen Hoods | 10 pages |
| 15900 | HVAC Instrumentation And Controls | 21 pages |
| 15990 | Testing, Adjusting, And Balancing | 25 pages |

## DIVISION 16 - ELECTRICAL

| | | |
|---|---|---|
| 16050 | Basic Electrical Materials and Methods | 10 pages |
| 16055 | Overcurrent Protective Device Coordination | 5 pages |
| 16060 | Grounding and Bonding | 7 pages |
| 16075 | Electrical Identification | 5 pages |
| 16080 | Electrical Testing | 2 pages |
| 16120 | Conductors and Cables | 4 pages |
| 16130 | Raceways and Boxes | 7 pages |
| 16140 | Wiring Devices | 4 pages |
| 16145 | Lighting Control Devices | 4 pages |
| 16231 | Packaged Engine Generators | 12 pages |
| 16289 | Transient Voltage Suppression | 4 pages |
| 16410 | Enclosed Switches and Circuit Breakers | 6 pages |
| 16415 | Transfer Switches | 6 pages |
| 16419 | Fused Power Circuit Devices | 3 pages |
| 16420 | Enclosed Controllers | 8 pages |
| 16441 | Switchboards | 8 pages |
| 16442 | Panelboards | 6 pages |
| 16443 | Motor-Control Centers | 7 pages |
| 16450 | Enclosed Bus Assemblies | 4 pages |
| 16461 | Dry-Type Transformers (1000 V and Less) | 5 pages |
| 16491 | Fuses | 3 pages |
| 16511 | Interior Lighting | 6 pages |
| 16521 | Exterior Lighting | 5 pages |

HU00007290

## EXHIBIT 2 TO SUPPLEMENTAL CONDITIONS

The Drawings

HU00007291

Drawing list
**Embassy Suites – 1000 K Street, Washington, DC**

**Drawings issued as Construction Set – January 27, 2003:**

**TRAFFIC:**

TS-01

**UTILITY:**

U-1
U-2

**CIVIL:**

| | | |
|---|---|---|
| C-1 | C-4 | C-7 |
| C-2 | C-5 | C-8 |
| C-3 | C-6 | C-9 |

**ARCHITECTURAL:**

| | | |
|---|---|---|
| A-CVR-1 | | |
| A-CVR-2 | | |
| A-CVR-3 | | |
| A01-01 | A03-03 | A05-06 |
| A01-02 | | A05-07 |
| A01-03 | A04-01 | A05-08 |
| A01-04 | A04-02 | A05-09 |
| A01-05 | A04-03 | A05-10 |
| A01-06 | A04-04 | |
| A01-07 | A04-05 | A06-01 |
| A01-08 | A04-06 | A06-02 |
| | A04-07 | A06-03 |
| A02-01 | A04-08 | |
| A02-02 | | A07-01 |
| A02-03 | A05-01 | A07-02 |
| A02-04 | A05-02 | A07-03 |
| | A05-03 | A07-04 |
| A03-01 | A05-04 | A07-05 |
| A03-02 | A05-05 | A07-06 |

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003

33

|        |        |        |
|--------|--------|--------|
|        |        | A13-01 |
| A08-01 | A11-01 | A13-02 |
| A08-02 | A11-02 | A13-03 |
| A08-03 | A11-03 | A13-04 |
| A08-04 | A11-04 | A13-05 |
|        | A11-05 | A13-06 |
| A09-01 | A11-06 |        |
|        | A11-07 | A14-01 |
| A10-01 | A11-08 |        |
| A10-02 | A11-09 | A15-01 |
| A10-03 | A11-10 | A15-02 |
| A10-04 | A11-11 | A15-03 |
| A10-05 | A11-12 |        |
| A10-06 |        |        |

**INTERIORS:**

|        |        |        |
|--------|--------|--------|
| ID1-01 | ID4-06 | ID6-11 |
| ID1-02 |        | ID6-12 |
| ID1-03 | ID6-01 | ID6-13 |
| ID3-01 | ID6-02 | ID6-14 |
| ID3-02 | ID6-03 | ID6-15 |
| ID3-03 | ID6-04 | ID6-16 |
| ID3-04 | ID6-05 | ID6-17 |
| ID4-01 | ID6-06 | ID6-18 |
| ID4-02 | ID6-07 | ID6-19 |
| ID4-03 | ID6-08 |        |
| ID4-04 | ID6-09 | ID9-01 |
| ID4-05 | ID6-10 | ID9-02 |

**STRUCTURAL:**

|        |        |        |
|--------|--------|--------|
| S0-00  | S1-10  | S3-01  |
| S1-00  | S1-11  | S3-02  |
| S1-01  | S1-12  | S3-03  |
| S1-02  |        | S3-04  |
| S1-03  | S2-01  | S3-05  |
| S1-04  | S2-02  | S3-06  |
| S1-05  | S2-03  | S3-07  |
| S1-06  | S2-04  | S3-08  |
| S1-07  | S2-05  | S3-09  |
| S1-08  | S2-06  |        |
| S1-09  |        |        |

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003
34

HU00007293

## MECHANICAL:

| | | |
|---|---|---|
| H-001 | H-108 | H-301 |
| H-010 | H-109 | H-302 |
| H-011 | H-110 | H-501 |
| H-012 | H-111 | H-601 |
| H-020 | H-201 | H-602 |
| H-021 | H-202 | H-603 |
| H-101 | H-203 | H-701 |
| H-102 | H-204 | H-702 |
| H-103 | H-205 | H-703 |
| H-104 | H-206 | H-704 |
| H-105 | H-207 | H-801 |
| H-106 | H-208 | H-802 |
| H-107 | | |

## PLUMBING:

| | | |
|---|---|---|
| P- 001 | P- 105 | P- 201.D |
| P- 002 | P- 106 | P- 202.A |
| P- 010 | P- 107 | P- 202.B |
| P- 011 | P- 108 | P- 202.C |
| P- 012 | P- 109 | P- 202.D |
| P- 020 | P- 110 | P- 203 |
| P- 021 | P- 111 | P- 204 |
| P- 101 | P- 112 | P- 501 |
| P- 102 | P- 201.A | P- 502 |
| P- 103 | P- 201.B | P- 503 |
| P- 104 | P- 201.C | |

## ELECTRICAL:

| | | |
|---|---|---|
| E-001 | E-210 | E-310 |
| E-200 | E-300 | E-500 |
| E-201 | E-301 | E-501 |
| E-202 | E-302 | 5-502 |
| E-203 | E-303 | E-700 |
| E-204 | E-304 | E-701 |
| E-205 | E-305 | E-702 |
| E-206 | E-306 | E-703 |
| E-207 | E-307 | E-704 |
| E-208 | E-308 | E-705 |
| E-209 | E-309 | E-706 |

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003

HU00007294

E-707          E-801          E-804
E-708          E-802          E-805
E-800          E-803          E-900

**FIRE ALARM:**

FA-001         FA-205         FA-500
FA-200         FA-206         FA-700
FA-201         FA-207         FA-701
FA-202         FA-208         FA-900
FA-203         FA-209
FA-204         FA-210

**FIRE PROTECTION:**

FP-001         FP-101         FP-107
FP-010         FP-102         FP-108
FP-011         FP-103         FP-201
FP-012         FP-104         FP-501
FP-020         FP-105
FP-021         FP-106

**KITCHEN:**

KA-1
KA-2
KA-3
KA-4
KB-1
KB-2
KB-3
KB-4
KC-1
KC-2
KC-3
KC-4
KD-1
KD-2
KD-3
KD-4

HU00007295

## EXHIBIT 3 TO SUPPLEMENTAL CONDITIONS

Contractor's Required Insurance

HU00007296

INSURANCE SPECIFICATIONS

## EMBASSY SUITES / 1000 K, L.L.C. PROJECT

### INSURANCE (LIABILITY)

Before commencing the work hereunder, Contractor shall effect and pay for (as part of the cost of the Work) and shall keep in full force and effect during the entire term hereof, insurance issued by a company satisfactory to Owner, having a Best Rating of A XIV or better and qualified to do business in the District of Columbia, as follows:

A. Commercial general liability and contractors liability policy, providing coverage on an "occurrence" basis and including (i) premises/completed operations, (ii) independent contractors, (iii) broad form contractual liability recognizing this contract, (iv) personal injury, (v) broad form property damage, (vi) completed operations, and (vii) explosion, collapse and underground (XCU) coverage including broad form property damage. Limits of liability shall not be less than:

| | | |
|---|---|---|
| Combined Single Limit of Liability for Bodily Injury and Property Damage | $1,000,000 | Per Occurrence |
| | $2,000,000 | General Aggregate |
| Products/Completed Operations | $1,000,000 | Per Occurrence |
| | $2,000,000 | Annual Aggregate |

Coverage will include:

- Aggregate Limits per Project Endorsement

- Waiver of subrogation in favor of the Owner, Owner's employees, Owner's agents and KMI Realty Advisors, Inc., Farr/Curtis/Walton Ltd. and Brennan Beer Gorman/Architects

- Owner, Owner's employees, Owner's agents and KMI Realty Advisors, Inc., Farr/Curtis/Walton Ltd. and Brennan Beer Gorman/Architect shall be named as an additional insured using Contractors Form B Endorsement (CG2010 Ed. 11-85) or comparable Blanket Additional Insured Endorsement "which includes completed operations coverage".

- Coverage provided to Owner and related entities listed above as additional insured under the contractors liability policy shall apply on a primary and non-contributory basis.

B. Comprehensive automobile liability policy providing coverage for owned, leased or hired, and non-owned automobiles with primary limits of not less than:

HU00007297

Bodily Injury and Property Damage -      $1,000,000 Per Occurrence
Combined Single Limit

Such insurance shall cover any automobiles that are owned, hired, and/or leased
by the Contractor and its employees and agents.

- Owner shall be added as additional insured as their interest might appear.

C. Workers' compensation and occupational disease insurance and such other
employee benefit insurance as required by the laws of the District of Columbia.
Employers liability insurance with limits not less than the following:

> $1,000,000 Per Accident
> $1,000,000 Policy Limit on Disease
> $1,000,000 Per Disease

Policy will include waiver of subrogation on behalf of Owner, Owner's
employees, Owner's agents and KMI Realty Advisors, Inc., Farr/Curtis/Walton
Ltd. and Brennan Beer Gorman/Architects.

D. Umbrella liability policy with limits of liability not less than:

Bodily Injury and Property Damage -          $35,000,000
Combined Single Limit

- Excess and umbrella policies must not provide any less coverage than that
provided by the primary policies for named or additional insureds.

Before commencing any work hereunder, Contractor shall furnish to Owner and
KMI Realty Advisors, Inc. and any other persons designated by Owner certificates
issued by the company or companies issuing such insurance, evidencing that such
insurance is in full force and effect and expressly providing that no such insurance
may be cancelled or changed without at least sixty (60) days written notice by
certified mail, return receipt requested to KMI Realty Advisors, Inc., 30 S. Meridian
Street, Suite 1100, Indianapolis, Indiana 46204, Attention: John Kite, and if
requested by Owner, duplicate policies also shall be furnished. At the request of the
Owner, Contractor also shall promptly cause the Lender and all government
agencies and political subdivisions having any interest in the project or any part
thereof to be named as additional insured parties under all of the aforesaid liability
and casualty insurance policies and shall furnish insurance certificates to them.
Contractor shall not commence or permit any Subcontractor or Sub-Subcontractor
to commence work until each has complied with liability insurance requirements
contained within this exhibit.

### INSURANCE (PROPERTY)

Owner shall at its expense (subject to Contractor's responsibility for deductible
amounts as set forth herein) secure and maintain in full force and effect during the

HU00007298

entire course of the Work and the entire period of construction of the Project, builders risk insurance for a two (2) year term (including Terrorism coverage in amounts acceptable to Owner). Builders risk policy shall be written on an All Risk or Special coverage basis to include flood and earthquake.

Coverage will include the following:

- The definition of property will include:

  a) Inventories/Materials in place or to be used as part of the permanent construction including surplus materials

  b) Shanties or sheds used as workplaces or storing materials for the structures

  c) Fencing

  d) Temporary barricades

  e) Miscellaneous materials and supplies incidental to the work

  f) Scaffolding, staging, towers and equipment which are not owned, rented, leased or borrowed by the contractor, subcontractors or lower tier contractors

  g) Outdoor lighting and lightpoles

  h) Retaining walls and foundation including collapse coverage

- If necessary, amend the valuation clause of the policy to include overhead and profit of the contractor.

- Policy will contain sixty (60) day notice of cancellation except for non payment of premium.

- Increased value clause - Please amend the policy to include increased value of construction clause by approved change orders. If necessary, amend the coinsurance provisions of the policy to reflect this change.

- Named insured for builders risk coverage will include the Owner, Contractor, Subcontractor, Sub-Subcontractor, Materialmen and Suppliers, Lender or Mortgagee all as their interests may appear.

- Deductible - The contractor shall be responsible for the amount of deductible for each loss covered by such builders risk policy. Such policy shall be subject to such a deductible amount of $25,000 per occurrence except with respect to earthquake and flood, for which the deductible amount shall be $100,000.

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003 4:53 PM

40

1475103 v2 \\VA\8023.DOC

HU00007299

- Policy will include coverage for stored materials offsite which would become a permanent part of the project and/or materials in transit.

Proceeds of builders risk insurance shall be payable to Owner, for all interested parties, and Owner shall adjust all losses and claims with the insurer, subject, however, to the rights of any Mortgagee or Lender. Owner shall not be required to post any bond with respect to such insurance proceeds. Such builders risk insurance will not cover any tools owned by mechanics, tools, equipment, scaffolding, staging, towers and forms owned or rented by the Contractor or any temporary construction office or trailer placed or erected by Contracted on the site for its use.

- Owner and Contractor mutually waive all claims against each other for damages to property caused by fire or other casualty arising out of the work performed by Contractor hereunder, to the extent reimbursed or reimbursed by insurance required under this Contract;

The Contractor shall secure a policy insuring the Owner against loss, liability or damage attributable to the presence of molds of all kinds in an amount not less than $5,000,000, said insurance to be on terms and conditions satisfactory to Owner.

HU00007300

# EXHIBIT 4 TO SUPPLEMENTAL CONDITIONS

List of Subcontractors

IUPAT_1000K(SupplementalCo.DOC IUPAT/1000 K (Supplemental Conditions Agreement)
10/3/2003 4:53 PM

42

HU00007301

## EXHIBIT 5 TO SUPPLEMENTAL CONDITIONS

List of Agreements with Adjoining
Property Owners

     1. Tie-Back, Underpinning and Overswing Agreement dated _____, 2002 with Lot 825 Owners.

2. Reciprocal Overswing Agreement dated March 13, 2002 with K-11 LP.

3. Crane Swing Agreement dated January 28, 2002 with BP/CRF 901 New York Avenue, LLC.

HU00007302

## EXHIBIT 6 TO SUPPLEMENTAL CONDITIONS

The Construction Schedule

HU00007303

October 29, 2003
Embassy Suites
Washington, DC
Clarifications and Exclusions

# EXHIBIT VII   CONTRACTOR CLARIFICATIONS & EXCLUSIONS

## EMBASSY SUITES HOTEL

### GENERAL CONDITIONS

1.  We have excluded any cost for a construction dewatering discharge permit.

1.2  Hunt has endeavored to conform to the LSDBE requirements, with the current proposal amount including a 35% LSDBE commitment. To further clarify, this LSDBE commitment is to be 35% of $46,730,841.

1.3  There is no deep well dewatering specification. Hunt has included an allowance of $70,000 for deep well dewatering. We have excluded any fees which may be required by the city to dump ground water from our construction dewatering operation into city sewer

### DIVISION 1

1.1  The 23-month schedule of this project is intended to culminate with turnover to the owner and/or building operator.

### DIVISION 2

2.1  The differentiation checklist notes that exterior water and sewer work is by public utilities. We have included this work in the current proposal amount as denoted.

2.2  The electrical vault covers are included (they are "by others" as noted on the drawings -- refer to S1-06 and 13/S3-06). $35,000 has been included to cover the costs of the electrical vault covers in the Hunt's Contract value

2.3  There is no landscaping included in the current proposal amount. There are neither tree grates nor associated steel framing included in the current proposal amount.

### DIVISION 8

8.1  We have carried WD-1 (Cherry) Veneer on typical guestroom doors. Exceptions to this are typical guestroom doors not visible from the Lobby Atrium area, which will be paint grade typical throughout.

8.2  In accordance with the differentiation checklist framed mirrors in the public areas and guestrooms are not included.

HU00007304

8.3    An allowance of $25 per-square-foot is included for interior art glass material in the following quantities: 239 SF of Type GL-1, 146 SF type GL-2, and 14 SF for type GL-3 as shown on the contract documents.

## DIVISION 14

14.1    Not all specified linen chute suppliers provide operated pedals. The contract amount does not include foot-operated pedals.

## DIVISION 15

15.1    The contract amount includes a permanent building dewatering system in the form of an underslab drainage system based on typical section and parallel drains running east/west at 40'-0" O.C. Also, as per instruction, behind wall drainage panels (as shown on details 1, 2 & 3/A11-01) are not in the contract amount.

15.2    Plumbing fixtures and trim types are based on the information given in the plumbing drawings and not the interior design drawings and notes.

15.3    We do not include intrusion detection system, central clock system or lighting control system. An allowance of $40,000 for intrusion detection is included in the current proposal amount.
- We include all dimming devices shown on the documents.
- We understand that a central clock is not required.

15.4    We do not include 2-year warranties as indicated in the contract under clarification to the general conditions item 64. Standard 1 Year warranty is included. Where the specifications specifically require an extended warranty (such as roofing and certain equipment items) they are included as well.

15.5    The fire pump provided is conventional installation and not a factory pre-piped skidded unit.

15.6    All utility fees, impact fees and assessment fees shall be paid for by the developer and are NIC. We agree that we include licenses and fees for Hunt and its subcontractors to do business in Washington, D.C.

15.7    Fire Protection Systems based on local fire code and NFPA 13, not IRI or FM.

15.8    The contract amount is based on the Sovent system. The plumbing drawings need to be revised to reflect this.

HU00007305

October 29, 2003
Embassy Suites
Washington, DC
Clarifications and Exclusions

15.9    The HVAC drawings still need to be revised to include an increased quantity of smaller toilet exhaust fans, with fire dampers at the Mech. Penthouse deck - in lieu of the currently shown lesser quantity of bigger exhaust fans and fire wrapping all the toilet exhaust ductwork in the Mech. Penthouse.

## DIVISION 16

16.1    Providing equipment devices for A/V, TV, telephone, computer, security systems, and all associated cabling are specifically excluded. Rough-in raceways are furnished where shown on the drawings.

16.2    Fire ratings of rated walls will be maintained in accordance to code.

16.3    200 percent Neutrals have been excluded, as they are not shown on panel board schedules and feeder 1-line diagrams. Neutrals will be installed per code.

16.4    TV service entrance conduits are not included, as they are not shown. The conduits detailed on E-302 are included.

16.5    Vehicle detection loop and hardware are excluded. A $3,000 allowance is included in the current proposal amount for Hunt to provide in-slab sensor wire at exit to garage.

16.6    Sound testing to determine STC rating of walls is not included.

16.7    An allowance of $116,000 total for exterior architectural lighting fixture types EX-1 ($5,000/fixture x 4 each) and EX-2 ($3,000/fixture x 32 each) is included in the contract amount. Power for these fixtures are included separately from this allowance.

7.16    Applicability of Davis-Bacon Act.    Notwithstanding any other provision of this Agreement, the provisions of the Davis-Bacon Act, 40 U.S.C. § 276(a), and the Service Contract Act, 41 U.S.C. § 351(a) (the "Acts"), shall be applicable to the initial construction of the Project in the following manner:    All Persons who are employed by Owner, General Contractor, construction manager or any other contractor or subcontractor of Owner or construction manager in the initial construction of the Project shall be paid, without subsequent deduction or rebate unless expressly authorized by Requirements, not less than the relevant prevailing wage as prescribed by such Acts during the time that such Persons are working on the initial construction of the Project, but only with respect to their work on the initial construction of the Project, but the provisions of the Acts shall not apply to any construction or repair work performed subsequent to the Opening Date.    For purposes of this Agreement "the relevant prevailing wage as prescribed by such Acts during the time that such Persons are working on the initial construction of the Project" shall be deemed to be the relevant prevailing wage determined as of the date of this Agreement, provided, however, that in the event the Project shall not have been completed prior to the Completion Deadline the "relevant prevailing wage" applicable thereafter, to the extent required under this Agreement, shall be the then-current wages as determined from time to time in accordance with the Acts.

7.17    Designated Representatives.

(a)    The District hereby designates the Chief Financial Officer and the Deputy Mayor (or their respective designees, who shall in each instance be a named individual), acting together and not individually, to be its designated representative for purposes of contact between the District and the Owner in connection with the design and construction of the Project in accordance with this Article VII (collectively, the "District Representative"). The District shall have the right, by timely written notice to the Owner, to remove the District Representative and to appoint another or additional individual(s) to act as the District Representative. The District agrees that the District Representative shall have the authority to bind the District with respect to all matters for which the consent or approval of the District is required or permitted pursuant to this Agreement and that all consents, approvals and waivers given in writing by both individuals constituting the District Representative shall bind the District and may be relied upon by the Owner.

(b)    The Owner hereby designates Jeff Lynch to be its designated representative for purposes of contact between the District and the Owner in connection with the design and construction of the Project in accordance with this Article VII, including without limitation, the giving of notices and approvals pursuant to this Article VII (the "Owner's Representative"). Owner shall have the right, by timely written notice to the District to remove the Owner's Representative and to appoint another or additional individual to act as Owner's Representative.    The Owner agrees that the Owner's Representative shall have the authority to bind the Owner with respect to all matters for which the consent or approval of the Owner is required or permitted pursuant to this Agreement and that all consents, approvals and waivers given in writing by the Owner's Representative shall bind the Owner and may be relied upon by the District.

ARTICLE VIII

55

HU00007377