



Job No. 5003
Subcontract No. 09451
Bid No. 69
B/A No. 002
Vendor No. 15318

# SUBCONTRACT AGREEMENT

## Index

## Subcontractor:    The Pool and Kent Corporation

| | |
|---|---|
| SECTION 1 | Definitions |
| SECTION 2 | Contract Documents |
| SECTION 3 | The Work |
| SECTION 4 | Subcontract Price |
| SECTION 5 | Payment |
| SECTION 6 | Contract Deliverables |
| SECTION 7 | Bonding of Subcontractor |
| SECTION 8 | Insurance Requirements |
| SECTION 9 | Schedule and Coordination |
| SECTION 10 | Delays and Extensions of Time |
| SECTION 11 | Subcontractor's Project Staff |
| SECTION 12 | Shop Drawings |
| SECTION 13 | Contiguous Work |
| SECTION 14 | Dimensions |
| SECTION 15 | Freight Charges and Shipments |
| SECTION 16 | Cleaning |
| SECTION 17 | Hunt-Furnished Equipment, Labor or Materials |
| SECTION 18 | Changes to the Work |
| SECTION 19 | Risk of Loss and Title |
| SECTION 20 | Mechanic's Liens or Claims |
| SECTION 21 | Subcontractor Claims |
| SECTION 22 | Compliance with Law and Permits |
| SECTION 23 | Labor Relations |
| SECTION 24 | Equal Employment Opportunity, Affirmative Action and ADA |
| SECTION 25 | Safety |
| SECTION 26 | Hazardous and Other Regulated Substances |
| SECTION 27 | Authorized Representatives and Notices |
| SECTION 28 | Inspection and Defective Work |
| SECTION 29 | Guarantee |
| SECTION 30 | Termination for Cause |
| SECTION 31 | Termination for Convenience |
| SECTION 32 | Damages for Delay |
| SECTION 33 | Indemnification |
| SECTION 34 | Choice of Law and Dispute Resolution |
| SECTION 35 | Miscellaneous Provisions |
| SECTION 36 | Acknowledgement of Review of Subcontract |

| | |
|---|---|
| ATTACHMENT I | AUTHORIZED REPRESENTATIVES |
| ATTACHMENT II | SUBCONTRACTOR'S SCOPE OF WORK |
| ATTACHMENT III | CONTRACT DOCUMENTS |
| ATTACHMENT IV | MODIFICATIONS AND ADDITIONS TO SUBCONTRACT |
| ATTACHMENT V | INSURANCE REQUIREMENTS |
| ATTACHMENT VI | BOND REQUIREMENTS |
| ATTACHMENT VII | LEIN |

STANDARD SUBCONTRACT AGREEMENT SHRASTRON HCG 07/07/00

## SUBCONTRACT AGREEMENT

This Subcontract Agreement ("Subcontract") is made as of the <u>19th</u> day of <u>November, 2003</u> by and between Hunt Construction Group, Inc., an Indiana Corporation ("Hunt"), and <u>The Poole and Kent Corporation</u> ("Subcontractor").

### WITNESSETH THAT:

Hunt and Subcontractor expressly desire to contract with respect to a specific portion of the work for the construction project hereinafter described.

NOW THEREFORE, in consideration of the mutual promises contained herein and intending to be legally bound, Hunt and Subcontractor agree as follows:

### SECTION 1
### Definitions

| | | |
|---|---|---|
| 1.1 | Project: | Embassy Suites Hotel<br>1000K Street, NW, Washington, DC |
| 1.2 | The Owner: | 1000K, LLC<br>1750 New York Ave., NW<br>Suite 501<br>Washington, DC 20005 |
| 1.3 | The Designer: | Brennan Beer Gorman Monk<br>Architects/Interiors P.L.L.C.<br>1030 15th St., NW Suite 900<br>Washington, DC 20009 |
| 1.4 | Hunt: | Hunt Construction Group, Inc.<br>214 Carnegie Center, Suite 103<br>Princeton, NJ 08540 |
| 1.5 | The Subcontractor: | The Poole and Kent Corporation<br>An EMCOR Company<br>4530 Hollins Ferry Road<br>Baltimore, Maryland, 21227 |
| 1.6 | The Subcontract Price: | $9,400,000 |

STANDARD SUBCONTRACT AGREEMENT SUBK FRM RV HCG 07/07/00

HU00024171

## SECTION 2
### Contract Documents

2 1    **Enumeration of the Contract Documents:** The plans, specifications, general conditions, special conditions and addenda prepared by the Owner and/or Designer for the Project and the general contract between the Owner and Hunt dated October 1, 2003 (the "General Contract"), together with all Change Orders and modifications thereto through the date of this Subcontract, are available for examination by the Subcontractor at all reasonable times at Hunt's office. All of the aforesaid documents, (and any amendments thereto), which are more specifically described and enumerated in Attachment III are hereinafter referred to collectively as the "Contract Documents."

2.2    **Contract Documents to be Complementary:** This Subcontract and the Contract Documents are intended to supplement and complement each other and shall, where possible, be so interpreted. However, if any provision of this Subcontract irreconcilably conflicts with a provision of the Contract Documents, the provision granting greater rights or remedies to Hunt, or imposing the greater duty, standard, responsibility or obligation on the Subcontractor shall govern

2.3    **Documents Incorporated by Reference:** Attachment I (Authorized Representatives); Attachment II (Subcontractor's Scope of Work); Attachment III (Contract Documents); Attachment IV (Modifications and Additions to Subcontract); Attachment V (Insurance Requirements); and Attachment VI (Bond Requirements), are incorporated into this Subcontract by this reference. Subcontractor is bound thereby as if the text of these documents were written verbatim into this Subcontract.

## SECTION 3
### Scope of Subcontractor's Work and Subcontractor's
### Representations as to the Contract Documents and the Jobsite

3.1    **Subcontractor's Work:** Subcontractor, as an independent contractor, shall perform the Work specified in Attachments I through VI in strict accordance with this Subcontract, the Contract Documents, the Project Schedule and all applicable laws.

3 2    **Scope of Work:** The scope of Subcontractor's Work includes, without limitation, all materials, labor, supervision, services, inspection, testing, tools, equipment, supplies, fuel, transportation, installation, temporary facilities, clean up and all items or services of any kind whatsoever necessary to fully perform and complete Subcontractor's Work. Subcontractor shall pay for all costs of the performance of all its obligations under this Subcontract, even if those costs exceed the Subcontract Price

3.3    **Performance Specifications:** If the Contract Documents applicable to Subcontractor's Work contain Performance Specifications, then Subcontractor agrees and represents that:

(a)    The performance requirements are achievable by Subcontractor;

(b)    The Subcontract Price includes the cost of all design services related to or required for achievement of the Performance Specifications;

(c)    Unless Hunt otherwise agrees, all design services shall be performed by qualified and licensed architects, engineers and other professionals ("Design Professional(s)") selected and paid by Subcontractor. Subcontractor shall:

STANDARD SUBCONTRACT AGREEMENT SUB6 FINAL ICG 07/07/03

HU00024172




(1)    submit the names and qualifications of each proposed Design Professional;

(2)    make no substitution of any Design Professional without the prior written consent of Hunt; and

(3)    in case of termination of any Design Professional, Subcontractor shall provide the services of another lawfully licensed Design Professional against whom Hunt makes no reasonable objection.

(d)    Unless Hunt otherwise agrees, Subcontractor's Design Professional(s) shall maintain Errors and Omissions or professional liability insurance in amounts and upon terms and conditions as set forth in Attachment V with respect to any design services provided by or through Subcontractor. Such insurance shall not limit or restrict Subcontractor's obligations to Hunt under Section 33.

3.4    **Effect of Contract Documents on Obligations, Liabilities and Claims:** Subcontractor agrees that as to Subcontractor's Work:

(a)    Subcontractor owes to Hunt the same obligations that Hunt owes to the Owner or any third party under the Contract Documents;

(b)    Subcontractor shall be liable to Hunt to the same extent that Hunt is liable to the Owner or any third party under the Contract Documents;

(c)    Subcontractor's rights to make claims arising out of force majeure events or acts or omissions of the Owner and/or persons or entities for whom the Owner is responsible are limited to the same extent that Hunt's rights to make such claims are limited by the Contract Documents.

(d)    Subcontractor's right to recover damages arising out of force majeure events or acts or omissions of the Owner and/or persons or entities for whom the Owner is responsible is limited to the same extent that Hunt's right to recover such damages is limited by the Contract Documents; and

(e)    The terms and provisions of this Subcontract relating to Subcontractor's Work are in addition to and not in substitution of any of the terms and conditions of the Contract Documents

3.5    **Familiarity With Jobsite Conditions:** Subcontractor represents that it has:

(a)    carefully examined this Subcontract and the Contract Documents and understands their respective provisions;

(b)    visited the jobsite;

(c)    investigated and satisfied itself with respect to:

(1)    the nature and locality where Subcontractor's Work is to be performed and the conditions and difficulties to be encountered, including access thereto;

3

STANDARD SUBCONTRACT AGREEMENT SUBR.FRANWN JLG 07/07/03

HU00024173

(2)  the conformation and condition of the soil together with the character, quality and quantity of subsurface and surface materials or obstacles to be encountered insofar as this information is reasonably ascertainable from this Subcontract, the Contract Documents, an inspection of the Project Site or the results of any exploratory work conducted by Owner or its representatives which are included in the Contract Documents;

(3)  the availability of water, electricity or other utilities and access thereto;

(4)  the type of equipment and facilities needed preliminary to and during performance of the Work;

(5)  the type and content of purchase orders and arrangements for materials, supplies and equipment, if any, to be furnished by Hunt for Subcontractor's use;

(6)  the conditions affecting transportation, disposal, handling and storage of materials, supplies and equipment;

(7)  the availability and adequacy of personnel and workers and the prevailing wage scales and, when required, union scales, benefits and working conditions, craft jurisdictions, craft area practices and existing collective bargaining agreements including any signed by or on behalf of Hunt;

(8)  prevailing weather and climatological conditions as well as uncertainties of weather, river stages, tides or similar physical conditions at the jobsite;

(9)  all laws applicable to the Work or Subcontractor;

(10)  any other factor(s) which may affect Subcontractor's Work under this Subcontract; and

(d)  correlated its observations with the requirements of this Subcontract and the Contract Documents.

3.6  **Reliance by Subcontractor on Own Investigation:** Subcontractor has entered into this Subcontract on the basis of its own examination, investigation and evaluation of the matters set forth in Section 3.5, and is not relying upon any representations of Hunt, the Owner, the Designer or any of their respective agents or employees except to the extent such representations are expressly stated in this Subcontract or the Contract Documents. Failure or refusal to properly consider and evaluate the factors set forth in Section 3.5 shall not relieve Subcontractor from its responsibility for properly estimating the difficulty, cost and expense of successfully performing its Work.

3.7  **No Claims for Failure to Comply:** Neither Hunt nor the Owner shall be liable to Subcontractor for any claim for an adjustment to the Subcontract Price or an extension of time if such claim directly or indirectly arises from Subcontractor's failure or refusal to investigate or familiarize itself with the conditions under which this Subcontract is to be performed, including without limitation, all factors set forth in Section 3.5, or from any misunderstanding thereof by Subcontractor.

HU00024174

3.8   Design Deficiencies: Subcontractor shall give Hunt prompt written notice of any condition or omission in the Contract Documents which Subcontractor believes is or may be a design error or deficiency.

3.9   Subcontractor's Representations as to Competency and Experience: Subcontractor hereby represents and warrants that Subcontractor is experienced in performing the type, quality and quantity of work required for performance of this Subcontract, is financially solvent with sufficient capital and has sufficient management, supervision and labor capacity to properly perform this Subcontract

SECTION 4
Subcontract Price

4.1   Subcontract Price:     The sum to be paid by Hunt out of funds received from the Owner to the Subcontractor for the satisfactory performance and completion of the Work, and of all the duties, obligations and responsibilities of the Subcontractor under this Subcontract, and the other Contract Documents (the "Subcontract Price") shall be subject to additions and deductions as herein provided  The Subcontract Price is set forth in Section 1.6.

4.2   Risk of Non-Payment by Owner: Receipt of payment by Hunt from the Owner is a condition precedent:

   (a)   to the right of Subcontractor to receive payment from Hunt, unless the failure to have received payment from the Owner shall have been caused solely by the fault of Hunt; and

   (b)   to the Subcontractor's right to make any claim against Hunt's payment bond, if a payment bond is posted for the Project.

4.3   Taxes Included in Subcontract Price: The Subcontract Price includes all Federal, State, County, Municipal, Local and other taxes imposed by law and based upon labor, services, materials, equipment or other items acquired, performed, furnished or used for, or in connection with the Work, including, but not limited to, sales, use and personal property taxes payable by, or levied or assessed against the Owner, Hunt or the Subcontractor.  Where the law requires any such taxes to be stated and charged separately, the total price of all items included in the Work plus the amount of such taxes shall not exceed the Subcontract Price.

4.4   Subcontract Price as Full Payment: Subcontractor accepts the Subcontract Price as full and complete payment for Subcontractor's Work.  The Subcontract Price includes Subcontractor's profit, overhead and all of Subcontractor's cost of performing Subcontractor's Work.

4.5   Subcontract Price Not Based on "Or Equal" Materials: Subcontractor represents that it has based the Subcontract Price on the exact materials specified in the Contract Documents.  The Subcontract Price is not contingent upon approval by Hunt, the Owner or the Designer of any submission by Subcontractor of substitute "or equal" materials.  Any proposed change of materials after execution of this Subcontract will be governed by any applicable provisions of the Contract Documents.

5

STANDARD SUBCONTRACT AGREEMENT SUBKT BANNH JCG 07/07/00

HU00024175

## SECTION 5
### Payment

5.1    Schedule of Values:  Within ten (10) days after a request by Hunt or the execution of this Subcontract, whichever comes first, Subcontractor shall submit to Hunt in writing, a complete and accurate proposed schedule of values for all of Subcontractor's Work (the "Schedule of Values") The proposed Schedule of Values shall:

(a)    subdivide the Work into its component parts in such detail and with such supporting evidence as Hunt may direct; and

(b)    include all quantities, prices and unit prices for each of the component parts comprising the Subcontract Price and any other information or documents Hunt reasonably may require.

Unless otherwise directed by Hunt, each allocation to a component part of the Work shall include the proportionate share of Subcontractor's overhead and profit.  The total of the Schedule of Values must equal the Subcontract Price.  The proposed Schedule of Values must be acceptable to Hunt as to form and substance  In applying for payment, Subcontractor shall submit all of its progress payment applications based upon the approved Schedule of Values unless it is found to be in error or in conflict with the procedures or determinations of Hunt, the Owner or the Designer regarding payments.  If, at any time during the performance of the Work, the Schedule of Values is found to be in error, or otherwise unsatisfactory to Hunt, the Owner or the Designer, Subcontractor shall immediately revise and resubmit to Hunt a revised Schedule of Values, correcting all errors or conflicts.  No progress payment will be made to Subcontractor until the Subcontractor's Schedule of Values is approved by Hunt, the Owner and the Designer and Subcontractor has delivered to Hunt: (i) all contract deliverables as required by Section 6.1, (ii) any bonds required by Section 7, (iii) the Certificates of Insurance required by Section 8 and (iv) the information relating to Schedule and the reports and other information required by Section 9.

5.2    Progress Payment Applications:  As directed by Hunt, Subcontractor shall submit to Hunt itemized progress payment applications on forms approved by Hunt.  Subcontractor understands that its progress payment applications will be used in Hunt's Applications for Payment to the Owner Each progress payment application shall show the estimated value of work completed for each component part of Subcontractor's approved Schedule of Values including executed Change Orders, the amount of all previous payments and the amount of current retainage.

(a)    Progress payment applications shall have attached:

(1)    with the first monthly progress payment application only, a fully-executed Certificate Designating Authorized Signature (Contractor Form SF 310);

(2)    sworn statements and lien waivers from Subcontractor to a specified date, valid under the Mechanics Lien laws of the state where the Project is located and conforming to the requirements of Hunt, the Owner, the Designer and any construction lender or title insurance company;

(3)    from lower-tier sub-subcontractors and material suppliers, such invoices, supporting data, sworn statements and waivers of lien as Hunt, the Owner, the Designer and any construction lender or title insurance company may require confirming that:

6                    STANDARD SUBCONTRACT AGREEMENT SUBA.FRAME ICG 07/17/03

HU00024176

(i)    all monies due such persons are known and paid;

(ii)   any liens or claims for its work to date are waived and released; and

(iii)  as to Subcontractor's Work the Project is lien-free;

(4)   from suppliers of fixtures and equipment, disclaimers of any purchase money security interest and evidence that all fixtures and equipment are and will remain free of security interests of any kind;

(5)   supplementary statements advising Hunt of any change in information previously furnished by Subcontractor, and, if requested, a sworn statement that no changes have occurred since the last statement furnished;

(6)   a fully-executed, current Monthly Statement of Subcontractor to Hunt and a fully-executed Affidavit and Partial Waiver of Claims and Liens and Release of Rights, on forms acceptable to Hunt, reflecting all previous progress payments;

(7)   such other documents as may from time to time be required by Hunt, the Owner, the Designer, Surety and any construction lender or title company.

(b)   The application for Final Payment shall have attached:

(1)   a fully-executed, current Monthly Statement of Subcontractor to Hunt (Contractor Form SF 320), a fully-executed previous progress payment Affidavit and Final Waiver of Claims and Liens and Release of Rights (Contractor Form SF 340);

(2)   if required by Hunt, similar statements, affidavits and waivers for all sub-subcontractors and material suppliers on forms furnished by Hunt; and

(3)   such other documents as may be required by Hunt, the Owner, the Designer and any construction lender or title company.

5 3    Evidence of Lien, Claim or Damage:

(a)   If there is evidence of any lien or claim arising from Subcontractor's Work for which Hunt or Owner might become liable; or, if Subcontractor causes damage to the work of others, Hunt may retain out of any payment then due or to become due Subcontractor, an amount sufficient to indemnify Hunt and the Owner for any loss or damage either may sustain in discharging such liens, claims or damage, including reasonable attorneys' fees and disbursements

(b)   If such liens, claims or damage arise after Final Payment, or if the amount due Subcontractor is insufficient to indemnify and hold harmless Hunt and the Owner, then Subcontractor, within ten (10) days of written demand by Hunt, shall reimburse Hunt for all costs that Hunt and/or the Owner have incurred or paid in discharging such lien or claim, including reasonable attorneys' fees and disbursements.

7    STANDARD SUBCONTRACT AGREEMENT SUBKTRSRWHICG 07/07/00

HU00024177

5.4    Disbursement of Subcontract Price:

(a)    Disbursement of the Subcontract Price shall be limited to an amount calculated by either of the following methods:

(1)    The Percentage of Completion Method, calculated as follows:

(i)    Determine the percentage of completion attained for each component part of Subcontractor's Schedule of Values.

(ii)    Multiply the percentage of completion for each component part of the Schedule of Values by the sum allocated to that component part.

(iii)    Add together the computed amounts for all component parts on the Schedule of Values as determined in Subsection 5.4(a)(1)(ii).

(2)    The Cost to Complete Method, calculated as follows:

(i)    Determine the cost to provide all uncompleted Work for each component part of Subcontractor's Schedule of Values.

(ii)    From the scheduled amount for each component part of Subcontractor's Schedule of Values, subtract the cost to provide all uncompleted Work for that component part. The amount remaining for each component part of Subcontractor's Schedule of Values is the computed amount for that component part.

(iii)    Add together the computed amounts for all component parts of the Schedule of Values.

After applying the above methods, subtract the amounts already paid and retainage. In no event will disbursements to Subcontractor exceed the Subcontract Price.

(b)    For each payment application, Hunt, at its sole option, shall select the formula for disbursement. Hunt will review Subcontractor's determination of the percentage of completion attained and/or cost to provide all uncompleted work on each payment application. Hunt shall have the right to disapprove the percentage of completion attained and cost to provide all uncompleted work for each component part of the Subcontractor's Work listed on each payment application. Hunt's forwarding of Subcontractor's payment application to the Owner or Designer for payment shall not constitute final or conclusive approval of the percentage of completion attained and/or cost to provide all uncompleted work set forth in the application.

(c)    "Percentage of Completion," as used herein, if permitted by the Contract Documents and at Hunt's sole option, may include materials stored off-site intended to be incorporated into Subcontractor's Work. If Hunt allows payment for materials stored off-site, Hunt may require from Subcontractor additional documentation, additional insurance, additional retainage or additional security. Subcontractor shall bear all costs and all risk of loss with respect to materials stored off-site, including any loss arising from delivery or transport.

8

STANDARD SUBCONTRACT AGREEMENT SUBKITMHWH3G 07/07C

HU00024178

(d)     Before the first disbursement of the Subcontract Price, and from time to time thereafter, Hunt may require all of Subcontractor's sub-subcontractors and material suppliers to provide signed verifications confirming the accuracy of the amount of their respective contracts, the amounts paid to date and any amounts owed. In the event of any material discrepancy, Hunt shall require the discrepancy be resolved prior to payment.

(e)     Hunt, the Owner or the Designer may, at their option, employ a consultant to assist in determining whether Subcontractor's assessment of the percentage of completion attained for each component part of Subcontractor's Schedule of Values or cost to provide all uncompleted work for each component part of Subcontractor's Schedule of Values is accurate. Subcontractor shall cooperate with any such consultant.

5.5    **Payment:** Subject to the provisions of this Subcontract, and any other right of Hunt to withhold payment, Hunt shall pay to Subcontractor, after receipt from the Owner, any amount received from Owner allocable to the Subcontract Price.

5 6    **Backcharges:** Hunt may deduct from any payment due Subcontractor, any costs incurred by Hunt which are chargeable to Subcontractor.

5 7    **Retainage:** Retainage equal to ten percent (10%) of the dollar value of all Work completed to the satisfaction of the Owner, Hunt and the Designer shall be withheld from each progress payment. Should the Contract Documents provide for a reduction of retainage, the reduction will be made only if: (i) backcharges between Hunt and Subcontractor have been resolved, (ii) Subcontractor's Work is on schedule and in conformance with this Subcontract, the Contract Documents and all applicable laws; (iii) Subcontractor has waived any and all claims for direct and/or indirect additional costs not contained in approved Change Orders to the date of the retainage reduction, and released all lien claims associated with the Work; (iv) Subcontractor has paid its sub-subcontractors and suppliers on a current basis and there are no sums due and owing its sub-subcontractors except on a current basis; (v) the Project remains free of liens by Subcontractor or anyone under contract to Subcontractor; (vi) Hunt has no good faith reason to believe that Subcontractor is involved in any dispute which may result in claims against the Project; and (vii) Owner's consent is granted. The continuing reduction of retainage will be subject to Subcontractor's conformance with these conditions with each application for payment. Notwithstanding anything herein to the contrary, any reduction in retainage shall be at Hunt's sole discretion and Hunt shall not be obligated to reduce the retainage.

5.8    **Subcontract to Remain in Balance:** At all times, the Subcontract Price shall remain in balance with the cost of Work remaining to be completed. "In balance" means the undistributed proceeds of Subcontract Price, including retainage, equal or exceed the amount necessary to pay for Work already completed but unpaid and all Work yet to be completed. If such undistributed proceeds, at any time, become insufficient for such purpose, regardless of how such insufficiency occurs, Subcontractor will continue its Work and any further payments of the Subcontract Price shall be suspended or withheld by Hunt until the Subcontract Price is in balance with the cost of the Work remaining to be completed.

5.9    **Final Payment:** Final Payment, consisting of the unpaid balance of the Subcontract Price, shall be made only after all of the following events have occurred:

STANDARD SUBCONTRACT AGREEMENT SUB: FROM 4HOG 07/07/00

HU00024179

(a)     Final Completion of Subcontractor's Work as Final Completion is defined by the Contract Documents and in strict conformance with this Subcontract,

(b)     acceptance of Subcontractor's Work by Hunt, the Owner and the Designer;

(c)     satisfactory evidence that Subcontractor has paid in full all persons furnishing labor or materials in connection with Subcontractor's Work;

(d)     satisfactory evidence that neither Subcontractor nor any person claiming under or through Subcontractor has filed or has the right to file a lien or claim against the Owner, Hunt, Hunt's surety, if any, or the premises on which the Project is located;

(e)     delivery of all guarantees, warranties, maintenance bonds, instruction manuals, test reports, performance charts, diagrams, as-built drawings, keys and similar items required by the Contract Documents or this Subcontract with respect to Subcontractor's Work;

(f)     execution and delivery by the Subcontractor, in a form acceptable to Hunt, of a General Release and Waiver of Claims running in favor of Hunt and the Owner; and

(g)     Final Payment by Owner to Hunt for Subcontractor's Work. Final Payment by the Owner to Hunt shall be an express condition precedent to Hunt's duty to make Final Payment to the Subcontractor.

5.10    **Use of Payments by Subcontractor:** Subcontractor shall use the sums paid to it pursuant to this Subcontract solely for the purpose of fulfilling its responsibilities and obligations under this Subcontract. Any and all funds paid to Subcontractor hereunder constitute trust funds in the hands of Subcontractor to be applied, before application to any other purpose, to the payment of the following costs incurred by Subcontractor pursuant to this Subcontract:

(a)     sub-subcontractors, laborers, suppliers, materialmen or other persons employed by Subcontractor;

(b)     utilities furnished and taxes imposed;

(c)     premiums on surety bonds, other bonds and insurance required by the Attachments to this Subcontract;

(d)     any indemnity obligations of Subcontractor;

(e)     union or association dues, assessments and fringe benefits; and

(f)     all other costs of Subcontractor's performance of its responsibilities and obligations under this Subcontract.

5.11    **Joint Checks and Direct Payment:** At Hunt's sole discretion, payments may be made by check payable jointly to Subcontractor and its creditors. If Subcontractor fails to promptly pay, when due, for any labor, fringe benefits, services, materials or equipment furnished in connection with the performance of its Work, or fails to make other payments required by the Subcontract, Hunt, after three (3) days' written notice to Subcontractor, may make such payments directly to the subject

STANDARD SUBCONTRACT AGREEMENT SUBA.MMNMHOG 07/07

HU00024180

creditor and recover the amount thereof from Subcontractor directly, or deduct such payments from the Subcontract Price.

5.12    **Advancement of Payments:** Hunt, in its sole discretion, may advance the date of any payment, including Final Payment.

5.13    **Additional Rights of Hunt to Withhold Payment:** In addition to any other rights of Hunt to withhold payment, Hunt may reduce or withhold payment from Subcontractor for the same reasons and under the same circumstances that Owner may withhold payment under the Contract Documents between Hunt and the Owner, whether or not the Owner had reduced or withheld Hunt's payment.

5.14    **Payment not Evidence of Performance:** No payment for Subcontractor's Work shall be conclusive evidence of satisfactory performance or completion of the Work, either in whole or in part, and no payment, including Final Payment shall be construed as an acceptance of defective or faulty or improper Work or materials, nor shall it release Subcontractor from any of its obligations under this Subcontract, nor shall entrance upon or use of the Project by the Owner constitute acceptance of defective or faulty or improper Work.

SECTION 6
Contract Deliverables

6.1    **Contract Deliverables and Updating Thereof:** Contemporaneously with the execution of this Subcontract, Subcontractor shall provide and deliver to Hunt the following contract deliverable items which Subcontractor certifies to Hunt as being currently true, accurate and correct with no material changes:

(a)    A copy of its contractor's license, if required;

(b)    A copy of its Sales Tax Registration Certificate;

(c)    A copy of its payment and performance bonds, if required;

(d)    A list of all tiers of sub-subcontractors and suppliers (including their addresses and the amounts due or to become due them), said list shall be updated with each Progress Payment Application showing all additions, deletions and substitutions to such list, the contract deliverables for each new sub-subcontractor, supplier of any tier, and revised amounts due or to become due;

(e)    A copy of any certificate of qualification required by the Contract Documents or applicable law or regulation, including but not limited to certification as a Minority Business Enterprise or other status requiring certification;

(f)    The list of Project staff required by Section 11.2; and

(g)    All other information required by this Subcontract to be submitted contemporaneously with its execution.

11

HU00024181

6.2   Conditional Assignment and Undertaking to Continue Performance:

(a)   Obligation of Subcontractor.  Subcontractor shall not enter into any agreement to subcontract any portion of the Subcontractor's Work or to purchase, rent or lease any services, materials or equipment unless it obtains from each such sub-subcontractor, supplier, vendor, lessor or materialman, on forms furnished by Hunt, a Conditional Assignment and Undertaking to Continue Performance on behalf of Hunt  Subcontractor shall deliver each original executed Conditional Assignment and Undertaking to Continue Performance to Hunt within five (5) days of its execution.

(b)   Obligation of Sub-subcontractor, Supplier, Vendor or Materialman.  Each sub-subcontractor, supplier, vendor, lessor and materialman shall execute the Conditional Assignment and Undertaking to Continue Performance, agreeing that it will continue and complete the performance of its contractual obligations on behalf of Hunt at no additional cost to Hunt beyond the cost stated in its contract with the Subcontractor.

(c)   Activation by Hunt  Upon written notice by Hunt to any sub-subcontractor, supplier, vendor, lessor or materialman, of an occurrence of default by Subcontractor under this Subcontract, without obligation on its part to make an independent inquiry as to the accuracy of the assertion of such default, or to receive proof of the default, the Conditional Assignment and Undertaking to Continue Performance to Hunt shall become effective, and the sub-subcontractor, supplier, vendor, lessor or materialman shall immediately undertake to continue performance as directed by Hunt.

(d)   Limitation of Hunt's Obligation.  In the event Hunt activates the performance required by the Conditional Assignment and Undertaking to Continue Performance, all prior payments received by the sub-subcontractor, supplier, vendor, lessor or materialman, or paid to the Subcontractor for the Work of the sub-subcontractor, supplier, vendor, lessor or materialman shall be credited toward any sums due pursuant to the terms of the Conditional Assignment and Undertaking to Continue Performance.  Hunt shall not be obligated to perform or discharge any past obligation, duty or liability of Subcontractor under any contract or agreement, by reason of the existence of or exercise of the Conditional Assignment and Undertaking to Continue Performance.

(e)   Provisions Included in Sub-subcontracts, Purchase Orders and Other Contracts and Agreements.  Subcontractor shall include the provisions of this Section 6 in all its subcontracts, purchase orders and other contracts and agreements relative to Subcontractor's Work  Subcontractor shall furnish proof of compliance with this Section 6.2 in a form satisfactory to Hunt.

SECTION 7
Bonding of Subcontractor

7.1   Requirement of Bonds: If Attachment II, paragraph B requires Subcontractor to be bonded, Subcontractor shall obtain all required bonds in accordance with the provisions of Attachment VI.

7.2   Subsequent Requirement of Bonds: Hunt reserves the right at any time prior to commencement of Subcontractor's Work to require Subcontractor to furnish bonds for the full amount of the Subcontract Price.

HU00024182



7.3    **Changes Will Not Invalidate Bonds:** Additions to or reductions from the Subcontract Price, or other modifications of Subcontractor's Work shall not invalidate or impair any rights of Hunt under any bond furnished by Subcontractor.

7.4    **Requirements in Absence of Bonds:** If Hunt does not initially require Subcontractor to furnish bonds, but prior to or after commencement of Subcontractor's Work, Subcontractor's financial condition materially changes, in addition to any other right of Hunt hereunder, Hunt may elect one or more of the following alternatives:

    (a)    require Subcontractor to submit a current audited financial statement in a form acceptable to Hunt;

    (b)    require Subcontractor to furnish bonds in an amount and form acceptable to Hunt;

    (c)    require Subcontractor to furnish an irrevocable letter of credit or other security acceptable to Hunt; or

    (d)    increase retainage to an amount sufficient to protect Hunt's interests.

7.5    **Contractor's Rights:** If Subcontractor fails to furnish a bond to Hunt in acceptable form within the time specified in Section 6.1, or if Subcontractor fails to comply with Sections 7.3, 7.4(a, b or c), or consent to the provisions of Section 7.4(d) above, Hunt may, upon five (5) days written notice, terminate the Subcontract in accordance with the provisions of Section 30.

**SECTION 8**
**Insurance Requirements**

8.1    **Insurance Coverage:** Prior to the commencement of the Subcontractor's Work, Subcontractor shall purchase and maintain in force the insurance coverages set forth in Attachment V. If Subcontractor determines for its own purposes that it requires insurance coverages in excess of the coverage specified in Attachment V, nothing in this Subcontract shall prevent Subcontractor, at its own expense, from purchasing insurance coverages in excess of the coverage required by this Subcontract.

8.2    **Adequacy of Insurance:** Hunt does not represent that the insurance coverage specified herein, whether in scope of coverage or amounts of coverage, are adequate to protect the obligations of Subcontractor under this Subcontract and Subcontractor shall be solely responsible for any deficiencies thereof. Nothing in this Section 8 shall be deemed to limit Subcontractor's liability under this Subcontract.

**SECTION 9**
**Schedule and Coordination**

9.1    **Time of the Essence:** Time is of the essence in this Subcontract. Subcontractor recognizes that Hunt and/or the Owner may sustain severe financial loss if the Project or any part of it is delayed because Subcontractor fails to perform any or all of its Work in accordance with this Subcontract, the Contract Documents or the Project Schedule (as hereinafter defined).

9.2    **Commencement of Subcontractor's Work:** Subcontractor shall commence its Work when directed by Hunt to do so and, subject to the conditions set forth in Section 9.4, shall diligently and

13

HU00024183



continuously prosecute, perform and complete its Work so that neither Hunt nor any other person or entity will be delayed by any act or omission of Subcontractor in completing its Work on the Project in accordance with this Subcontract, the Contract Documents, the Project Schedule (as hereinafter defined) and any revisions thereto. If, for any reason, Subcontractor's Work is ordered stopped, Subcontractor shall resume its Work within the time stated in a written notice from Hunt.

9.3    Subcontractor's Plan and Schedule:  The Subcontractor shall participate and cooperate in the development of Hunt's project schedule (the "Project Schedule") by providing information for the scheduling of the times and sequence of operations required for its Work to meet Hunt's overall schedule requirements.  Subcontractor shall continuously monitor Hunt's Project Schedule so as to be fully familiar with the timing, phasing and sequence of operations of its Work and of other work on the Project, and shall execute the Work in accordance with the requirements of the Project Schedule, including any revisions thereto and shall meet all interim or final milestone dates included in the Project Schedule.  Subcontractor shall submit within five (5) days after execution of this Subcontract, in a form prescribed by Hunt, for Hunt's approval, Subcontractor's detailed plan and schedule for performing and coordinating its Work in conformance with the Project Schedule and other work on the Project.

9.4    Priority of Work:  Hunt shall have the right at any and all times to modify the Project Schedule, to suspend, delay, or accelerate, in whole or in part, the commencement or execution of Subcontractor's Work or any portion thereof or to vary the sequence thereof, to reasonably decide the time, order and priority of the various portions of Subcontractor's Work, and all other matters relating to the scheduling and coordination of Subcontractor's Work with other work on the Project. As the Project progresses, Hunt also shall have the right to modify the time, order and priority of the various portions of Subcontractor's Work, and all other matters relating to the scheduling and coordination of Subcontractor's Work, in order to respond to job conditions and/or achieve timely completion of the entire Project. Subcontractor shall not be entitled to any additional compensation for decisions or changes made by Hunt pursuant to this Section 9.4 except as provided in Section 9.7.

9.5    Coordination:  Subcontractor shall coordinate its operations with all other contractors, subcontractors and trades working on the Project.  Before beginning its Work and during the duration of its Work, Subcontractor shall perform the requirements of Section 13.1 including written reports to Hunt.  Failure by Subcontractor to report any such defective or uncompleted work by others shall constitute a waiver and estoppel of any claim by Subcontractor for any damage or for any claim for an extension of time arising out of such defective or uncompleted work. Further, Subcontractor shall be liable to Hunt for any damage caused Hunt by Subcontractor's failure to report any such defective or uncompleted work by others.

9.6    Reports and Information:  Subcontractor shall furnish to Hunt:

   (a)    Hunt's Daily Report Form fully and accurately completed each working day and signed by Subcontractor's Authorized Representative and delivered to Hunt's Project office by 10:00 a.m. the next working day.

   (b)    All required reports, shop drawings, samples, test reports, or other information promptly as required by this Subcontract, the Contract Documents, the Project Schedule or requested by Hunt.

STANDARD SUBCONTRACT AGREEMENT SUB-FRANCHISO 07 07 '99

HU00024184

9.7    **Overtime and Additional Shifts:** If ordered by Hunt in writing, Subcontractor shall work overtime and/or add additional manpower or shifts:

    (a)    If Subcontractor is not behind schedule, Hunt will pay Subcontractor the actual additional premium portion of wages for overtime or additional shift work not then included in the Subcontract Price, plus any taxes on such additional wages, but no overhead or profit;

    (b)    If Subcontractor, through its own sole or partial fault or neglect, is behind schedule, Hunt may order Subcontractor to increase its manpower or to work, at Subcontractor's expense, any overtime or additional shifts or take any other action necessary to expedite the Work to meet the Project Schedule.

## SECTION 10
## Delays and Extensions of Time

10.1    **Delays Caused by Others:** Hunt shall not be liable to Subcontractor for any delay, disruption or interference to Subcontractor's Work caused by the act, omission, neglect or default of the Owner or the Designer or their respective contractors, subcontractors, employees, servants, agents or consultants, or by reason of fire or other casualty, or on account of riots or of strikes, or other combined action of the workmen or others, or on account of any acts of God, or any other cause beyond Hunt's direct control; provided, however, Hunt will cooperate with Subcontractor in submitting against the Owner or Designer, any just claim arising therefrom which is permitted by the Contract Documents and applicable law. Subcontractor shall reimburse Hunt for all reasonable expenses incurred by Hunt in submitting any such claims on behalf of Subcontractor. Subcontractor shall not claim any time extension, cost reimbursement, compensation or damages for any delay, disruption or interference to the Work except to the extent that Hunt is entitled to a corresponding time extension, cost reimbursement, compensation or damages from the Owner or Designer under the Contract Documents and applicable law. Subcontractor recovery shall be limited to the amount, if any, which Hunt, on behalf of Subcontractor, actually receives from the Owner or the Designer on account of such claim. Payment by the Owner or Designer shall be by an express condition precedent to Hunt's duty of payment to Subcontractor.

10.2    **Delays Caused Solely by Hunt:** Should Subcontractor's Work be delayed, disrupted or interfered with solely as a result of acts or omissions of Hunt or anyone employed by Hunt on the Project, then, at Hunt's sole discretion, Hunt shall provide Subcontractor either:

    (a)    an extension of time for completion of the Work equal to the actual impact of the delay, disruption or interference on the critical path of Subcontractor's Work; or

    (b)    additional compensation as provided in Section 9.7(a), but only if a written claim for delay is submitted to Hunt within forty-eight (48) hours from the time of the commencement of such delay, disruption or interference.

Failure to provide such written claim within the prescribed time period shall result in an irrevocable waiver of any such claim. The extension of time or the additional compensation provided pursuant to this Section 10.2 shall be the sole and exclusive remedy that Subcontractor shall have against Hunt for delays, disruptions or interferences caused by the acts or omissions of Hunt or anyone employed by Hunt on the Project, and Subcontractor shall have no right or entitlement to additional compensation, whether direct or indirect, for such delays, disruptions or interferences. Subcontractor expressly waives the right to bring against Hunt any claim for damage for delay, acceleration, interference, extra work resulting from such delay, extended overhead, wage escalation,

HU00024185

overtime wage provisions, lost opportunity, or lost profit or financial impact on Subcontractor's other projects. Hunt's exercise of its rights pursuant to Section 9.4 shall not constitute a delay, disruption or interference with Subcontractor's Work under this Section 10.2.

10.3   **Limitations on Subcontractor With Respect to Claims for Extensions of Time or Damages:** In no event shall Subcontractor be entitled to any extension of time or any damages for any delays, disruptions or interferences caused ~~in any manner or in any way~~ by Subcontractor.

### SECTION 11
### Subcontractor's Project Staff

11.1   **Project Staff:** Subcontractor shall maintain, at all times, a competent and adequate staff for the proper management, administration, coordination, supervision and superintendency of Subcontractor's Work and Subcontractor's compliance with all applicable laws. Once approved by Hunt, the Subcontractor's project manager and/or superintendent shall not be changed, or his/her duties altered, without Hunt's written approval, unless any such person ceases to be employed by Subcontractor, in which event such person shall be replaced with an individual against whom Hunt has no reasonable objection. Subcontractor shall remove from the Project any person employed by or under the control of Subcontractor whom Hunt or the Owner determines to be unsatisfactory.

11.2   **Contractor's Approval:** In accordance with Section 6.1, Subcontractor shall submit to Hunt, in writing for Hunt's written approval, the name, classification, experience and project function of each person Subcontractor intends to assign to its Project staff.

11.3   **Subcontractor's Project Representative:** Subcontractor shall have a full-time representative on the Project who shall be fully responsible for the performance of the Subcontractor's Work and who shall have full authority to act on Subcontractor's behalf in all matters necessary for proper coordination, direction and technical administration of Subcontractor's Work including strict conformance with all applicable safety laws, rules, regulations, ordinances and requirements. Such representative shall attend meetings called by Hunt and report on the progress of Subcontractor's Work. Instructions, directives and orders issued to this representative shall be binding upon Subcontractor. Such information, instructions, directions and orders may be confirmed in writing to Subcontractor, but the lack of such confirmation, other than with respect to Change Orders or other communications specifically required by this Subcontract or the Contract Documents to be in writing, shall not affect in any way the validity or binding nature of such information, instructions, directions or orders issued.

### SECTION 12
### Shop Drawings and Other Submissions
### Required by the Contract Documents

12.1   **Submission:** Subcontractor shall prepare and submit to Hunt a submittal log and schedule, which shall be updated weekly, showing the status of all required shop drawings, samples and other required submittals. Subcontractor shall submit all shop drawings, samples and other required submittals in strict accordance with this Subcontract, the Contract Documents and Hunt's schedule requirements so that Subcontractor's shop drawings, samples and other submittals shall not delay its own Work, the work of Hunt or any other person or entity.

12.2   **Review by Hunt:** In reviewing Subcontractors' shop drawings and sample submittals, Hunt is not responsible for verifying dimensions or field conditions. Review by Hunt shall not be construed as a

STANDARD SUBCONTRACT AGREEMENT SUBX FRHWH/HCG 04-07-03

HU00024186

detailed check of the shop drawings or sample submittals and shall not relieve the Subcontractor, manufacturer, fabricator or supplier from the responsibility for the proper matching and fitting of the Work with contiguous work and the coordination of the Work with other work being performed on the site, which obligation and responsibility shall continue until completion of the Work.

## SECTION 13
### Contiguous Work

13.1    Contiguous Work:  Should the proper and accurate performance of the Subcontractor's Work depend upon the proper and accurate performance of other work not covered by this Subcontract, the Subcontractor shall carefully examine such other work, determine whether it is in fit, ready and suitable condition for the proper and accurate performance of the Work hereunder, ~~use all means necessary to discover any defects in such other work,~~ and before proceeding with the Work hereunder, report promptly any such improper conditions and defects to Hunt, in writing, and allow Hunt a reasonable time to have such improper conditions and defects remedied.

## SECTION 14
### Dimensions

14.1    Dimensions:  Notwithstanding the dimensions on the Plans, Specifications and other Contract Documents it shall be the obligation and responsibility of the Subcontractor to take such measurements as will insure the proper matching and fitting of the Work covered by this Subcontract with contiguous work.

## SECTION 15
### Freight Charges and Shipments

15.1    Freight Charges and Shipments:  The Subcontractor, in making or ordering shipments, shall not consign or have consigned materials, equipment or any other items in the name of Hunt.  Hunt is under no obligation to make payment for charges on shipments made by or to the Subcontractor but may, at its option, pay such charges, in which case the Subcontractor shall reimburse Hunt for the amount of such payments plus ten percent (10%) overhead and ten percent (10%) profit.

## SECTION 16
### Cleaning

16.1    Subcontractor's Duty to Clean Up:  Subcontractor, daily, shall clean and remove from the Project and lawfully dispose of any dirt, marks, grease, surplus materials, obstructions, hindrances or debris resulting from Subcontractor's Work.  With respect to the disposal of Regulated Substances (as defined hereafter), Subcontractor shall strictly comply with the requirements of Section 26.2.  Upon completion of its Work, Subcontractor shall clean, wash, remove protective coatings and leave its Work in such cleaned condition as this Subcontract and the Contract Documents require. Subcontractor also shall remove all of its remaining debris, equipment and temporary facilities from the Project.

16.2    Hunt's Rights if Subcontractor Does Not Adequately Clean:  If Subcontractor fails to perform necessary or required clean up during the course of and at completion of its Work, upon twenty-four (24) hours written notice to Subcontractor, Hunt may provide such clean up work on behalf of Subcontractor and charge Subcontractor for the costs incurred, plus ten percent (10%) for overhead and ten percent (10%) for profit.  The right of Hunt to clean up includes the right to provide clean

STANDARD SUBCONTRACT AGREEMENT SUBLPRA/V48 IG5 02/07/XX

HU00024187

up during evening, night and weekend hours, in which case any shift differential or overtime wage premiums will be included in the charges assessed against Subcontractor. In addition, if Subcontractor fails to perform its clean up obligations under this Subcontract, Hunt shall have the right to stop Subcontractor's Work until clean up is achieved. This right to stop work is in addition to Hunt's other rights and remedies. Hunt shall give Subcontractor prompt written notice of any backcharge and may deduct such clean up charges from any payment due Subcontractor.

## SECTION 17
### Hunt-Furnished Equipment, Labor or Materials

17.1    **Responsibilities of the Parties:** In the event Hunt furnishes to or for the use of Subcontractor any labor, materials, equipment (such as concrete pumps, trucks, cranes, earth movers and the like), or temporary facilities (such as storage sheds, water, heat, light, power, toilets, hoists, elevators, scaffolding, weather protection, pumps, watchman service and the like), such furnishing or use shall be limited to the extent specifically stated in this Subcontract and/or the Contract Documents. Whenever Subcontractor uses the same, Subcontractor, its successors and assigns, shall defend, indemnify, and hold harmless Hunt, its agents and employees, from and against all liability for injuries to persons, damage to property, and any and all costs and expenses, including attorneys' fees and disbursements, resulting from any claims against Hunt, its agents and employees, arising out of such use or occupancy by Subcontractor. With respect to any such use or occupancy, Subcontractor shall strictly comply with all applicable laws. Unless otherwise specifically stated, whenever any labor, materials, equipment or temporary facilities are provided by Hunt, they are provided "as is." With respect to any such equipment or temporary facilities Subcontractor shall:

(a)    assume care, custody and control of such equipment or temporary facilities;

(b)    maintain, service and repair such equipment or temporary facilities;

(c)    use such equipment or temporary facilities in strict compliance with this Subcontract, the Contract Documents and all applicable laws; and

(d)    return such equipment or temporary facilities to Hunt in the same condition Subcontractor received same.

Such equipment or temporary facilities will be available to Subcontractor where initially located by Hunt with any relocation to be performed by and at the expense of Subcontractor. Further, Subcontractor shall be responsible for returning such equipment or temporary facilities to that initial location or such other location as may be directed by Hunt.

17.2    **Charges to Subcontractor:** The cost to Subcontractor of any equipment, labor or materials furnished by Hunt pursuant to Section 17.1 and the method of payment thereof shall be set forth in a written attachment to this Subcontract signed by Hunt and Subcontractor.

## SECTION 18
### Changes to the Work

18.1    **Hunt May Order Changes:** Hunt may, without invalidating this Subcontract or any bond given hereunder, order additions, deletions or other modifications to Subcontractor's Work, without notice to any surety. Adjustments to the Subcontract Price or to the time for completion of Subcontractor's Work, if any, shall be made in accordance with the provisions of the Contract Documents, when applicable, and in accordance with Sections 18.2 through 18.5 of this Subcontract.

18

STANDARD SUBCONTRACT AGREEMENT SLMX FRMW4 ICG 07/00/00

HU00024188

18.2    **Review of Change Requests:** Upon receipt of a request to change the Work issued by the Owner, the Designer or by Hunt, Subcontractor shall review each such request and provide to Hunt, in writing, within the time period requested by Hunt, but in no event later than ten (10) days from receipt of the request, a specific analysis as to the impact, if any, on Subcontractor's Work, including any adjustment to the Subcontract Price or time for completion. In support of each analysis for a change in Subcontractor's Work, Subcontractor shall provide Hunt with the following supporting back-up data: sub-subcontractor quotations and price estimates, material counts and costs, labor rates and time estimates, equipment rental rates and time estimates, and any other information or documents which Hunt may request. In each of its sub-subcontracts, Subcontractor shall require each sub-subcontractor to provide the same supporting data for any changes. If requested by Hunt, Subcontractor shall furnish detailed records in a form satisfactory to Hunt of the costs or savings actually realized as a result of any change.

18.3    **Price and Time Changes Valid Only by Written Change Order:** The Subcontract Price and time for completion will not be changed except upon written Change Order from Hunt. Changes in the Subcontract Price shall not be included in Subcontractor's payment applications until a written Change Order has been fully executed by Hunt incorporating the price change into the Subcontract Price.

18.4    **No Claim for Lost Profit:** If any change reduces the quantity of Subcontractor's Work, Subcontractor shall not make any claim for loss of anticipated profit.

18.5    **Dispute as to Price:** If, with respect to any change in Subcontractor's Work, Hunt and Subcontractor cannot agree upon an adjustment to the Subcontract Price or time for completion, Hunt shall have the right to order Subcontractor to proceed with the change in accordance with Hunt's instructions and Subcontractor shall so proceed to carry out the changed Work and shall record the cost of the changed work as required by the Contract Documents or as ordered by Hunt. Any claim for additional compensation or additional time shall be processed in accordance with Section 21. If Subcontractor contests the time of completion provided for any change, it must file a claim for an extension of time pursuant to the provisions of Section 10 or it will waive its right to contest the time for completion provided for the change.

18.6    **Construction Change Directives:** In the event the Contract Documents provide for Construction Change Directives or similar mechanisms for changes in the Work, Subcontractor shall comply with all requirements of the Contract Documents with respect thereto.

SECTION 19
Risk of Loss and Title

19.1    **Risk of Loss to Subcontractor:** Hunt shall not be liable to Subcontractor for any loss or damage to Subcontractor's Work, materials, tools, equipment or supplies, however caused. Subcontractor assumes all risk of loss for its Work, regardless of whether Subcontractor has been paid for such Work. Unless otherwise specifically provided in this Subcontract, Hunt is not responsible for providing any protection of Subcontractor's Work or any protective service for Subcontractor's benefit.

19.2    **Title:** Subcontractor warrants that title to all Work, materials and equipment will pass to the Owner either by incorporation in the Project or upon the receipt of payment by the Subcontractor for such Work, materials and equipment, whichever occurs first, free and clear of all liens, claims, security

STANDARD SUBCONTRACT AGREEMENT SUBKFRAMINKG 07/07/1

HU00024189



interests or encumbrances; and that any materials or equipment were not acquired by the Subcontractor, or by any other person performing Work at the Project or furnishing materials and equipment for the Project, subject to an agreement under which an interest therein or an encumbrance thereon is retained by the seller or otherwise imposed by the Subcontractor or such other person.

## SECTION 20
## Mechanic's Liens or Claims

20.1   **Subcontractor's Duty to Discharge Liens or Claims:** If any sub-subcontractor, laborer, materialman or supplier of the Subcontractor or any other person directly or indirectly acting for, through or <u>under it or any of them files or maintains a lien or claim</u>, whether a mechanics' lien, stop notice or an attested account or otherwise, against the Project or premises of the Project or any part thereof or any interests therein or any improvements thereon or against any monies due or to become due from the Owner to Hunt or from Owner to Subcontractor, for or on account of any work, labor, services, materials, supplies, equipment or other items performed or furnished for or in connection with the Work or under any Change Order or supplemental written agreement for extra or additional work in connection with the Project, the Subcontractor shall cause such liens and claims to be satisfied, removed or discharged at its own expense by bond, payment or otherwise within ten (10) days from the date of the filing of such liens or claims, and upon its failure to do so Hunt shall have the right, in addition to all other rights and remedies provided under this Subcontract and the Contract Documents, or by law, to cause such liens or claims to be satisfied, removed or discharged by whatever means the Owner or Hunt chooses, at the entire cost and expense of the Subcontractor (such cost and expense to include legal fees and disbursements). The Subcontractor shall defend, indemnify, protect and hold harmless Hunt and the Owner from and against any and all such liens and claims and actions brought or judgments rendered thereon, and from and against any and all loss, damages, liability, costs and expenses, including reasonable attorneys' fees and disbursements, which Hunt and/or the Owner may sustain or incur in connection therewith.

## SECTION 21
## Subcontractor Claims

21.1   **Obligation to Continue Work:** Regardless of any claims or disputes, or any action taken or to be taken under any Section of this Subcontract with respect to such claims or disputes, whether for an extension of time or for additional compensation or otherwise, Subcontractor at all times shall proceed diligently with the prosecution of its Work.

21.2   **Claims for Which Hunt Can Seek Recovery from the Owner:** If Subcontractor asserts a claim for damages under circumstances that entitle Hunt to make a claim for damages against the Owner under the Contract Documents, Subcontractor shall file with Hunt a written claim that meets the requirements of Section 21.5 and is in the form required by the Contract Documents for claims by Hunt against the Owner no later than five (5) days prior to the time when Hunt is required to file any such claim with the Owner. If no specific deadline for claims is contained in the Contract Documents, the Subcontractor shall submit such claim within fourteen (14) days of the commencement of the event allegedly giving rise to the claim.

21.3   **Claims for Which Hunt Cannot Seek Recovery from the Owner:** If Subcontractor asserts a claim for alleged damages which is prohibited by the Contract Documents, or asserts such claim under circumstances that do not entitle Hunt to make a claim for such damages against the Owner

STANDARD SUBCONTRACT AGREEMENT SUBS.FRM WHI ICG 07/074

HU00024190



under the Contract Documents, upon written notice from Hunt, Subcontractor shall withdraw the claim. If Subcontractor's claim meets the conditions of Section 10.2, Subcontractor shall proceed in accordance with the provisions of Section 10.2

21.4    **Failure to File Waives Claim:** Failure by Subcontractor to deliver any claim for alleged damages to Hunt within the time limits set forth in this Section 21 and/or to provide the required damage amounts and other specific information and supporting documentation shall constitute a waiver and estoppel of Subcontractor's rights with respect to such claim for alleged damages.

21.5    **Claim Preparation:** With respect to any claim submitted by Subcontractor under this Section 21, Subcontractor shall prepare the claim in writing and in a format acceptable to Hunt. At a minimum, the claim shall include detailed information concerning the alleged claim-causing event, Subcontractor's damages which allegedly resulted from the event, how the event allegedly caused such damages, and steps allegedly taken by Subcontractor to mitigate the extent of its alleged damages. The claim shall separately list each type of damage allegedly incurred (but in no event damages barred or waived by the Contract Documents or this Subcontract) and give the most accurate estimate possible of the amount for each type of alleged damage. Upon request by Hunt, Subcontractor will provide any other information concerning the claim. By submitting a claim, Subcontractor grants Hunt the right to examine or audit all of Subcontractor's accounting records, job records, payroll records and other records and documents which may have any bearing on the claim.

21.6    **Subcontractor Cooperation:** Subcontractor shall cooperate in the prosecution of claims filed by Subcontractor, and shall reimburse Hunt for all expenses and costs incurred by Hunt in connection with the preparation and prosecution of such claims against Owner or others who may be responsible, including without limitation, costs of litigation, arbitration or alternative dispute resolution proceedings and reasonable attorneys fees and disbursements. Nothing in this Section shall require Hunt to assert any claim against the Owner on Subcontractor's behalf which, in Hunt's reasonable judgment, is fraudulent, contrary to law, barred by this Subcontract, the Contract Documents or made by Subcontractor in bad faith.

21.7    **Claims Against Hunt Arising out of Subcontractor's Work:** If the Owner or a third party brings a claim against Hunt and such claim arises directly, or indirectly, in whole or in part from Subcontractor's Work or other involvement in the Project, Subcontractor shall:

    (a)    cooperate with Hunt and its counsel in the defense of such claim;

    (b)    provide, at Subcontractor's expense, all witnesses, expert testimony, documents and other assistance Hunt reasonably believes necessary for such defense; and

    (c)    indemnify and hold Hunt harmless from the cost of any judgment or settlement of such claim, Hunt's reasonable costs in responding to the claim, and Hunt's reasonable attorneys' fees and disbursements.

21.8    **Subcontractor Bound by Claims Procedures:** Subcontractor expressly consents to be bound to Hunt to the same degree and manner that Hunt is bound to the Owner by all decisions and determinations made in accordance with any procedure for the resolution of claims provided in the Contract Documents. The provisions of this Section shall be binding upon Subcontractor, whether or not Subcontractor records or files a mechanic's lien, stop notice, or action against any bond

HU00024191



posted by Hunt or files suit thereon. Subcontractor acknowledges that this Section waives or limits rights it otherwise would have in connection with such liens, stop notices or bonds.

## SECTION 22
## Compliance with Law and Permits

22.1 The Subcontractor shall obtain and pay for all necessary permits, certificates, registrations, tap fees, construction costs and licenses pertaining to or required for the Work and shall comply with all Federal, State, Municipal and local laws, ordinances, codes, rules, regulations, standards, orders, notices and requirements, including, but not limited to, those relating to safety, discrimination in employment, fair employment practices or equal employment opportunity, whether or not specifically provided for by this Subcontract or the Contract Documents, without additional charge or expense to Hunt, and shall also be responsible for, and correct, at its own cost and expense, any violations thereof resulting from or in connection with the performance of its Work. The Subcontractor shall at any time, upon demand, furnish such proof as Hunt may require showing such compliance and the correction of such violations. The Subcontractor shall defend, hold harmless and indemnify Hunt from and against any and all loss, injury, claims, actions, proceedings, liability, damages, fines, penalties, costs and expenses, including legal fees and disbursements, caused or occasioned directly or indirectly by the Subcontractor's failure to comply with any of said laws, ordinances, rules, regulations, standards, orders, notices or requirements or to correct such violations.

## SECTION 23
## Labor Relations

23.1 **Labor Matters:** Subcontractor shall comply with the following provisions:

(a) <u>Jurisdictional Dispute</u>. If any item of Work shall be the subject of a jurisdictional dispute as to the employees or craft to be used for such Work, Subcontractor shall lawfully resolve such dispute and if arbitrated, abide by the decision, holding Hunt and the Owner free of involvement in the dispute, and if time is lost by the dispute, extra work days will be considered only pursuant to the provisions of Section 21.

(b) <u>Wage Scale</u>. Subcontractor will pay not less than the wage scale and fringe benefits, if any, required by the Contract Documents or, if applicable, prevailing wage determinations, and will comply with all applicable wage laws, statutes and regulations.

(c) <u>Reporting</u>. Certified copies of payrolls, if required, will be submitted to Hunt upon request. Subcontractor will comply with all applicable laws relating to wages and hours, reporting obligations, and other applicable labor requirements established by this Subcontract, the Contract Documents, any governmental agency and any agreement legally binding upon Subcontractor.

If Subcontractor fails to comply with any requirement of this Section 23, upon written notice of such non-compliance from Hunt, Subcontractor shall commence to cure such non-compliance within twenty-four (24) hours and shall achieve compliance within seventy-two (72) hours of receipt of the written notice. Any failure by Subcontractor to do so after written notice to comply shall constitute a material breach of this Subcontract and Hunt, in addition to its other rights in the event of a breach of this Subcontract, shall have the right to terminate this Subcontract for cause.

HU00024192

23.2    **Control Over Employees:** Subcontractor shall maintain control over all its employees, sub-subcontractors, suppliers and others for whom Subcontractor is responsible. Subcontractor shall remove or cause to be removed from the Project any person or entity for whom Subcontractor is responsible who is determined by the Owner, the Designer or Hunt to be detrimental to the Project. Subcontractor shall not employ any person who wrongfully causes, or who is likely to wrongfully cause, strikes, work stoppages or other actions detrimental to the Project.

23.3    **Strike:** In the event of a strike, picketing or other actions resulting from Subcontractor's Work, after forty-eight (48) hours notice to Subcontractor, Hunt may take any lawful steps necessary to complete Subcontractor's Work. Subcontractor shall take all necessary action to terminate any strike or picketing and will, on an ongoing basis, take all necessary actions to assure harmonious labor relations, including compliance with all labor agreements and jurisdictional decisions. If Hunt establishes a gate reserved for use by Subcontractor (and any other subcontractor with whom a labor dispute exists), Subcontractor will use such gate and continue its Work without interruption or delay. All employees, sub-subcontractors, materialmen, suppliers, and agents of Subcontractor must use such reserved gate until further notice from Hunt.

### SECTION 24
### Equal Employment Opportunity, Affirmative Action and ADA

24.1    **Non-Discrimination:** Subcontractor, at its own expense, shall conform to the nondiscrimination and affirmative action policies and plans required by this Subcontract, the Contract Documents and with all laws applicable to the Project.

24.2    **Compliance With Other Laws:** The following Federal laws and regulations are incorporated into the Subcontract by reference with respect to any Project to which such laws and regulations apply. Unless exempted, the Equal Opportunity Clause found at 41 CFR §60-1.4; the affirmative action for disabled veterans and veterans of the Vietnam Era clause found at 41 CFR §60-250 4; the affirmative action compliance program clause found at 41 CFR §60-1.7; the equal opportunity for workers with disabilities clause found at 41 CFR §60-741.5; the minority business enterprises subcontract program, found at 41 CFR §1-1.1300 et seq.; the labor surplus area subcontracting program; the small business subcontracting program; the women-owned business enterprises program, and the construction contractor's affirmative action requirements found at 41 CFR §60-4.1, et seq. Subcontractor is responsible for full compliance, as applicable, by itself, its agents, employees, materialmen and sub-subcontractors.

24.3    **Hiring and Employment:** In the hiring of employees for the performance of the Work under this Subcontract, neither Subcontractor nor any person acting on behalf of Subcontractor, shall, by reason of race, religion, color, sex, national origin or ancestry, disability, citizenship or any other status protected under the laws of the State or locality where the Work is to be performed, discriminate against any citizen who is qualified and available to perform the work to which the employment relates. Furthermore, neither Subcontractor nor any person on its behalf shall, in any manner, discriminate against or intimidate any employee hired for the performance of Work under this Subcontractor on account of race, religion, color, sex, national origin or ancestry or any other status protected under the laws of the State or locality where the Work is to be performed

24.4    **Reports:** Subcontractor shall furnish all information and reports required by this Subcontract, the Contract Documents, Hunt and applicable laws. Subcontractor will permit access to its books, records and accounts for the purpose of investigation to ascertain such compliance. Unless exempted by law, Subcontractor will include the requirements of this Section 24 in every subcontract

HU00024193

or purchase order so that this Section 24 will be binding upon each sub-subcontractor or supplier of the Subcontractor. When required, Subcontractor will deliver to Hunt from itself and from any sub-subcontractor or supplier of the Subcontractor, all required certifications of compliance or other information required by this Subcontract, the Contract Documents and any applicable laws. Subcontractor shall deliver all information or reports required by this Section 24.4 to Hunt's Project Office, to Hunt's address listed in Section 1.4 and to any other person or entity to whom such information must be provided according to any applicable law or the Contract Documents.

24.5    **Compliance With the ADA:**  In the event Subcontractor believes it necessary to modify its sequence of Work, the work environment or means and methods to comply with the applicable requirements of the Americans With Disabilities Act (ADA), Subcontractor shall notify Hunt in writing of the proposed modification.  Hunt shall have reasonable time to review the request and may seek advice and consent from the Owner and Designer before responding in writing to Subcontractor.  All costs of the proposed modifications shall be borne by Subcontractor, including impact costs to other subcontractors or other parts of the Project, including claims for delay, interference, disruption, or acceleration.  No modification shall be implemented by Subcontractor until Subcontractor receives written consent from Hunt.  Nothing herein shall be construed to make Hunt or Subcontractor responsible for conformance of the Designer's Design to ADA requirements

24.6    **Failure to Comply:**  If Subcontractor, its employees, sub-subcontractors, suppliers or any other person or entity responsible to Subcontractor fails to comply with any applicable law or requirement of this Section or the Contract Documents, upon written notice of such non-compliance from Hunt, Subcontractor shall commence to cure such non-compliance within twenty-four (24) hours and shall achieve compliance within seventy-two (72) hours of receipt of the written notice.  Any failure by Subcontractor to do so after written notice to comply shall constitute a breach of this Subcontract and Hunt, in addition to its other rights in the event of a breach of this Subcontract, shall have the right to terminate this Subcontract.

## SECTION 25
## Safety

25.1    **Conformance by Subcontractor:**  With respect to safety, Subcontractor, at its own expense, shall conform to and comply with all requirements of this Subcontract, the Contract Documents and applicable laws promulgated by any governmental authority, including, without limitation, the applicable requirements of the Occupational Safety and Health Act of 1970 as amended.  Hunt shall require Subcontractor to submit a safety plan, the submission of which shall in no way relieve Subcontractor of its responsibilities under this Section.  Subcontractor will take all necessary precautions to protect against any conditions caused by Subcontractor's Work or other involvement in the Project which involve any risk of bodily harm to persons or risk of damage to property.  Subcontractor continuously shall inspect its Work, materials and equipment to discover any such conditions and shall be solely responsible for discovering and correcting any conditions.  Hunt may order Subcontractor to stop any Work that Hunt deems unsafe until corrective measures acceptable to Hunt have been implemented.  However, any action by Hunt shall not be construed to extend to direct control over or charge of the acts or omissions of Subcontractor, its sub-subcontractors, their agents or employees or any other persons performing Subcontractor's Work or portions thereof.  Subcontractor shall be responsible for all costs and delays incurred by Hunt as a result of any such stoppage of the Work.

24

HU00024194

25.2    **Protection of Hunt:** Subcontractor acknowledges that, by law, it must comply with applicable safety laws, including but not limited to the Occupational Safety and Health Administration (OSHA), Safety and Health regulations for the construction industry and all general industry standards applicable thereto. Subcontractor further acknowledges that it is knowledgeable with respect to compliance with such laws, and shall take all necessary steps toward compliance during the term of this Subcontract. Subcontractor at all times shall be the controlling employer responsible for the safety programs and precautions applicable to its own work and the activities of others' work in areas designated to be controlled by Subcontractor. Subcontractor shall control the activities of its employees and any other persons or entities for whom Subcontractor is responsible. Subcontractor shall be liable for each hazardous condition which Subcontractor either creates or controls, whether or not the persons exposed to the hazard are Subcontractor's employees or agents. Subcontractor shall also be responsible for preventing its employees and persons or entities for which it is responsible from being exposed to any hazardous or dangerous condition. In the event an action is undertaken against Hunt for violations of law as a result of conditions allegedly created or controlled in whole or in part by Subcontractor or its sub-subcontractors, regardless of tier, or any other person or entity for whom Subcontractor is responsible, Subcontractor shall indemnify Hunt and hold Hunt harmless from all costs or damages which may be assessed as the result of such action, including attorneys' fees and disbursements incurred in the defense or appeal of such action.

25.3    **Report:** Unless any law or requirement of the Contract Documents requires earlier notice, Subcontractor shall deliver copies of all accident and injury reports (from itself and from all of its sub-subcontractors or suppliers) to Hunt and any other person or entity entitled thereto by applicable law, this Subcontract or the Contract Documents within twenty-four (24) hours of occurrence. Upon request, copies of all Safety Programs and any other reports concerning safety shall be delivered to Hunt and any other person or entity entitled thereto by applicable law or the Contract Documents.

25.4    **Safety Representative:** From commencement of Subcontractor's Work and at all times while Subcontractor's Work is being performed, Subcontractor shall have on the Job Site a designated, qualified and competent Safety Representative empowered to act on behalf of Subcontractor in all matters pertaining to safety. Subcontractor shall also require each of its sub-subcontractors to have on the Job Site a designated, qualified and competent Safety Representative empowered to act on behalf of that sub-subcontractor in all matters pertaining to safety. Before commencing its Work, Subcontractor shall furnish Hunt written notice of the appointment of its Safety Representative. Before permitting any sub-subcontractor to commence work on the Job Site, Subcontractor shall furnish Hunt with written notice of the appointment of the sub-subcontractor's Safety Representative. If Subcontractor or any sub-subcontractor appoints a new or different Safety Representative during the course of the Project, Subcontractor shall furnish Hunt written notice of the appointment of the new Safety Representative before that Safety Representative assumes the Safety Representative duties. Subcontractor and its sub-tier contractors shall conduct regular and frequent safety inspections of their work areas and take corrective measures as warranted.

25.5    **Drug Testing:** If required by the Contract Documents, by law or at Hunt's request, Hunt shall have the right to require Subcontractor and all of its sub-subcontractors to prove that all of their employees working at the Project site have satisfactorily passed a drug-screening test. All costs associated with administering the drug screening tests shall be borne by the Subcontractor.

25

HU00024195

## SECTION 26
### Hazardous and Other Regulated Substances

26.1    **Definition of Regulated Substance:** As used in this Subcontract, "Regulated Substance" includes oil, petroleum or any fraction thereof, a hazardous substance, a hazardous waste, a waste containing a hazardous substance, a contaminant, a pollutant or a regulated chemical, as any of those terms may be defined by the United States Environmental Protection Agency or in one or more of the following laws: The Comprehensive Environmental Response, Compensation and Liability Act, 42 USC Section 9601 et seq., (CERCLA), as amended, the Resource Conservation and Recovery Act (RCRA), as amended, The Emergency Planning and Community Right-To-Know Act of 1986, also known as SARA Title III or EPCRA, the Toxic Substances Control Act (TSCA), as amended, the Clean Water Act, as amended, the Clean Air Act, as amended, the Federal Insecticide, Fungicide and Rodenticide Act, as amended, the Federal Water Pollution Control Act, as amended, the Oil Pollution Act of 1990, as amended, the Safe Drinking Water Act, as amended, the Occupational Safety and Health Act, as amended, or any other federal, state or local law, rule, ordinance, statute, regulation, permit or other governmental restriction regulating environmental, health or safety matters.

26.2    **Disposal of Regulated Substances:** Subcontractor shall not dispose of a Regulated Substance on the Project site. Subcontractor shall not commingle Regulated Substances with materials or waste of Hunt, the Owner, another subcontractor or any other person or entity performing work on the jobsite. Subcontractor shall provide separate disposal receptacles to be used exclusively for the storage or temporary disposal of Regulated Substances. Such separate disposal receptacles must be approved by law for the particular Regulated Substance(s) which will be placed in them. When storing, treating or disposing of Regulated Substances, Subcontractor and Subcontractor's waste hauler shall comply with all applicable laws. Subcontractor shall identify its waste haulers and provide Hunt with a copy of each manifest or other document relating to the storage, transportation and disposal of a Regulated Substance from the Project site.

26.3    **No Use Without Written Consent:** Subcontractor shall not use any Regulated Substance on the Project unless the use of such Regulated Substance is specifically required or permitted by this Subcontract or the Contract Documents. Any such use of any Regulated Substance must strictly comply with all provisions of the Contract Documents and all applicable laws.

26.4    **Conditions of Use:** If, as required or permitted by this Subcontract or the Contract Documents, a Regulated Substance of a type which by law an employer is required to notify its employees is used on the Project by Subcontractor, its sub-subcontractors, or anyone else directly or indirectly employed by Subcontractor, then prior to exposure of any person on the site to such substance, Subcontractor shall notify Hunt in writing of the chemical composition thereof in sufficient detail and time, including, but not limited to providing a Material Safety Data Sheet for such substance, to permit compliance with any applicable laws by Hunt, other subcontractors and other persons or entities on the Project and to permit Hunt to coordinate Subcontractor's activities with other trades in order to avoid any cost or impact to Hunt or any other person or entity.

26.5    **Indemnification by Subcontractor:** If Subcontractor uses a Regulated Substance on the Project, Subcontractor shall indemnify and hold harmless Hunt, the Owner, and any other person or entity required by this Subcontract or the Contract Documents from any claims whatsoever arising out of Subcontractor's use, storage, treatment or disposal of any Regulated Substance. Subcontractor shall reimburse Hunt for any attorneys' fees, disbursements or other costs paid or incurred by Hunt as a result of such claims, including, but not limited to, the fees of any expert or consultant.

STANDARD SUBCONTRACT AGREEMENT SUBKFRMW4HGG 07/07/0

HU00024196



Alternatively, Hunt, at Hunt's option, may deduct any such attorney's fees, disbursements or other costs, including, but not limited to, the fees of any expert or consultant, from the Subcontract Price.

26.6    **Discovery of Regulated Substances by Subcontractor:** If Subcontractor encounters substances on the Project which Subcontractor reasonably believes to be asbestos, polychlorinated biphenyls (PCB's) or other Regulated Substances and which are in a form, location or quantity such that Subcontractor, Hunt or Owner are required to take action under applicable law, Subcontractor shall immediately stop the Work in the area affected and immediately report, in writing, the condition to Hunt. Work in the affected area shall not resume until the Owner or the Designer has certified that the area is a safe workplace and that any asbestos, polychlorinated biphenyls (PCB's) or other Regulated Substances as defined in Section 26.1 which were discovered have been removed or controlled in accordance with applicable law.

26.7    **Claims Relating to Delay and Regulated Substances:** If Subcontractor has claims resulting from delays, disruptions or interferences because of the discovery of asbestos, polychlorinated biphenyls (PCB's) or other Regulated Substances pursuant to Section 26.6 above, Subcontractor hereby grants Hunt the sole and exclusive right to determine:

(a)    when such claims should be pursued;

(b)    the extent to which such claims should be pursued; and

(c)    the method by which such claims should be pursued.

Subcontractor expressly waives and releases any other rights to damages or additional compensation as a result of or relating to delays, disruptions or interferences arising from the discovery of asbestos, PCB's or other Regulated Substances pursuant to Section 26.6 above.

## SECTION 27
### Authorized Representatives and Notices

27.1    **Notices to Hunt:** All notices to Hunt shall be in writing, addressed to Hunt's Authorized Representative and delivered to its address shown on Section 1.4. A copy of any such notice also shall be delivered to Hunt's job site office.

27.2    **Notices to Subcontractor:** All notices to Subcontractor shall be in writing, addressed to Subcontractor's Authorized Representative and delivered to the address shown on Section 1.5.

27.3    **Effective Date of Notices:** Notices shall be effective immediately upon delivery to the party to whom it is addressed.

27.4    **Definition of Delivery:** Delivery of notices may be by hand, facsimile transmission or overnight express courier. Copies of notices may be delivered by mail.

27.5    **Authorized Representatives:** The Authorized Representative of Hunt and Subcontractor who are authorized to send or receive notices or sign Change Orders, extra work orders or back charges are identified on Attachment I.

STANDARD SUBCONTRACT AGREEMENT SUBK-FRM-WHOG 07/07/0

HU00024197



## SECTION 28
### Inspection and Defective Work

28.1 **Inspection and Defective Work:** The Subcontractor shall at all times provide sufficient, safe and proper facilities for the inspection of the Work by the Owner, Hunt, the Designer and their authorized representatives in the field, at shops or at any other place where materials or equipment for the Work are in the course of preparation, manufacture, treatment or storage. The Subcontractor shall, within twenty-four (24) hours after receiving written notice from Hunt, proceed to take down all portions of the Work and remove from the Project premises all materials, whether worked or unworked, which the Designer or Hunt shall condemn as unsound, defective or improper or are in any way failing to conform to this Subcontract or the Contract Documents, and the Subcontractor, at its own cost and expense, shall replace the same with proper and satisfactory work and materials and make good all work damaged or destroyed by or as a result of such unsound, defective, improper or nonconforming work or materials or by the taking down, removal or replacement thereof, including damage to the work of others.

## SECTION 29
### Guarantee

29.1 **Scope of Guarantee:** Subcontractor guarantees:

    (a)    That Subcontractor's Work, including without limitation, labor, materials, equipment and its functionality and performance will be free from defects, conform to and meet the requirements of this Subcontract and the Contract Documents; and

    (b)    That Subcontractor will furnish any separate guarantee or extended warranty for Subcontractor's Work, or portions thereof, required by this Subcontract or the Contract Documents.

29.2 **Subcontractor's Obligation:** Subcontractor, at its own expense, in accordance with the requirements of the Contract Documents and this Subcontract, shall repair or replace any portion of the Work which proves defective within one (1) year (or such longer period as may be specified in the Contract Documents, provided in any separate guarantee or extended warranty, or required by law) from the date of acceptance of the Work as defined in the Contract Documents and repair any damage to other work caused by the defect or the repair of the defect. If Subcontractor fails to begin or complete any repair or replacement within the time directed by Hunt, Hunt may undertake, but shall not be obligated for Subcontractor's benefit to undertake, such repair or replacement at Subcontractor's expense, and Subcontractor shall reimburse Hunt within ten (10) days of demand for any costs incurred, including ten percent (10%) for overhead and ten percent (10%) for profit.

## SECTION 30
### Termination for Cause

30.1 **Termination for Cause:** If at any time Subcontractor:

    (a)    fails or refuses to supply sufficient labor, materials, tools, equipment or supervision;

    (b)    fails or refuses to perform the Work promptly and diligently;

    (c)    fails to meet the Project Schedule;

HU00024198



(d)    causes delay, interference or stops the work of Hunt or any other contractors or subcontractors;

(e)    fails or refuses to perform any of its obligations under this Subcontract or the Contract Documents; or

(f)    becomes bankrupt, insolvent or goes into liquidation (either voluntarily or under an order of a court of competent jurisdiction), or makes a general assignment for the benefit of creditors, or otherwise evidences financial incapacity;

then in any of such events, each of which shall constitute a material default under this Subcontract, Hunt shall have the right, in addition to any other rights and remedies provided under this Subcontract, the Contract Documents or by law, after three (3) days' written notice to Subcontractor:

(1)    to order Subcontractor to add manpower or to work overtime or additional shifts; and/or

(2)    to delay payment of all or part of the Subcontract Price until Subcontractor conforms to the Project Schedule; and/or

(3)    to take over and perform through itself or through others the Subcontractor's Work until, in Hunt's sole judgment, Subcontractor's default has been cured, and deduct from the Subcontract Price the cost thereof plus an overhead fee of ten percent (10%) and a profit of ten percent (10%); and/or

(4)    to augment Subcontractor's forces with additional labor and materials until, in Hunt's sole judgment, Subcontractor's default has been cured and deduct from the Subcontract Price the cost thereof plus an overhead fee of ten percent (10%) and a profit of ten percent (10%); and/or

(5)    to terminate all or any portion of Subcontractor's right to proceed under the Subcontract and to enter upon the premises and take possession, for the purpose of completing that portion of the Work affected by such termination, of all Subcontractor's records, materials, tools and equipment and all other items relating to that subject portion of Subcontractor's Work on the Project, including materials stored off-site for use in completing Subcontractor's Work. In case of such termination of the employment of the Subcontractor, the Subcontractor shall not be entitled to receive any further payment under this Subcontract with respect to such portion of the Work until that portion of the Work shall be wholly completed to the satisfaction of Hunt, the Owner and the Designer and shall have been accepted by them, at which time, if the unpaid balance of the amount to be paid under this Subcontract shall exceed the cost and expense incurred by Hunt in completing said portion of the Work, such excess shall be paid by Hunt to the Subcontractor as set forth below; but if such cost and expense shall exceed such unpaid balance, then the Subcontractor shall pay the difference to Hunt as set forth below. Such cost and expense shall include not only the cost of completing said portion of the subject portion of Work to the satisfaction of Hunt, the Owner and the Designer, and of performing and furnishing all labor, services, materials, equipment, and other items required therefor, but also all losses, damages, costs and expenses, including reasonable attorneys' fees and disbursements sustained, incurred or suffered by

29                STANDARD SUBCONTRACT AGREEMENT SUBFRANNNCC

HU00024199

reason of or resulting from the Subcontractor's default. If the unpaid balance of the Subcontract Price exceeds the cost incurred by Hunt, plus an overhead fee of ten percent (10%) and a profit of ten percent (10%), and no claims arising from Subcontractor's Work are threatened or pending, Subcontractor will be paid the excess; but if such cost plus overhead of ten percent (10%) and profit of ten percent (10%) exceeds the unpaid balance, then Subcontractor shall pay the difference to Hunt within ten (10) days of written demand by Hunt.

30.2    **Additional Damages Chargeable to Subcontractor:** In addition to the costs specified in Section 30.1 above, Hunt may deduct from the Subcontract Price and/or otherwise recover from Subcontractor an amount sufficient to indemnify Hunt and hold Hunt harmless from any loss or liability arising out of Subcontractor's Work or other involvement in the Project, including, but not limited to, the costs of any claims by others resulting from Subcontractor's acts or omissions including any judgment or award to or settlement with the claiming party and reasonable attorneys' fees and disbursements incurred defending or resolving such claims.

30.3    **Termination of Owner by Hunt:** In the event Hunt terminates its contract with the Owner due to default on the part of the Owner, Subcontractor shall not be entitled to recover from Hunt more than the sum actually received by Hunt from Owner for work performed and materials, supplies and equipment furnished by Subcontractor pursuant to this Subcontract. The rights and remedies of Hunt, other subcontractors and third parties shall be taken into consideration in Hunt's determination of Subcontractor's pro rata share of any payments received by Hunt from the Owner.

30.4    **Termination of Hunt by Owner:** In the event the Owner terminates its contract with Hunt, Hunt may deliver a notice of termination to Subcontractor, whereupon Subcontractor shall follow Hunt's directions which may include a direction to Subcontractor to stop work and terminate its Work pursuant to Section 31. If the Owner elects to assume Hunt's rights and obligations under this Subcontract, then, in that event, Subcontractor shall perform the remainder of its duties under this Subcontract for Owner, and will look solely to Owner for further payments and performance of all outstanding obligations which Hunt would have owed to Subcontractor under this Subcontract. The duties, rights and remedies of Hunt and Subcontractor pursuant to this Section shall be governed by the rights and remedies provided by applicable law, the Contract Documents and this Subcontract.

30.5    **Receipt of Payment from Owner Condition Precedent for Payment for Termination:** The right of Subcontractor to payment from Hunt for any termination shall be subject to the provisions of Section 5 and the Contract Documents. In no event shall Subcontractor be entitled to recover unexpended overhead, unearned profit, or damages as the result of any such termination.

SECTION 31
Termination for Convenience

31.1    **Hunt's Right to Terminate:** The performance of the Work may be terminated at any time in whole, or from time to time in part, by Hunt for its convenience. Any such termination shall be effected by delivery to Subcontractor of a written notice ("Notice of Termination") specifying the extent to which performance of the work is terminated and the date upon which termination becomes effective.

31.2    **Subcontractor's Obligations Upon Termination:** After receipt of a Notice of Termination, and except as otherwise directed by Hunt, Subcontractor shall, in good faith, and to the best of its ability, do all things necessary, in the light of such notice and of such requests in implementation thereof as

HU00024200

Hunt may make, to assure the efficient, proper closeout of the terminated work (including the protection of Owner's property). Among other things, the Subcontractor shall, except as otherwise directed or approved by Hunt:

(a)    stop the Work on the date and to the extent specified in the Notice of Termination;

(b)    place no further orders or subcontracts for services, equipment or materials except as may be necessary for completion of such portion of the Work as is not terminated;

(c)    terminate all orders and subcontracts to the extent that they relate to the performance of Work terminated by the Notice of Termination;

(d)    assign to Hunt, in the manner and to the extent directed by Hunt, all of the right, title and interest of Subcontractor under the orders or subcontracts so terminated, in which case Hunt shall have the right to settle or pay any or all claims arising out of the termination of such orders and subcontracts;

(e)    with the approval of Hunt, settle all outstanding liabilities and all claims arising out of such termination or orders and subcontracts; and

(f)    deliver to Hunt, when and as directed by Hunt, all records, documents and all property which, if the Work had been completed, Subcontractor would be required to account for or deliver to Hunt, and transfer title to such property to Hunt to the extent not already transferred.

31.3    **Equitable Adjustment:**  In the event of such termination, there shall be an equitable reduction of the Subcontract Price to reflect the reduction in the Work, and no cost incurred after the effective date of the Notice of Termination shall be reimbursable unless it relates to carrying out the unterminated portion of the Work, or taking required closeout measures.

31.4    **Hunt's Right to Convert to Termination for Convenience:**  In the event any termination of Subcontractor for cause under this Subcontract is later determined to have been improper, the termination shall be automatically converted to a termination for convenience, and the Subcontractor shall be limited in its recovery strictly to the compensation provided for in this Section.

SECTION 32
Damages for Delay

32.1    **Delay Damages:**  Subcontractor shall be liable to Hunt for all damages, including any liquidated damages payable to the Owner for delays caused in whole or in part by Subcontractor or Subcontractor's employees, agents, sub-subcontractors, material suppliers or any other person or entity for whose acts Subcontractor may be liable.  In addition to such damages assessed against Hunt by Owner, Subcontractor also shall be liable for all other actual damages to Hunt caused or contributed to by delays caused in whole or in part by Subcontractor or Subcontractor's employees, agents, sub-subcontractors, material suppliers or any other person or entity for whose acts Subcontractor may be liable.  In the event damages incurred by Hunt are caused both by Subcontractor and another entity for whose acts Subcontractor is not liable, Hunt shall have the right to reasonably apportion said damages among the responsible parties, and such apportionment shall be binding on the Subcontractor.

31

HU00024201

## SECTION 33
### Indemnification

33.1    **Indemnification for Claims:**  Subcontractor shall defend, indemnify and hold harmless Hunt, the Owner and such other persons or entities as the Contract Documents or this Subcontract may require against any and all claims arising directly or indirectly out of Subcontractor's Work or other involvement with the Project, including, but not limited to, claims for:

    (a)    any alleged or actual infringement or violation of any letters patent, patent right or license;

    (b)    injury to or death of any person, including employees of Subcontractor;

    (c)    damage to property;

    (d)    defects in materials or workmanship;

    (e)    costs of travel, lodging and related expenses for personnel and workers;

    (f)    cost of transportation for freight or express charges for materials or equipment related to Subcontractor's Work;

    (g)    violations of any laws, including, without implied limitation, the requirements noted in Sections 22, 23 and 24 hereunder;

    (h)    violations of Section 26 relating to Hazardous or Regulated Substances,

    (i)    failure of Subcontractor to pay its obligations as is required by this Subcontract;

    (j)    any other act or omission of Subcontractor, its officers, agents, employees, servants, sub-subcontractors or material suppliers; or

    (k)    damage to other contractors, subcontractors, suppliers or any other person or entity.

It is the intent of this Subcontract that Subcontractor defend, indemnify and hold harmless Hunt, the Owner and such other persons or entities as the Contract Documents may require to the fullest extent permitted by law, even if it is alleged that Hunt, the Owner, or such other persons or entities individually or collectively contributed to the alleged wrongdoing, were individually or collectively, actively or passively negligent or are individually or collectively liable because of a nondelegable duty. Subcontractor is not obligated to defend, indemnify and hold harmless Hunt or Owner for their sole negligence or willful misconduct if such indemnification is contrary to law, but if such indemnification is not contrary to law, then Subcontractor shall defend, indemnify and hold harmless Hunt, the Owner and such other persons or entities as the Contract Documents and this Subcontract may require for any liability arising directly or indirectly out of Subcontractor's Work or other involvement with the Project to the fullest extent permitted by law, including indemnification for the sole negligence of Hunt, the Owner and/or such other persons or entities as this Subcontract or the Contract Documents may require.  Subcontractor has included these indemnification obligations in its Subcontract Price

33.2    Security and Insurance:  In addition to the insurance coverage required by Attachment V, Subcontractor shall provide any additional security Hunt deems reasonably necessary to fully protect Hunt, the Owner and such other persons or entities as the Contract Documents may require against

STANDARD SUBCONTRACT AGREEMENT SUBLFENW4H3G 07/10/00

HU00024202



any loss or liability arising out of Subcontractor's Work or other involvement in the Project. Hunt may retain from payments due or to become due under the Subcontract an amount sufficient to indemnify and hold harmless Hunt, the Owner and such other persons or entities as the Contract Documents may require from any liability or damage, including reasonable attorneys' fees and disbursements.

33.3    **Indemnification Obligations are Independent:** Subcontractor's indemnification obligations set forth in this Section 33 and elsewhere in this Subcontract are independent and separately enforceable.

33.4    **Condition Precedent to Payment:** The full and faithful performance of Subcontractor's indemnification obligations is an express condition precedent to Subcontractor's right to receive payment in whole or in part of the Subcontract Price. Hunt's indemnity rights granted by this Subcontract are in addition to all other remedies to which Hunt is entitled by this Subcontract, by the Contract Documents or by law.

33.5    **Subcontractor Responsibility to Defend, Indemnify and Hold Harmless Hunt:** Whenever this Subcontract requires Subcontractor to defend, indemnify and hold Hunt, the Owner, or any other person or entity harmless, from a claim by any person or entity arising out of this Subcontract, Subcontractor shall pay to Hunt:

    (a)    the amount of any claim as determined by Settlement, Judgment or Award;

    (b)    the costs incurred by Hunt with respect to any negotiations, arbitration, litigation, or other proceedings involving Hunt, arising out of or relating to this Subcontract, including but not limited to:

        (1)    all activities reasonably necessary for the defense of any such matter;

        (2)    all efforts necessary to enforce the terms of this Subcontract or to protect the interests of Hunt; and

    (c)    all reasonable attorneys' fees and disbursements expended or incurred by Hunt.

Subcontractor shall pay to the person or entity entitled to payment under this Subcontract or the Contract Documents, all amounts required by this Subcontract or the Contract Documents.

33.6    **Subcontractor's Responsibility for Attorneys' Fees, Disbursements, Costs, etc.:** Whenever reasonable attorneys' fees, disbursements or costs are referred to in this Subcontract, such terms include, without limitation, the following expenses paid or incurred by Hunt or for which Hunt is liable to others under the Contract Documents or applicable law:

    (a)    attorneys' fees;

    (b)    paralegal fees;

    (c)    appraisers' fees;

    (d)    documentary evidence and expert witness costs;

STANDARD SUBCONTRACT AGREEMENT SUBAFRMN4HCG 07/07 ?

HU00024203

(e)    arbitrators' fees and expenses;

(f)    court reporter charges;

(g)    publication costs;

(h)    title searches and examinations;

(i)    filing fees, recording fees, copying charges and the like; travel, lodging and meal expenses;
(j)    reasonable hourly charges for the time of Hunt's personnel; and

(k)    any other reasonable costs incurred by Hunt.

33.7    **Obligation of Subcontractor to Defend Hunt:** Subcontractor's obligation to indemnify and hold Hunt harmless is in addition to Subcontractor's obligation to defend Hunt. With respect to any obligation of Subcontractor to indemnify and hold Hunt harmless, Hunt, at its sole option, also may tender its defense to Subcontractor. If Hunt tenders its defense to Subcontractor, then Subcontractor shall defend Hunt at Subcontractor's expense. Hunt shall have the right to approve any counsel Subcontractor intends to use in such defense, which approval shall not be unreasonably withheld. If Hunt chooses to defend itself, then Subcontractor shall pay Hunt's costs of defense as provided in Sections 33.5 and 33.6. If, after tendering its defense to Subcontractor, Hunt becomes dissatisfied as to the quality or diligence of the defense provided by Subcontractor or if conflicts of interest arise during the course of the defense provided by Subcontractor, then Hunt may employ its own counsel to participate in its defense or to resume its own defense and Subcontractor shall pay Hunt the costs of such defense as provided in Sections 33.5 and 33.6.

**SECTION 34**
**Choice of Law and Dispute Resolution**

34.1    **Choice of Law:** This Subcontract shall be governed by and construed in accordance with the laws of the State in which the Project is located.

34.2    **Dispute Resolution:** If the Subcontractor has a dispute with Hunt regarding the application or interpretation of any provision of this Subcontract or the breach thereof, the Subcontractor shall, within ten (10) days after such dispute arises, submit its claim, in writing, to Hunt attaching all supporting documentation. Should additional documentation or information be requested by Hunt, the Subcontractor shall provide such documentation and/or information promptly. Within thirty (30) days after receiving the Subcontractor's written claim and all requested documentation and information, Hunt shall respond with its position and proposed resolution of the dispute. Should the Subcontractor reject Hunt's proposed resolution, the Subcontractor shall proceed as described below. As a condition precedent to initiating any court or arbitration proceeding as provided for below, the Subcontractor must first comply fully with the provisions set forth herein. Nothing in this Section 34.2 shall be construed as changing or extending any time period stated elsewhere in this Subcontract with respect to when Subcontractor is required to provide notice to Hunt concerning an event for which Subcontractor seeks either an adjustment to the Subcontract Price or an extension of its time of performance.

34.3    **Hunt's Right to Select Forum:** Hunt shall have the sole and exclusive right to determine whether any dispute, controversy or claim arising out of or relating to this Subcontract, or breach thereof, shall be submitted to a court of law or arbitrated under the auspices of the American Arbitration

HU00024204

Association in accordance with its Construction Industry Arbitration Rules. The venue of such court action or arbitration proceeding shall be in the jurisdiction in which the Project is located, or in Marion County, Indiana, as Hunt, in its sole discretion, may elect to the exclusion of all other jurisdictions. The Subcontractor must make a written request to Hunt to determine whether the dispute shall be submitted to a court or to arbitration. Hunt shall respond to the Subcontractor's request within ten (10) business days after receipt thereof. Hunt's response shall identify whether the matter will be submitted to a court or to arbitration and the Subcontractor shall submit itself to the personal jurisdiction and venue of the court or arbitration proceeding selected by Hunt, to the exclusion of all other forums and jurisdictions. The Subcontractor waives any and all rights to contest Hunt's selection of forum, including, but not limited to, any rights based upon forum non-conveniens.

(a)     In the event of a dispute between the Owner and Hunt or Hunt and any other person or entity in which Subcontractor's Work is at issue, Hunt may join Subcontractor into any proceeding in which such dispute is pending.

(b)     In the event Hunt selects arbitration, the award of the arbitrators shall be final and binding, and judgment upon the award may be entered in any court having jurisdiction thereof. The Arbitrator(s) shall follow the law. The Arbitrator(s) shall have no jurisdiction to hear claims for or award punitive damages.

(c)     In the event the matter is submitted to a court, Hunt and Subcontractor hereby agree to waive their right to trial by jury and covenant that neither of them will request trial by jury in any such litigation.

34.4    Limitation of Issues: The Subcontractor acknowledges that should a dispute proceed pursuant to this Section, then the only issues that the Subcontractor may raise in such proceedings are those that were specifically included in its written claim submitted in accordance with Section 34.2. Failure to specifically describe an issue in the written claim within the time limits provided constitutes a waiver of that claim and shall preclude the Subcontractor from raising such claim in any court or arbitration proceeding. Should any dispute between Hunt and the Subcontractor proceed to arbitration or to court, that forum shall award to the prevailing party all of its attorney's fees, disbursements or costs as defined in Section 33.6 incurred in connection with the prosecution or defense of the dispute. Pending final resolution of any dispute, the Subcontractor shall continue to fulfill all of its obligations under this Subcontract.

## SECTION 35
## Miscellaneous Provisions

35.1    Invalidity of any Provision: If any part of the Subcontract is declared invalid by a court of competent jurisdiction or by a valid arbitration proceeding, the part held invalid shall not in any manner affect the validity of the remaining parts of the Subcontract and all such remaining parts shall be held to be the full agreement of the parties.

35.2    Neutral Interpretation: The form of Subcontract has been prepared initially by Hunt. However, in the event of any dispute over its meaning or application, the Subcontract shall be interpreted fairly and reasonably and neither more strongly for, nor more strongly against, either party.

35.3    Successors and Assigns: The Subcontract shall be binding upon and inure to the benefit of the parties and their successors and assigns.

35

STANDARD SUBCONTRACT AGREEMENT SUBI-FRM/WHLCG 07/07/00



35.4    **Relationships:** Except as expressly provided herein, nothing contained in this Subcontract shall create any contractual or third party beneficiary relationship between any parties other than Hunt and Subcontractor.

35.5    **No Oral Modifications:** This Subcontract may be amended only by a written document signed on behalf of Hunt and Subcontractor by authorized persons designated in Section 27.

35.6    **Merger of Previous Proposals into this Subcontract:** All previous proposals, promises and understandings relating to the subject matter of this Subcontract, whether written or oral, are null and void and have been replaced by the terms and conditions contained in this Subcontract.

35.7    **Captions:** The captions in this Subcontract are for convenience only and are not a part of this Subcontract.

35.8    **Waiver:** The waiver by Hunt of any breach or default of this Subcontract by Subcontractor shall not be construed as a waiver of any other breach or default of the same or any other terms or conditions of this Subcontract. Forbearance from demanding strict compliance with any term or provision of this Subcontract shall not operate as a waiver and shall not prevent Hunt from subsequently demanding strict compliance therewith.

35.9    **Prohibition on Assignment or Transfer:** Subcontractor shall not assign the Subcontract or any payments due or to become due thereunder without Hunt's written consent. Any assignment without Hunt's consent shall be void and assignees shall acquire no rights in the Subcontract or in any amount due or to become due. Subcontractor will not permit the beneficial interest of its sub-subcontractors to be assigned, pledged or transferred without Hunt's written consent. Consent to any assignment by Hunt shall not relieve Subcontractor of its primary responsibility to Hunt for full performance of the Subcontract, and Subcontractor shall be liable to Hunt for all acts and omissions of its sub-subcontractors and assigns.

STANDARD SUBCONTRACT AGREEMENT SURE FIRM/HCG 07/07/C

HU00024206

## SECTION 36
### Acknowledgment of Review of Subcontract

36.1    **Subcontractor's Acknowledgment:** Prior to signing this Subcontract, Subcontractor's Authorized Representatives have read and reviewed this Subcontract and all Attachments or amendments thereto, and have read and reviewed the Contract Documents. At its discretion, Subcontractor has had the opportunity to consult its attorney regarding this Subcontract. By signing this Subcontract, Subcontractor represents that it fully understands the terms and conditions of this Subcontract, the Attachments and amendments thereto and the Contract Documents and accepts them as binding.

Therefore, in consideration of the mutual promises and agreements expressed herein and intending to be legally bound, this Subcontract is hereby executed by Subcontractor and Hunt.

[    ]                                              HUNT CONSTRUCTION GROUP, INC.
The Poole and Kent Corporation

By _____                     By _____
    James R. Parker, III
Title  Contract Administrator                       Title  Vice President

Date  June 07, 2004                                 Date  6/16/04

STANDARD SUBCONTRACT AGREEMENT SUBKF0.0/P4HCG 07/07/0

HU00024207

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318          SUBCONTRACTOR: .The Pool and Kent Corporation

ATTACHMENT I

AUTHORIZED REPRESENTATIVES

A.    The following are the duly Authorized Representatives of HUNT and Subcontractor who are
      authorized to send or receive notices or sign Change Orders, extra work orders or back charges.

      On behalf of HUNT:

      Harry Ferguson                    Executive Vice President
      Name                              Title

      Peter R. Clark                    Vice President
      Name                              Title

      Larry Weisman                     Construction Manager
      Name                              Title

      Thomas G. Page                    Project Manager
      Name                              Title

      On behalf of Subcontractor:

      W. David Stoffregen               President and CEO
      Name                              Title

      Adam E. Snavely                   Vice President
      Name                              Title

      James R. Parker, III              Contract Administrator
      Name                              Title


      DATE: February 24, 2004

      HUNT          SUBCONTRACTOR

HU00024208

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318          SUBCONTRACTOR: The Pool and Kent Corporation

ATTACHMENT II

**SUBCONTRACTOR'S SCOPE OF WORK**

A.    GENERAL SCOPE

This Subcontractor shall furnish all labor, materials, tools, equipment, supplies, supervision, and engineering, all inclusive of overhead and profit necessary to furnish and install complete, unless specifically stated to the contrary within this document, the Scope of Work defined within the Contract Documents as identified in the Document and Drawing Listing.

The Scope of Work shall more specifically include, but not necessarily be limited to, the work outlined under the requirements of Division I (General Requirements), and the Specification Sections in part or in whole as may be applicable for the work as further clarified for each Subcontract in Paragraph "B", "C", "D", "E", and "F". All Subcontractors are responsible for reviewing all of the Contract Documents for any reference to related work outlined in the other Sections. The assignment of work made herein these Scope of Work clarifications, when in conflict with that stated or implied by the Drawings and Specifications, shall govern over the Drawings and Specifications. If the Subcontractor is assigned work of a trade he does not normally employ, he shall either subcontract the work to a subcontractor employing that trade or directly employ members of the appropriate trade to perform the work. The Subcontractor, by signing the Subcontract Agreement, acknowledges that the GENERAL CONDITIONS ARE NOT BASED ON THE STANDARD AIA GENERAL CONDITIONS, AND IN SOME RESPECTS, MATERIALLY DIFFER FROM THE AIA GENERAL CONDITIONS. By signing the Subcontract Agreement, the Subcontractor represents that he has read the Contract Documents, INCLUDING THE GENERAL CONDITIONS, that the Subcontract Amount has been based thereon and that he agrees to be bound thereby

B.    GENERAL CLARIFICATIONS

1.    As a matter of clarification, the words, "Hunt Construction Group, Inc", "Contractor", and "Construction Manager" as used in the Scope of Work are synonymous. The words "Subcontractor" and "Material Supplier" or "Vendor" are synonymous.

2.    The storage and delivery of materials furnished, as a part of the Scope of Work shall be coordinated with Hunt Construction Group, Inc's Project Manager.

3.    All Contract Documents are the property of the Owner and shall be returned to him in good condition upon the request of the Contractor.

4.    The Subcontractor shall provide all field engineering, field layout, surveying, and verification of field dimensions required for the Scope of Work of its Subcontract, except as note otherwise in the Specific Clarifications.

5.    In the performance of the Scope of Work, the Subcontractor shall be bound to assume toward Hunt Construction Group, Inc. all of the obligations and responsibilities that Hunt Construction Group, Inc. assumes to The Owner in the General Conditions of the Agreement between The Owner and Hunt Construction Group, Inc., and Hunt Construction Group, Inc. agrees to assume toward the Subcontractor all obligations and responsibilities that The Owner assumes toward Hunt Construction Group, Inc.

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT KG 07/07/89

HU00024209



HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318          SUBCONTRACTOR: The Pool and Kent Corporation

6.  The Subcontractor shall assume entire responsibility and liability for any and all damage or injury or any kind or nature whatever (including death resulting there from) to all persons and to all property, caused by, resulting from, arising out of, or occurring in connection with the execution of the work covered by this Subcontract   Risks of loss or damage by fire or other causes, to property furnished by the Subcontractor and stored off-site, shall be the sole responsibility of the Subcontractor.

7.  The Contractor shall provide an on-site source for drinking water.  It shall be the Subcontractor's responsibility to collect water from the source, chill it, if required, and distribute it to his employee's work area.  Water required for dust control and to assure proper moisture content of fill material for compaction shall be provided from other sources on site by the Subcontractor and transported by him to the location where required for his work.

8.  Insurance shall be required as described elsewhere in the Subcontract.  A Certificate of Insurance shall be supplied to Hunt Construction Group, Inc. prior to any work beginning in the field.  This Subcontractor shall maintain at least the minimum coverage limits indicated within the Subcontract, with the Owner and Hunt Construction Group, Inc. named as additional insured.

9.  All work of the Subcontract shall comply with governing regulations and code requirements.

10. Temporary toilet facilities, complying with governing regulations, shall be furnished by the Contractor and will be available for use by all Subcontractors' employees.

11. The Subcontractor shall furnish all scaffolding and/or lifts required for the performance of the Scope of Work of this Subcontract

12. Any and all dewatering beyond the deep well system required for the execution of the Scope of Work shall be the responsibility of the Subcontractor.

13. Subcontractor shall be responsible for the security and protection of his own work, materials, tools, equipment, and any materials furnished by others, which he receives, handles and installs.

14. Subcontractor shall be responsible for all barriers or protection necessitated by the performance of his work in accordance with all safety rules and regulations of the construction industry, including, but not limited to those as regulated by OSHA.

15. In performance of the Work, Subcontractor shall take the necessary precautions and maintain a reasonable dust control program.

16. Where testing is required by the technical specification sections and is to be performed by an independent testing firm, others shall pay the expense of such testing.  Retesting due to improper work or negligence of the Subcontractor shall be at the Subcontractor's expense.

17. Workmanship will be strictly monitored, with only first class workmanship being accepted.  Work, which is deemed unacceptable by the Contractor, shall be removed by the Subcontractor and replaced at no additional cost to the Contractor and/or Owner.  Defective work not removed by the Subcontractor within a specified time period after notification by the Contractor, will be removed and replaced by the Contractor at the Subcontractor's expense.  Expense shall include all damages for time delays and other subcontractors, if applicable

HU00024210

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO 15318          SUBCONTRACTOR: The Pool and Kent Corporation

18. The Subcontractor shall daily clean up the area of all trash and debris resulting from the performance of the Scope of Work of his Subcontract  The Contractor shall furnish at the job site one or more dumpster containers in which the subcontractor shall place trash and debris during the clean up of the site.  The Contractor shall have the dumpsters serviced as required.

19. All rigging, off loading, and hoisting for staging, storage or installation of material and equipment furnished under this Scope of Work shall be the responsibility of this Subcontractor.  It will also be the responsibility of this Subcontractor to schedule / coordinate this work with Hunt Construction Group, Inc. Movement or relocation, directed by Hunt, of any and all materials will be done by this Subcontractor.

20. All Subcontractors are required to coordinate the interface of their work with that of other trades and bring to the attention of Hunt Construction Group, Inc. any discrepancies immediately in writing  Failure to do so will not relieve any Subcontractor of its responsibility to perform its work.

21. All Subcontractors shall have the responsibility to protect the finish product of other trades and shall be fully responsible for restoration if this Subcontractor's employees inflict damages to the work of the Owner, the Contractor, or to other trades.

22. The Subcontractors assume responsibility to visit the jobsite to inspect and familiarize themselves with the project layout, conditions, site access, etc.

23. The Subcontractor shall be responsible for ascertaining the union affiliations for all work performed and shall hold the Owner and Hunt Construction Group, Inc. harmless from all damages and delays resulting from improper affiliations.

24. In accordance with the requirements of the Contract Agreement between Hunt Construction Group, Inc. and the Owner, this Subcontract shall be assignable to the Owner upon the Owner's notification to Hunt Construction Group, Inc., in writing, of Owner's election to have such assignment become effective and the termination of the Contract Agreement between the Owner and Hunt Construction Group, Inc  The Owner's right to make such election of assignment shall not, prior to the exercise thereof, make the Owner a party to such Subcontract.

25. All Subcontractors using the existing electrical power supply shall provide OSHA approved tools and equipment necessary for its work.

26. A service for temporary power shall be furnished and installed from the existing building power supply as directed by Hunt Construction Group, Inc by the Electrical Subcontractor  A ground fault interrupt protection system per OSHA shall be used.  This system shall be removed by the Electrical Subcontractor in its entirety when directed by Hunt Construction Group, Inc. Temporary power is specifically for hand tools.  Welding equipment shall be stand-alone fuel powered provided by each Subcontractor as required.  Electrical Subcontractor shall furnish and install the following temporary power with the building.

   A.    Power centerboards with GFI receptacles for small tools spaced at a maximum of 200 ft intervals on the floors with load centers as needed to supply maximum outlets and lights.  An additional load center shall be located at the roof level

   B.    General construction lighting shall be based on OSHA standards for foot-candles of illumination intensity per square foot.

HU00024211

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318           SUBCONTRACTOR: The Pool and Kent Corporation

    C        Each Subcontractor as required shall supply incidental task lighting.

27. All changes to the Scope of Work or additional work added to the scope shall be submitted in accordance with Section 18 of the Subcontract Terms and Conditions and Agreed to by mutual acceptance of a lump sum   Proposals must be properly itemized and supported by sufficient substantiating data to permit evaluation, provided, however, that at no time shall such lump sum exceed actual cost for labor and materials plus 10% combined fee and overhead.

28. **SCHEDULE**

Time is of the Essence  Commencement of the work, continuing performance and progress of the work, and the achievement of final completion of the Project, all in strict accordance with the Schedule are of the essence.

The Contractor will provide and monitor a detailed construction schedule for the progress and completion of each phase of the work. This Subcontractor shall provide Scheduling Input for his Scope of Work and take whatever measures are necessary to maintain the Project Schedule.

29. The delivery of material into the building and site shall be through the designated entrances.

30. This Subcontractor shall be responsible not to cause physical damage to the project or any part thereof, or constitute a nuisance thereon, impair the appearance, value of utility of the project, discharge objectionable fumes, vapors or odors into the building air conditioning system of flues or vents not designed to relieve them, or impair or interfere with any of the building services or the proper and economic cleaning, heating, air conditioning, ventilating or other servicing of the project

31. The Subcontractor shall provide competent full-time on-site supervision for the performance of its work. This supervision shall be responsible for any and all lower-tier subcontractors.

32. Smoking is not permitted in the existing building or at any of the building entrances

33. All personnel will be required to wear proper work attire at all times.

34. This Subcontractor shall provide any misc. steel including steel for floor, wall, or roof penetrations – not specifically sized on the structural drawings - required for a complete and proper installation of their work. All steel work shall be in accordance with Division 5.

35. Subcontractor shall maintain as built drawings and material & equipment status logs at the jobsite. The material & equipment status logs shall be updated and submitted with the monthly payment requests. The as built drawings, representative of the current conditions, will be made available for review by the Project Manager on a monthly basis, in conjunction with the monthly payment requests.

36. This Subcontractor shall submit the submittal log, as outlined elsewhere in the Subcontract Agreement, within 20 business days from receipt of the Subcontract Agreement.

37 Subcontractor will cooperate with Hunt in completing a job cost history report at project completion.

HU00024212

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318          SUBCONTRACTOR: The Pool and Kent Corporation

38. Where the documents require verification, upon request from Hunt, this Subcontractor shall forward a written report indicating and substantiating verification and compliance with the documents

39. This Subcontractor shall conduct all construction activities in a manner such that they do not impede or adversely impact the daily activities of the adjacent building tenants or Owner.

40. This Subcontractor shall ensure that all life safety systems remain active throughout all construction activities

41. This Subcontractor shall maintain all entrance and egress paths

42. This Subcontractor shall submit to Hunt, their company's safety procedures, guidelines and plan.

43. This Subcontractor shall have a competent person, as defined by OSHA regulations, on site at all times; this Subcontractor shall notify Hunt in writing as to the name(s) of the competent person for this project

44. This Subcontractor shall coordinate all of their deliveries. This shall include, but not limited to, traffic control, flagman, or permits.

45. This is an all union project. Furthermore, and as stated in Item 23 above, it is the responsibility of this subcontractor to perform the scope of work of this subcontract by appropriately affiliated union trades-people.

46. As a condition of the public portion of the financing of this project, all subcontractors will have to sign a FIRST SOURCE EMPLOYMENT AGREEMENT as outlined in the agreement between the Construction Manager and the Owner.

47. As a condition of the building permit, all scope of work associated with the RESTAURANT PADIO DINING area north of 13-line cannot start until six months prior to the completion of the overall project

48. Subcontracts are individual subcontracts representing significant elements of work that are performed concurrently with and in close coordination with work performed on the project under other subcontracts. Items listed shall indicate the Subcontractor is to furnish and install the work complete unless specifically instructed otherwise.

   A   Unless otherwise noted, all individual subcontracts shall include:

      1.   Temporary power for the tower cranes and material hoist, and service for light and small tools is provided by the Construction Manager as per Item 26 above, as is a temporary water source. Electrical power consumption is by the Construction Manager. Temporary utilities other than the above will provided and paid by the subcontractor requiring same. Subcontractors are responsible for distribution, hoses, power extension cords etc. from the water and electric source. Do not overload temporary utilities

      2.   Protection and Related Work Not withstanding Items 13 and 30 above, include all temporary weather protection and maintenance thereof for the duration of the Contractor's work . If protection is not sufficient or requires modification, then it is the responsibility of said subcontractor requiring modification to complete the modifications

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMT4HCG 07/07/00

HU00024213

HUNT JOB NO. 5003

SUBCONTRACT NO 09451

VENDOR NO 15318          SUBCONTRACTOR· The Pool and Kent Corporation

and/or work to the satisfaction of the Construction Manager  All cost associated with modifications is at the subcontractor's expense.

3.  No equipment and/or trucks will be allowed to block access to the jobsite.  Coordinate all site access with the Construction Manager.

49. It will be the responsibility of all Subcontractors to fully cooperate with the various other contractors who may or may not be on site at the time of this installation.  Communication, cooperation and coordination will be extremely crucial to everyone's success of this project.

50. Hoisting:

The concrete frame subcontractor will provide two tower cranes for their use in construction of the guest tower concrete structure frame.  The subcontractor charges for use of the tower crane after normal work hours and during the construction of the guest tower are as follows:
>  Straight Time - $55.00/hour
>  Time and a half - $82.00/hour
>  Double Time - $110.00/hour

After the concrete frame subcontractor has completed the work, the Construction Manager will take care and custody of the cranes for approximately ____ months for erection of the exterior wall systems.  Other subcontractors who wish to use the cranes may use them at the rates indicated above.

51. The Construction Manager will provide a material hoist for use of the subcontracts during the construction of the guest tower.  The hoist will be available until a designated service elevator is ready for use.

52. Site utilization shall be coordinated by each subcontractor, who shall cooperate with all other subcontractors and the Construction Manager, to achieve the maximum practical use of the site.

A.  Scope will vary throughout Construction Period.  Coordinate with the Construction Manager to accommodate Owner's partial use of buildings and related areas.

B.  If "excessive noise levels" are anticipated during any phase of construction the subcontractor must notify the Owner and Construction Manager prior to the start of that phase of work.  Excessive Noise as defined by local ordinances.

C   Not withstanding Item 39 above, owner and tenants will require access to areas of the Work for installation of their items and equipment.  Coordinate with Owner's Representative.

D.  Limit activities to Construction Limits.

E   Site will be very confined.  Subcontractors shall coordinate deliveries so that storage of materials on site is minimized.  All storage and available space as managed by the Construction Manager.

F.  Each Subcontractor will provide adequate and appropriate storage facilities for the storage of their materials, tools, equipment, and other similar items. The location and

HU00024214

HUNT JOB NO 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318          SUBCONTRACTOR: The Pool and Kent Corporation

volume of the storage facilities must be approved by the Construction Manager prior to the start of work at the site.

G.    Not withstanding Item 13 above, Subcontractors shall assume full responsibility for protection and safekeeping of materials and equipment stored on and off site, move any stored materials and equipment that interfere with the operations of the Owner or other Subcontractors (at the discretion of the Construction Manager) and obtain and pay for all additional storage required for the Subcontractor's convenience.

H.    Confine operations at the site to the area permitted. Portions of the site beyond areas on which the work is indicated are not to be disturbed.

53. As stated Item 31 above, the Subcontractor shall provide competent full-time on-site supervision for the performance of its work. In addition

A.    This full-time competent supervisory person shall carry with them a Nextel and/or other-type cellular phone and provide Nextel private number and/or cellular numbers such that the construction manager's supervision can at all times communicate with the subcontractor's supervisory person.

B     Additionally, off-hours emergency contact phone and/or Nextel private numbers must be provided to the construction manager upon mobilization to the project. These may be the same as the subcontractor's on-site supervisory person provided they remain activated 24 hours-per-day, 7 days-per-week The subcontractor is responsible for any/all liability as a result of failure to be accessible and responsive during any and all off work-hours emergencies.

54. Each Subcontractor shall supervise his work using his best skills and attention. He shall be solely responsible for means, methods, techniques, sequences, dimensions, and procedures for coordinating all portions of the work. The Subcontractor shall not permit any construction technique or activity, which decreases the building security or safety. Each Subcontractor shall coordinate fully with the Owner's requirements regarding security and safety of the building and premises.

55. Fire lanes must be kept clear at all times.

56. Parking of registered company vehicles only will be permitted at the discretion of, and in the areas designated by, the Construction Manager's Superintendent. Under no circumstances should vehicles be left unattended while the engine is running. No personal vehicles will be allowed on the project site. Any and all parking off-site, including but not limited to trades-people, is to be the responsibility of each respective subcontractor

57. Subcontractors will be held responsible for the conduct of their employees and Subcontractors. The following Rules of Conduct will be posted at the job site and contractor employees violating these rules will be subject to removal from the site.

A.  All Subcontractors' employees shall abide by Federal, State and local laws.

B.  All requirements of Occupational Safety and Health Act will be followed implicitly.

C.  No alcoholic beverages, controlled substances or firearms are permitted on the site.

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMT#KCG 07/07/04

HU00024215

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318          SUBCONTRACTOR: The Pool and Kent Corporation

    D. The use of tobacco products will only be allowed in the areas designated by the Construction Manager [reference Item 32 above for a similar requirement].

    E No radios, tape or compact disc players, or amplifying equipment are permitted on the property.

    F. Subcontractor's employees shall refrain from the use of profanity while on the property.

    G. Subcontractor's employees are to use only the temporary toilet facilities; they are not permitted to use the permanent facilities.

    H. Subcontractor's employees are not to eat in the owner occupied areas. Areas for eating, including breaks and lunches, are subject to the discretion and approval of the Construction Manager.

    I. Subcontractors employees shall not use owner's or Construction Manager's telephones for any reason except emergency.

58. Maintenance of the sediment and erosion control measures in-place *(as installed by the site subcontractor)* as per Sediment and Erosion Control Plan Sheet No. C-4 is a requirement of this subcontract. Any of these items removed for access to and/or installation of this scope of work must be replaced at no additional cost.

HU00024216

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO 15318        SUBCONTRACTOR: The Pool and Kent Corporation

C.    SPECIFIC CLARIFICATIONS

The Scope of Work shall more specifically include, but not necessarily be limited to, the following work as stated herein and as indicated in the Contract Documents and the following Specifications:

> 07841 - Through-Penetrations Firestop System (as applies)
> 08305 – Access Doors (furnish only as applies)
> Addendum #1 Food Service Equipment (as applies)
> 13851 Fire Alarm (as applies)
> 15000 – HVAC and Plumbing

1.    This subcontractor has included all costs as a result of the October 1, 2003 start of construction activities.

2.    Not used.
3.    Not used

4.    Subcontractor shall provide a sufficient quantity of labor, materials and equipment in order to meet or exceed  project schedule - to which this subcontractor is required to have input which will be incorporated.

5.    Gas operated temporary power for the site until a permanent electrical temporary power source is available is not included, however, labor, equipment and consumables for gas welders and small generators for small tools are included in this scope of work for this scope of work only.

6.    This scope of work includes the cost for parking for the work force included in this scope of work

7.    This scope of work includes the utilization of all Union Labor forces

8.    This scope of work includes hoisting costs (outside of the material hoist and freight elevators provided by Contractor in Item #51) for materials and equipment as required to rig and set in place.

9.    This scope of work includes bid alternate 10 (SOVENT system) for addendum #4 along with addendums 1,2,3,4 & 5.

10.   Relative to the typical room finishes mockups will be done as soon as space is available within the building for each typical room type.  All rough in and finishes shall be expedited for these rooms.  This scope of work includes the typical room mock-ups as described above.

11.   This scope of work includes the submission of a proposed schedule for this scope of work that coincides with Hunts overall master Project Schedule (to which this subcontractor is required to have input which will be incorporated) two weeks prior to the start of work.

12.   Not used

13    This scope of work includes the following with regard to Floor Penetrations:

Page 9 of 15                      STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT-8SCG (07/07/00)

HU00024217

HUNT JOB NO 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318          SUBCONTRACTOR: The Pool and Kent Corporation

For all floor penetrations detailed coordinated layout drawings will be provided prior to the forming and placement of concrete.

Where sleeves are required for this scope of work said sleeves will be provided along with layout information prior to concrete placement.  The furnishing installation of the sleeves is included in this scope.  Sleeve locations shall be verified prior to the concrete placement

For any floor penetration not fully detailed or coordinated prior to concrete placement shall be the responsibility of this scope of work to install and patch as required.

14.  This scope of work includes the procurement of all applicable permits as required for the completion of this scope of work.

15.  For Scopes of work requiring engineered drawings and calculations shall be signed and sealed by a Qualified Professional Engineer licensed in the District of Columbia.

16.  This scope of work includes the use of the SOVENT sanitary waste system   This Subcontractor shall be responsible to provide shop drawings in accordance with the Contract Documents.

17.  Temporary water service is included in this scope of work.  The connection to the incoming water service shall be expedited and multiple ¾" hose connections shall be made available at the incoming service valve room

18.  This Scope included the installation of all required system identifications, not limited to equipment tags, piping identification labels, valve tags and system labels/plaques in accordance with the Contract Documents.

19.  This scope of work includes blank off panels for all unused portions of exterior mechanical louvers.

20.  This scope of work includes rough in and final connections for all listed food service equipment.   In preparation for this work a point-to-point item-by-item review and coordination of the food service rough-in requirements will be done under this scope of work with any deviations identified prior to the start of this work.  Coordinated food service drawings will be furnished by the Contractor within a reasonable time prior to the start of the MEP rough-in to accommodate this review.

21.  This scope includes fire stopping of Mechanical / Plumbing systems in accordance with project documents and governing codes. (Sleeves as required)

22.  This scope of work includes the furnishing of access doors as required or shown for proper access for testing, service and maintenance of Mechanical and Plumbing systems and equipment installed.

23.  With regard to the subsurface and foundation drainage piping the installation of said piping in accordance with addendum 2 and Note on Sheet A1-01 is included in this scope of work.

HU00024218

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO 15318          SUBCONTRACTOR: The Pool and Kent Corporation

24.    This scope of work includes Connections to all Domestic water, Storm and Sanitary piping to 5'-0" outside the building line. Final connection at this point is included in this scope of work

25.    With regard to building water service the feed for the Fire Protection system under this scope of work will be brought within the building to the Fire Protection room and provided with a flange and capped for connection by others.

26.    This scope of work includes the Furnishing and installation of the heat trace system for both the Domestic Hot water piping systems as shown on the plumbing drawings and the weather exposed piping systems as identified on the HVAC drawings   All final/power connections to be by others.

27.    This scope of work includes the furnishing of starters and disconnects integral to all mechanical equipment.

28.    This scope of work includes the furnishing of any VFD system as specified for the Mechanical and Plumbing equipment and systems.

29.    This scope of work shall include the final connection of the pool deck drains.

30.    This scope of work shall include the rough in of water service and drainage service for the water feature fountain.

31.    This scope of work includes the installation of a complete and operational Building Management System in accordance with the project documents.  Wiring of the building management system is included as a part of this scope.  All interlock wiring required to facilitate equipment operation in accordance with the Contract Documents is also a part of this scope of work.

32.    This scope of work includes the installation of the conduit as required for the installation of the Building Management System.

33.    The permanent Heating/Cooling Systems shall be utilized for heating during the installation of finishes for a period of 3 months prior to the project completion and turn over. Operating labor shall be provided to start and maintain the systems for this period of time on a 5 day per week 9 hours per day basis.  If overtime coverage is required the cost of the labor shall be by others.  All consumption charges shall be by the Contractor.

34.    This scope of work includes the change in the typical guest room toilet exhaust system from a common ducted system to direct exhausted systems and from a ducted riser system to a sheetrock enclosed riser with sub ducts.   Each typical guest room exhaust riser shall penetrate the roof direct above its associated riser shaft (or offset sufficiently to miss any roof obstructions) with an individual dome type exhaust fan curb mounted on the roof. Exhaust fans shall be continuous duty type.  All fans shall be tied into a common alarm to report any fan failures.

35.    This scope of work does not include bid alternate #9 (relocation of generator) from bid addendum #4.

HU00024219

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318          SUBCONTRACTOR: The Pool and Kent Corporation

36    Installations only of trench drains, as supplied in division 5, are included in this scope of work. Refer to 4/A11-06

37    Supply only of material (PVC pipe), are installed by division 3, for foundation wall weepholes. Refer to 1/A11-01

38    Not used.

39    Cost of Bonds is included in this scope of work.

40.   Seismic protection of mechanical systems and components is not required by code in Washington DC, and there-for not included in the Subcontractor's scope of work

41.   A.    GENERAL SCOPE modifications are as follows:

            1st paragraph, 2nd line add the word "field" before "engineering".

            2nd Paragraph, 2nd line after "...under the requirements of Division I (General Requirements)" add "as they apply to the scope of work".

42    B.    GENERAL CLARIFICATIONS modifications are as follows:

            Item 3:   Delete this item.

            Item 4:   2nd line after "...field dimensions" add "from control points on each floor established by others"

            Item 6:   At the beginning of the 2nd line change "or" to "of".

            Item 7:   Change the 2nd sentence to read as follows: "As required by this scope of work, water for dust control and to assure proper moisture content of fill material for compaction shall be obtained from other sources on site by the Subcontractor and transported by him to the location where required for his work."

            Item 12:  Change this item to read as follows: "Rainwater removal required for the execution of this Scope of Work shall be the responsibility of the Subcontractor."

            Item 14:  Change this item to read as follows: "Subcontractor will perform his work in accordance with all safety rules and regulations of the construction industry, including, but not limited to those as regulated by OSHA."

            Item 17:  Change the 1st and 2nd sentences to read as follows: "Workmanship will be strictly monitored, with only first class workmanship being accepted. Work, which is not in accordance with the Contract Documents, shall be removed by the Subcontractor and replaced at no additional cost to the Contractor and/or Owner. Defective work not removed by the Subcontractor within a reasonable time period after written notification by the Contractor, will be removed and replaced by the Contractor at the Subcontractor's expense."

            Item 19:  Add "as reasonably" before "directed by Hunt" in the last sentence.

STANDARD SUBCONTRACT ATTACHMENTS: ATTACHMENT G 07/07, 00

HU00024220

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO 15318          SUBCONTRACTOR: The Pool and Kent Corporation

Item 20:  Delete the word "immediately" before the words "in writing" in the 1st sentence.

Item 21:  Change this item to read as follows:  "All Subcontractors shall have the responsibility to leave adjacent and/or contiguous in-place work and/or finished product of other trades undamaged, and shall be fully responsible for restoration if this Subcontractor's employees inflict damages to the work of the Owner, the Contractor, or to other trades."

Item 24:  Delete the last sentence.

Item 27:  Delete this item

Item 28  Change this item to read as follows:

"Time is of the Essence.  Commencement of the work, continuing performance and progress of the work, and the achievement of final completion of the Project, all in strict accordance with the Schedule – to which this subcontractor is required to have input which will be incorporated- are of the essence.

The Contractor will provide and monitor a detailed construction schedule for the progress and completion of each phase of the work This Subcontractor shall provide Scheduling Input for his Scope of Work and take whatever measures are necessary to maintain the Project Schedule - to which this subcontractor is required to have input which will be incorporated."

Item 34:  In the 2nd line after penetrations add "- as shown and sized on the mechanical drawings and – "

Item 36:  Change this item to read as follows:  "This Subcontractor shall submit the submittal log, as outlined elsewhere in the Subcontract Agreement, within a reasonable time from receipt of the fully executed Subcontract Agreement"

Item 39:  Add to the end of this item "Coordination of the subs work with adjacent building tenants is the responsibility of the Contractor."

Item 48:  Add the following to sentence A.3.  "Unless scheduled with Contractor,"

Item 50:  In the 1st sentence of the 2nd paragraph insert "2-3" between "approximately" and "months"

Item 52:  Add the following to the end of paragraph A    ", upon reasonable notification by the Construction Manager"

In paragraph G, 4th line add "reasonable" before "discretion of the Construction Manager"

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT#CG 07/07/99

HU00024221

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318            SUBCONTRACTOR: The Pool and Kent Corporation

Change paragraph H to read as follows. "Confine operations at the site to the area indicated on the Contract Documents, and as per existing public space and/or other applicable permit. Portions of the site beyond areas on which the work is indicated are not to be disturbed."

Item 53: Change paragraph B to read as follows: "This subcontractor understands the importance of their supervisory personnel being reachable for representation and maintenance of their scope of work at all times — including nights, weekends and holidays. Accordingly, off-hours emergency contact phone and/or Nextel private numbers must be provided to the construction manager upon mobilization to the project. These may be the same as the subcontractor's on-site supervisory person provided they remain activated 24 hours-per-day, 7 days-per-week."

Item 54: Change the 2nd sentence to read as follows: "He shall be solely responsible for means, methods, techniques, sequences, dimensions, and procedures for coordinating all portions of this subcontractor's scope of work."

Item 57: In the 2nd line of Paragraph H add "reasonable" before "discretion and approval..."

Item 58: In the last sentence add "repaired or" before "replaced at no additional cost."

D.    BONDS

Bonds will be required:  Yes ___XX___  No _____

If Bonds are required, the Bonds will be furnished in accordance with the provisions of Attachment VI.

E.    UNIT PRICES

The following unit prices will be utilized to furnish in accordance with the Drawings and Specifications, all necessary labor, materials, tools, equipment, supplies, taxes, applicable overhead, insurance, supervision, and other services, of whatever nature, to complete in all respects the Work generally defined within the Documents. These unit prices will be used for all added or deducted Work.

UNIT PRICE NO. 1:    Monthly operational cost for the operation for the building HVAC Systems (heating and cooling) beyond the 3 months included in SPECIFIC CLARIFICATION Item 33 shall be $4,000. This rate includes labor, maintenance and manpower as required. Consumption charges will be by Contractor.

STANDARD SUBCONTRACT ATTACHMENTS ATT:SCHM14HK.G 07/07/00

HU00024222

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318          SUBCONTRACTOR: The Pool and Kent Corporation

F     **ALTERNATES**

1.      If LSDBE participation is required it can be provided at a premium cost of 5% of the
         participation amount (up to $1,000,000 of participation) to Pool & Kent. Once a final
         cost of LSDBE participation is identified for this subcontract a change order will be
         issued for the above noted premium cost of the identification amount. This alternate is
         valid for 60 days following Subcontractors execution of this Agreement.

DATE: June 07, 2004

_____          _____
HUNT                          SUBCONTRACTOR

Page 15 of 15                              STANDARD CONTRACT ATTACHMENTS ATTACHMENTS.DOC 01/07/00

HU00024223

HUNT JOB NO.  5003

SUBCONTRACT NO.  09451

VENDOR NO.  15318          SUBCONTRACTOR  The Pool and Kent Corporation

ATTACHMENT III

CONTRACT DOCUMENTS

| Specification | Description | Date |
|---|---|---|
| | | |
| VOLUMN I of II | | |
| | | |
| TOC | Table of Contents | January 27, 2003 |
| | Differentation Checklist | January 27, 2003 |
| | | |
| DIVISION 1 - GENERAL REQUIREMENTS | | |
| | | January 27, 2003 |
| 01010 | Summary Of Work | January 27, 2003 |
| 01026 | Unit Prices | January 27, 2003 |
| 01027 | Applications For Payment | January 27, 2003 |
| 01035 | Modification Procedures | January 27, 2003 |
| 01040 | Coordination | January 27, 2003 |
| 01050 | Field Engineering | January 27, 2003 |
| 01200 | Project Meetings | January 27, 2003 |
| 01300 | Submittals | January 27, 2003 |
| 01400 | Quality Control | January 27, 2003 |
| 01421 | Reference Standards and Definitions | January 27, 2003 |
| 01500 | Construction Facilities and Temporary Controls | January 27, 2003 |
| 01600 | Materials and Equipment | January 27, 2003 |
| 01631 | Substitutions | January 27, 2003 |
| 01700 | Contract Closeout | January 27, 2003 |
| 01740 | Warranties | January 27, 2003 |
| | | |
| DIVISION 2 - SITE CONSTRUCTION | | |
| | | |
| 02070 | Selective Demolition | January 27, 2003 |
| 02110 | Site Clearing | January 27, 2003 |
| 02260 | Excavation Support and Protection | January 27, 2003 |
| 02300 | Earthwork | January 27, 2003 |
| 02511 | Hot-Mixed Asphalt Paving | January 27, 2003 |
| 02668 | Water/Fire Service Piping | January 27, 2003 |
| 02720 | Sanitary and Public Space Storm Drain System | January 27, 2003 |

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMT4HOG 07/81/00

HU00024224

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO.  15318          SUBCONTRACTOR  The Pool and Kent Corporation

| 02751 | Portland Cement Concrete Pavement | January 27, 2003 |
|---|---|---|
| 02764 | Pavement Joint Sealants | January 27, 2003 |
| | | |
| **DIVISION 3 - CONCRETE** | | |
| | | |
| 03300 | Cast-In-Place Concrete | January 27, 2003 |
| 03365 | Post-Tensioned Concrete | January 27, 2003 |
| 03450 | Architectural Precast Concrete - Plant Cast | January 27, 2003 |
| 03490 | Glass-Fiber-Reinforced Precast Concrete | January 27, 2003 |
| 03532 | Concrete Floor Topping | January 27, 2003 |
| | | |
| **DIVISION 4 - MASONRY** | | |
| | | |
| 04720 | Cast Stone | January 27, 2003 |
| 04810 | Unit Masonry | January 27, 2003 |
| | | |
| **DIVISION 5 - METALS** | | |
| | | |
| 05120 | Structural Steel | January 27, 2003 |
| 05400 | Cold Formed Metal Framing | January 27, 2003 |
| 05500 | Metal Fabrications | January 27, 2003 |
| 05521 | Pipe and Tube Railings | January 27, 2003 |
| 05530 | Gratings | January 27, 2003 |
| 05700 | Ornamental Metalwork | January 27, 2003 |
| 05720 | Ornamental Handrails And Railings | January 27, 2003 |
| | | |
| **DIVISION 6 - WOOD AND PLASTICS** | | |
| | | |
| 06105 | Miscellaneous Carpentry | January 27, 2003 |
| 06402 | Interior Architectural Woodwork | January 27, 2003 |
| | | |
| **DIVISION 7 - THERMAL AND MOISTURE PROTECTION** | | |
| | | |
| 07122 | Hot Fluid-Applied Waterproofing | January 27, 2003 |
| 07166 | Crystalline Waterproofing | January 27, 2003 |
| 07170 | Bentonite Waterproofing | January 27, 2003 |
| 07210 | Building Insulation | January 27, 2003 |

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT 8 ICG 07/07/00

HU00024225

HUNT JOB NO. 5003 

SUBCONTRACT NO. 09451

VENDOR NO.  15318             SUBCONTRACTOR  The Pool and Kent Corporation

| | | |
|---|---|---|
| 07412 | Manufactured Wall Panels | January 27, 2003 |
| 07531 | EDPM Single-Ply Membrane Roofing | January 27, 2003 |
| 07620 | Sheet Metal Flashing And Trim | January 27, 2003 |
| 07720 | Roof Accessories | January 27, 2003 |
| 07841 | Through Penetration Firestop Systems | January 27, 2003 |
| 07920 | Joint Sealants | January 27, 2003 |
| | | |
| DIVISION 8 - DOORS AND WINDOWS | | |
| | | |
| 08110 | Steel Doors And Frames | January 27, 2003 |
| 08211 | Flush Wood Doors | January 27, 2003 |
| 08305 | Access Doors | January 27, 2003 |
| 08331 | Overhead Coiling Doors | January 27, 2003 |
| 08410 | Aluminum Entrances And Storefronts | January 27, 2003 |
| 08450 | All-Glass Entrances | January 27, 2003 |
| 08470 | Revolving Entrance Doors | January 27, 2003 |
| 08630 | Metal Framed Skylights | January 27, 2003 |
| 08711 | Door Hardware (Scheduled By Naming Products) | January 27, 2003 |
| 08800 | Glazing | January 27, 2003 |
| 08920 | Glazed Aluminum Curtain Walls | January 27, 2003 |
| | | |
| DIVISION 9 - FINISHES | | |
| | | |
| 09255 | Gypsum Board Assemblies | January 27, 2003 |
| 09265 | Gypsum Board Shaft-Wall Assemblies | January 27, 2003 |
| 09310 | Ceramic Tile | January 27, 2003 |
| 09451 | Interior Stone Facing | January 27, 2003 |
| 09511 | Acoustical Panel Ceilings | January 27, 2003 |
| 09640 | Wood Flooring | January 27, 2003 |
| 09651 | Resilient Tile Flooring | January 27, 2003 |
| 09680 | Carpet | January 27, 2003 |
| 09900 | Painting | January 27, 2003 |
| 09950 | Wall Coverings | January 27, 2003 |
| | | |
| DIVISION 10 - SPECIALTIES | | |
| | | |
| 10155 | Toilet Compartments | January 27, 2003 |

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT#05 07/07.00

HU00024226

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO.  15318                    SUBCONTRACTOR  The Pool and Kent Corporation

| 10200 | Louvers and Vents | January 27, 2003 |
| 10265 | Wall Surface Protection Systems | January 27, 2003 |
| 10350 | Flagpoles | January 27, 2003 |
| 10425 | Signs | January 27, 2003 |
| 10505 | Metal Lockers | January 27, 2003 |
| 10520 | Fire-Protection Specialties | January 27, 2003 |
| 10605 | Wire Mesh Partitions | January 27, 2003 |
| 10651 | Operable Panel Partitions | January 27, 2003 |
| 10801 | Toilet And Bath Accessories | January 27, 2003 |
| 10991 | Swimming Pool Lift | January 27, 2003 |
| | | |
| DIVISION 11 - EQUIPMENT | | |
| | | |
| 11160 | Loading Dock Equipment | January 27, 2003 |
| | Food Service Equipment | June 25, 2002 |
| | | |
| DIVISION 12 - FURNISHINGS (NOT USED) | | |
| | | |
| DIVISION 13 - SPECIAL CONSTRUCTION | | |
| | | |
| 13052 | Swimming Pools | January 27, 2003 |
| 13100 | Lightning Protection | January 27, 2003 |
| 13851 | Fire Alarm | January 27, 2003 |
| 13915 | Fire-suppression System | January 27, 2003 |
| 13921 | Elect-drive, Horizontal Fire Pumps | January 27, 2003 |
| | | |
| DIVISION 14 - CONVEYING SYSTEMS | | |
| | | |
| 14210 | Electric Traction Elevators | January 27, 2003 |
| 14240 | Hydraulic Elevators | January 27, 2003 |
| 14560 | Chutes | January 27, 2003 |
| | | |
| VOLUMN I of II | | |
| | | |
| DIVISION 15 - MECHANICAL | | |
| | | |
| 15050 | Basic Mechanical materials and Methods | January 27, 2003 |

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT-HCC 07. 01. 00

HU00024227

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318          SUBCONTRACTOR The Pool and Kent Corporation

| 15055 | Motors | January 27, 2003 |
|---|---|---|
| 15060 | Hangers and Supports | January 27, 2003 |
| 15071 | Mechanical Vibration and Seismic Controls | January 27, 2003 |
| 15075 | Mechanical Identification | January 27, 2003 |
| 15081 | Duct Insulation | January 27, 2003 |
| 15082 | Equipment Insulation | January 27, 2003 |
| 15083 | Pipe Insulation | January 27, 2003 |
| 15110 | Valves | January 27, 2003 |
| 15121 | Pipe Expansion Fittings and Loops | January 27, 2003 |
| 15122 | Meters and Gages | January 27, 2003 |
| 15140 | Domestic Water Piping | January 27, 2003 |
| 15150 | Sanitary Waste and Vent piping | January 27, 2003 |
| 15160 | Storm Drainage Piping | January 27, 2003 |
| 15181 | Hydronic Piping | January 27, 2003 |
| 15185 | Hydronic Pumps | January 27, 2003 |
| 15189 | HVAC Water Treatment | January 27, 2003 |
| 15191 | Fuel Oil Piping | January 27, 2003 |
| 15194 | Fuel Gas Piping | January 27, 2003 |
| 15410 | Plumbing Fixtures | January 27, 2003 |
| 15430 | Plumbing Specialties | January 27, 2003 |
| 15481 | Compressed-Air Piping | January 27, 2003 |
| 15486 | Fuel-Fired, Domestic Water Heaters | January 27, 2003 |
| 15518 | Fire-Tube Boilers | January 27, 2003 |
| 15550 | Breechings, Chimneys, And Stacks | January 27, 2003 |
| 15625 | Centrifugal Water Chillers | January 27, 2003 |
| 15635 | Refrigerant Monitoring And Safety Equipment | January 27, 2003 |
| 15640 | Packaged Cooling Towers | January 27, 2003 |
| 15710 | Heat Exchangers | January 27, 2003 |
| 15725 | Modular Indoor Air-Handling Units | January 27, 2003 |
| 15752 | Humidifiers | January 27, 2003 |
| 15761 | Air Coils | January 27, 2003 |
| 15763 | Fan-Coil Units | January 27, 2003 |
| 15766 | Cabinet Unit Heaters | January 27, 2003 |
| 15767 | Propeller Unit Heaters | January 27, 2003 |
| 15775 | Electric Heating Cables | January 27, 2003 |
| 15812 | Fibrous-Glass Ducts | January 27, 2003 |
| 15815 | Metal Ducts | January 27, 2003 |

Page 5 of 17          STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT #105 09/09/00

HU00024228

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO 15318          SUBCONTRACTOR The Pool and Kent Corporation

| 15820 | Duct Accessories | January 27, 2003 |
| 15836 | Axial Fans | January 27, 2003 |
| 15837 | Centrifugal Fans | January 27, 2003 |
| 15838 | Power Ventilators | January 27, 2003 |
| 15845 | Air Terminals | January 27, 2003 |
| 15855 | Diffusers, Registers, And Grilles | January 27, 2003 |
| 15861 | Air Filters | January 27, 2003 |
| 15870 | Commercial Kitchen Hoods | January 27, 2003 |
| 15900 | HVAC Instrumentation And Controls | January 27, 2003 |
| 15990 | Testing, Adjusting, And Balancing | January 27, 2003 |
| **DIVISION 16 - ELECTRICAL** | | |
| 16050 | Basic Electrical Materials and Methods | January 27, 2003 |
| 16055 | Overcurrent Protective Device Coordination | January 27, 2003 |
| 16060 | Grounding and Bonding | January 27, 2003 |
| 16075 | Electrical Identification | January 27, 2003 |
| 16080 | Electrical Testing | January 27, 2003 |
| 16120 | Conductors and Cables | January 27, 2003 |
| 16130 | Raceways and Boxes | January 27, 2003 |
| 16140 | Wiring Devices | January 27, 2003 |
| 16145 | Lighting Control Devices | January 27, 2003 |
| 16231 | Packaged Engine Generators | January 27, 2003 |
| 16289 | Transient Voltage Suppression | January 27, 2003 |
| 16410 | Enclosed Switches and Circuit Breakers | January 27, 2003 |
| 16415 | Transfer Switches | January 27, 2003 |
| 16419 | Fused Power Circuit Devices | January 27, 2003 |
| 16420 | Enclosed Controllers | January 27, 2003 |
| 16441 | Switchboards | January 27, 2003 |
| 16442 | Panel boards | January 27, 2003 |
| 16443 | Motor-Control Centers | January 27, 2003 |
| 16450 | Enclosed Bus Assemblies | January 27, 2003 |
| 16461 | Dry-Type Transformers (1000 V and Less) | January 27, 2003 |
| 16491 | Fuses | January 27, 2003 |
| 16511 | Interior Lighting | January 27, 2003 |
| 16521 | Exterior Lighting | January 27, 2003 |

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT #ICG 07/07/00

HU00024229

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318                 SUBCONTRACTOR The Pool and Kent Corporation

| Drawing No. | Title | Date |
|---|---|---|
| A-CVR-1 | COVER SHEET | January 27, 2003 |
| A-CVR-2 | COVER SHEET LEGEND, ABBREVIATIONS AND SYMBOLS | January 27, 2003 |
| A-CVR-3 | DRAWING LIST | January 27, 2003 |
| TS-01 | TRAFFIC SIGNALING | January 27, 2003 |
| U-1 | ELECTRICAL VAULT DRAWINGS | January 27, 2003 |
| U-2 | ELECTRICAL VAULT DRAWINGS | January 27, 2003 |
|  |  |  |
|  | CIVIL ENGINEERING |  |
|  |  |  |
| C-1 | EXISTING CONDITIONS PLAN | January 27, 2003 |
| C-2 | DEMOLITION PLAN | January 27, 2003 |
| C-3 | SITE, GRADING AND UTILITY PLAN | January 27, 2003 |
| C-4 | SEDIMENT AND EROSION CONTROL PLAN | January 27, 2003 |
| C-5 | SEDIMENT CONTROL NOTES | January 27, 2003 |
| C-6 | SITE DETAILS | January 27, 2003 |
| C-7 | STORMWATER MANAGEMENT DTLS , NOTES AND UTILITY PPROFILES | January 27, 2003 |
| C-8 | STORMWATER MANAGEMENT DETAILS AND NOTES | January 27, 2003 |
| C-9 | STORMWATER MANAGEMENT COMPUTATIONS | January 27, 2003 |
|  |  |  |
|  | ARCHITECTURAL |  |
|  |  |  |
| A01-01 | PARKING LEVEL THREE, B4 | January 27, 2003 |
| A01-02 | PARKING LEVEL ONE & TWO, B3 & B2 | January 27, 2003 |
| A01-03 | MEETING ROOMS LEVEL PLAN, MEZZANINE LEVEL PLAN | January 27, 2003 |
| A01-04 | GROUND FLOOR PLAN, MECH MEZZANINE LEVEL PLAN | January 27, 2003 |
| A01-05 | 2ND FLOOR PLAN, 3RD FLOOR PLAN | January 27, 2003 |
| A01-06 | ATRIUM GUEST PLAN, 4TH & 6TH FLOOR PLAN, PARTIAL 6TH FLOOR | January 27, 2003 |
| A01-07 | GUEST PLAN, 7TH-13TH FLOOR PLAN & 14TH FLOOR PLAN | January 27, 2003 |
| A01-08 | PENTHOUSE ROOF PLAN | January 27, 2003 |
|  |  |  |
| A02-01 | BUILDING SECTION | January 27, 2003 |
| A02-02 | BUILDING SECTION | January 27, 2003 |
| A02-03 | BUILDING SECTIONS | January 27, 2003 |
| A02-04 | BUILDING SECTION | January 27, 2003 |
|  |  |  |

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT #10G 07/01/00

HU00024230

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO   15318                    SUBCONTRACTOR  The Pool and Kent Corporation

| A03-01 | EAST ELEVATION | January 27, 2003 |
| A03-02 | NORTH & SOUTH ELEVATIONS | January 27, 2003 |
| A03-03 | WEST ELEVATION | January 27, 2003 |
| | | |
| A04-01 | B1 RCP (MTG. LEVEL), B1 MEZZANINE RCP, B2 RCP | January 27, 2003 |
| A04-02 | GROUINF FLOOR RCP | January 27, 2003 |
| A04-03 | 2ND FLOOR, 3RD FLOOR RCP | January 27, 2003 |
| A04-04 | ATRIUM GUEST RCP, 4TH & 6TH FLOOR RCP, PART 6TH FL. RCP | January 27, 2003 |
| A04-05 | GUEST FLOOR RCP 7TH-14TH FLOORS | January 27, 2003 |
| A04-06 | ENLARGED MEETING ROOM REFL `CLG. PLAN | January 27, 2003 |
| A04-07 | ENLARGED RCP - GROUND FLOOR | January 27, 2003 |
| A04-08 | ENLARGED RCP: MEZZANINE LEVEL | January 27, 2003 |
| | | |
| A05-01 | ENLARGED PLANS. B2 PARKING LEVEL 1 | January 27, 2003 |
| A05-02 | ENLARGED PLAN: B1 MEETING ROOM LEVEL | January 27, 2003 |
| A05-03 | ENLARGED PLAN: B1 MEETING ROOM LEVEL | January 27, 2003 |
| A05-04 | ENLARGED PLANS  MEZZANINE LEVEL | January 27, 2003 |
| A05-05 | ENLARGED PLAN: GROUND FLOOR | January 27, 2003 |
| A05-06 | ENLARGED PLAN: GROUND FLOOR | January 27, 2003 |
| A05-07 | ENLARGED PLANS: 2ND FLOOR | January 27, 2003 |
| A05-08 | ENLARGED PLAN: 3RD FLOOR | January 27, 2003 |
| A05-09 | ENLARGED PLAN: TYPICAL GUESTROOM PLAN | January 27, 2003 |
| A05-10 | ENLARGED PLANS: TYPICAL ROOM PLAN & PENTHOUSE PLAN | January 27, 2003 |
| | | |
| A06-01 | WALL SECTIONS | January 27, 2003 |
| A06-02 | WALL SECTIONS | January 27, 2003 |
| A06-03 | WALL SECTIONS | January 27, 2003 |
| | | |
| A07-01 | STAIR# 1 PLANS & SECTIONS | January 27, 2003 |
| A07-02 | STAIR# 2 PLANS & SECTIONS | January 27, 2003 |
| A07-03 | STAIR# 3 & STAIR# 4 PLANS & SECTIONS | January 27, 2003 |
| A07-04 | STAIR# 5 & STAIR# 6 PLANS & SECTIONS | January 27, 2003 |
| A07-05 | STAIR DETAILS | January 27, 2003 |
| A07-06 | SIGNAGE | January 27, 2003 |
| | | |
| A08-01 | ELEVATOR PLANS | January 27, 2003 |
| A08-02 | ELEVATOR SECTIONS | January 27, 2003 |

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT1CG 07/15/00

HU00024231

HUNT JOB NO.  5003

SUBCONTRACT NO.  09451

VENDOR NO   15318              SUBCONTRACTOR  The Pool and Kent Corporation

| | | |
|---|---|---|
| A08-03 | ELEVATOR CAB, INTERIOR ELEVATIONS | January 27, 2003 |
| A08-04 | ELEVATOR CAB, INTERIOR ELEVATIONS, DETAILS | January 27, 2003 |
| | | |
| A09-01 | ENLARGED ELEVATIONS | January 27, 2003 |
| | | |
| A10-01 | PLAN DETAILS | January 27, 2003 |
| A10-02 | PLAN DETAILS | January 27, 2003 |
| A10-03 | PLAN DETAILS | January 27, 2003 |
| A10-04 | PLAN DETAILS | January 27, 2003 |
| A10-05 | DETAILS | January 27, 2003 |
| A10-06 | DETAILS | January 27, 2003 |
| | | |
| A11-01 | EXTERIOR SECTION DETAILS | January 27, 2003 |
| A11-02 | EXTERIOR SECTION DETAILS | January 27, 2003 |
| A11-03 | EXTERIOR SECTION DETAILS | January 27, 2003 |
| A11-04 | EXTERIOR SECTION DETAILS | January 27, 2003 |
| A11-05 | EXTERIOR SECTION DETAILS | January 27, 2003 |
| A11-06 | EXTERIOR SECTION DETAILS | January 27, 2003 |
| A11-07 | EXTERIOR SECTION DETAILS | January 27, 2003 |
| A11-08 | EXTERIOR SECTION DETAILS | January 27, 2003 |
| A11-09 | EXTERIOR SECTION DETAILS | January 27, 2003 |
| A11-10 | EXTERIOR SECTION DETAILS | January 27, 2003 |
| A11-11 | EXTERIOR SECTION DETAILS | January 27, 2003 |
| A11-12 | EXTERIOR SECTION DETAILS | January 27, 2003 |
| | | |
| A13-01 | INTERIOR DETAILS | January 27, 2003 |
| A13-02 | INTERIOR DETAILS | January 27, 2003 |
| A13-03 | CEILING DETAILS | January 27, 2003 |
| A13-04 | CEILING DETAILS | January 27, 2003 |
| A13-05 | CEILING DETAILS | January 27, 2003 |
| A13-06 | PLAN DETAILS | January 27, 2003 |
| | | |
| A14-01 | SWIMMING POOL PLANS AND DETAILS | January 27, 2003 |
| | | |
| A15-01 | PARTITION SCHEDULE | January 27, 2003 |
| A15-02 | DOOR SCHEDULE | January 27, 2003 |
| A15-03 | DOOR DETAILS | January 27, 2003 |

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT#HOG 07/07/02

HU00024232

HUNT JOB NO.  5003

SUBCONTRACT NO.  09451

VENDOR NO.  15318         SUBCONTRACTOR  The Pool and Kent Corporation

|  | INTERIOR DESIGN |  |
|---|---|---|
|  |  |  |
| ID1-01 | B1 & B1 MEZZANINE CONSTRUCTION PLANS | January 27, 2003 |
| ID1-02 | GROUND & 2ND FLOOR CONSTRUCTION PLANS | January 27, 2003 |
| ID1-03 | 3RD & 4TH - 6TH FLOOR CONSTRUCTION PLAN | January 27, 2003 |
| ID3-01 | B1 & B1 MEZZANINE FINISH PLANS | January 27, 2003 |
| ID3-02 | GROUND & 2ND FLOOR FINISH PLANS | January 27, 2003 |
| ID3-03 | 3RD & 4TH - 6TH FLOOR FINISH PLANS | January 27, 2003 |
| ID3-04 | GUEST PLAN: 7TH - 13TH FLOORS AND 14 FLOOR FINISH PLANS | January 27, 2003 |
| ID4-01 | B1 & B1 MEZZANINE FURNITURE LAYOUT | January 27, 2003 |
| ID4-02 | GROUND & 2ND FLOOR FURNITURE LAYOUT | January 27, 2003 |
| ID4-03 | 3RD & 4TH - 6TH FLOORS FURNITURE LAYOUT | January 27, 2003 |
| ID4-04 | 7TH - 13TH FLOOR FURNITURE LAYOUT, 14 FLOOR FURNITURE LAYOUT | January 27, 2003 |
| ID4-05 | ROOM TYPES | January 27, 2003 |
| ID4-06 | ROOM TYPES | January 27, 2003 |
|  |  |  |
| ID6-01 | INTERIOR ELEVATIONS | January 27, 2003 |
| ID6-02 | INTERIOR ELEVATIONS | January 27, 2003 |
| ID6-03 | INTERIOR ELEVATIONS | January 27, 2003 |
| ID6-04 | INTERIOR ELEVATIONS | January 27, 2003 |
| ID6-05 | INTERIOR ELEVATIONS | January 27, 2003 |
| ID6-06 | INTERIOR ELEVATIONS | January 27, 2003 |
| ID6-07 | INTERIOR ELEVATIONS | January 27, 2003 |
| ID6-08 | INTERIOR ELEVATIONS | January 27, 2003 |
| ID6-09 | INTERIOR ELEVATIONS | January 27, 2003 |
| ID6-10 | INTERIOR ELEVATIONS | January 27, 2003 |
| ID6-11 | INTERIOR DETAILS | January 27, 2003 |
| ID6-12 | INTERIOR DETAILS | January 27, 2003 |
| ID6-13 | INTERIOR DETAILS | January 27, 2003 |
| ID6-14 | INTERIOR DETAILS | January 27, 2003 |
| ID6-15 | INTERIOR DETAILS | January 27, 2003 |
| ID6-16 | INTERIOR DETAILS | January 27, 2003 |
| ID6-17 | INTERIOR DETAILS | January 27, 2003 |
| ID6-18 | INTERIOR DETAILS | January 27, 2003 |
| ID6-19 | INTERIOR DETAILS | January 27, 2003 |
|  |  |  |

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT H.DOC 07/16/00

HU00024233

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO  15318          SUBCONTRACTOR  The Pool and Kent Corporation

| ID9-01 | ROOM FINISH SCHEDULE | January 27, 2003 |
|---|---|---|
| ID9-02 | MATERIAL SCHEDULE | January 27, 2003 |
| | | |
| | STRUCTURAL ENGINEERING | |
| | | |
| S0-00 | GENERAL NOTES | January 27, 2003 |
| S1-00 | COLUMN LOCATION PLAN | January 27, 2003 |
| S1-01 | FOUNDATION/ PARKING LEVEL 3/ B4 PLAN | January 27, 2003 |
| S1-02 | PARKING LEVEL 2/ B3 PLAN | January 27, 2003 |
| S1-03 | PARKING LEVEL 1/ B2 PLAN | January 27, 2003 |
| S1-04 | MEETING ROOM/ B1 FRAMING PLAN | January 27, 2003 |
| S1-05 | MEZZANINE LEVEL FRAMING PLAN | January 27, 2003 |
| S1-06 | GROUND FLOOR & MECH MEZZ FRAMING PLANS | January 27, 2003 |
| S1-07 | SECOND FLOOR FRAMING PLAN | January 27, 2003 |
| S1-08 | THIRD FLOOR FRAMING PLAN | January 27, 2003 |
| S1-09 | FOURTH-SIXTH FLOOR FRAMING PLAN | January 27, 2003 |
| S1-10 | SEVENTH FLOOR FRAMING PLAN | January 27, 2003 |
| S1-11 | EIGHTH-FOURTEENTH FLOOR FRAMING PLAN | January 27, 2003 |
| S1-12 | MAIN ROOF/ PENTHOUSE FRAMING PLAN | January 27, 2003 |
| | | |
| S2-01 | CONCRETE COLUMN SCHEDULE | January 27, 2003 |
| S2-02 | CONCRETE COLUMN SCHEDULE | January 27, 2003 |
| S2-03 | CONCRETE COLUMN SCHEDULE & TYPICAL COL DETAILS | January 27, 2003 |
| S2-04 | POST-TENSIONED CONCRETE BEAM SCHEDULE AND DETAILS | January 27, 2003 |
| S2-05 | REINFORCED CONCRETE BEAM SCHEDULE AND DETAILS | January 27, 2003 |
| S2-06 | REINFORCED CONCRETE SHEAR WALL ELEVATIONS | January 27, 2003 |
| | | |
| S3-01 | FOUNDATION AND SLAB ON GRADE DETAILS | January 27, 2003 |
| S3-02 | BASEMENT WALL DETAILS | January 27, 2003 |
| S3-03 | GROUND FLOOR EXTERIOR SLAB EDGE DETAILS | January 27, 2003 |
| S3-04 | POST-TENSIONED CONCRETE SLAB DETAILS | January 27, 2003 |
| S3-05 | MILD-REINFORCED CONCRETE SLAB DETAILS AND SCHEDULES | January 27, 2003 |
| S3-06 | TYPICAL SHEAR WALL DETAILS | January 27, 2003 |
| S3-07 | RAMP SECTION & DETAILS | January 27, 2003 |
| S3-08 | STRUCTURAL STEEL DETAILS | January 27, 2003 |
| S3-09 | SECTIONS AND DETAILS | January 27, 2003 |
| | | |

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMT4HO3 07/07/00

HU00024234

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318          SUBCONTRACTOR  The Pool and Kent Corporation

| | MECHANICAL ENGINEERING | |
|---|---|---|
| | | |
| H-001 | Legend, Symbols and Abbreviations | January 27, 2003 |
| H-010 | Parking - Level 3 Plan | January 27, 2003 |
| H-011 | Parking - Level 2 Plan | January 27, 2003 |
| H-012 | Parking - Level 1 Plan | January 27, 2003 |
| H-020 | Meeting Rooms Level Plan | January 27, 2003 |
| H-021 | Mezzanine Level Plan | January 27, 2003 |
| H-101 | Ground Floor Plan | January 27, 2003 |
| H-102 | 2nd Floor Plan and Mech. Mezz. Level Plan | January 27, 2003 |
| H-103 | 3rd Floor Plan | January 27, 2003 |
| H-104 | 4th & 5th Floor Plan | January 27, 2003 |
| H-105 | 6th Floor Plan | January 27, 2003 |
| H-106 | 7th thru 13th Floor Plan | January 27, 2003 |
| H-107 | 14th Floor Plan | January 27, 2003 |
| H-108 | Penthouse Part Plan - A | January 27, 2003 |
| H-109 | Penthouse Part Plan - A | January 27, 2003 |
| H-110 | Enlarged Plans | January 27, 2003 |
| H-111 | Enlarged Plans | January 27, 2003 |
| H-201 | Riser Diagrams | January 27, 2003 |
| H-202 | Riser Diagrams | January 27, 2003 |
| H-203 | West Outside Air Riser Diagrams | January 27, 2003 |
| H-204 | East Outside Air Riser Diagrams | January 27, 2003 |
| H-205 | West Fan Coil Riser Diagrams | January 27, 2003 |
| H-206 | East Fan Coil Riser Diagrams | January 27, 2003 |
| H-207 | West Exhaust Air Riser Diagrams | January 27, 2003 |
| H-208 | East Exhaust Air Riser Diagrams | January 27, 2003 |
| | | |
| H-301 | Penthouse Sections | January 27, 2003 |
| H-302 | Penthouse Sections | January 27, 2003 |
| H-501 | Air Handling Units Details | January 27, 2003 |
| H-601 | Control Diagrams | January 27, 2003 |
| H-602 | Control Diagrams | January 27, 2003 |
| H-603 | Control Diagrams | January 27, 2003 |
| H-701 | Details | January 27, 2003 |
| H-702 | Details | January 27, 2003 |
| H-703 | Details | January 27, 2003 |

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT II R.G 07/07/00

HU00024235

HUNT JOB NO.  5003

SUBCONTRACT NO.  09451

VENDOR NO.  15318          SUBCONTRACTOR  The Pool and Kent Corporation

| H-704 | Details | January 27, 2003 |
|---|---|---|
| H-801 | Schedules | January 27, 2003 |
| H-802 | Schedules | January 27, 2003 |
|  |  |  |
|  | PLUMBING |  |
|  |  |  |
| P-001 | PLUMBING - LEGEND, SYMBOLS ABBREVIATIONS AND SCHEDULES | January 27, 2003 |
| P-002 | PLUMBING - FIXTURE SCHEDULES AND DETAILS | January 27, 2003 |
| P-010 | PLUMBING PLAN - PARKING LEVEL 3 | January 27, 2003 |
| P-011 | PLUMBING PLAN - PARKING LEVEL 2 | January 27, 2003 |
| P-012 | PLUMBING PLAN - PARKING LEVEL 1 | January 27, 2003 |
| P-020 | PLUMBING PLAN - MEETING ROOM LEVEL | January 27, 2003 |
| P-021 | PLUMBING PLAN - MEZZANINE LEVEL | January 27, 2003 |
| P-101 | PLUMBING PLAN - GROUND FLOOR | January 27, 2003 |
| P-102 | PLUMBING PLAN - SECOND FLOOR | January 27, 2003 |
| P-103 | PLUMBING PLAN - 3RD FLOOR | January 27, 2003 |
| P-104 | PLUMBING PLAN - 4TH & 5TH FLOOR | January 27, 2003 |
| P-105 | PLUMBING PLAN - 6TH FLOOR | January 27, 2003 |
| P-106 | PLUMBING PLAN - 7TH - 13TH FLOOR | January 27, 2003 |
| P-107 | PLUMBING PLAN - 14TH FLOOR | January 27, 2003 |
| P-108 | PLUMBING PLAN - PENTHOUSE FLOOR | January 27, 2003 |
| P-109 | PLUMBING ENLARGED PLANS | January 27, 2003 |
| P-110 | PLUMBING ENLARGED PLANS | January 27, 2003 |
| P-111 | PLUMBING ENLARGED PLANS | January 27, 2003 |
| P-112 | PLUMBING ENLARGED PLAN AT KITCHEN | January 27, 2003 |
| P-201 A | PLUMBING DOMESTIC WATER RISER DIAGRAM | January 27, 2003 |
| P-201.B | PLUMBING DOMESTIC WATER RISER DIAGRAM | January 27, 2003 |
| P-201.C | PLUMBING DOMESTIC WATER RISER DIAGRAM | January 27, 2003 |
| P-201 D | PLUMBING DOMESTIC WATER RISER DIAGRAM | January 27, 2003 |
| P-202.A | PLUMBING SANITARY RISER DIAGRAM | January 27, 2003 |
| P-202 B | PLUMBING SANITARY RISER DIAGRAM | January 27, 2003 |
| P-202 C | PLUMBING SANITARY RISER DIAGRAM | January 27, 2003 |
| P-202 D | PLUMBING SANITARY RISER DIAGRAM | January 27, 2003 |
| P-203 | PLUMBING STORM WATER RISER DIAGRAM | January 27, 2003 |
| P-204 | PLUMBING GAS RISER DIAGRAM | January 27, 2003 |
| P-501 | PLUMBING DETAILS | January 27, 2003 |
| P-502 | PLUMBING DETAILS | January 27, 2003 |

HU00024236

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO  15318          SUBCONTRACTOR  The Pool and Kent Corporation

| P. 503 | PLUMBING DETAILS | January 27, 2003 |
|---|---|---|
| | **ELECTRICAL ENGINEERING** | |
| E-001 | Electrical Symbols, Legends and Abbreviations | January 27, 2003 |
| E-200 | Lighting Plan - B4 | January 27, 2003 |
| E-201 | Lighting Plan - B3 | January 27, 2003 |
| E-202 | Lighting Plan - B2 | January 27, 2003 |
| E-203 | Lighting Plan - B1 | January 27, 2003 |
| E-204 | Lighting Plan - B1 Mezzanine | January 27, 2003 |
| E-205 | Lighting Plan - Ground Floor | January 27, 2003 |
| E-206 | Lighting Plan - 2nd Floor | January 27, 2003 |
| E-207 | Lighting Plan - 3rd Floor | January 27, 2003 |
| E-208 | Lighting Plan - 4th thru 6th Floors | January 27, 2003 |
| E-209 | Lighting Plan - 7th thru 14th Floors | January 27, 2003 |
| E-210 | Lighting Plan - Penthouse and Roof Level | January 27, 2003 |
| E-300 | Power Plan - B4 | January 27, 2003 |
| E-301 | Power Plan - B3 | January 27, 2003 |
| E-302 | Power Plan - B2 | January 27, 2003 |
| E-303 | Power Plan - B1 | January 27, 2003 |
| E-304 | Power Plan - B1 Mezzanine | January 27, 2003 |
| E-305 | Power Plan - Ground Floor | January 27, 2003 |
| E-306 | Power Plan - 2nd Floor | January 27, 2003 |
| E-307 | Power Plan - 3rd Floor | January 27, 2003 |
| E-308 | Power Plan - 4th thru 6th Floors | January 27, 2003 |
| E-309 | Power Plan - 7th thru 14th Floors | January 27, 2003 |
| E-310 | Power Plan - Penthouse and Roof Level | January 27, 2003 |
| E-500 | Electrical Power Riser Diagram | January 27, 2003 |
| E-501 | Elec. Lighting Control/dimming Sys. Schem. Wiring Diag. | January 27, 2003 |
| E-502 | Electrical Telephone Riser Diagram | January 27, 2003 |
| E-700 | Electrical Enlarged Plans | January 27, 2003 |
| E-701 | Electrical Enlarged Plans | January 27, 2003 |
| E-702 | Electrical Enlarged Plans | January 27, 2003 |
| E-703 | Electrical Enlarged Plans | January 27, 2003 |
| E-704 | Electrical Kitchen Equipment Schedule | January 27, 2003 |
| E-705 | Electrical Enlarged Plans | January 27, 2003 |
| E-706 | Electrical Enlarged Plans | January 27, 2003 |

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT II-DG 07/18/00

HU00024237

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318          SUBCONTRACTOR The Pool and Kent Corporation

| E-707 | Electrical Enlarged Plans | January 27, 2003 |
|---|---|---|
| E-708 | Electrical Enlarged Plans | January 27, 2003 |
| E-800 | Electrical Panelboard Schedules | January 27, 2003 |
| E-801 | Electrical Panelboard Schedules | January 27, 2003 |
| E-802 | Electrical Panelboard Schedules | January 27, 2003 |
| E-803 | Electrical Panelboard Schedules | January 27, 2003 |
| E-804 | Electrical Panelboard Schedules | January 27, 2003 |
| E-805 | Electrical Panelboard Schedules | January 27, 2003 |
| E-900 | Details | January 27, 2003 |
|  |  |  |
|  | **FIRE ALARMS** |  |
|  |  |  |
| FA-001 | Fire Alarm Symbols, Legends and Abbreviations | January 27, 2003 |
| FA-200 | Fire Alarm Plan - B4 | January 27, 2003 |
| FA-201 | Fire Alarm Plan - B3 | January 27, 2003 |
| FA-202 | Fire Alarm Plan - B2 | January 27, 2003 |
| FA-203 | Fire Alarm Plan - B1 | January 27, 2003 |
| FA-204 | Fire Alarm Plan - B1 Mezzanine | January 27, 2003 |
| FA-205 | Fire Alarm Plan - Ground Floor | January 27, 2003 |
| FA-206 | Fire Alarm Plan - 2nd Floor | January 27, 2003 |
| FA-207 | Fire Alarm Plan - 3rd Floor | January 27, 2003 |
| FA-208 | Fire Alarm Plan - 4th thru 6th Floors | January 27, 2003 |
| FA-209 | Fire Alarm Plan - 7th thru 14th Floors | January 27, 2003 |
| FA-210 | Fire Alarm Plan - Penthouse and Roof Level | January 27, 2003 |
| FA-500 | Fire Alarm Riser Diagram | January 27, 2003 |
| FA-700 | Fire Alarm Enlarged Plans | January 27, 2003 |
| FA-701 | Fire Alarm Enlarged Plans | January 27, 2003 |
| FA-900 | Fire Alarm Annunciator and Notes | January 27, 2003 |
|  |  |  |
|  | **FIRE PROTECTION** |  |
|  |  |  |
| FP-001 | FIRE PROTECTION PLAN - NOTES, LEGEND, ABBREV., AND DETAILS | January 27, 2003 |
| FP-010 | FIRE PROTECTION PLAN - PARKING LEVEL - 3 | January 27, 2003 |
| FP-011 | FIRE PROTECTION PLAN - PARKING LEVEL - 2 | January 27, 2003 |
| FP-012 | FIRE PROTECTION PLAN - PARKING LEVEL - 1 | January 27, 2003 |
| FP-020 | FIRE PROTECTION PLAN - LOWER LEVEL | January 27, 2003 |
| FP-021 | FIRE PROTECTION PLAN - MEZZANINE LEVEL | January 27, 2003 |

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT #GG 07/18/00

HU00024238

HUNT JOB NO.  5003

SUBCONTRACT NO.  09451

VENDOR NO   15318                    SUBCONTRACTOR  The Pool and Kent Corporation

| FP-101 | FIRE PROTECTION PLAN - 1ST FLOOR | January 27, 2003 |
| FP-102 | FIRE PROTECTION PLAN - 2ND FLOOR | January 27, 2003 |
| FP-103 | FIRE PROTECTION PLAN - 3RD FLOOR | January 27, 2003 |
| FP-104 | FIRE PROTECTION PLAN - 4TH & 5TH FLOORS | January 27, 2003 |
| FP-105 | FIRE PROTECTION PLAN - 6TH FLOOR | January 27, 2003 |
| FP-106 | FIRE PROTECTION PLAN - 7TH - 13TH FLOORS | January 27, 2003 |
| FP-107 | FIRE PROTECTION PLAN - 14TH FLOOR | January 27, 2003 |
| FP-108 | FIRE PROTECTION PLAN - PENTHOUSE FLOOR | January 27, 2003 |
| FP-201 | FIRE PROTECTION RISER DIAGRAM | January 27, 2003 |
| FP-501 | FIRE PROTECTION DETAILS | January 27, 2003 |
|  |  |  |
|  | KITCHEN DRAWINGS |  |
|  |  |  |
| KA-1 | MAIN KITCHEN/DISPLAY COOKING BUFFET & BAR | January 27, 2003 |
| KA-2 | MAIN KITCHEN/DISPLAY COOKING BUFFET & BAR | January 27, 2003 |
| KA-3 | MAIN KITCHEN/DISPLAY COOKING BUFFET & BAR | January 27, 2003 |
| KA-4 | MAIN KITCHEN/DISPLAY COOKING BUFFET & BAR | January 27, 2003 |
| KB-1 | EMPLOYEE CAFÉ' & LINEN/HOUSEKEEPING | January 27, 2003 |
| KB-2 | EMPLOYEE CAFÉ' & LINEN/HOUSEKEEPING | January 27, 2003 |
| KB-3 | EMPLOYEE CAFÉ' & LINEN/HOUSEKEEPING | January 27, 2003 |
| KB-4 | EMPLOYEE CAFÉ' & LINEN/HOUSEKEEPING | January 27, 2003 |
| KC-1 | BEVERAGE AND LIQUOR STORAGE, MTG. RM. PANTRY | January 27, 2003 |
| KC-2 | BEVERAGE AND LIQUOR STORAGE, MTG. RM. PANTRY | January 27, 2003 |
| KC-3 | BEVERAGE AND LIQUOR STORAGE, MTG. RM. PANTRY | January 27, 2003 |
| KC-4 | BEVERAGE AND LIQUOR STORAGE, MTG. RM. PANTRY | January 27, 2003 |
| KD-1 | BAR & PANTRY PLANS | January 27, 2003 |
| KD-2 | BAR & PANTRY PLANS | January 27, 2003 |
| KD-3 | BAR & PANTRY PLANS | January 27, 2003 |
| KD-4 | BAR & PANTRY PLANS | January 27, 2003 |
|  |  |  |
| ADDITIONAL DOCUMENTS |  |  |
|  |  |  |
| Geotechnical Engineering Report for Proposed Hotel Building at 1000 K Street, N.W., Washington, D.C. prepared by Schnabel Engineering (Revised September 8, 2000) |  |  |
|  |  |  |
| ADDENDUM # 1 Embassy Suites - 1000 K Street, Washington, DC dated June 25, 2002 (prepared by BBGM) |  |  |
|  |  |  |
| ADDENDUM # 2 Embassy Suites - 1000 K Street, Washington, DC dated July 29, 2002 (prepared by BBGM) |  |  |

HU00024239

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO   15318                    SUBCONTRACTOR  The Pool and Kent Corporation

| |
|---|
| ADDENDUM # 3 Embassy Suites - 1000 K Street, Washington, DC dated August 14, 2002 (prepared by BBGM) |
| ADDENDUM # 4 Embassy Suites - 1000 K Street, Washington, DC dated September 5, 2002 (prepared by BBGM) |
| ADDENDUM # 5 Embassy Suites - 1000 K Street, Washington, DC dated December 5, 2002 (prepared by BBGM) |
| TECHNICAL MEMORANDUM regarding Dewatering for 1000 K Street dated August 14, 2003 by Schnabel Engineering North, LLC |
| Construction Schedule - Embassy Suites - Washington, D.C.  -  Construction Summary layout and construction activity layout updated thru October 2003. (Data date 11/10/03, run date 11/11/03) |
| Agreement and Supplemental Conditions Between Owner and Contractor (available for review) |

DATE:  June 07 2004

HUNT          SUBCONTRACTOR

STANDARD CONTRACT ATTACHMENTS ATTACHMENTS.DOC 02-07/10

HU00024240

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318          SUBCONTRACTOR: The Poole and Kent Corporation

ATTACHMENT IV

MODIFICATIONS AND ADDITIONS TO SUBCONTRACT

Hunt and Subcontractor agree to the following changes and additions to the Subcontract Agreement. These changes and additions are the only changes to the Subcontract Agreement and the Subcontractor accepts all other provisions of the Subcontract Agreement as originally written.

**Form SF 330 entitled "Affidavit and Partial Waiver of Claims and Liens and Release of Rights":**
**At the end of the last paragraph after "or invoices" insert "or unpaid extras or change orders, or claims submitted in accordance with the Contract Documents".**

**Article 9.5:**
Add to the end "Not withstanding herein to the contrary the responsibility to report is limited to obvious or known defective work, it does not include any extraneous testing."

**Article 10.3:**
In line 3 delete "or contributed to in any way".

**Article 13.1:**
In lines 4 and 5 delete "use all means necessary to discover any defects in such other work".

**Article 18.5:**
In line 3 after the word "Subcontractor" insert "in writing".

**Article 21.7:**
In the second line change "and" to "to the extent".

**Article 32.1:**
Delete from the last sentence "and such apportionment shall be binding on the Subcontractor." And insert in place thereof: "subject to the dispute provisions herein".

**Article 33.1:**
In the second paragraph, third line, change "even it is alleged" to "except to the extent".

**Article 34.3, Paragraph at the Top of the Page:**
In line 2, 3 and 4 delete "or in Marion County, Indiana, as Hunt, in its sole discretion, may elect to the exclusion of all other jurisdictions."

DATE: June 07, 2004

_____        _____
HUNT                   SUBCONTRACTOR

HU00024241

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318          SUBCONTRACTOR. The Pool and Kent Corporation

ATTACHMENT V

INSURANCE REQUIREMENTS

Subcontractor, within five (5) days prior to starting its Work, shall furnish evidence of insurance
for at least the coverage and amounts set forth below. All insurance shall be maintained in the form and with
a company (or companies) satisfactory to HUNT. Subcontractor's Certificate of Insurance shall be filed with
HUNT on a form acceptable to HUNT, and shall require that HUNT be notified in writing thirty (30) days
prior to cancellation, modification or non-renewal of any insurance policy listed in Subcontractor's
Certificate.

A.    Minimum Coverages

1.    General Liability to include:

a.    Occurrence Form
b.    Premises Operations
c.    Explosion, Collapse and Underground
d.    Products/Completed Operations
      Hazard included for 2 years after
      completion of Work by Subcontractor
e.    Contractual Liability Coverage
f.    Broad Form Property Damage Liability Coverage
g.    Independent Contractors Coverage
h.    Personal Injury Coverage with Contractual and
      Fellow Employees Exclusions Deleted
i.    Aggregate Limits Per Project Endorsement

2.    Automobile Liability to include:

a.    Comprehensive Form
b.    Owned Auto Coverage
c.    Non – Owned Auto Coverage
d.    Hired Auto Coverage

3.    Worker's Compensation & Employer's Liability Coverage:

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT-HOG 07-07/00

HU00024242

HUNT JOB NO. 5003

SUBCONTRACT NO 09451

VENDOR NO. 15318        SUBCONTRACTOR. The Pool and Kent Corporation

    4.    Other:

B.    Limits of Liability Required

    1.    General Liability    - $5,000,000.  CSL Per Occurrence for
                                         Personal Injury and Property Damage

    2.    Automobile Liability    - $2,000,000.  Combined Single Limit for
                                         Bodily Injury and Property Damage
                                       Per Occurrence

    3.    Worker's Compensation - Statutory
        and Employer's Liability - $1,000,000.  Each accident
                                 - $1,000,000.  Each employee
                                 - $1,000,000.  Policy limit

C.    HUNT and the Owner are to be designated as additional insureds under the general liability, automobile liability, and any excess liability coverage.  Proof of insurance is to be verified by inclusion of a Certificate of Insurance.

D.    General Liability Insurance, Automobile Liability Insurance and Employer's Liability Insurance may be arranged under a single policy for the full limits required or by a combination of underlying policies with the balance provided by an excess or umbrella policy.  Coverage provided under any excess or umbrella policy must be as broad as the coverage provided by the primary policy(s).

DATE: February 24, 2004

HUNT    SUBCONTRACTOR

(*) = In accordance with Poole and Kent's letter dated February 24, 2004

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT-I ICG 07/07/00

HU00024243

HUNT JOB NO. 5003

SUBCONTRACT NO. 09451

VENDOR NO. 15318    SUBCONTRACTOR The Poole and Kent Corporation

ATTACHMENT VI

BOND REQUIREMENTS

(IF "YES" IS CHECKED ON ATTACHMENT II D, THIS ATTACHMENT VI MUST BE
COMPLETED)

Subcontractor shall provide a performance bond and a labor and material payment bond with
HUNT as oblige, each in the amount of one hundred percent (100%) of the Subcontract Price.

All bonds must be executed by a corporate surety which:

(1)    is licensed to transact business in the State of NEW JERSEY;

(2)    is named in the current list of "Companies Holding Certificates of Authority as Acceptable
Sureties on Federal Bonds and as Acceptable Reinsuring Companies" as published in
Circular 570 (amended) by the U.S. Treasury Department and all of Subcontractor's bonds
for this Project are in compliance with the limitations stated in the Circular; and

(3)    has an A.M. Best & Company rating of "A" or better;

Bonds shall be provided on HUNT's standard forms SF502 and SF503. Copies are included with this
Agreement. Bond forms shall be accompanied by an appropriate power of attorney from the surety, and be
otherwise acceptable to HUNT.

All bonds shall be furnished upon the earlier of the date of execution of this Subcontract or the
commencement of any work by Subcontractor on the Project.

The Subcontractor acknowledges that the cost of all bond premiums, including additional premiums
for any increase in the Subcontract Price or any extension of the Subcontractor's Work, has been included in
the Subcontract Price.

No change, alteration or modification to the terms and conditions of this Subcontract, change to
Subcontractor's scope of work or to the terms or manner of payment, shall in any way exonerate or release,
in whole or in part, any surety on any bond furnished by or on behalf of Subcontractor.

If required to do so by HUNT, prior to commencement of any work required hereunder,
Subcontractor shall obtain and furnish to HUNT a copy or counterpart of this Subcontract which shall have
been endorsed in writing by an authorized representative of the surety company, specifically approving this
Subcontract.

No payment of any portion of the Subcontract Price shall be due to Subcontractor until all of the
provisions of this section have been fully satisfied.

DATE _June 07, 2004_

HUNT    SUBCONTRACTOR

Page 1 of 1    STANDARD SUBCONTRACT ATTACHMENTS ATTACHMENT6.DOC (07/07/01)

HU00024244

HUNT JOB NO. <u>5003</u>    

SUBCONTRACT NO. <u>09451</u>

VENDOR NO. <u>15318</u>    SUBCONTRACTOR. <u>The Poole and Kent Corporation</u>

ATTACHMENT VII

**LIEN REQUIREMENTS**

The work called for by this Subcontract shall be performed, constructed, finished and delivered to the Contractor free from all claims, liens and charges whatsoever. It is further mutually agreed between the parties hereto that no payment under this Subcontract, except for final payment, shall be conclusive evidence of the performance of this Subcontract, either wholly or in part, and that no payments shall be construed to be an acceptance of defective workmanship or the use of improper materials. The final payment shall not relieve the Subcontractor from the responsibility for the discharge of any liens, for making available to the Contractor for examination and audit all records pertaining to the Work on or in connection with the Project and for correction of defective or incomplete work.

After the initial monthly invoice, each subsequent monthly invoice shall be accompanied by notarized affidavits from the Subcontractor and all its subcontractors (including assigned subcontractors, if any), acknowledging that they have received payment for labor performed and material supplied during the preceding month (for example, an invoice dated February 25 shall cover work performed and material supplied in February; the affidavit shall acknowledge receipt of payment for labor performed and material supplied in January).

<u>Waiver of Rights Under New Jersey Mechanics Lien Law</u>

Subcontractor and any sub subcontractor, suppliers or any other entity furnishing labor or materials for the Work, or any other alterations or additions thereto shall not have and hereby waive any right to file any mechanics notice of intention, mechanics lien, stop notice or any other filing or make any other claim under the New Jersey Mechanics Lien Law N.J.S A. 2A;44-64, et seq. It is specifically agreed that the foregoing is not a waiver of any rights under the New Jersey Construction Lien Law P.L. 1993 Chapter 318. Subcontractor shall include the foregoing provision in each of its contracts with subcontractors (i.e. sub subcontractors) and suppliers and require that each sub subcontractor include this provision in their contracts with their subcontractors and suppliers.

<u>Construction Lien Claims – New Jersey</u>

If a construction lien claim (or an amendment to a construction lien claim) is filed pursuant to the New Jersey Construction Lien Law, Subcontractor shall within ten (10) calendar days of notice of the claim from the Contractor or claimant either (a) pay the lien claimant and obtain a discharge of the claim of record or (b) execute and file with the proper county clerk a bond in favor of the lien claimant with a surety company, duly authorized to transact business in the State of New Jersey as surety thereon, in an amount equal to one hundred and ten percent (110%) of the amount claimed by the lien claimant and a payment of $25.00 conditioned upon the payment of any judgement and costs that may be recovered by the lien claimant under the claim and obtain a discharge of the claim of record or (c) deposit with the clerk of the Superior Court of New Jersey, funds constituting an amount equal to one hundred and ten percent

(110%) of the amount claimed by the lien claimant and a payment of $25.00 conditioned upon the payment of any judgement and costs that may be recovered by the lien claimant under the claim and obtain a discharge of the claim of record.

STANDARD SUBCONTRACT ATTACHMENTS ATTACHMT 4HOS

HU00024245

 

HUNT JOB NO. <u>5003</u>

SUBCONTRACT NO. <u>09451</u>

VENDOR NO. <u>15318</u>    SUBCONTRACTOR. <u>The Poole and Kent Corporation</u>

Immediately upon the notice of a construction lien claim (or and amendment to a construction lien claim) the Contractor shall in addition to any other rights under this Subcontract or permitted at law or in equity, have the right to withhold from any payment(s) due to Subcontractor in amount equal to one hundred and ten percent (110%) of the lien claim plus $25.00 plus $500 00 (collectively "Claim Funds"). If Subcontractor obtains a discharge of the construction lien claim of record as provided in the immediately preceding paragraph, the Contractor will no longer have the right to withhold the Claim Fund. If Subcontractor fails to obtain a discharge of record of the construction lien claim as required by the immediately preceding paragraph, then the Contractor shall have the right, in addition to any other rights under this Subcontract or permitted at law or in equity, to proceed to have the lien discharged as set forth in clause (b) or (c) of the immediately preceding paragraph and the amount of the Claim Fund will be deducted from the amount due to Subcontractor pursuant to this Subcontract

The Contractor becomes aware that a "Notice of Unpaid Balance and Right to File Lien" (NUB") or an amendment to a NUB has been filed, then the Contractor shall immediately have the right to withhold a Claim Fund for the NUB. If NUB is discharged of record or if one hundred and ten (110) calendar days elapses from the date (as set forth in NUB) of the provision of the last work, services, materials or equipment delivery for which payment is claimed and no construction lien claim is filed within the ninety (90) calendar day period permitted by the Construction Lien Law, then the rights and obligations of the Contractor shall be set forth in the two subparagraphs above.

<u>Subcontractor and Supplier List</u>

Subcontractor shall provide the Contractor with an accurate and full list (the "List") of the names and addresses of each subcontractor and suppliers who may have the right to file a lien pursuant to the provisions of the New Jersey Construction Lien Law P.L. 1993 Chapter 318 (the "Act"). The list shall be provided ten (10) calendar days prior to the commencement of any work under this Subcontract, the List will be verified under oath and will comply with all provisions of the Act with respect to such lists

Subcontractor will include a provision substantially identical to the foregoing in its contracts with subcontractors (i.e. sub-subcontractors) The sub-subcontractors will be required to provide their lists directly to the Contractor in addition to any other entity to whom they may provide their list

DATE: _Vuni 07 2004_

_R_

HUNT    SUBCONTRACTOR

HU00024246