Poole & Kent
An EMCOR Company

The Poole and Kent Corporation
4530 Hollins Ferry Road
Baltimore, MD 21227

Phone: 410.247.2200
Fax: 410.247.2331

October 19, 2004

Hunt Construction Group, Inc.
1000 K Street, NW
Washington, DC 20001

**P&K JOB NO. 03235**
**FILE NO. _12-002_**

Attention:   Tom Page

Reference:   **Embassy Suites Hotel**
             **Washington, DC**

Subject:     **Layout and Sleeving Difficulties**

Gentlemen,

     Over the past 5 months our offices have had several conversations pertaining to lack of timely and coordinated access to decks in order to perform properly sequenced layout and coordinated sleeve/insert placement. This situation continues to deteriorate as the building progresses through the upper guest room floors. Poole and Kent continues to be forced into performing its layout and sleeve installation after normal working hours. Furthermore, we have typically been given little to no notice of availability of the deck. On several occasions this has resulted in our layout and sleeve placement after the commencement of reinforcing. It is incumbent upon your organization to allow adequate notice and duration for our work force to perform its work during normal working hours, a task you have not been performing. As such, the time has come to formally notify Hunt of the serious nature of these actions and the associated cost ramifications that Poole and Kent has encountered and continues to encounter.

     It is Poole and Kent's opinion that there has been insufficient coordination, a lack of adequate planning and unacceptable/untimely access surrounding our availability of decks for layout and sleeve placement. The contract documents require Poole and Kent to coordinate its work with others and perform it task in an orderly and productive manner. It also requires Poole and Kent to perform its work in a diligent and continuous manner. The project was not bid with overtime, nor did Hunt indicate the need for overtime, therefore all work was and still is contemplated to be performed within the normal 8 hour workday. The collective bargaining agreement with the local trade unions establishes the normal workday. Hunt prepared a baseline schedule that was incorporated into our contract, unfortunately it provided no detail at all for the erection of the superstructure therefore we are uncertain to the time and sequencing for layout and sleeve installation. Poole and Kent has fulfilled it requirements set forth by the contract.

     Penetration layout for each deck must be performed accurately to ensure proper alignment. The most prudent method and generally accepted industry standard is to perform the layout and sleeve placement immediately after the deck is formed, after the General Contractor horizontal controls have been established, and prior to reinforcing placement. With these parameters set forth, let me state that Poole and Kent contemplated reasonable access during normal working hours to accurately layout and install its sleeves, inserts and box-outs prior to the



1

www.poole-kent.com

placement of reinforcing and cables. Our work is fully integrated with the reinforcing and cable placement process therefore our early access for placement is paramount.

Since the commencement of concrete operations in February 2004, structural work has progressed slowly, taking over 2 months longer than contemplated to perform concrete work through the ground level. We have maintained our contemplated staff necessary to pace your concrete work and jump into the layout and sleeve operations whenever Hunt provided notification. Frequently the notification required weekend, or weekday overtime performance in order to prevent impacting the progress of structure. In several instances, Poole and Kent was forced to perform its work amongst the reinforcing steel as a result of the lack of coordination and adequate access by Hunt and its structural subcontractors. Poole and Kent has maintained the required staffing to pace the slow concrete work, has provided the personnel after hours whenever directed to prevent impeding structural progress, has over-manned whenever necessary, and has been forced to work inefficiently amongst the reinforcing as necessary.

Hunt has successfully accelerated the structural progress since July 2004 as it has moved up from the 2nd through 7th floors, however it has come with substantial difficultly and unanticipated increased costs for Poole and Kent. Many of the same issues continue on these upper floors as persisted on the sub-grade levels. Additional manpower has been required to standby and jump onto the formed decks immediately upon its completion in order to prevent other subs from stocking and placing reinforcing on those decks. Overtime hours are expended in order to observe, layout and place sleeves. Hunt is performing little if any subcontractor coordination in relation to plumbing layout and sleeves, preventing properly sequenced and orderly installation resulting in continual disputes pertaining to access and properly sequence operations. Let me take the time to detail how this sequencing, planning and scheduling financially impact the Poole and Kent operations.

1. Poole and Kent contemplated assigning a small crew of personnel to perform layout and sleeves on each formed deck prior to placement of reinforcing steel during normal working hours.
   a. This crew was maintained for an additional 2 months during the placement of the B-4 through ground levels at additional cost.
   b. Personnel were required to maintain a standby mode in order jump on a deck at a moments notice due to the lack of scheduling, notification and coordination by Hunt. Assignment to alternate activities was not practical due to the unscheduled and periodic need to perform deck layout and sleeve placement. This also results in periodic over-manning of the project.
   c. The entire plumbing crew paced the slow progress of the work resulting in lost productivity and the need to periodically jump off the current task to support layout and sleeves.
   d. When areas came available for layout and sleeve placement, the work was performed on a crash basis requiring frequent personnel reassignment and disruption to work flow and routines.
   e. Sufficient crews were maintained during normal working hours to layout and sleeve the deck, but our work was delayed rending the crews idle and in standby mode. When work was required after normal hours, those hours were

un-contemplated and are outside contractual requirements. It represents lost work effort or lost opportunity. Either the standby hours during the normal workday are reimbursable or additional hours on overtime represent lost opportunity making them reimbursable.

    f. When work was performed after normal working hours overtime premium is paid at either 1 ½ or 2 times the base rate based on the collective bargaining agreement with the local labor Union: a cost to Poole and Kent that was not contemplated, now requiring reimbursement by Hunt.

    g. Furthermore, frequent overtime use in the wee hours of the morning and weekends result in increased absenteeism during the normal workweek impacting the productivity of the entire crew.

    h. When overtime hours are worked, supervision must be dispatched to the project at additional cost. Although the work task was contractual and required supervision, the task was not performed during the normal working hours while supervision was available. Therefore, after hours work is effectively make-up for Hunts inability to facilitate access during normal working hours (lost labor effort). The cost is further exacerbated by the consumption of overtime premium. Both require reimbursement from Hunt.

2. Poole and Kent encountered several occasions wherein the concrete crews were allowed to stock, distribute and place reinforcing steel prior to layout and sleeve placement. This was a result or inadequate notification, scheduling and coordination by Hunt personnel. The impacts to Poole and Kent are substantial.

    a. Layout takes at least 3 times as long to perform for each location must be individually identified – no plumbing control lines can be placed.

    b. Reinforcing steel and cables complicate access and increase difficulty in placing sleeves, anchors and box-outs. The work requires substantial additional labor effort due to the manipulation and maneuvering required. It also frequently prevents complete anchoring of the embedded items risking shifting during the pour. Labor hours easily double in this scenario.

    c. Accuracy of placement is substantially diminished as a result of probable error through repetitive layout performance.

    d. Risk of missing sleeves, anchors and box-outs increase dramatically due to congestion and lack visual coordination.

The bottom line is that Hunt has not provided timely and adequate access for the execution of the layout and sleeve installation tasks. Hunt has delayed the project over 2 months during the spring and summer 2004. Hunt has treated Poole and Kent as a second class citizen by not allowing access during normal working hours, providing inadequate communications and coordination, and forcing use of unbudgeted and unscheduled overtime hours. Hunt accelerated the structural erection without distributing a detailed plan resulting in disruption and additional costs to Poole and Kent. As a result of the actions of your organization and subcontractors, Poole and Kent has not been able to perform in accordance with its contract, resulting in lost time, inefficient operations and performance of substantial overtime.

Our organization has gone out of its way to accommodate and support your forming reinforcing and pouring of concrete slabs, coming in 2 and 3 hours early, leaving 3 and 4 hours

late, while working Saturdays and Sundays. We have maintained personnel in a standby to jump onto each deck as it comes available. We have maintained staff for additional durations in order to pace the structural process. We have performed our work inefficiently to accommodate previously placed reinforcing. We have provided additional supervision when work is performed after normal working hours. This method of operations has resulted in substantial disruption and uncertainty. Via transmittal of this letter, Poole and Kent herein provides written notice of previous and continuing interference, disruption and delay resulting in additional costs. As such, Poole and Kent reserves its rights to pursue all costs associated with the aforementioned issues.

Sincerely,

THE POOLE AND KENT CORPORATION

E. Matthew Maltby
Project Manager

Cc:  Adam Snavely – Poole and Kent
     Tom Kessler – Poole and Kent
     Bob Davis – Poole and Kent
     Christy Heath – Poole and Kent
     Jim Elges – Regional Air
     George Reyes – Regional Air