# FEBRUARY 2, 2005 REVIEW OF
# SCHEDULE & JOB SITE PROGRESS
### THE POOLE AND KENT CORPORATION
### EMBASSY SUITES – WASHINGTON D.C.
### JOB NO. 03225

Based on my review of the project schedules along with February 2, 2005 job site observations and discussions with project management staff, it is my professional opinion that this project has lost 94 calendar days since December 1, 2003. The loss of time is a direct result of late completion of structural placement, the unscheduled placement of equipment pads, and defective sequencing of the penthouse mechanical work. Furthermore, the lack of adequate duration for placement and startup of mechanical systems in the penthouse jeopardizes the project turnover date. I recognize the efforts that Hunt put forth to accelerate the structure in order to mitigate earlier delays, however despite those efforts substantial delay and disruption still have been experienced.

In a nut shell, the following events have directly impacted the project turn over date:

- The Structure was to be "topped-out" on November 3, 2004. This did not occur until December 23, 2004, representing a 50 calendar impact to the schedule.
- The penthouse was not available for mechanical systems installations until January 31, 2005. This represents an additional 38 calendar day impact to project completion after the December 23, 2004 actual completion of the concrete structure.
- The duration of the penthouse mechanical activity is insufficient. We have made Hunt fully aware that it would need 6 months to complete and startup its mechanical systems. Based on actual penthouse availability of January 31, 2005, systems will be operational on or about July 31, 2005.
- We are required to provide 3 months of heating/cooling to allow for completion of finishes, prior to completion and turn-over. Three months from July 31, 2005 results in a projected turn-over date of October 31, 2005, or 94 calendar days later than contractually contemplated. This is contingent upon Hunt's ability to complete environmentally sensitive finishes in these last three months.

In addition to the aforementioned critical time impacts, the manner and sequence that Hunt has performed certain aspects of work has had and will continue to impact Poole and Kent's productivity and orderly performance of work. Issues such as: Insufficient and unreasonable layout and embed/sleeve placement; slow and out of sequence interior wall framing; and

1

# FEBRUARY 2, 2005 REVIEW OF
# SCHEDULE & JOB SITE PROGRESS
### THE POOLE AND KENT CORPORATION
### EMBASSY SUITES – WASHINGTON D.C.
### JOB NO. 03225

piecemeal and haphazard drywall installations at tubs and Fan Coil Units (FCU). Furthermore, Hunts directives to Poole and Kent have resulted in our jumping back onto a floor multiple times to perform small segments of rough-in work and testing dramatically increases to cost of rough-in and testing while disrupting progress on those tasks that personnel were reassigned from. The cumulative impact of all the aforementioned issues have resulted in increased overhead and labor cost which have a negative impact on the cash flow on this project, which has only been exacerbated by Hunt's inability to obtain complete and timely payment for work completed.

The issues and disruptions are explained in more detail in the following sub-sections.

Structural Completion:

The baseline schedule contemplated the "topping-out" of the structure to complete on November 3, 2004. This schedule apparently did not contemplate penthouse cure time, striping or equipment pad placement. Furthermore, it allowed the mechanical installations to commence on October 21, 2004, 13 calendar days prior to the structure being complete! The baseline schedule erroneously shows mechanical work commencing in the penthouse 13 days prior to the structure being poured. This sequencing is clearly in error and is compounded by the lack of cure, strip and equipment pad activities. The impact will be seen when compared to the as-built schedule in Illustration No. 1

Upon review of the actual performance dates for each of the structural events, we can see that the penthouse was not prepared for mechanical installations until January 31, 2005. The structure was "topped out" on December 23, 2004 and subsequently striped of forms and shoring on January 7, 2005. Pads were laid out on January 10 through 12, 2005, however Hunt did not pour those pads until January 28, 2005. As shown in Illustration No. 1, the structure was only 50 calendar days late completing, however missing cure, strip and equipment pad activities resulted in an additional 36 calendar day impact to the critical path. The as-built schedule clearly shows the normal and proper sequence of events along with the associated time impacts.

During the fall and winter 2004 Hunt accelerated the concrete structural placement, an action that required us to pace that work. The concrete subcontractor performed its work without

# FEBRUARY 2, 2005 REVIEW OF
# SCHEDULE & JOB SITE PROGRESS
### THE POOLE AND KENT CORPORATION
### EMBASSY SUITES – WASHINGTON D.C.
### JOB NO. 03225

properly coordinating the layout and sleeve/embed placement activities, without providing reasonable notice for layout and embed placement, and without providing reasonable durations for our layout and embed work between deck placement and rebar placement. This resulted in frequent false starts, idle time, piecemeal layout and embed operations, and periodic unscheduled overtime usage. We were forced to periodically maintained personnel in a standby mode to layout and install its work on the deck. Unscheduled/uncoordinated mobilizations onto the decks disrupted on-going operations resulting in lost productivity. Ultimately, we were forced to perform substantial layout and placements on premium time, also requiring expenditure of unanticipated supervision hours.

Penthouse Installations:

As set forth above, mechanical installations in the penthouse required the deck striped of formwork and shoring followed by the placement of equipment pads. Thereafter, we require 6 months to complete it work and start-up the mechanical equipment to provide heating/cooling during the last 3 months of the project for environmentally sensitive finish work. The baseline schedule did not take any of these scheduling requirements into consideration. Hunt's November 2004 schedule totally ignored all penthouse work. To date, there is no schedule for this work and its interface with finishes.

Illustration No. 2 graphically demonstrates the schedule impact that the aforementioned requirements have on the project completion and turnover. This representation assumes that Hunt has been able to keep pace with wall construction; close-in and non-environmentally sensitive finish work. Based on a January 31, 2005 actual start date for penthouse mechanical systems, those systems should be operational on or about July 31, 2004. We will then operate the systems for 3 months culminating with turnover on October 31, 2005. Based on these projections, the project will complete 94 calendar days behind schedule.

Interior Wall Framing:

3

# FEBRUARY 2, 2005 REVIEW OF
# SCHEDULE & JOB SITE PROGRESS
### THE POOLE AND KENT CORPORATION
### EMBASSY SUITES – WASHINGTON D.C.
### JOB NO. 03225

The original Hunt schedule contemplated framing taking 2 weeks per floor, progressing sequentially from floor to floor. The performance period was May 2004 through November 2004. Hunt's November 2004 schedule contemplated a similar orderly and sequential sequence however the duration was reduced to 6 working days per floor. In both cases, Hunt contemplated and communicated its intent to frame an entire floor prior to moving on the next floor.

The actual framing process has been performed in a piecemeal, disjointed and out of sequence manner, totally disrupting our ability to perform in an orderly and productive manner. Framing commenced on the 2nd floor in September 2004 and has progressed to the 10th floor as of January 27, 2005. The framing did not commence on sequential floors. Framing was not completed on one floor prior to moving to the next floor. Framing should have been complete through the 11th floor by February 1, 2005, however the 2nd through 6th floors were only completed in the last 2 weeks.

Hunt allowed the typical back to back rooms on each level to be framed first, leaving the atypical rooms on the north and south ends unframed. Thereafter, framers would periodically jump back onto a lower floor to perform some piecemeal framing in these atypical rooms. This has disrupted our crew's ability to complete all its branch piping and run-outs on a floor in a systematic and orderly manner. Instead, Hunt has directed our piping crews to pace the framer, requiring multiple remobilizations to jump back after the framer jumps back.

Hunts inability to follow its schedule and control the framing crews has resulted in extensive disruption to our piping crews. Framing is substantially behind schedule and continues to work in a disorderly and piecemeal manner. The ground floor framing is yet to begin.

Drywall @ Tubs, FCU's and Bar Sinks:

In order to complete plumbing and HVAC piping rough-in, the tubs and FCU's must be placed. In order to place the tubs, drywall must be set on 2 of the three walls surround each tub. The FCU's in the atypical rooms at the north and south ends set adjacent to shafts that require framing and drywall prior to set the unit. Hunt has been unable to control it drywall subcontractor allowing necessarily precedent drywall installations to be performed in a

4

# FEBRUARY 2, 2005 REVIEW OF
# SCHEDULE & JOB SITE PROGRESS
### THE POOLE AND KENT CORPORATION
### EMBASSY SUITES – WASHINGTON D.C.
### JOB NO. 03225

hopscotch and piecemeal manner. The result is follow-on tub and FCU placement is performed in a similar unproductive manner, completing only one or two rooms at a time. The impact is not just the multiple remobilizations and disruptive piecemeal operation on each floor, it's the impact of disrupting and splitting up crews that are working in an orderly manner on the upper floors, resulting in productivity impacts on those orderly operations.

Plumbing and Mechanical Systems:

It appears that our crews have taken the initiative and has moved the plumbing and HVAC crews onto each floor as they became available, placing the main storm and sanitary risers followed closely by the water risers. The plumbing riser systems are complete through the 14th floor with a functional storm water/roof drain system. Overhead plumbing piping on the ground and 14th floors is 95% complete, waiting on wall framing to complete the rough-in work. Plumbing rough-in on the B1 through B4 levels has been substantially complete, waiting on issuance of RFI responses and change orders for kitchen related work.

HVAC risers for the guest rooms are integrated with the fan coil units and have been installed in all back to back guest rooms through the 14th floor. HVAC risers that support the basement and ground floors have also been installed as the decks became available. The 14th floor overhead HVAC distribution is well under way and is ahead of schedule. Unfortunately, only a few FCU's have been set at the north or south ends of the building as a result of incomplete framing and shaft drywall operations. The disorderly and haphazard wall framing and drywall placement sequence has become very disruptive and inefficient to our rough-in, tub and FCU operations.

Currently, Hunt has requested that we set, hookup and test two FCU's at a time, one on each of two sequential floors. The purpose is to complete in-wall rough-ins, test those rough-ins and allow drywall close-in. This situation appears to have occurred due to Hunt's inability to coordinate and control its framing and drywall subcontractors. This proposed work sequence is highly efficient while the testing method will result in exponential cost growth.

# FEBRUARY 2, 2005 REVIEW OF
# SCHEDULE & JOB SITE PROGRESS
### THE POOLE AND KENT CORPORATION
### EMBASSY SUITES – WASHINGTON D.C.
### JOB NO. 03225

Summary and Conclusions:

We have experienced substantial time and productivity impacts as a result of the following adverse working conditions:

- Late structural placement
- Lack of coordinated and planned structural acceleration
- Lack of proper scheduling and task sequencing
- Out of sequence and piecemeal framing
- Out of sequence and piecemeal drywall installation

Generally, the lack of proper planning, sequencing and coordination continues to adversely disrupt the timely and orderly flow of work, and threatens to further impact the project completion, resulting in extended overhead expense and increased labor costs.

Cc:   Adam E. Snavely
      Contract File

                              Thomas A. Mac Phee
                              February 8, 2005



ILLUSTRATION No. 1



EMBASSY SUITES PENTHOUSE SCHEDULE ANALYSIS — ILLUSTRATION No. 2