

**Poole & Kent**
*An EMCOR Company*

The Poole and Kent Corporation
4530 Hollins Ferry Road
Baltimore, MD 21227

Phone: 410.247.2200
Fax: 410.247.2331

April 27, 2005

Hunt Construction Group, Inc.
1000 K Street, NW
Washington, D.C. 20001

Attention:    Mr. Tom Page

Reference:    **Embassy Suites Hotel**
              **Washington, DC**

Subject:      **Poole and Kent PCO-071; Additional cost associated with the**
              **enforcement of Davis-Bacon requirements**

Gentlemen:

As requested, we submit the costs associated with additional cost for not allowing "R" sheet metal workers on the project until late March. These costs were incurred as a result of the Davis-Bacon requirements.

In accordance with the attached recapitulation and supporting documentation, we will proceed with this change upon receipt of your written change order in the lump sum **ADD** amount of **One Hundred Fifty Nine Thousand Five Hundred Forty Eight Dollars and No Cents ($159,548.00)** be issued for this work. We exclude all items, which are not included in our contract scope of work, and premium time unless noted otherwise.

We reserve the right to request additional compensation and/or time should this change affect the contract completion date or otherwise indirectly impact our work.

This proposal is valid for 30 days.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

**THE POOLE & KENT CORPORATION**

E. Matthew Maltby
Project Manager

cc:    Read
       CO #071R1



www.poole-kent.com


**Poole & Kent**
*An EMCOR Company*

**The Poole and Kent Corporation**
4530 Hollins Ferry Road
Baltimore, MD 21227

Phone: 410.247.2200
Fax: 410.247.2331

April 27, 2005

Hunt Construction Group, Inc.
1000 K Street, NW
Washington, D.C. 20001

Attention:      Mr. Tom Page

Reference:      **Embassy Suites Hotel**
                **Washington, DC**

Subject:        **Poole and Kent PCO-071; Additional cost associated with the enforcement of Davis-Bacon requirements**

Gentlemen:

As requested, we submit the costs associated with additional cost for not allowing "R" sheet metal workers on the project until late March. These costs were incurred as a result of the Davis-Bacon requirements.

In accordance with the attached recapitulation and supporting documentation, we will proceed with this change upon receipt of your written change order in the lump sum **ADD** amount of **One Hundred Seventy One Thousand Five Hundred Forteen Dollars and No Cents ($171,514.00)** be issued for this work. We exclude all items, which are not included in our contract scope of work, and premium time unless noted otherwise.

We reserve the right to request additional compensation and/or time should this change affect the contract completion date or otherwise indirectly impact our work.

This proposal is valid for 30 days.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

THE POOLE & KENT CORPORATION

E. Matthew Maltby
Project Manager

cc:     Read
        CO #071R1


www.poole-kent.com

**THE POOLE & KENT CORPORATION**

**RECAPITULATION**

4530 Hollins Ferry Road
Baltimore, Maryland 21227
Telephone: (410) 247-2200
Fax: (410) 247-2331

| | |
|---|---|
| Date: | 27-Apr-05 |
| Project No: | 03235 |
| Project Name: | Mandarin Oriental Hotel |
| Change Order #: | PCO #71 |

**Description:** Additional Cost for not allowing "R" workers on the project until late March

| PAGE NO | DESCRIPTION | BASE MATERIAL COST | BASE LABOR HOURS |
|---|---|---|---|
| | | $0.00 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Labor Hours | | 0.0 |
| | Total Material | $0.00 | |

| SUBCONTRACTOR NAME | DESCRIPTION OF WORK | TOTAL COST |
|---|---|---|
| Montgomery Mechanical | F&I Exhaust Duct Risers | $159,547.64 |
| | | |
| | | |
| | Total Subcontract Work | $159,547.64 |

**LABOR COMPUTATION**

| | Total Hours | Rate of Pay | Total Cost |
|---|---|---|---|
| Mechanic Standard Hours | x | $48.51 = | $0 |
| Mechanic Premium Hours | x | $67.26 = | $0 |
| Foreman Standard Hours | x | $49.78 = | $0 |
| Foreman Premium Hours | x | $69.16 = | $0 |
| General Foreman Standard Hours | x | $50.42 = | $0 |
| General Foreman Premium Hours | x | $70.11 = | $0 |
| Laborer Standard Hours | x | $27.93 = | $0 |
| Laborer Premium Hours | x | $40.02 = | $0 |

| | |
|---|---|
| Labor Cost | 0.00 |
| Material cost | 0.00 |
| DC Sales Tax | 0.00 |
| Job Expense | 0.00 |
| O.H. & Profit (15%) | 0.00 |
| Subtotal | 0.00 |
| Subcontractor | 159,547.64 |
| O.H. & Profit-Subs (7.5%) | 11,966.07 |
| Bond (0%) | 0.00 |
| Insurance (1.5%) | 0.00 |
| **Total Selling Price** | **$171,514** |

# MONTGOMERY MECHANICAL SERVICES

**1420 Ritchie-Marlboro Road, Unit B7**
**Capitol Heights, Maryland 20743**
**Telephone: (301) 808-8000**
**Fax: (301) 808-8001**

# RECAPITULATION

| | |
|---|---|
| Date: | April 27, 2005 |
| Project No: | 04803 |
| Project Name: | Mandarin Oriental Hotel |
| Change Order #: | PCO #71 |

Description: Additional Cost for not allowing "R" workers on the project until late March

| PAGE NO | DESCRIPTION | BASE MATERIAL COST | BASE LABOR HOURS |
|---|---|---|---|
| | See Attached Material Sheet | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Labor Hours | | 0.0 |
| | Total Material | $0.00 | |

| SUBCONTRACTOR NAME | DESCRIPTION OF WORK | TOTAL COST |
|---|---|---|
| Regional Air Systems | Sheet Metal | $148,416.41 |
| | | |
| | | |
| | Total Subcontract Work | $148,416.41 |

| LABOR COMPUTATION | | Total Hours | Rate of Pay | Total Cost | | |
|---|---|---|---|---|---|---|
| | | | | | Labor Cost | 0.00 |
| | | | | | Material cost | 0.00 |
| Mechanic Hours | | 0.00 x | $48.40 = | $0 | DC Sales Tax | 0.00 |
| | | | | | Job Expense | 0.00 |
| Foreman Hours | | 0.00 x | $50.94 = | $0 | O.H. & Profit (15%) | 0.00 |
| | | | | | Subtotal | 0.00 |
| General Foreman Hours | | 0.00 x | $51.57 = | $0 | Subcontractor | 148,416.41 |
| | Total Labor | | = | $0 | O.H. & Profit-Subs (7.5%) | 11,131.23 |
| | | | | | Bond (1%) | 0.00 |
| | | | | | Insurance (1.5%) | 0.00 |
| | | | | | **Total Selling Price** | **$159,548** |



REGIONAL Air SYSTEMS

15127 Marlboro Pike, Upper Marlboro, MD. 20772
Phone : 301-952-9000 : Fax : 301-952-9305

April 26, 2005                                        03-804-037

The Poole and Kent Co.
4530 Hollins Ferry Rd.
Baltimore, MD 21227

Reference: Embassy Suites 1000 K St.
            Contract No. 03235

Subject: Costs for not allowing "R" Men on the project until Late May of 2005.

Dear Mr. Matt Maltby

Regional Air Systems has finally maned this job with "R" men the way it was bid. However since the job is 85% complete and has had numerous problems we have spent all the man hours originally estimated as stated in our letters dated September 17, 2004 , February 20, 2005 and March 25, 2005

[X] Additional Amount of:  **$ 148,416.41**

This quotation is based on the following conditions:

[ X ] Quotation is valid for 20 Calendar days. Lack of a written change to our contract and our ability to bill for these costs will cause us to include all interests costs per the Miller Act and like laws and acts as can be applied.

To Date we have spent 12,591 Hours on this project at an average man hour rate of $10.25 more than expected due to the enforcement of the Davis Beacon Act. Therfore the amount due our Company is as follows:

    12,591 Hours in the field x $ 10.25 per hour = $ 129,057.75
    $ 129,057.75 of extra costs x 15% OH&P = $ 19,358.66
    $ 129,057.75 of extra costs + $ 19,358.66 = $ 148,416.41

We assume this concludes this matter when a written change is in hand, accepted and all monies collected

If you have any questions feel free to call

Sincerely

James D. Elges
Vice President
Regional Air Systems

CC:     04-802-A-2
        J. Shields
        J. Digman
        04-802-C-1.01



REGIONAL
AIR SYSTEMS

_____                    15127 Marlboro Pike, Upper Marlboro, MD. 20772
                                              Phone : 301-952-9000 : Fax : 301-952-9305

September 17, 2004                                        04-802-004

The Poole and Kent Corp.
4530 Hollins Ferry Rd.
Baltimore, MD 21227

Reference: Embassy Suites Hotel

Subject:  Bacon – Davis Act  Enforcement – Notice of Extra Costs

Dear Mr. Matt Maltby

Regional Air  was informed on Tuesday the 27th of July that the above referenced project
has the Bacon-Davis Act enforcement in place. Since that time and today we have
worked with our client to clarify this issue. As of this date we have not been approved to
put "R" Workers on this project as we had planned at bid time. "R" workers are currently
not allowed under the Beacon – Davis Act Agreement.

Regional Air does not have any documentation and cannot find any in the bid proposal
Documents that indicate this job has any prevailing wage act associated with it.
Furthermore there is not any breakdown of prevailing wages and accepted categories of
worker, crafts, etc. within the contract bid documents

 In fact  we bid this job in accordance with special provisions granted us by the Local 100
SMWIA management which allowed us 2 qty. "R" Workers for every Journeyman on the
job

An R-Worker (Specialty Worker) is paid between 10 and 17 dollars an hour and is only
paid about 2 dollars an hour in benefits per the union agreement we have with Local 100
SMWIA. If the Bacon-Davis Act is enforced we will not be able to use R-Workers at all
and our average man hour cost will increase from $32.50 per hour to $42.75 an Hour.
When you consider that we have over 10,000 man hours of field work the cost is evident
and enormous.

Since we have to now man the job we will be forwarding for adjustment to our contract a
change estimate the costs to comply with the Beacon – Davis wage act as it reads today.
The value of this change is approximately  $120,000.00

Please call if you have any questions.

Sincerely

*James D. Elges*

James Elges
Vice President
Regional Air Systems

CC:  04-802-A-2
     J. Digman
     G. Reyes



15127 Marlboro Pike, Upper Marlboro, MD. 20772
Phone : 301-952-9000 : Fax : 301-952-9305

February 20, 2005

04-802-019

The Poole and Kent Corp.
4530 Hollins Ferry Rd.
Baltimore, MD 21227

Reference: Embassy Suites Hotel

Subject:  Bacon – Davis Act  Enforcement – Notice of Extra Costs

Dear Mr. Matt Maltby

Regional Air  was informed on Tuesday the 27th of July that the above referenced project
has the Bacon-Davis Act enforcement in place. Since that time and today we have
worked with our client to clarify this issue. As of this date we have not been approved to
put "R" Workers on this project as we had planned at bid time. "R" workers are currently
not allowed under the Beacon – Davis Act Agreement.

Regional Air does not have any documentation and cannot find any in the bid proposal
Documents that indicate this job has any prevailing wage act associated with it.
Furthermore there is not any breakdown of prevailing wages and accepted categories of
worker, crafts, etc. within the contract bid documents

 In fact  we bid this job in accordance with special provisions granted us by the Local 100
SMWIA management which allowed us 2 qty. "R" Workers for every Journeyman on the
job

An R-Worker (Specialty Worker) is paid between 10 and 17 dollars an hour and is only
paid about 2 dollars an hour in benefits per the union agreement we have with Local 100
SMWIA. If the Bacon-Davis Act is enforced we will not be able to use R-Workers at all
and our average man hour cost will increase from $32.50 per hour to $42.75 an Hour.
When you consider that we have over 10,000 man hours of field work the cost is evident
and enormous.

Since we have to now man the job we will be forwarding for adjustment to our contract a
change estimate the costs to comply with the Beacon – Davis wage act as it reads today.
The value of this change is as follows:

10,265 man hours at $ 10.25 per hour = $105,216.25
15 % OH&P                              =    15,782.44
Total Contract Adjustment Required = $ 120,998.69

Please call if you have any questions.

Sincerely

*James D. Elges*

James Elges
Vice President
Regional Air Systems

CC: 04-802-A-2
    J. Digman
    G. Reyes



REGIONAL AIR SYSTEMS

15127 Marlboro Pike, Upper Marlboro, MD. 20772
Phone : 301-952-9000 · Fax : 301-952-9305

March 25, 2005                                         03-804-028

The Poole and Kent Co.
4530 Hollins Ferry Rd.
Baltimore, MD 21227

Reference: Embassy Suites 1000 K St.
        Contract No. 03235 PCO # 053

Subject: Response to CHW Solutions Inc. Letter Dated March 21, 2005 as addressed to Peter
        Guattery of Whiteford, Taylor and Preston LLP


Dear Mr. Adam Snavely

Regional Air Systems has reviewed the above reference correspondence and wishes to respond
as follows:

We appreciate the revision to the previous stance held by all parties by allowing "R" Workers as
a part of the workforce on the above referenced project. However it must be noted that this
decision coming this late in the construction of the project is not very helpful financially.

We currently have the job with sufficient manpower on it with both Journeymen and Apprentices
as allowed under the Davis Beacon act and it will take sometime to change the manpower to
meet the concession given by the Union over 2 years ago but just now agreed to by the CHW
Solutions personal. To further complicate matters after hiring apprentices we cannot by contract
with the union lay them off without notice to the union and a chance for the union to place them
elsewhere. This typically takes 4 to 6 weeks. We also now must hire the "R" Workers and get
them acclimated with an ongoing project before any other layoffs or transfers can be made so we
do not adversely affect the construction schedule.

WE are tracking all costs associated with this issue and once we have the ratio down to where the
concession was given we will be submitting for payment all costs for having to abide to the
Davis-Beacon Act up to that point since we were never notified the act was in place during the
estimating or contract award phases of this project.

In closing we brought this issue up in July of 2004 only now to get a resolution.  The time to
reolve this was in July in order to keep costs down to a minimum. That did not happen.

If you have any questions feel free to call

Sincerely

James D. Elges
Vice President
Regional Air Systems

CC:     04-802-A-2
        J. Shields
        J. Digman
        04-802-C-1.01



REGIONAL
Air SYSTEMS

15127 Marlboro Pike, Upper Marlboro, MD. 20772
Phone : 301-952-9000 ; Fax : 301-952-9305

March 25, 2005                                                      03-804-028

The Poole and Kent Co.
4530 Hollins Ferry Rd.
Baltimore, MD 21227

Reference: Embassy Suites 1000 K St.
          Contract No. 03235 PCO # 053

Subject: Response to CHW Solutions Inc. Letter Dated March 21, 2005 as addressed to Peter
        Guattery of Whiteford, Taylor and Preston LLP


Dear Mr. Adam Snavely

Regional Air Systems has reviewed the above reference correspondence and wishes to respond
as follows:

We appreciate the revision to the previous stance held by all parties by allowing "R" Workers as
a part of the workforce on the above referenced project. However it must be noted that this
decision coming this late in the construction of the project is not very helpful financially.

We currently have the job with sufficient manpower on it with both Journeymen and Apprentices
as allowed under the Davis Beacon act and it will take sometime to change the manpower to
meet the concession given by the Union over 2 years ago but just now agreed to by the CHW
Solutions personal. To further complicate matters after hiring apprentices we cannot by contract
with the union lay them off without notice to the union and a chance for the union to place them
elsewhere. This typically takes 4 to 6 weeks. We also now must hire the "R" Workers and get
them acclimated with an ongoing project before any other layoffs or transfers can be made so we
do not adversely affect the construction schedule.

WE are tracking all costs associated with this issue and once we have the ratio down to where the
concession was given we will be submitting for payment all costs for having to abide to the
Davis-Beacon Act up to that point since we were never notified the act was in place during the
estimating or contract award phases of this project.

In closing we brought this issue up in July of 2004 only now to get a resolution. The time to
reolve this was in July in order to keep costs down to a minimum. That did not happen.

If you have any questions feel free to call

Sincerely

James D. Elges
Vice President
Regional Air Systems

CC:     04-802-A-2
        J. Shields
        J. Digman
        04-802-C-1.01



**SOLUTIONS INC.**

March 21, 2005

Mr. Peter D. Guattery
Whiteford, Taylor & Preston LLP
7 St. Paul Street
Baltimore, MD 21202-1626

Re:    Embassy Suites Hotel Project
       1000 K Street, NW
       Washington, DC

Dear Mr. Guattery,

CHW Solutions, Inc. reviewed the letters from James Elges, Vice President of Regional Air and Robert Walter, Business Manager/Financial Secretary of Union #100 of the Sheet Metal Workers' International Association, as well as *the Agreement between the Sheet Metal Workers' Local Union No. 100 and the Sheet Metal Contractors Association of the District of Columbia*, effective July 1, 2003 through June 30, 2006. Based upon CHW's review of the above referenced documents, the following determination was made.

Article 50, Section 5 of the collective bargaining agreement provides the flexibility to use R specialty workers on specific jobsites to provide increased work opportunities for journeymen and apprentices. According to Article 50, Section 2A, specialty work is performed on "single family homes and garden and walk-up apartment buildings not exceeding two and one-half floors". However, Article 50, Section B. says "Specialty work may be any work mutually agreed upon between the Employer and the Union; and Article 50, Section 5 says "For the purpose of providing work for union members and making the employer competitive …, the Union may specify …work to be performed by specialty sheet metal workers at a job site …on a job by job basis." As a result of the concession form signed by Robert Walters, specialty workers are allowed to work at the Embassy Suites Hotel construction site at the ratio of two specialty workers to one journeyman. This concession was granted to Regional Air Systems. Therefore, Regional Air can use specialty workers at Embassy Suites, consistent with the union concession.

Should you have any other concerns, please do not hesitate to contact me.

Sincerely,


Bettie G. Crawl
Compliance Officer

cc:  Konrad Schlater, Project Manager
     Office of the Deputy Mayor for Planning
         And Economic Development

     Art Shepherd, Senior Project Manager
     Kite Companies

WHITEFORD, TAYLOR & PRESTON
L.L.P.

SEVEN SAINT PAUL STREET
BALTIMORE, MARYLAND  21202-1626

410 347-8700
Fax 410 385-0626
www.wtplaw.com

210 WEST PENNSYLVANIA AVENUE
TOWSON, MARYLAND 21204-4515
TELEPHONE 410 832-2000
FAX 410 832-2015
———

20 COLUMBIA CORPORATE CENTER
10420 LITTLE PATUXENT PARKWAY
COLUMBIA, MARYLAND 21044-3528
TELEPHONE 410 884-0700
FAX 410 884-0719
———

PETER D. GUATTERY
DIRECT NUMBER
410 347-9431
pguattery@wtplaw.com

1025 CONNECTICUT AVENUE, NW
WASHINGTON, D.C.  20036-5405
TELEPHONE 202 659-6800
FAX 202 331-0573
———

1317 KING STREET
ALEXANDRIA, VIRGINIA  22314-2928
TELEPHONE 703 836-5742
FAX 703 836-0265

March 1, 2005

Adam E. Snavely
Vice President
The Poole & Kent Corporation
4530 Hollins Ferry Road
Baltimore, MD 21227

Dear Adam:

This letter shall follow to our discussion yesterday regarding the meeting this past Friday with Konrad Schlater of the Office of the Deputy Mayor for Planning and Economic Development, and Ms. Bettie Crawl of CHW Solutions, Inc., the new Davis Bacon monitor on the Embassy Suites project. The purpose of the meeting was, as you know, to address the failure of Hunt Construction to properly advise Regional Air of the Davis Bacon Act obligations at the time Hunt accepted TIF financing on this project.

At the start of the meeting, I outlined for both Ms. Crawl and Mr. Schlater the bid history on this project and the unusual circumstances under which the Davis Bacon obligations of the TIF financing, secured after bid submission on this project, first became known to Regional Air. I also provided Ms. Crawl with the concession agreement secured from the Union which was the basis of Regional Air's bid on the project – the bid which was accepted by Hunt.

Ms. Crawl asked only for clarification as to the provision of the collective bargaining agreement which authorized the use of R workers as identified on the concession agreement. Once she was provided this information she requested a revised concession agreement which referenced that section of the agreement. With that document, she added, she would authorize, going forward, the use of R workers at the contract rate and with the ratio cited in the concession agreement. This change, however, addresses only part of the problem.

Adam E. Snavely
March 1, 2005
Page 2

Having elected to ignore this issue since the time it was first raised with them, Hunt's inaction has now resulted in increased costs to Regional Air, to date, in excess of $60,000.   Ms. Crawl's willingness to permit the use of R workers in accordance with the Union agreement and the concession may reduce, somewhat, Regional Air's increased costs going forward.  It does nothing, however to address these additional costs incurred to date due to Hunt's actions.

When I raised this concern with Mr. Schlater, he stated that he would contact Mr. Jeffrey Lynch at Kite Companies in an effort to resolve the issue directly.  Failing at that, I clearly left open the possibility of Regional Air bringing legal action against Hunt and any other responsible parties in order to recover the loss suffered by Regional Air.

At this point, absent any clear indication from Hunt that they intend to immediately address this issue, I see no alternative but for Regional Air to move forward to protect its legal interests, through litigation, if necessary.

Should you wish to discuss this matter further, please feel free to contact me at your convenience.

Very truly yours,

Peter D. Guattery

PDG:gc

# REGIONAL AIR SYSTEMS

15127 Marlboro Pike, Upper Marlboro, MD. 20772
Phone : 301-952-9000 : Fax : 301-952-9305

February 20, 2005                                                    04-802-019

*updated*

The Poole and Kent Corp.
4530 Hollins Ferry Rd.
Baltimore, MD 21227

Reference: Embassy Suites Hotel

Subject: Bacon – Davis Act  Enforcement – Notice of Extra Costs

Dear Mr. Matt Maltby

Regional Air  was informed on Tuesday the 27th of July that the above referenced project
has the Bacon-Davis Act enforcement in place. Since that time and today we have
worked with our client to clarify this issue. As of this date we have not been approved to
put "R" Workers on this project as we had planned at bid time. "R" workers are currently
not allowed under the Beacon – Davis Act Agreement.

Regional Air does not have any documentation and cannot find any in the bid proposal
Documents that indicate this job has any prevailing wage act associated with it.
Furthermore there is not any breakdown of prevailing wages and accepted categories of
worker, crafts, etc. within the contract bid documents

 In fact  we bid this job in accordance with special provisions granted us by the Local 100
SMWIA management which allowed us 2 qty. "R" Workers for every Journeyman on the
job

An R-Worker (Specialty Worker) is paid between 10 and 17 dollars an hour and is only
paid about 2 dollars an hour in benefits per the union agreement we have with Local 100
SMWIA. If the Bacon-Davis Act is enforced we will not be able to use R-Workers at all
and our average man hour cost will increase from $32.50 per hour to $42.75 an Hour.
When you consider that we have over 10,000 man hours of field work the cost is evident
and enormous.

Since we have to now man the job we will be forwarding for adjustment to our contract a
change estimate the costs to comply with the Beacon – Davis wage act as it reads today.
The value of this change is as follows:

10,265 man hours at $ 10.25 per hour = $105,216.25
    15 % OH&P                        =  15,782.44
    Total Contract Adjustment Required = $ 120,998.69

Please call if you have any questions.

Sincerely

*James D. Elges*

James Elges
Vice President
Regional Air Systems

CC: 04-802-A-2
    J. Digman
    G. Reyes

# Poole & Kent
### An EMCOR Company

**The Poole and Kent Corporation**
4530 Hollins Ferry Road
Baltimore, MD 21227

Phone: 410.247.2200
Fax: 410.247.2331

January 6, 2005


Hunt Construction Group
214 Carnegie Center
Suite 103
Princeton, NJ 08540
Phone 609.936.7100/Fax 609.936.8520

Attention:    Mr. Larry Weisman

Reference:    **Embassy Suites Hotel**
              **The Poole and Kent Corporation Project No. 03235**

Subject:      **Davis Bacon Compliance / Notice of Mechanics Lien**

Dear Larry:

To further the issues set forth in my December 13, 2004 correspondence, the costs associated with the Davis-Bacon wage determination on the Embassy Suites project are continuing to escalate rapidly.  The $40,000 approximate cost in mid-December 2004 has risen to over $58,000 and continues to climb daily. Poole and Kent has made numerous requests to Hunt for assistance in resolving this issue and mitigating the cost to all involved parties.  As of our last discussion, Poole and Kent sought your personal involvement to address this specific matter as well as other ongoing, and unresolved, concerns.

Poole and Kent has made every effort to work closely with Hunt on the Project to ensure our mutual success.  This cooperative attitude will continue as we wish only to resolve our conflicts as expeditiously as possible in order to reduce their overall impact to our organizations.  I have made several attempts to set up a meeting with you in order to bring closure to these issues.  As you have been unable to set aside the necessary time to review and settle these items as we discussed, Poole and Kent has been forced to file a mechanics lien on the project in order to protect our interests and those of our subcontractors.

I trust that we can get together in the near future to bring closure to the necessary matters and will make myself available at your convenience.  Please do not hesitate to contact me with any questions.

Sincerely,

THE POOLE AND KENT CORPORATION

Adam E. Snavely
Vice President


cc:    Peter Clark – Hunt Construction
       Tom Page - Hunt Construction
       Matt Maltby - The Poole and Kent Corporation



www.poole-kent.com



# Poole & Kent
### An EMCOR Company

The Poole and Kent Corporation
4530 Hollins Ferry Road
Baltimore, Maryland 21227

Phone: 410.247.2200
Fax:  410.247.2331

## *FAX TRANSMITTAL*

DATE: _____ January 6, 2005 _____     TIME: _____ 11:48 AM _____

SENT BY: _____ Faith Carper for Adam E. Snavey _____     NO. PAGES: _____ 02 _____
*(including this page)*

ATTENTION: _____ Mr. Larry Weisman _____     NO.: _____ 609.936.8520 _____

FIRM NAME: _____ Hunt Construction Group _____

## *MESSAGE*

Reference:     **EMBASSY SUITES HOTEL
PROJECT NO. 03235**

**DAVIS BACON COMPLIANCE / NOTICE OF MECHANICS LIEN**

Rev. 1\0499



www.poole-kent.com

SD-TAB14

LI OK        STATUS
002        PGS        MIN/SEC        8520 936 609        EC--S        3A4:11 60/1        100
00.36″        MODE        TO/FROM        TIME        DATE

JOB #633

POOLE & KENT CO.

AS OF  JAN 06 2005 11:35 AM  PAGE.01          ** JOB STATUS REPORT **



**Poole & Kent**
An EMCOR Company

The Poole and Kent Corporation
4530 Hollins Ferry Road
Baltimore, Maryland 21227

Phone: 410.247.2200
Fax: 410.247.2331

# *FAX TRANSMITTAL*

DATE: January 6, 2005 TIME: 1:56 PM

SENT BY: Faith Carper for Adam Snavely NO. PAGES: 02 *(including this page)*

---

ATTENTION: Matt Maltby NO.:

FIRM NAME: P&K

---

## *MESSAGE*

Reference: Embassy Suites Hotel
Davis Bacon Compliance / Notice of Mechanics Lien

---

** JOB STATUS REPORT ** AS OF JAN 06 2005 1:43 PM PAGE. 01

POOLE & KENT CO

JOB #635

| DATE | TIME | TO/FROM | MODE | MIN/SEC | PGS | STATUS |
|---|---|---|---|---|---|---|
| 001 1/06 | 1:42P | 12027830630 | EC--S | 00'16" | 002 | OK 17 |

**Poole & Kent**
*An EMCOR Company*

The Poole and Kent Corporation
4530 Hollins Ferry Road
Baltimore, MD 21227

Phone: 410.247.2200
Fax: 410.247.2331

December 13, 2004

Hunt Construction Group
P.O. Box 50204
Washington, D.C. 20091

Attention:     Mr. Larry Weisman

Reference:     **Embassy Suites Hotel**
**The Poole and Kent Corporation Project No. 03235**

Subject:       **Davis Bacon Compliance / Regional Air Systems**

Dear Larry:

Enclosed herewith please find a copy of a letter from Mr. Jim Digman, President of Regional Air Systems, our sheetmetal subcontractor on the above referenced project. This letter addresses the current status of ongoing discussions with the District of Columbia relative to Regional's compliance with the local Davis-Bacon wage determination.

As previously discussed, Poole and Kent and our subcontractors were not made aware of the application of Davis-Bacon wage determinations on the Embassy Suites project. The Davis-Bacon requirements were not part of the contract documents when the project was bid, and Poole and Kent was not made aware of these additional obligations when the Owner secured TIF financing in the summer of 2003. Consequently, neither Poole and Kent nor our subcontractors contemplated the costs associated with this issue.

Both Poole and Kent and Regional Air Systems have expended a substantial amount of time and money in an effort to resolve this matter and mitigate a very costly labor escalation. We appreciate Hunt's offer to assist us in further discussions with the District of Columbia and project regulatory agencies in an attempt to settle the matter in the best interest of all parties. We must stress the urgent nature of this request as the percentage of Regional's labor expended to date correlates to the approximately $40,000 of additional labor costs that have been realized, a figure that increases with each passing day.

Please do not hesitate to contact me with any questions.

Sincerely,

THE POOLE AND KENT CORPORATION

Adam E. Snavely
Vice President

cc:    Tom Page, Hunt Construction
       Matt Maltby, The Poole and Kent Corporation



www.poole-kent.com



REGIONAL Air SYSTEMS

15127 Marlboro Pike, Upper Marlboro, MD 20772
Phone : 301-952-9000 · Fax : 301-952-9305

December 9, 2004                                    04-802-012

Adam E. Snavely
Vice President
The Poole and Kent Corporation
4530 Hollins Ferry Road
Baltimore, MD 21227

Re:    Embassy Suites Hotel
       The Poole and Kent Project No. 03235
       Our Project No. 04-802

Dear Adam:

We are running out of options in our ongoing efforts to obtain relief from the undisclosed requirement to comply with the Davis-Bacon Act on this project, which is not a federal construction project. The Davis-Bacon Act wage determinations for the District of Columbia do not include a classification for the "R" workers recognized in our collective bargaining agreement. Our bid on this project was based on a union concession of two R workers for every journeyman. This significantly reduced the costs to the owner. Now that the owner wants compliance with the Davis-Bacon Act, our costs will increase and we need to be compensated for the lost ability to use R workers. We have undertaken diligent efforts to mitigate this problem.

We hired experienced Davis-Bacon counsel in mid-August to review to paperwork and discuss the matter. Our counsel first spoke with the DB Contract monitor - Heidi Hagan at Comprehensive Housing Services, Inc. in California. She said that she could resolve the situation if we would give her relevant papers, including a copy of the agreement with the Union and the specifics of the particular understanding on this project, which we did promptly. After about a week of no response from her, our counsel called her as a follow-up. At that point she said that she was told to "stay out of it." There was nothing she could do and we had to take it up with the District of Columbia government. Our counsel asked her who directed her to stay out of it and she replied that it was Alex Nyhan with the District of Columbia government. Our counsel called Mr. Nyhan and explained the situation. Mr. Nyhan first said that the District of Columbia government could do nothing, and that this was

a matter between Regional Air and the developer. Mr. Nyhan did indicate that he would informally ask his internal Davis Bacon people if there was anything that could be done to address the issue and get back to us. Mr. Nyhan also referred us to Art Shepard at Kite Properties. Mr. Shepard referred the matter back to Mr. Nyhan. Our counsel complained to Mr. Nyhan that we were going in circles. At that point he said that the DC government was putting together a contract with a new DB monitor and asked that we wait until the contract was finalized and then we could try to resolve this matter. The contract with the new monitor was concluded just before Thanksgiving, and we are now in the process of trying to set up a face to face meeting.

Adam, if that meeting is unsuccessful Regional Air Systems will have no choice but to pursue a mechanic's lien on the property for the additional costs incurred as a result of our inability to use R workers as we had bid the job. I trust that you understand our situation. This job is already 40% complete and the inability to use R Workers has already increased our labor costs. As a small business, we cannot absorb the additional costs this is causing. Please let me know if you have any questions.

Best regards,

James Digman, President



## **Poole & Kent**
### *An EMCOR Company*

The Poole and Kent Corporation
4530 Hollins Ferry Road
Baltimore, Maryland 21227

Phone: 410.247.2200
Fax:  410.247.2331

## *FAX TRANSMITTAL*

DATE: _____December 13, 2004_____      TIME: _____2:44 PM_____

SENT BY: ___Faith Carper for Adam Snavely___      NO. PAGES: _____04_____
                                                                          *(including this page)*

ATTENTION: ____Larry Wiesman____      NO.: _____202-737-3060_____

FIRM NAME: ____Hunt Construction____

## *MESSAGE*

Reference:        **Embassy Suites Hotel**
                        **Washington, D.C.**

Rev. 10499

www.poole-kent.com

SD-TAB14

JOB #414

| DATE | TIME | TO/FROM | MODE | MIN/SEC | PGS | STATUS |
|------|------|---------|------|---------|-----|--------|
| 001 12/13 | 3:00P | 202 737 3060 EC—S | 01.12 | 004 | OK L1 |

POOLE & KENT CO

\*\* JOB STATUS REPORT \*\*                    AS OF  DEC 13 2004  3:02 PM  PAGE.01



# Poole & Kent
## *An EMCOR Company*

The Poole and Kent Corporation
4530 Hollins Ferry Road
Baltimore, Maryland 21227

Phone: 410.247.2200
Fax: 410.247.2331

## *FAX TRANSMITTAL*

DATE: _____December 13, 2004_____   TIME: _____2:44 PM_____

SENT BY: __Faith Carper for Adam Snavely__   NO. PAGES: _____*04*_____
*(including this page)*

ATTENTION: _____Tom Page_____   NO.: _____202-737-3060_____

FIRM NAME: _____Hunt Construction_____

## *MESSAGE*

Reference:    **Embassy Suites Hotel**
**Washington, D.C.**



Rev. 1\0499    **iGS**    SD-TAB14
www.poole-kent.com

 **Poole & Kent**
*An EMCOR Company*

The Poole and Kent Corporation
4530 Hollins Ferry Road
Baltimore, Maryland 21227

Phone: 410.247.2200
Fax:  410.247.2331

# *FAX TRANSMITTAL*

DATE: _____ December 13, 2004 _____     TIME: _____ 2:44 PM _____

SENT BY: _____ Faith Carper for Adam Snavely _____     NO. PAGES: _____ 04 _____
*(including this page)*

ATTENTION: _____ Larry Wicsman _____     NO.: _____ 202-737-3060 _____

FIRM NAME: _____ Hunt Construction _____

## *MESSAGE*

Reference:     **Embassy Suites Hotel
Washington, D.C.**

Rev. IW499


www.poole-kent.com

SD-TAB14

---

JOB #412

DATE     TIME                   TO/FROM      MODE      MIN/SEC  PGS  STATUS
001  12/13  2:57P            202 737 3060  EC--S     01'12"   004   OK  L1

POOLE & KENT CO

** JOB STATUS REPORT **                              AS OF  DEC 13 2004  2:58 PM  PAGE.01



P&K JOB NO. 03235
FILE NO. _12-003_

15127 Marlboro Pike, Upper Marlboro, MD  20772
Phone : 301-952-9000 : Fax : 301-952-9305

December 9, 2004                                               04-802-012

Adam E. Snavely
Vice President
The Poole and Kent Corporation
4530 Hollins Ferry Road
Baltimore, MD 21227

      Re:   Embassy Suites Hotel
            The Poole and Kent Project No. 03235
            Our Project No. 04-802

Dear Adam:

     We are running out of options in our ongoing efforts to obtain relief from the undisclosed requirement to comply with the Davis-Bacon Act on this project, which is not a federal construction project.  The Davis-Bacon Act wage determinations for the District of Columbia do not include a classification for the "R" workers recognized in our collective bargaining agreement.  Our bid on this project was based on a union concession of two R workers for every journeyman.  This significantly reduced the costs to the owner.  Now that the owner wants compliance with the Davis-Bacon Act, our costs will increase and we need to be compensated for the lost ability to use R workers.  We have undertaken diligent efforts to mitigate this problem.

     We hired experienced Davis-Bacon counsel in mid-August to review to paperwork and discuss the matter.  Our counsel first spoke with the DB Contract monitor - Heidi Hagan at Comprehensive Housing Services, Inc. in California.  She said that she could resolve the situation if we would give her relevant papers, including a copy of the agreement with the Union and the specifics of the particular understanding on this project, which we did promptly.  After about a week of no response from her, our counsel called her as a follow-up.  At that point she said that she was told to "stay out of it."  There was nothing she could do and we had to take it up with the District of Columbia government.  Our counsel asked her who directed her to stay out of it and she replied that it was Alex Nyhan with the District of Columbia government.  Our counsel called Mr. Nyhan and explained the situation.  Mr. Nyhan first said that the District of Columbia government could do nothing, and that this was

a matter between Regional Air and the developer. Mr. Nyhan did indicate that he would informally ask his internal Davis Bacon people if there was anything that could be done to address the issue and get back to us. Mr. Nyhan also referred us to Art Shepard at Kite Properties. Mr. Shepard referred the matter back to Mr. Nyhan. Our counsel complained to Mr. Nyhan that we were going in circles. At that point he said that the DC government was putting together a contract with a new DB monitor and asked that we wait until the contract was finalized and then we could try to resolve this matter. The contract with the new monitor was concluded just before Thanksgiving, and we are now in the process of trying to set up a face to face meeting.

Adam, if that meeting is unsuccessful Regional Air Systems will have no choice but to pursue a mechanic's lien on the property for the additional costs incurred as a result of our inability to use R workers as we had bid the job. I trust that you understand our situation. This job is already 40% complete and the inability to use R Workers has already increased our labor costs. As a small business, we cannot absorb the additional costs this is causing. Please let me know if you have any questions.

Best regards,

James Digman, President



**Poole & Kent**
*An EMCOR Company*

The Poole and Kent Corporation
4530 Hollins Ferry Road
Baltimore, MD 21227

Phone: 410.247.2200
Fax: 410.247.2331

October 12, 2004

Hunt Construction Group, Inc.
1000 K Street, NW
Washington, DC 20001

Attention:    Tom Page

Reference:    **Embassy Suites Hotel**
              **Washington, DC**

Subject:      **Davis-Bacon Act Enforcement – Notice of Extra Cost**

Dear Mr. Page:

Poole and Kent is in receipt of the attached letter from our sheet metal subcontractor, Regional Air who estimated the project in accordance with a special provision granted by local 100 SMWIA management which allowed the use of two "R" workers for every journeyman on the job. See attached concession form.

Regional Air does have any bid proposal documents or any breakdown of the prevailing wages and accepted categories of workers for the Embassy Suites project. Since then Regional has worked with the compliance office in an attempt to resolve this issue. Regional has been informed that the use of "R" specialty workers will not be allowed. Please be advised that value of the change to comply with the Davis-Bacon requirements being enforced on Regional is $120,000.00.

If you have any questions or wish to discuss this matter further please feel free to contact me at 202-783-1006.

Sincerely,

**THE POOLE AND KENT CORPORATION**

E. Matthew Maltby
Project Manager

Cc:    Adam Snavely – Poole and Kent
       James Elges – Regional Air



www.poole-kent.com

CO-71

# REGIONAL AIR SYSTEMS

15127 Marlboro Pike, Upper Marlboro, MD. 20772
Phone : 301-952-9000 : Fax : 301-952-9305

October 7, 2004

04-802-004

The Poole and Kent Corp.
4530 Hollins Ferry Rd.
Baltimore, MD 21227

Reference: Embassy Suites Hotel

Subject:  Davis-Bacon Act Enforcement – Notice of Extra Costs

Dear Mr. Matt Maltby

Regional Air Systems was asked to submit Davis-Bacon information with our July pay application.  This was an unexpected request, and we investigated the need to provide this documentation. Regional Air does not have any documentation and cannot find any in the bid proposal Documents that indicate this job has any prevailing wage act associated with it. Furthermore there is not any breakdown of prevailing wages and accepted categories of worker, crafts, etc. within the contract bid documents.  This is very unusual and we have never seen a D-B project without the wage determination in the bidding documents.

Since that time and today we have worked to clarify this issue. We have solicited legal assistance to investigate the application of the wage determination on this project and initially were told by the project's D-B administrator that "R" workers could possibly be added to the determination eliminating the labor escalation problem ("R" workers are currently not covered under the Davis-Bacon wage determination).  Recently we have been told that it will most likely not be allowed and that we cannot put "R" Workers on this project as we had planned at bid time

In fact we bid this job in accordance with special provisions granted us by the Local 100 SMWIA management which allowed us 2 qty. "R" Workers for every Journeyman on the job

An R-Worker (Specialty Worker) is paid between 10 and 17 dollars an hour and is only paid about 2 dollars an hour in benefits per the union agreement we have with Local 100 SMWIA. If the Davis-Bacon Act is enforced we will not be able to use R-Workers at all and our average man hour cost will increase from $32.50 per hour to $42.75 an Hour. When you consider that we have over 10,000 man hours of field work the cost is evident and enormous.

Since we have to now man the job we will be forwarding for adjustment to our contract a change estimate the costs to comply with the Davis-Bacon wage act as it reads today. The value of this change is approximately $120,000.00

Please call if you have any questions.

Sincerely

*James D. Elges*

James Elges
Vice President
Regional Air Systems

CC: 04-802-A-2
     J. Digman
     G. Reyes

# WHITEFORD, TAYLOR & PRESTON
### L.L.P.

SEVEN SAINT PAUL STREET
BALTIMORE, MARYLAND 21202-1626

410 347-8700
FAX 410 385-0626
www.wtplaw.com

210 WEST PENNSYLVANIA AVENUE
TOWSON, MARYLAND 21204-4515
TELEPHONE 410 832-2000
FAX 410 832-2015

20 COLUMBIA CORPORATE CENTER
10420 LITTLE PATUXENT PARKWAY
COLUMBIA, MARYLAND 21044-3528
TELEPHONE 410 884-0700
FAX 410 884-0719

1025 CONNECTICUT AVENUE, NW
WASHINGTON, D.C. 20036-5405
TELEPHONE 202 659-6800
FAX 202 331-0573

1317 KING STREET
ALEXANDRIA, VIRGINIA 22314-2928
TELEPHONE 703 836-5742
FAX 703 836-0265

PETER D. GUATTERY
DIRECT NUMBER
410 347-9431
pguattery@wtplaw.com

October 8, 2004

Art Shepherd
Kite Companies
P.O. Box 50088
Washington, DC 20091

> Re:    Embassy Suites Hotel
>        1000 K Street, N.W.,
>        Washington, D.C.

Dear Mr. Shepherd:

This letter shall follow-up to our telephone conversation on Thursday, October 7, 2004. As we discussed, I represent Regional Air Systems, Inc., a sub-contractor on the above-referenced project.

I enclose herewith copies of my correspondence with Heidi Hagan at Comprehensive Housing Services, Inc., which relate to the agreement between my client and Sheet Metal Workers' International Association Local Union No. 100 regarding the use of a ratio of two Specialty "R" Workers to one Journeyman on the Embassy Suites Hotel project.

As we discussed, and as outlined in the attached letters, my client is concerned that the post bid submission application of the Davis Bacon Act on this project not affect its ability to use this agreed-upon ratio for its work at this project.

I would appreciate it if you could review the enclosed materials and get back to me promptly so that we might bring this matter to a prompt and agreeable resolution. Should you have any questions, please feel free to contact me.

Very truly yours,

Peter D. Guattery/gc

Peter D. Guattery

PDG:gc

Art Shepherd
October 8, 2004
Page 2


bcc:    Adam Snavely ✓
        Jim Digman
        Bob Carney

WHITEFORD, TAYLOR & PRESTON
L.L.P.

SEVEN SAINT PAUL STREET
BALTIMORE, MARYLAND 21202-1626
410 347-8700
Fax 410 385-0626
www.wtplaw.com

210 WEST PENNSYLVANIA AVENUE
TOWSON, MARYLAND 21204-4515
TELEPHONE 410 832-2000
FAX 410 832-2015

20 COLUMBIA CORPORATE CENTER
10420 LITTLE PATUXENT PARKWAY
COLUMBIA, MARYLAND 21044-3528
TELEPHONE 410 884-0700
FAX 410 884-0719

1025 CONNECTICUT AVENUE, NW
WASHINGTON, D.C. 20036-5405
TELEPHONE 202 659-6800
FAX 202 331-0573

1317 KING STREET
ALEXANDRIA, VIRGINIA 22314-2928
TELEPHONE 703 836-5742
FAX 703 836-0265

PETER D. GUATTERY
DIRECT NUMBER
410 347-9431
pguattery@wtplaw.com

August 25, 2004

*Via* Federal Express

Ms. Heidi Hagan
Wage Compliance Manager
Comprehensive Housing Services, Inc.
8840 Warner Avenue, Suite #203
Fountain Valley, CA 92708

Dear Ms. Hagan:

This letter shall follow to our telephone conversation on Monday, August 23rd, as well as the end of last week, regarding the Embassy Suites Hotel project at 1000 K Street, N.W., Washington, D.C. and the ability of our client, Regional Air Systems, Inc., to utilize on the project the journeyman/R-worker ratio agreed upon by the subcontractor and the Union at the time of bid submission.

Per our discussion, I enclose herewith a copy of the relevant sections of the Collective Bargaining Agreement between the Sheet Metal Workers Local Union No. 100 and the Sheet Metal Contractor's Association of the District of Columbia, Inc., to which Regional Air is a signatory, including those pages relating to Specialty -- "R" -- Workers.

I also enclose herewith a copy of a letter from Regional Air Systems to Mr. Bill Farris of Sheet Metal Workers Local 100, sent prior to bid submission, confirming the use of R Workers in a 2 to 1 ratio to Journeymen at the Embassy Suites project.

Please advise me promptly if this documentation is sufficient for your purposes to permit the inclusion of R Workers at the agreed upon ratio and rates on this

Ms. Heidi Hagan
August 25, 2004
Page 2


project.  As we discussed, you indicated that such arrangements are generally
acceptable.  If additional documentation is necessary, please contact me promptly.

Very truly yours,

Peter D. Guattery

PDG:gc

cc:    Jim Elges
       Jim Digman



REGIONAL Air SYSTEMS

P.O. Box 24084 ▪ Baltimore, MD 21227
Phone: 301.952.9000 ▪ Fax: 301.952.9305

August 16, 2002

Sheet Metal Local 100
Washington D.C. Area

Attn: Mr. Bill Phares

Bill,

    As per our telephone conversation this morning, I will include R-Workers in my quote for the Embassy Suites Hotel at 1000 K. Street N.W., at a 2 to 1 ratio.

Thanks,

Jim Digman

# FAX TRANSMISSION

## REGIONAL AIR SYSTEMS, INC.
P.O. Box 24084
BALTIMORE, MARYLAND 21227
PH. (301) 952-9000
FAX (301) 952-9305

DATE: _8-16-02_    TIME: _____

SENT TO: _Steve McElderal 100_

NO OF PAGES (Incl. Cover Sheet): _____    RETURN FAX NO.: 301-952-9305

DELIVER TO: _Bill Shanes_    FROM: _Jim Digman_

JOB NO. _Embassy Suites_

COMMENTS:

NOTE:
If this transmission is incomplete or if you have any questions, please call 301-952-9000

```
*********************
***    TX REPORT    ***
*********************


TRANSMISSION OK

TX/RX NO              0771
CONNECTION TEL                3019671683
SUBADDRESS
CONNECTION ID        SMW 100
ST. TIME             08/16 12:43
USAGE T              00'56
PGS. SENT               2
RESULT               OK
```

# FAX TRANSMISSION

## REGIONAL AIR SYSTEMS, INC.
P.O. Box 24084
BALTIMORE, MARYLAND 21227
PH. (301) 952-9000
FAX (301) 952-9305

DATE: _8-16-02_          TIME: _____

SENT TO: _Smith Michael 100_

NO OF PAGES (Incl. Cover Sheet): _____    RETURN FAX NO.: 301-952-9305

DELIVER TO _Bill Phares_          FROM: _Jim Digman_

JOB NO. _EMBassy Suites_

COMMENTS:

_____

_____

_____

_____

_____

_____



# AGREEMENT

BETWEEN THE

SHEET METAL WORKERS'
LOCAL UNION NO. 100

AND THE

SHEET METAL
CONTRACTORS ASSOCIATION
OF THE
DISTRICT OF COLUMBIA, INC.

EFFECTIVE:
JULY 1, 2003 THROUGH JUNE 30, 2006

# TABLE OF CONTENTS

Article/
Paragraph                                                    Page
No.                                                          No.

TITLE PAGE:
TABLE OF CONTENTS
Standard Form of Union Agreement:
PREFACE
 1  CONDITIONS OF EMPLOYMENT .................... 1
 2  SUBCONTRACTING WORK .......................... 1
 3  WORK ASSIGNMENT .............................. 2
 4  FURNISHING EMPLOYEES .......................... 2
 5  MEMBERSHIP REQUIREMENT ....................... 3
 6  WORKING DAY AND WORKING WEEK ............... 3
 7  TRANSPORTATION INSIDE AND
    OUTSIDE LIMITS ................................ 5
 8  GENERAL CONDITIONS ............................ 5
 9  TOOLS AND TRANSPORTATION
    OF TOOLS ..................................... 8
10  GRIEVANCES ................................... 9
11  JOINT APPRENTICESHIP COMMITTEE ............... 12
12  LOCAL 100 AGREEMENTS AND FUNDS ............... 15
13  HOLIDAYS ..................................... 15
14  ACCESS TO SHOPS AND JOBS ...................... 17
15  AGREEMENT BETWEEN THE PARTIES ............... 18
16  DUES CHECKOFF ................................ 18
17  DUES CHECKOFFS IN OTHER
    AREAS OF LOCAL 100 ............................ 20
18  NONDISCRIMINATION CLAUSE ..................... 20
19  QUALIFYING OF SHEET METAL WORKERS ........... 21
20  MILEAGE ...................................... 21
21  STARTING AND QUITTING TIME .................... 21
22  DISTRIBUTION OF WAGE INCREASES ............... 21



23 APPRENTICE AND JOURNEYMAN TRAINING FUND..........22
24 INTERNATIONAL TRAINING INSTITUTE, NATIONAL ENERGY MANAGEMENT INSTITUTE (NEMI), SHEET METAL OCCUPATIONAL HEALTH INSTITUTE TRUST (SMOHIT), AND THE SMWIA SCHOLARSHIP FUND..........22
25 NATIONAL PENSION FUND..........22
26 SANITARY FACILITIES..........24
27 SHOP STEWARDS..........24
28 SHIFT WORK..........25
29 FORTY-HOUR FUND CONTRIBUTIONS..........26
30 SHOWUP PAY..........27
31 SAFETY..........27
32 OVERTIME WORK ASSIGNMENT..........27
33 BALANCING..........28
34 WORK PRESERVATION..........29
35 RULE OF AGE..........30
36 SKETCHING AND DRAFTING..........30
37 TWO HOUR SHUTDOWN FOR ELECTION..........30
38 COMPANY SHED OR BOX..........31
39 CHANGE IN ASSIGNMENT OF WORK..........31
40 PICKET LINES..........31
41 REPORTING JOB AND LOCATION..........32
42 TEMPORARY OPERATION OF FAN EQUIPMENT..........32
43 DUAL SHOPS..........33
44 EMPLOYER AGENTS..........34
45 SUBCONTRACTING AND FABRICATION..........34
46 EXPLOSIVE EQUIPMENT..........35
47 WORKERS' COMPENSATION INSURANCE AND INJURY..........35
48 MUTUAL COOPERATION IN OBTAINING SHEET METAL WORK..........36
49 TAX COMPUTATION..........36

50 SPECIALTY SHEET METAL WORK..........37
51 AGREEMENT FOR VOLUNTARY RECOGNITION..........38
52 SAVINGS CLAUSE..........38
53 EFFECTIVE DATE AND TERMINATION OF CONTRACT..........39

Addendum:
1   JURISDICTIONAL AREA..........41
2   WAGE RATES..........41
3   FOREMEN..........42
4   PAYMENT OF WAGES..........43
5   LAY OFF..........44
6   HEALTH BENEFIT FUND, PENSION FUND, VACATION FUND, SHEET METAL WORKERS' LOCAL 100 401(k) FUND..........45
7   HEALTH BENEFIT FUND..........45
8   PENSION TRUST FUND..........46
8(a) SHEET METAL WORKERS' LOCAL 100 401(k) FUND..........47
9   APPRENTICE FUND CONTRIBUTION..........47
10  VACATION TRUST FUND..........47
11  PAYMENT OF FUNDS..........48
12  DUES CHECKOFF..........51
13  WORK JURISDICTIONS WITHIN LOCAL 100 AREA..........51
14  APPRENTICE RATIO..........51
15  PAYMENT OF DUES CHECKOFF AND ASSESSMENT..........52
16  SPECIAL CONCESSION..........52
17  BONDING LANGUAGE..........52
18  REQUIREMENTS TO BECOME A SIGNATORY CONTRACTOR..........53

Appendix A..........55

Index..........66

## ARTICLE 1
### CONDITIONS OF EMPLOYMENT

**SECTION 1.** This Agreement covers the rates of pay and conditions of employment of all employees of the Employer engaged in, but not limited to, the (a) manufacture, fabrication, assembling, handling, erection, installation, dismantling, conditioning, adjustment, alteration, repairing and servicing of all ferrous or nonferrous metal work and all other materials used in lieu thereof, and of all air-veyor systems and air-handling systems regardless of material used, including the setting of all equipment and all reinforcements in connection therewith; (b) all lagging over insulation and all duct lining; (c) testing and balancing of all air-handling equipment and duct work; (d) the preparation of all shop and field sketches used in fabrication and erection, including those taken from original architectural and engineering drawings or sketches; (e) all labor in connection with energy auditing and retro-fitting, and; (f) all other work included in the jurisdictional claims of Sheet Metal Workers' International Association.

**SECTION 2.** This Agreement covers the rates of pay and conditions of employment of all employees paid directly by the Employer engaged in construction work. This section does not apply to those employees of the Employer that are covered under a separate collective bargaining agreement.

## ARTICLE 2
### SUBCONTRACTING WORK

**SECTION 1.** No Employer shall subcontract or assign any of the work described herein, which is to be performed at a job site, to any contractor, subcontractor or other persons or party who fails to agree in writing to comply with the conditions of employment contained herein, including, without limitations, those relating to union security, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project.

**SECTION 2.** Subject to other applicable provisions of

1

port within twenty-four (24) hours shall be reported by the Employer to the business office of the Local Union.

SECTION 5. For the purpose of employees reporting injuries as provided for herein, the Employer agrees to provide an appropriate report form on all jobs and in the shops.

## ARTICLE 48
## MUTUAL COOPERATION IN OBTAINING SHEET METAL WORK

SECTION 1. The Employer will make every effort to bid all work, which is under the jurisdiction claimed by the Sheet Metal Workers' International Association on all projects.

SECTION 2. The Employer will assist the Local Union in all efforts to have architects and engineers include all sheet metal work in the roofing and/or sheet metal sections of job specifications.

SECTION 3. It is agreed that the Contractors' Association and the Union will continue to negotiate this Agreement while it is in effect in an effort to recover work for the union sheet metal contractor and the union sheet metal worker that has been lost to the non-union sheet metal contractors and other trades.

## ARTICLE 49
## TAX COMPUTATION

SECTION 1. For the purpose of computing federal or state withholding taxes and Federal Old Age Benefits taxes, the hourly wage rate for journeymen sheet metal workers and apprentices shall be the hourly wage rate set forth in this Agreement.

SECTION 2. The Employer agrees to withhold and pay state income tax in the states of Maryland, Virginia, West Virginia and the District of Columbia as designated by the employee.

36

## ARTICLE 50
## SPECIALTY SHEET METAL WORK

SECTION 1. This Article covers the rates of pay, rules and working conditions of all those employees of the Employer hereinafter referred to as "specialty sheet metal mechanics," performing sheet metal work as described in Section 2.

SECTION 2.

A. Specialty sheet metal work is defined as the erection, installation, repairing, replacing, handling, and servicing of residential heating and air conditioning systems regardless of energy source, and the architectural sheet metal work (metal siding, storm windows, gutters, leaders, exhaust hoods, remodeling, low voltage electricity, all types of slate, tile, asbestos shingle, asphalt roofing, waterproofing, etc.) on single family homes and garden or walk-up apartment buildings not exceeding two and one-half (2 & 1/2) floors, and where individual apartments are air conditioned by a separate and independent unit or system.

B. Specialty work may be any work mutually agreed upon between the Employer and the Union.

SECTION 3. Shop fabrication of work under Section 2 of this Article shall be done at building trades rates and fringes, unless otherwise agreed upon.

SECTION 4. The minimum hourly rates and fringe benefits for specialty sheet metal workers shall be determined in this Addendum of this Agreement (see Addendum).

SECTION 5. For the purpose of providing work for union members and making the employer competitive on certain types of other projects, the Union may specify items of work to be performed by specialty sheet metal workers at a job site or in the shop on a job by job basis. Such specific items of work may be revised from time to time at the Union's discretion.

SECTION 6. It is agreed that no specialty sheet metal worker now working for an Employer will suffer a reduction

37

in wages due to being accepted into Local 100's building trade apprenticeship program.

SECTION 7. All specialty sheet metal workers shall become and remain members of the Union within sixty (60) days after employment. All specialty sheet metal workers must file applications with the Union at the Union Office before reporting to work.

## ARTICLE 51
## AGREEMENT FOR VOLUNTARY RECOGNITION

SECTION 1. This Agreement for Voluntary Recognition is made and entered into this 1st day of July 1990, by and between Sheet Metal Workers' Local union No. 100 (hereinafter referred to as "Union"), and the Sheet Metal Contractors Association of the District of Columbia, Inc., or any other contractor or association signed to this Agreement (hereinafter referred to as "Employer").

SECTION 2. The Employer hereby acknowledges that a majority the Union has established, to its satisfaction, that a majority of its employees have authorized the Union to represent them in collective bargaining. The Union has unequivocally demanded recognition as the employees' Section 9(a) representative, and the Employer extends recognition to the Union as the Section 9(a) representative of its employees.

SECTION 3. The Employer agrees to recognize and does hereby recognize the Union, its agents, representatives, or successors as the exclusive collective bargaining agent for all employees performing sheet metal work within the jurisdiction of the Union on all present and future job sites.

## ARTICLE 52
## SAVINGS CLAUSE

SECTION 1. Inasmuch as this Agreement is subject to any and all governmental laws, rules and regulations, any provision of this Agreement adjudged to be unlawful by a court of

38

competent jurisdiction shall be treated for all purposes as null and void, but all other provisions of this Agreement shall continue in full force and effect as provided herein.

## ARTICLE 53
## EFFECTIVE DATE AND TERMINATION OF CONTRACT

SECTION 1. This Agreement and Addendum or Addenda attached hereto shall become effective on the 1st day of JULY 2003, and remain in full force and effect until the 30th day of JUNE 2006, and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party.

SECTION 2. Notwithstanding any other provisions of this Article, or any other article of this Agreement, whenever an amendment by the National Joint Labor Relations Adjustment Committee, any party to this Agreement, upon the service of notice to all other parties hereto, shall have this Agreement reopened thirty (30) days thereafter for the sole purpose of attempting to negotiate such amendment and only amendment for the duration of the term means into this Agreement for the duration of the term hereof. There shall be no strike or lockout over this issue.

In witness whereof, the parties hereto affix their signatures and seal this 1ST day of JULY 2003.

SHEET METAL WORKERS' LOCAL 100, WASHINGTON, D.C. AREA
BY: ROBERT A. WALTER

SHEET METAL CONTRACTORS ASSOCIATION OF D.C., INC.
BY: JIMMIE ROBERTS, JR.

39

the agreements or addenda. The term "total wage package" shall include the value of all hourly contractual costs.

SECTION 3. Apprentices shall not be sent to any area that would cause them to miss school.

### PARAGRAPH NO. 14
### APPRENTICE RATIO

SECTION 1. All shops hiring less than twelve (12) journeymen shall hire apprentices on a one (1) to three (3) basis.

### PARAGRAPH NO. 15
### PAYMENT OF DUES CHECKOFF AND ASSESSMENT

SECTION 1. The Employer will pay directly to the Sheet Metal Workers' Local Union 100 General Fund Office (Dues Office) all dues checkoff monies on all journeymen, apprentices and specialty workers working in the jurisdiction of Local 100, under this Addendum or another agreement or addenda of Local 100.

### PARAGRAPH NO. 16
### SPECIAL CONCESSION

SECTION 1. The Employer may employ specialty workers at a ratio of one (1) specialty worker to two (2) Washington Area building trade journeymen on a company wide basis, provided that fabrication is done by the Employer within the jurisdiction of Local No. 100.

SECTION 2. Section 1 of this Paragraph does not apply on jobs designated by the Union as non-concession jobs.

### PARAGRAPH NO. 17
### BONDING LANGUAGE - ALL CONTRACTORS

SECTION 1. Effective July 1, 2003, all Contractors signatory to this agreement will be required to post a bond equivalent to the fringe benefit package for a sixty (60) day period. The Local Union shall establish this amount. On an annual basis the Contractor will be required to increase the

amount of the bond if their workforce has increased. Any contractor not posting a bond shall be required to pay benefits on a weekly basis.

### PARAGRAPH 18
### REQUIREMENTS TO BECOME A
### SIGNATORY CONTRACTOR

SECTION 1. To be considered a union contractor the Employer must have executed an agreement with Local 100 or an acceptance of the Agreement, or be covered by this Agreement by virtue of membership in the Sheet Metal Contractors Association of D.C., Inc. Before the Union will enter into an agreement with any Employer, it shall be the responsibility of the Employer to:

- Notify Local 100 as to the principal officers of their company.
- Supply Local 100 with the company's articles of incorporation.
- Notify the Union of the company's intention to open and operate a sheet metal shop and to engage in the business as a sheet metal contractor.
- Have an established and permanent business address or location.
- Have sufficient tools and equipment to comply with Article 1 of the Standard Form of Union Agreement.
- Give employment to no less than one (1) journeyman sheet metal worker.
- Submit evidence, in the form of a certificate of insurance, verifying that workers' compensation insurance has been obtained and continues to be in force.
- Make payments for unemployment taxes to the appropriate agency in Maryland, Virginia, West Virginia and the District of Columbia.
- Post a bond in accordance with Paragraph 17.

## WASHINGTON AREA
## JOURNEYMAN FRINGE BENEFITS*

**HEALTH FUND**
7/1/03 through 12/31/03 — $4.26 per hour
1/1/04 through 6/30/04 — to be determined per Article 22
7/1/04 through 6/30/05 — to be determined per Article 22
7/1/05 through 6/30/06 — to be determined per Article 22

**PENSION FUND**
7/1/03 through 12/31/03 — $3.50 per hour
1/1/04 through 6/30/04 — to be determined per Article 22
7/1/04 through 6/30/05 — to be determined per Article 22
7/1/05 through 6/30/06 — to be determined per Article 22

**SMW LOCAL 100 401(k) FUND**
7/1/03 through 12/31/03 — $0.50 per hour
1/1/04 through 6/30/04 — to be determined per Article 22
7/1/04 through 6/30/05 — to be determined per Article 22
7/1/05 through 6/30/06 — to be determined per Article 22

**APPRENTICE FUND**
7/1/03 through 12/31/03 — $0.38 per hour
1/1/04 through 6/30/04 — to be determined per Article 22
7/1/04 through 6/30/05 — to be determined per Article 22
7/1/05 through 6/30/06 — to be determined per Article 22

**INTERNATIONAL TRAINING INSTITUTE FUND**
7/1/03 through 12/31/03 — $0.12 per hour
1/1/04 through 6/30/04 — to be determined per Article 22
7/1/04 through 6/30/05 — to be determined per Article 22
7/1/05 through 6/30/06 — to be determined per Article 22

**NATIONAL ENERGY MANAGEMENT INSTITUTE (NEMI)**
7/1/03 through 12/31/03 — $0.03 per hour
1/1/04 through 6/30/04 — to be determined per Article 22
7/1/04 through 6/30/05 — to be determined per Article 22
7/1/05 through 6/30/06 — to be determined per Article 22

**SHEET METAL OCCUPATIONAL HEALTH INSTITUTE TRUST (SMOHIT)**
7/1/03 through 12/31/03 — $0.02 per hour
1/1/04 through 6/30/04 — to be determined per Article 22
7/1/04 through 6/30/05 — to be determined per Article 22
7/1/05 through 6/30/06 — to be determined per Article 22

*AMOUNTS MAY CHANGE IN ACCORDANCE WITH ARTICLE 22.

## WASHINGTON AREA
### APPRENTICE WAGE DEDUCTIONS*

VACATION/POLITICAL ACTION LEAGUE (PAL), APPRENTICE ORGANIZING AND ORGANIZING ASSESSMENT - 1ST AND 2ND YEAR APPRENTICES ONLY

| | |
|---|---|
| 7/1/03 through 12/31/03 | $0.55 per hour |
| 1/1/04 through 6/30/04 | to be determined per Article 22 |
| 7/1/04 through 6/30/05 | to be determined per Article 22 |
| 7/1/05 through 6/30/06 | to be determined per Article 22 |

VACATION/POLITICAL ACTION LEAGUE (PAL), APPRENTICE ORGANIZING AND ORGANIZING ASSESSMENT - 3RD AND 4TH YEAR APPRENTICES ONLY

| | |
|---|---|
| 7/1/03 through 12/31/03 | $0.90 per hour |
| 1/1/04 through 6/30/04 | to be determined per Article 22 |
| 7/1/04 through 6/30/05 | to be determined per Article 22 |
| 7/1/05 through 6/30/06 | to be determined per Article 22 |

*AMOUNTS MAY CHANGE IN ACCORDANCE WITH ARTICLE 22.

## WASHINGTON AREA
### SPECIALTY WORKER WAGE RATES

| | |
|---|---|
| 7/1/03 through 6/30/06 | $ 5.75 per hour |

### SPECIALTY WORKER FRINGE BENEFITS*
HEALTH FUND CONTRIBUTION**

| | |
|---|---|
| 7/1/03 through 12/31/03 | $2.34 per hour |
| 1/1/04 through 6/30/04 | 55% of journeyman health contribution rate |
| 7/1/04 through 6/30/05 | 55% of journeyman health contribution rate |
| 7/1/05 through 6/30/06 | 55% of journeyman health contribution rate |

### SPECIALTY WORKER WAGE DEDUCTIONS*
ORGANIZING ASSESSMENT

| | |
|---|---|
| 7/1/03 through 12/31/03 | $0.15 per hour |
| 1/1/04 through 6/30/04 | to be determined per Article 22 |
| 7/1/04 through 6/30/05 | to be determined per Article 22 |
| 7/1/05 through 6/30/06 | to be determined per Article 22 |

### SPECIALTY WORKER'S UNION DUES
CURRENTLY $37.50 PER MONTH. CONTACT LOCAL 100'S DUES OFFICE REGARDING THE STATUS OF INDIVIDUAL SPECIALTY WORKERS.

*AMOUNTS MAY CHANGE IN ACCORDANCE WITH ARTICLE 22.
**EFFECTIVE 7/1/03 THE CONTRACTORS WILL MAINTAIN SPECIALTY WORKERS' HEALTH FUND CONTRIBUTION RATE AT FIFTY-FIVE PERCENT (55%) OF THE JOURNEYMAN AND APPRENTICE HEALTH FUND CONTRIBUTION RATE (e.g. Wages HEALTH FUND CONTRIBUTION RATE plus 55% of the journeyman/apprentice health fund contribution rate).

## WHITEFORD, TAYLOR & PRESTON
### L.L.P.

210 WEST PENNSYLVANIA AVENUE
TOWSON, MARYLAND  21204-4515
TELEPHONE  410 832-2000
FAX  410 832-2015

SEVEN SAINT PAUL STREET
BALTIMORE, MARYLAND  21202-1626

410 347-8700
Fax  410 385-0626
www.wtplaw.com

1025 CONNECTICUT AVENUE, NW
WASHINGTON, D.C.  20036-5405
TELEPHONE  202 659-6800
FAX  202 331-0573

20 COLUMBIA CORPORATE CENTER
10420 LITTLE PATUXENT PARKWAY
COLUMBIA, MARYLAND 21044-3528
TELEPHONE  410 884-0700
FAX  410 884-0719

1317 KING STREET
ALEXANDRIA, VIRGINIA  22314-2928
TELEPHONE  703 836-5742
FAX  703 836-0265

PETER D. GUATTERY
DIRECT NUMBER
410 347-9431
pguattery@wtplaw.com

September 3, 2004

*Via* Federal Express

Ms. Heidi Hagan
Wage Compliance Manager
Comprehensive Housing Services, Inc.
8840 Warner Avenue, Suite #203
Fountain Valley, CA 92708

Dear Ms. Hagan:

This letter shall follow to my letter of August 25, 2004.  Enclosed is a copy of a Concession Form provided by Sheet Metal Workers' International Association Local Union No. 100 confirming the agreement reached between Regional Air Systems, Inc. and the Union with respect to the ratio of Specialty "R" Workers to Journeyman discussed in my previous correspondence.

This Concession Form is executed by Robert Walters, who is the Business Manager for Local No. 100.

I trust this information is sufficient for your purposes to confirm the use of this ratio on the Embassy Suites project by Regional Air Systems.

Should you have any further questions, please feel free to contact me.

Very truly yours,

Peter D. Guattery

PDG:gc

Ms. Heidi Hagan
September 3, 2004
Page 2


cc:    Jim Elges
       Jim Digman

# Sheet Metal Workers' International Association
## Local Union  No. 100

4725 SILVER HILL ROAD
SUITLAND, MARYLAND 20746

(301) 568-8655
FAX (301) 967-1683

REVISED 7/00

## CONCESSION FORM

DATE: 8/16/02

CONTRACTOR: REGIONAL AIR SYSTEMS, INC.

CONTRACTOR REPRESENTATIVE
TO WHOM CONCESSION GRANTED: JIM DIGMAN

NAME OF JOB: EMBASSY SUITES HOTEL

LOCATION OF JOB: 1000 K STREET, N.W., WASHINGTON, D.C.

TYPE OF WORK:

CONCESSION(S) GRANTED FOR SHOP:

1.
2.
3.
4.
5.

CONCESSION(S) GRANTED FOR JOBSITE:

1.   RATIO OF TWO (2) SPECIALTY WORKERS TO ONE (1) JOURNEYMAN
2.
3.
4.
5.

AGENT APPROVING CONCESSION: _Rich Witt_ BM/FST

COMMENTS:

BALTIMORE OFFICE:
4705 Erdman Avenue
Baltimore, Maryland 21205
(410) 732-1848
FAX (410) 675-1345

CUMBERLAND OFFICE:
43 Clement Street
Cumberland, Maryland 21502
(301) 724-8416
FAX (301) 722-2034

NORFOLK OFFICE:
1600 E. Little Creek Road
Room 207B
Norfolk, Virginia 23518
(757) 587-5568
FAX (757) 587-1867

RICHMOND OFFICE:
3204 Cutshaw Avenue
1st Floor
Richmond, Virginia 23230
(804) 353-2425
FAX (804) 353-5257

ROANOKE OFFICE
2101 Dale Avenue
P.O. Box
Vinton,
(540) 34   66
FAX (540) 345-85



REGIONAL AIR SYSTEMS

15127 Marlboro Pike, Upper Marlboro, MD. 20772
Phone : 301-952-9000 : Fax : 301-952-9305

September 17, 2004                                            04-802-004

The Poole and Kent Corp.
4530 Hollins Ferry Rd.
Baltimore, MD 21227

Reference: Embassy Suites Hotel

Subject: Bacon – Davis Act  Enforcement – Notice of Extra Costs

Dear Mr. Matt Maltby

Regional Air  was informed on Tuesday the 27th of July that the above referenced project
has the Bacon-Davis Act enforcement in place. Since that time and today we have
worked with our client to clarify this issue. As of this date we have not been approved to
put "R" Workers on this project as we had planned at bid time. "R" workers are currently
not allowed under the Beacon – Davis Act Agreement.

Regional Air does not have any documentation and cannot find any in the bid proposal
Documents that indicate this job has any prevailing wage act associated with it.
Furthermore there is not any breakdown of prevailing wages and accepted categories of
worker, crafts, etc. within the contract bid documents

 In fact  we bid this job in accordance with special provisions granted us by the Local 100
SMWIA management which allowed us 2 qty. "R" Workers for every Journeyman on the
job·

An R-Worker (Specialty Worker) is paid between 10 and 17 dollars an hour and is only
paid about 2 dollars an hour in benefits per the union agreement we have with Local 100
SMWIA. If the Bacon-Davis Act is enforced we will not be able to use R-Workers at all
and our average man hour cost will increase from $32.50 per hour to $42.75 an Hour.
When you consider that we have over 10,000 man hours of field work the cost is evident
and enormous.

Since we have to now man the job we will be forwarding for adjustment to our contract a
change estimate the costs to comply with the Beacon – Davis wage act as it reads today.
The value of this change is approximately  $120,000.00

Please call if you have any questions.

Sincerely

*James D. Elges*

James Elges
Vice President
Regional Air Systems

CC:  04-802-A-2
    J. Digman
    G. Reyes

WHITEFORD, TAYLOR & PRESTON
L.L.P.

SEVEN SAINT PAUL STREET
. BALTIMORE, MARYLAND  21202-1626

410 347-8700
Fax 410 385-0626
www.wtplaw.com

210 WEST PENNSYLVANIA AVENUE
TOWSON, MARYLAND 21204-4515
TELEPHONE  410 832-2000
FAX  410 832-2015

20 COLUMBIA CORPORATE CENTER
10420 LITTLE PATUXENT PARKWAY
COLUMBIA, MARYLAND 21044-3528
TELEPHONE  410 884-0700
FAX  410 884-0719

PETER D. GUATTERY
DIRECT NUMBER
410 347-9431
pguattery@wtplaw.com

1025 CONNECTICUT AVENUE, NW
WASHINGTON, D.C.  20036-5405
TELEPHONE  202 659-6800
FAX  202 331-0573

1317 KING STREET
ALEXANDRIA, VIRGINIA  22314-2928
TELEPHONE  703 836-5742
FAX  703 836-0265

September 3, 2004

*Via* Federal Express

Ms. Heidi Hagan
Wage Compliance Manager
Comprehensive Housing Services, Inc.
8840 Warner Avenue, Suite #203
Fountain Valley, CA 92708

Dear Ms. Hagan:

This letter shall follow to my letter of August 25, 2004.  Enclosed is a copy of a Concession Form provided by Sheet Metal Workers' International Association Local Union No. 100 confirming the agreement reached between Regional Air Systems, Inc. and the Union with respect to the ratio of Specialty "R" Workers to Journeyman discussed in my previous correspondence.

This Concession Form is executed by Robert Walters, who is the Business Manager for Local No. 100.

I trust this information is sufficient for your purposes to confirm the use of this ratio on the Embassy Suites project by Regional Air Systems.

Should you have any further questions, please feel free to contact me.

Very truly yours,

Peter D. Guattery

PDG:gc

Ms. Heidi Hagan
September 3, 2004
Page 2


cc:    Jim Elges
       Jim Digman

Ms. Heidi Hagan
September 3, 2004
Page 3


bcc:    Adam Snavely ✓
        Robert Carney


1574639

** TOTAL PAGE.02 **

# Sheet Metal Workers' International Association
# Local Union    No. 100



4725 SILVER HILL ROAD
SUITLAND, MARYLAND 20746

(301) 568-8655
FAX (301) 967-1683

REVISED 7/00

## CONCESSION FORM

DATE: 5/16/02

CONTRACTOR: REGIONAL AIR SYSTEMS, INC

CONTRACTOR REPRESENTATIVE
TO WHOM CONCESSION GRANTED: JIM DIGMAN

NAME OF JOB: EMBASSY SUITES HOTEL

LOCATION OF JOB: 1000 K STREET N.W. WASHINGTON, D.C.

TYPE OF WORK:

CONCESSION(S) GRANTED FOR SHOP:

1.

2.

3.

4.

5.

CONCESSION(S) GRANTED FOR JOBSITE:

1.    RATIO OF TWO (2) SPECIALTY WORKERS TO ONE (1) JOURNEYMAN

2.

3.

4.

5.

AGENT APPROVING CONCESSION: _Rich. Will_    BM/FST

COMMENTS:

BALTIMORE OFFICE:
4705 Erdman Avenue
Baltimore, Maryland 21205
(410) 732-1840
FAX (410) 675-1245

CUMBERLAND OFFICE:
42 Clement Street
Cumberland, Maryland 21502
(301) 724-8418
FAX (301) 722-2034

NORFOLK OFFICE:
1809 E. Little Creek Road
Room 207B
Norfolk, Virginia 23518
(757) 587-5558
FAX (757) 587-1867

RICHMOND OFFICE:
3204 Cutshaw Avenue
1st Floor
Richmond, Virginia 23230
(804) 353-2425
FAX (804) 353-5257

ROANOKE OFFI
2101 Dale Aven
P.O. Box 333
Vinton, Virginia
(540) 345-9585
FAX (540) 345-6

WHITEFORD, TAYLOR & PRESTON
L.L.P.

210 WEST PENNSYLVANIA AVENUE
TOWSON, MARYLAND 21204-4515
TELEPHONE 410 832-2000
FAX 410 832-2015

SEVEN SAINT PAUL STREET
BALTIMORE, MARYLAND 21202-1626

410 347-8700
FAX 410 385-0626
www.wtplaw.com

1025 CONNECTICUT AVENUE, NW
WASHINGTON, D.C. 20036-5405
TELEPHONE 202 659-6800
FAX 202 331-0575

20 COLUMBIA CORPORATE CENTER
10420 LITTLE PATUXENT PARKWAY
COLUMBIA, MARYLAND 21044-3528
TELEPHONE 410 884-0700
FAX 410 884-0719

1517 KING STREET
ALEXANDRIA, VIRGINIA 22314-2928
TELEPHONE 703 836-5742
FAX 703 836-0265

PETER D. GUATTERY
DIRECT NUMBER
410 347-9431
pguattery@wtplaw.com

August 25, 2004

*Via* Federal Express

Ms. Heidi Hagan
Wage Compliance Manager
Comprehensive Housing Services, Inc.
8840 Warner Avenue, Suite #203
Fountain Valley, CA 92708

Dear Ms. Hagan:

This letter shall follow to our telephone conversation on Monday, August 23rd, as well as the end of last week, regarding the Embassy Suites Hotel project at 1000 K Street, N.W., Washington, D.C. and the ability of our client, Regional Air Systems, Inc., to utilize on the project the journeyman/R-worker ratio agreed upon by the subcontractor and the Union at the time of bid submission.

Per our discussion, I enclose herewith a copy of the relevant sections of the Collective Bargaining Agreement between the Sheet Metal Workers Local Union No. 100 and the Sheet Metal Contractor's Association of the District of Columbia, Inc., to which Regional Air is a signatory, including those pages relating to Specialty -- "R" -- Workers.

I also enclose herewith a copy of a letter from Regional Air Systems to Mr. Bill Farris of Sheet Metal Workers Local 100, sent prior to bid submission, confirming the use of R Workers in a 2 to 1 ratio to Journeymen at the Embassy Suites project.

Please advise me promptly if this documentation is sufficient for your purposes to permit the inclusion of R Workers at the agreed upon ratio and  rates on this

Ms. Heidi Hagan
August 25, 2004
Page 2

project.  As we discussed, you indicated that such arrangements are generally
acceptable.  If additional documentation is necessary, please contact me promptly.

Very truly yours,

Peter D. Guattery

PDG:gc

cc:    Jim Elges
       Jim Digman

Ms. Heidi Hagan
August 25, 2004
Page 3


bcc:    Adam Snavely ✓
        Robert Carney


*1572911*



# AGREEMENT

BETWEEN THE

SHEET METAL WORKERS'
LOCAL UNION NO. 100

AND THE

SHEET METAL
CONTRACTORS ASSOCIATION
OF THE
DISTRICT OF COLUMBIA, INC.

EFFECTIVE:
JULY 1, 2003 THROUGH JUNE 30, 2006

# TABLE OF CONTENTS

| Article/ Paragraph No. | | Page No. |
|---|---|---|
| TITLE PAGE: | | |
| TABLE OF CONTENTS | | |
| Standard Form of Union Agreement: | | |
| PREFACE | | |
| 1 | CONDITIONS OF EMPLOYMENT | 1 |
| 2 | SUBCONTRACTING WORK | 1 |
| 3 | WORK ASSIGNMENT | 2 |
| 4 | FURNISHING EMPLOYEES | 2 |
| 5 | MEMBERSHIP REQUIREMENT | 3 |
| 6 | WORKING DAY AND WORKING WEEK | 3 |
| 7 | TRANSPORTATION INSIDE AND OUTSIDE LIMITS | 5 |
| 8 | GENERAL CONDITIONS | 5 |
| 9 | TOOLS AND TRANSPORTATION OF TOOLS | 8 |
| 10 | GRIEVANCES | 9 |
| 11 | JOINT APPRENTICESHIP COMMITTEE | 12 |
| 12 | LOCAL 100 AGREEMENTS AND FUNDS | 15 |
| 13 | HOLIDAYS | 15 |
| 14 | ACCESS TO SHOPS AND JOBS | 17 |
| 15 | AGREEMENT BETWEEN THE PARTIES | 18 |
| 16 | DUES CHECKOFF | 18 |
| 17 | DUES CHECKOFFS IN OTHER AREAS OF LOCAL 100 | 20 |
| 18 | NONDISCRIMINATION CLAUSE | 20 |
| 19 | QUALIFYING OF SHEET METAL WORKERS | 21 |
| 20 | MILEAGE | 21 |
| 21 | STARTING AND QUITTING TIME | 21 |
| 22 | DISTRIBUTION OF WAGE INCREASES | 21 |

23 APPRENTICE AND JOURNEYMAN TRAINING FUND .......... 22
24 INTERNATIONAL TRAINING INSTITUTE, NATIONAL ENERGY MANAGEMENT INSTITUTE (NEMI), SHEET METAL OCCUPATIONAL HEALTH INSTITUTE TRUST (SMOHIT), AND THE SMWIA SCHOLARSHIP FUND .......... 22
25 NATIONAL PENSION FUND .......... 24
26 SANITARY FACILITIES .......... 24
27 SHOP STEWARDS .......... 25
28 SHIFT WORK .......... 26
29 FORTY-HOUR FUND CONTRIBUTIONS .......... 27
30 SHOWUP PAY .......... 27
31 SAFETY .......... 27
32 OVERTIME WORK ASSIGNMENT .......... 28
33 BALANCING .......... 29
34 WORK PRESERVATION .......... 30
35 RULE OF AGE .......... 30
36 SKETCHING AND DRAFTING .......... 30
37 TWO HOUR SHUTDOWN FOR ELECTION .......... 31
38 COMPANY SHED OR BOX .......... 31
39 CHANGE IN ASSIGNMENT OF WORK .......... 31
40 PICKET LINES .......... 32
41 REPORTING JOB AND LOCATION OF .......... 32
42 TEMPORARY OPERATION OF FAN EQUIPMENT .......... 32
43 DUAL SHOPS .......... 33
44 EMPLOYER AGENTS .......... 34
45 SUBCONTRACTING AND FABRICATION .......... 34
46 EXPLOSIVE EQUIPMENT .......... 35
47 WORKERS' COMPENSATION INSURANCE AND INJURY .......... 35
48 MUTUAL COOPERATION IN OBTAINING SHEET METAL WORK .......... 36
49 TAX COMPUTATION .......... 36

50 SPECIALTY SHEET METAL WORK .......... 37
51 AGREEMENT FOR VOLUNTARY RECOGNITION .......... 38
52 SAVINGS CLAUSE .......... 38
53 EFFECTIVE DATE AND TERMINATION OF CONTRACT .......... 39

Addendum:
1 JURISDICTIONAL AREA .......... 41
2 WAGE RATES .......... 41
3 FOREMEN .......... 42
4 PAYMENT OF WAGES .......... 43
5 LAY OFF .......... 44
6 HEALTH BENEFIT FUND, PENSION FUND, VACATION FUND, SHEET METAL WORKERS' LOCAL 100 401(k) FUND .......... 45
7 HEALTH BENEFIT FUND .......... 45
8 PENSION TRUST FUND .......... 46
8(a) SHEET METAL WORKERS' LOCAL 100 401(k) FUND .......... 47
9 APPRENTICE FUND CONTRIBUTION .......... 47
10 VACATION TRUST FUND .......... 47
11 PAYMENT OF FUNDS .......... 48
12 DUES CHECKOFF .......... 51
13 WORK JURISDICTIONS WITHIN LOCAL 100 AREA .......... 51
14 APPRENTICE RATIO .......... 52
15 PAYMENT OF DUES CHECKOFF AND ASSESSMENT .......... 52
16 SPECIAL CONCESSION .......... 52
17 BONDING LANGUAGE .......... 52
18 REQUIREMENTS TO BECOME A SIGNATORY CONTRACTOR .......... 53

Appendix A .......... 55

Index .......... 66

# ARTICLE I
## CONDITIONS OF EMPLOYMENT

**SECTION 1.** This Agreement covers the rates of pay and conditions of employment of all employees of the Employer engaged in, but not limited to, the (a) manufacture, fabrication, assembling, handling, erection, installation, dismantling, conditioning, adjustment, alteration, repairing and servicing of all ferrous or nonferrous metal work and all other materials used in lieu thereof, and of all air-vapor systems and air-handling systems regardless of material used, including the setting of all equipment and all reinforcements in connection therewith; (b) all lagging over insulation and all duct lining; (c) testing and balancing of all air-handling equipment and duct work; (d) the preparation of all shop and field sketches used in fabrication and erection, including those taken from original architectural and engineering drawings or sketches; (e) all labor in connection with energy auditing and retro-fitting, and; (f) all other work included in the jurisdictional claims of Sheet Metal Workers' International Association.

**SECTION 2.** This Agreement covers the rates of pay and conditions of employment of all employees paid directly by the Employer engaged in construction work. This section does not apply to those employees of the Employer that are covered under a separate collective bargaining agreement.

# ARTICLE 2
## SUBCONTRACTING WORK

**SECTION 1.** No Employer shall subcontract or assign any of the work described herein, which is to be performed at a job site, to any contractor, subcontractor or other persons or party who fails to agree in writing to comply with the conditions of employment contained herein, including, without limitations, those relating to union security, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project.

**SECTION 2.** Subject to other applicable provisions of

1

port within twenty-four (24) hours shall be reported by the Employer to the business office of the Local Union.

SECTION 5. For the purposes of employees reporting injuries as provided for herein, the Employer agrees to provide an appropriate report form on all jobs and in the shops.

## ARTICLE 48
### MUTUAL COOPERATION IN OBTAINING SHEET METAL WORK

SECTION 1. The Employer will make every effort to bid all work, which is under the jurisdiction claimed by the Sheet Metal Workers' International Association on all projects.

SECTION 2. The Employer will assist the Local Union in all efforts to have architects and engineers include all sheet metal work in the roofing and/or sheet metal sections of job specifications.

SECTION 3. It is agreed that the Contractors' Association and the Union will continue to negotiate this Agreement while it is in effect in an effort to recover work for the union sheet metal contractor and the union sheet metal worker that has been lost to the non-union sheet metal contractors and other trades.

## ARTICLE 49
### TAX COOPERATION

SECTION 1. For the purpose of computing federal or state withholding taxes and Federal Old Age Benefits taxes, the hourly wage rate for journeymen sheet metal workers and apprentices shall be the hourly wage rate set forth in this Agreement.

SECTION 2. The Employer agrees to withhold and pay state income tax in the states of Maryland, Virginia, West Virginia and the District of Columbia as designated by the employee.

36

## ARTICLE 50
### SPECIALTY SHEET METAL WORK

SECTION 1. This Article covers the rates of pay, rules and working conditions of all those employees of the Employer hereinafter referred to as "specialty sheet metal mechanics," performing sheet metal work as described in Section 2.

SECTION 2.

A. Specialty sheet metal work is defined as the erection, installation, repairing, replacing, handling, and servicing of residential heating and air conditioning systems regardless of energy source, and the architectural sheet metal work (metal siding, storm windows, gutters, leaders, exhaust hoods, remodeling, low voltage electricity, all types of slate, tile, asbestos shingle, asphalt roofing, waterproofing, etc.) on single family homes and garden or walk-up apartment buildings not exceeding two and one-half (2 & 1/2) floors, and where individual apartments are air conditioned by a separate and independent unit or system.

B. Specialty work may be any work mutually agreed upon between the Employer and the Union.

SECTION 3. Shop fabrication of work under Section 2 of this Article shall be done at building trade rates and fringes, unless otherwise agreed upon.

SECTION 4. The minimum hourly rates and fringe benefits for specialty sheet metal workers shall be determined in this Addendum of this Agreement (see Addendum).

SECTION 5. For the purpose of providing work for union members and making the employer competitive on certain types of other projects, the Union may specify items of work to be performed by specialty sheet metal workers at a job site or in the shop on a job by job basis. Such specific items of work may be revised from time to time at the Union's discretion.

SECTION 6. It is agreed that no specialty sheet metal worker now working for an Employer will suffer a reduction

37

in wages due to being accepted into Local 100's building trade apprenticeship program.

SECTION 7. All specialty sheet metal workers shall become and remain members of the Union within sixty (60) days after employment. All specialty sheet metal workers must file applications with the Union at the Union Office before reporting to work.

## ARTICLE 51
## AGREEMENT FOR VOLUNTARY RECOGNITION

SECTION 1. This Agreement for Voluntary Recognition is made and entered into this 1st day of July 1990, by and between Sheet Metal Workers' Local union No. 100 (hereinafter referred to as the "Union"), and the Sheet Metal Contractors Association of the District of Columbia, Inc., or any other contractor or association signed to this Agreement (hereinafter referred to as "Employer").

SECTION 2. The Employer hereby acknowledges that the Union has established, to its satisfaction, that a majority of its employees have authorized the Union to represent them in collective bargaining. The Union has unequivocally demanded recognition as the employees' Section 9(a) representative, and the Employer extends recognition to the Union as the Section 9(a) representative of its employees.

SECTION 3. The Employer agrees to recognize and does hereby recognize the Union, its agents, representatives, or successors as the exclusive collective bargaining agent for all employees performing sheet metal work within the jurisdiction of the Union on all present and future job sites.

## ARTICLE 52
## SAVINGS CLAUSE

SECTION 1. Inasmuch as this Agreement is subject to any and all governmental laws, rules and regulations, any provision of this Agreement adjudged to be unlawful by a court of

38

competent jurisdiction shall be treated for all purposes as null and void, but all other provisions of this Agreement shall continue in full force and effect as provided herein.

## ARTICLE 53
## EFFECTIVE DATE AND TERMINATION OF CONTRACT

SECTION 1. This Agreement and Addendum or Addenda attached hereto shall become effective on the 1st day of JULY 2003, and remain in full force and effect until the 30th day of JUNE 2006, and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party.

SECTION 2. Notwithstanding any other provisions of this Article, or any other article of this Agreement, whenever an amendment to the Standard Form of Union Agreement shall be adopted by the National Joint Labor Relations Adjustment Committee, any party to this Agreement, upon the service of notice to all other parties hereto, shall have this Agreement reopened and thirty (30) days thereafter for the sole purpose of attempting to negotiate such amendment and only this purpose. Failure to negotiate such amendments into this Agreement for the duration of the term hereof. There shall be no strike or lockout over this issue.

In witness whereof, the parties hereto affix their signatures and seal this 1ST day of JULY 2003.

SHEET METAL WORKERS' LOCAL 100,
WASHINGTON, D.C. AREA
BY: ROBERT A. WALTER

SHEET METAL CONTRACTORS ASSOCIATION
OF D.C., INC.
BY: JIMMIE ROBERTS, JR.

39

the agreements or addenda. The term "total wage package" shall include the value of all hourly contractual costs.

SECTION 3. Apprentices shall not be sent to any area that would cause them to miss school.

### PARAGRAPH NO. 14
### APPRENTICE RATIO

SECTION 1. All shops hiring less than twelve (12) journeymen shall hire apprentices on a one (1) to three (3) basis.

### PARAGRAPH NO. 15
### PAYMENT OF DUES CHECKOFF
### AND ASSESSMENT

SECTION 1. The Employer will pay directly to the Sheet Metal Workers' Local Union 100 General Fund Office (Dues Office) all dues checkoff monies on all journeymen, apprentices and specialty workers working in the jurisdiction of Local 100, under this Addendum or another agreement or addenda of Local 100.

### PARAGRAPH NO. 16
### SPECIAL CONCESSION

SECTION 1. The Employer may employ specialty workers at a ratio of one (1) specialty worker to two (2) Washington Area building trade journeymen on a company wide basis, provided that fabrication is done by the Employer within the jurisdiction of Local No. 100.

SECTION 2. Section 1 of this Paragraph does not apply on jobs designated by the Union as non-concession jobs.

### PARAGRAPH NO. 17
### BONDING LANGUAGE - ALL CONTRACTORS

SECTION 1. Effective July 1, 2003, all Contractors signatory to this agreement will be required to post a bond equivalent to the fringe benefit package for a sixty (60) day period. The Local Union shall establish this amount. On an annual basis the Contractor will be required to increase the

amount of the bond if their workforce has increased. Any contractor not posting a bond shall be required to pay benefits on a weekly basis.

### PARAGRAPH 18
### REQUIREMENTS TO BECOME A
### SIGNATORY CONTRACTOR

SECTION 1. To be considered a union contractor the Employer must have executed an agreement with Local 100 or an acceptance of the Agreement, or be covered by this Agreement by virtue of membership in the Sheet Metal Contractors Association of D.C., Inc. Before the Union will enter into an agreement with any Employer, it shall be the responsibility of the Employer to:

- Notify Local 100 as to the principal officers of their company.
- Supply Local 100 with the company's articles of incorporation.
- Notify the Union of the company's intention to open and operate a sheet metal shop and to engage in the business as a sheet metal contractor.
- Have an established and permanent business address or location.
- Have sufficient tools and equipment to comply with Article 1 of the Standard Form of Union Agreement.
- Give employment to no less than one (1) journeyman sheet metal worker.
- Submit evidence, in the form of a certificate of insurance, verifying that workers' compensation insurance has been obtained and continues to be in force.
- Make payments for unemployment taxes to the appropriate agency in Maryland, Virginia, West Virginia and the District of Columbia.
- Post a bond in accordance with Paragraph 17.

## WASHINGTON AREA
## JOURNEYMAN FRINGE BENEFITS*

**HEALTH FUND**
7/1/03 through 12/31/03 — $4.26 per hour
1/1/04 through 6/30/04 — to be determined per Article 22
7/1/04 through 6/30/05 — to be determined per Article 22
7/1/05 through 6/30/06 — to be determined per Article 22

**PENSION FUND**
7/1/03 through 12/31/03 — $3.50 per hour
1/1/04 through 6/30/04 — to be determined per Article 22
7/1/04 through 6/30/05 — to be determined per Article 22
7/1/05 through 6/30/06 — to be determined per Article 22

**SMW LOCAL 100 401(k) FUND**
7/1/03 through 12/31/03 — $0.50 per hour
1/1/04 through 6/30/04 — to be determined per Article 22
7/1/04 through 6/30/05 — to be determined per Article 22
7/1/05 through 6/30/06 — to be determined per Article 22

**APPRENTICE FUND**
7/1/03 through 12/31/03 — $0.38 per hour
1/1/04 through 6/30/04 — to be determined per Article 22
7/1/04 through 6/30/05 — to be determined per Article 22
7/1/05 through 6/30/06 — to be determined per Article 22

56

**INTERNATIONAL TRAINING INSTITUTE FUND**
7/1/03 through 12/31/03 — $0.12 per hour
1/1/04 through 6/30/04 — to be determined per Article 22
7/1/04 through 6/30/05 — to be determined per Article 22
7/1/05 through 6/30/06 — to be determined per Article 22

**NATIONAL ENERGY MANAGEMENT INSTITUTE (NEMI)**
7/1/03 through 12/31/03 — $0.03 per hour
1/1/04 through 6/30/04 — to be determined per Article 22
7/1/04 through 6/30/05 — to be determined per Article 22
7/1/05 through 6/30/06 — to be determined per Article 22

**SHEET METAL OCCUPATIONAL HEALTH INSTITUTE TRUST (SMOHIT)**
7/1/03 through 12/31/03 — $0.02 per hour
1/1/04 through 6/30/04 — to be determined per Article 22
7/1/04 through 6/30/05 — to be determined per Article 22
7/1/05 through 6/30/06 — to be determined per Article 22

57

*AMOUNTS MAY CHANGE IN ACCORDANCE WITH ARTICLE 22.

## WASHINGTON AREA
### SPECIALTY WORKER WAGE RATES

7/1/03 through 6/30/06    $ 5.75 per hour

### SPECIALTY WORKER FRINGE BENEFITS*
HEALTH FUND CONTRIBUTION**

| | |
|---|---|
| 7/1/03 through 12/31/03 | $2.34 per hour |
| 1/1/04 through 6/30/04 | 55% of journeyman health contribution rate |
| 7/1/04 through 6/30/05 | 55% of journeyman health contribution rate |
| 7/1/05 through 6/30/06 | 55% of journeyman health contribution rate |

### SPECIALTY WORKER WAGE DEDUCTIONS*
ORGANIZING ASSESSMENT

| | |
|---|---|
| 7/1/03 through 12/31/03 | $0.15 per hour |
| 1/1/04 through 6/30/04 | to be determined per Article 22 |
| 7/1/04 through 6/30/05 | to be determined per Article 22 |
| 7/1/05 through 6/30/06 | to be determined per Article 22 |

SPECIALTY WORKER'S UNION DUES
CURRENTLY $37.50 PER MONTH. CONTACT LOCAL 100'S DUES OFFICE REGARDING THE STATUS OF INDIVIDUAL SPECIALTY WORKERS.

*AMOUNTS MAY CHANGE IN ACCORDANCE WITH ARTICLE 22.
**EFFECTIVE 7/1/03 THE CONTRACTORS WILL MAINTAIN SPECIALTY WORKERS' HEALTH FUND CONTRIBUTION RATE AT FIFTY-FIVE PERCENT (55%) OF THE JOURNEYMAN AND APPRENTICE HEALTH FUND CONTRIBUTION RATE (e.g. Wages plus 55% of the journeyman/apprentice health fund contri-bution rate).

65

## WASHINGTON AREA
### APPRENTICE WAGE DEDUCTIONS*
VACATION/POLITICAL ACTION LEAGUE (PAL), APPRENTICE ORGANIZING AND ORGANIZING ASSESSMENT - 1ST AND 2ND YEAR APPRENTICES ONLY

| | |
|---|---|
| 7/1/03 through 12/31/03 | $0.55 per hour |
| 1/1/04 through 6/30/04 | to be determined per Article 22 |
| 7/1/04 through 6/30/05 | to be determined per Article 22 |
| 7/1/05 through 6/30/06 | to be determined per Article 22 |

VACATION/POLITICAL ACTION LEAGUE (PAL), APPRENTICE ORGANIZING AND ORGANIZING ASSESSMENT - 3RD AND 4TH YEAR APPRENTICES ONLY

| | |
|---|---|
| 7/1/03 through 12/31/03 | $0.90 per hour |
| 1/1/04 through 6/30/04 | to be determined per Article 22 |
| 7/1/04 through 6/30/05 | to be determined per Article 22 |
| 7/1/05 through 6/30/06 | to be determined per Article 22 |

*AMOUNTS MAY CHANGE IN ACCORDANCE WITH ARTICLE 22.

64



REGIONAL Air SYSTEMS

P.O. Box 24084 ■ Baltimore, MD 21227
Phone: 301.952.9000 ■ Fax: 301.952.9305

August 16, 2002

Sheet Metal Local 100
Washington D.C. Area

Attn: Mr. Bill Phares

Bill,

   As per our telephone conversation this morning, I will include R-Workers in my quote for the Embassy Suites Hotel at 1000 K. Street N.W., at a 2 to 1 ratio.

Thanks,

Jim Digman

# FAX TRANSMISSION

## REGIONAL AIR SYSTEMS, INC.
P.O. Box 24084
BALTIMORE, MARYLAND 21227
PH. (301) 952-9000
FAX (301) 952-9305

DATE: _8-16-02_          TIME: _____

SENT TO: _Sheet Metal Local 100_

NO OF PAGES (Incl. Cover Sheet): _____     RETURN FAX NO.: 301-952-9305

DELIVER TO: _Bill Phares_          FROM: _Jim Dignam_

JOB NO. _Embassy Suites_

COMMENTS:

NOTE:
If this transmission is incomplete or if you have any questions, please call 301-952-9000

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              0771
CONNECTION TEL                3019671683
SUBADDRESS
CONNECTION ID        SMW 100
ST. TIME             08/16 12:43
USAGE T              00'56
PGS. SENT               2
RESULT               OK
```

# FAX TRANSMISSION

## REGIONAL AIR SYSTEMS, INC.
P.O. Box 24084
BALTIMORE, MARYLAND 21227
PH. (301) 952-9000
FAX (301) 952-9305

DATE: _8-16-02_            TIME: _____

SENT TO: _Sheetht Liberal 100_

NO OF PAGES (Incl. Cover Sheet): _____    RETURN FAX NO.: 301-952-9305

DELIVER TO: _Bill Phares_    FROM: _Sim Dignman_

JOB NO. _EMBassy Suites_

COMMENTS: