UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

HUNT CONSTRUCTION GROUP, INC., )
)
)
)
Plaintiff, )
) Civil Action No.: 1:06cv1850
v. ) Judge: James Robertson
)
THE POOLE AND KENT CORPORATION, )
)
)
Defendant. )
)

### NOTICE OF SUPPLEMENTAL AUTHORITY

Hunt Construction Group, Inc. ("Hunt"), by and through counsel, hereby submits the following Notice of Supplemental Authority related to its Motion for Summary Judgment against The Poole & Kent Corporation ("P&K').

On February 18, 2008, the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida rendered a decision in *Harper Mechanical, LLC v. Hunt Construction Group, Inc, et al.*, Case No. 04-CA-006800 (Fla. Cir. Ct. Feb. 18, 2008)(attached as **Exhibit A**) that addresses an important issue in this matter.

The *Harper* decision addressed the application and effect of the "Affidavit and Partial Waiver of Claims and Liens and Release of Rights" executed by Harper – a mechanical subcontractor – on a project in Orange County, Florida. Hunt, along with its joint venture partners, served as construction manager on the project. P&K executed nearly identical documents throughout its work on the Embassy Suites project at issue here. Although the waivers executed by P&K were amended to preserve certain claims, the *Harper* decision is persuasive authority regarding P&K's claims for work properly performed, retainage withheld,

and invoices, proposed changes, and time and material tickets submitted after the date of Payment Application No. 14 – August 9, 2005. Hunt addressed the issue of P&K's pre-August 9, 2005 claims being barred by the execution of waivers at pages 14-15 of its Memorandum of Points and Authorities in Support of its Motion for Summary Judgment and pages 8-9 of its Reply Memorandum.

Dated: March 11, 2008                    Respectfully submitted,

/s/ Laura A. Kamas
David T. Dekker (#358173)
Jeffrey R. Gans (#452332)
Laura A. Kamas (#499837)
THELEN REID BROWN RAYSMAN & STEINER, LLP
701 Eighth Street, N.W.
Washington, D.C. 20001
Telephone:   (202) 508-4000
Facsimile:   (202) 508-4321

OF COUNSEL:
José M. Pienknagura, Esq.
Hunt Construction Group, Inc.
6720 N. Scottsdale Road
Suite 300
Scottsdale, Arizona 85008
Telephone: (480) 368-4740
Facsimile: (480) 368-4745
*Counsel for Hunt Construction Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11[h] day of March, 2008, a copy of the forgoing was served to electronically via the CM-ECF System and via first-class mail to:

Robert F. Carney
William P. Pearce
Whiteford, Taylor & Preston, L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1626
Telephone: (410) 347-8700

Of Counsel:
Michael A. Stover
Whiteford, Taylor & Preston, L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1626
Telephone: (410) 347-8700

*Counsel for The Poole and Kent Corporation*


Donna M. Crowe
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, N.W., 12th Floor
Washington, D.C. 20036
Telephone: (202) 719-8212
Facsimile: (202) 719-8312

*Counsel for Federal Insurance Company and
United States Fidelity and Guarantee Company*


                      /s/ Laura A. Kamas
                      Laura A. Kamas

DC #398757 v1

# EXHIBIT A

Case 1:06-cv-01850-JR    Document 43    Filed 03/11/2008    Page 4 of 16

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

HARPER MECHANICAL, LLC.,                    Case No. 04-CA-006800

    Plaintiff,                              Consolidated Cases

v.

HUNT CONSTRUCTION GROUP, INC., et al.,

    Defendants.
_____/

## ORDER ON RECONSIDERATION AND FINAL SUMMARY JUDGMENT AS TO DEFENDANT HCC SURETIES

THIS CAUSE came before the Court on the "Motion for Reconsideration of Summary Judgment Order; And if Motion is Denied, Motion for Leave to Amend Reply; and Motion to Continue Trial On HCC Counterclaim" (the "Motion") filed in the action by Plaintiff Harper Mechanical, LLC ("Harper").

The Motion makes three requests: (1) reconsideration of the Court's January 24, 2008 order ("Order") granting summary judgment in favor of Defendants The Hunt Construction Group, Inc., Clark Construction Group, LLC, as successor-in-interest to Clark Construction Group, Inc., and Construct Two Construction Managers, Inc., a joint venture (collectively, "HCC"), and HCC's sureties; (2) Harper's alternative motion for leave to amend its reply and (3) Harper's alternative request that trial of this case be continued.

The Court has reviewed Harper's Motion and the papers filed by the parties in connection with that Motion and has heard

argument of counsel. For the reasons stated below, the Court adheres to its previous ruling that Defendants' motion for summary judgment should be granted. The Court further concludes that Harper's request for reconsideration should be denied, and that its alternative request for leave to amend should be denied as futile. The Court has addressed Harper's request for continuance by a separate Order.

**BACKGROUND**

This case arises from the construction of the Orange County Convention Center "Phase V" Expansion Project (the "Project"), located in Orlando, Florida. The owner of the Project was Orange County, Florida. In May, 2001, HCC, who served as the construction manager for the Project, entered into a Trade Contract Agreement with Harper for the performance by Harper of certain mechanical and plumbing construction work on the Project.

Harper's complaint alleges that Harper completed its work in the Fall of 2003 and that Harper is entitled to recover approximately $5 million from HCC under theories of breach of contract and cardinal change. Harper also seeks to recover from HCC's Sureties on the payment and performance bond posted by the sureties on behalf of HCC.

It is undisputed that Harper, throughout the course of the Project, executed and submitted to HCC as part of Harper's application for progress payments various documents, successively

2

titled "Affidavit and Partial Waiver of Claims and Liens and Release of Rights." The last of these documents (the "Release") was executed and delivered by Harper in May, 2004 at least six months after Harper completed its work on the Project. The Release provided that, in consideration for the progress payment received from HCC, Harper released HCC from any claims or liens on the Project arising from Harper's work through the date of the Release:

> In consideration of the amounts and sums received, the undersigned does hereby waive and release to the Owner and to Hunt/Clark/Construct Two, A Joint Venture any and all claims and liens and rights to liens . . . on account of labor, services, materials, fixtures or apparatus heretofore furnished by or at the request of the undersigned.

In addition to the foregoing provision, the Release provided that Harper released HCC from "all claims, rights or causes of action whatsoever" arising prior to the date of the Release, with the exception of retainage and work performed after the date of the last payment application:

> In addition, for and in consideration of the amounts and sums received, the undersigned hereby waives, releases and relinquishes any and all claims, rights or causes of action whatsoever arising out of or in the course of the work performed on the above-mentioned project, contract or event transpiring prior to the date hereof excepting the right to receive payment for work performed and properly completed and retainage, if any, after the date of the above-mentioned payment application or invoices.

3

The date of the "above-mentioned payment application" is specified in the second paragraph of the Release as being February 25, 2004. The Release was specifically and adequately raised by HCC in its affirmative defenses. Harper made no reply to the affirmative defenses other than a general denial of their allegations.

On November 30, 2007, Defendants moved for summary judgment, arguing that because Harper was not asserting claims relating to any work performed after February 25, 2004, Harper had unambiguously released the claims it was asserting.

Harper responded by pointing to extrinsic evidence it argued showed that the parties did not intend that all claims as to such prior work be released, and further that the Defendants had waived or should be estopped from relying on the Releases to defeat Harper's claims. Harper did not contend that the language of the Release was ambiguous, nor did Harper seek leave to amend its reply to assert waiver or estoppel, neither of which it had pled as an avoidance to HCC's affirmative defense of release.

After hearing argument of counsel, this Court on January 24, 2008 granted Defendants' motion for summary judgment, ruling that Harper's argument of waiver or estoppel, not having been pled by Harper in reply, was not properly before the Court.

Harper moved for reconsideration arguing for the first time that the Release was not clear on its face, and that it should be

construed together with the 2001 Trade Contract and various Change Orders to that contract. Harper also argued that waiver and estoppel did not have to be specifically pled and alternatively that it should be allowed to amend its reply to assert waiver and estoppel as avoidances.

The Court has considered the parties' submissions and heard argument of counsel on these points, has considered the legal authorities cited by the parties relating to the enforcement of releases, and has conducted its own research. The Court concludes that its initial ruling granting summary judgment was correct and that Harper's motion for leave to amend should be denied as futile.

## ANALYSIS

The Court has reviewed Florida case law relating to enforcement of releases. Where a release is clear and unambiguous, it will be enforced in accordance with its terms, and extrinsic evidence of the parties' intent may not be considered to vary or contradict the intent as expressed in the release. See Cerniglia v. Cerniglia, 679 So. 2d 1160 (Fla. 1996) (trial court properly rejected party's affidavit purporting to explain release); Sheen v. Lyon, 485 So. 2d 422 (Fla. 1986); Hurt v. Leatherby Ins. Co., 380 So. 2d 432 (Fla. 1980); Plumpton v. Cont'l Acreage Dev. Co., 830 So. 2d 208, 210 (Fla. 5th DCA 2002); Patco Transport, Inc., 917 So. 2d 922, 923 (Fla. 1st DCA 2005),

review denied, 932 So. 2d 192 (Fla. 2006); Hold v. Manzini, 736 So. 2d 138, 141 (Fla. 3d DCA 1999); see also Bill Heard Chevrolet Corp., Orlando v. Wilson, 877 So. 2d 15, 18 (Fla. 5th DCA 2000) ("It is the intention expressed by the language employed in the agreements that governs, not the after-the-fact testimony of the parties").

A written release is ambiguous only where the document is, on its face, susceptible of more than one reasonable construction. Hold, 736 So.2d at 141; see also Churchville v. GACS, Inc., 2008 WL 182203 at *2 (Fla. 1st DCA Jan. 23, 2008) (ambiguity exists only where language "may be fairly understood in more ways than one").

These principles apply even if enforcement of the plain language of the release leads to a harsh result for one of the parties. Churchville, 2008 WL 182203 at *3 ("A fundamental tenet of contract law is that parties are free to contract, even when one side negotiates a harsh bargain"); Home Dev. Corp. of St. Petersburg, Inc. v. Bursani, 178 So. 2d 113, 117 (Fla. 1965) (Courts will not rewrite unambiguous contracts in order to "relieve one of the parties from the apparent hardship of an improvident bargain").

Here, by executing the May 3, 2004 Release, Harper expressly released "any and all claims, rights or causes of action whatsoever arising out of or in the course of" its work on the

Project, excluding only (1) retainage and (2) claims for compensation for work performed after the date of the previous payment application; the latter claims were expressly excluded from the Release. The date of the previous payment application was February 25, 2004. The claims that Harper seeks to assert here are not claims for retainage or for work performed after that date, and thus are not expressly excluded from the Release.

A release that on its face applies to "any and all" claims with only certain specified exclusions may not be varied to create additional exceptions for other types of claims. See Cerniglia, 679 So. 2d at 1164-65; Frank Maio Gen. Contractor, Inc. v. Consol. Elec. Supply, Inc., 452 So. 2d 1092, 1093 (Fla. 4th DCA 1984) (reversing judgment for subcontractor where release unambiguously acknowledged payment in full). The language of the Release is thus unlike the release recently found to be ambiguous in Berloni S.P.A. v. Della Casa, LLC, 2008 WL 34821 (Fla. 4th DCA Jan. 2, 2008), where it was unclear whether the release applied to all prior work.

Because the Release is unambiguous in releasing any and all claims prior to its date, except for retainage and work performed after February 25, 2004, Florida law requires that it must be enforced in accordance with its terms. The Court's conclusion in that regard is further supported by decisions from other jurisdictions applying the same principles of law to releases

identical in form to those executed by Harper. The courts have found such releases to be unambiguous and granted summary judgment on that basis. See Johnson Controls, Inc. v. Hunt Constr. Group, Inc., 2004 WL 3323608 (E.D. Mich. Aug. 13, 2004); G.R. Sponaugle & Sons, Inc. v. Hunt Constr. Group, Inc., 366 F. Supp. 2d 236 (M.D. Pa. 2004); Hunt Constr. Group v. Constr. Services, Inc., 375 F. Supp 2d 612 (E.D. Mich. 2005); United States for the use and benefit of Thorleif Larsen & Son, Inc. v. United States Fid. & Guar. Corp., 2005 WL 2136047 (N.D. Ind. Sept. 2, 2005).

Harper argued for the first time on reconsideration that the Release was ambiguous because its title refers to a "Partial" waiver of claims. Harper also contends that the Court should consider the "amendments and change orders which make up the overall agreement of the parties" in determining the meaning of the Release. Neither argument is persuasive.

First, the Release by its terms excludes certain claims, i.e., claims for retainage and work performed after the February 25, 2004 payment application. The Release is therefore "partial," as it is not a full release of all claims for all work. On its face, however, the Release directly bars the claims Harper seeks to assert here, which without dispute arise from work performed before February 25, 2004.

8

Harper further argues that the Release should be interpreted by reference to the Trade Contract Agreement and various amendments that were executed during the course of the Project, as well as the parties' course of conduct. The Trade Contract itself, however, defines the "Contract Documents" that the parties agree should be read so as to "supplement and complement" each other. The Release executed by Harper is not included in that provision. See Trade Contract §§ 2.1, 2.2, 2.3 and Attachment III. While generally contemplated by the Trade Contract § 5.2, the Release was a stand-alone document, reciting its own consideration.

Harper's argument asks the Court to consider extrinsic evidence, i.e., another contract, executed at a different time, to vary or contradict the plain language of the Release. Florida law precludes that.

Harper additionally argues that the parties' conduct during the course of the Project was inconsistent with an interpretation of the Release as barring Harper's claims, and seeks to rely on the doctrines of waiver and estoppel. Harper points to decisions from other jurisdictions favorable to its position, West End Interiors, Ltd. v. Aim Constr. & Contracting Corp., 729 N.Y.S. 2d 112 (N.Y. App. Div. 2001), and Robert E. McKee, Inc. v. City of Atlanta, 431 F. Supp. 1198 (N.D. Ga. 1977).

The Court has carefully considered these decisions. To the extent they are based on consideration of extrinsic evidence, rather than an ambiguity in release language itself, the Court finds them contrary to the thrust and trend of the Florida cases cited above, which preclude the use of extrinsic evidence to vary or contradict a release where its language is unambiguous. Because extrinsic evidence is precluded, the Court concludes that Harper's motion for leave to amend to assert avoidances of waiver and estoppel based on extrinsic evidence of the parties' conduct must be denied as futile.

Finally, although Harper did not raise this issue, the Court has considered whether the Release contains a latent ambiguity. A latent ambiguity occurs where a contract's language is clear on its face and suggests a single meaning, but extrinsic evidence reveals an ambiguity, requiring a choice between two possible meanings. See Plumpton, 830 So. 2d at 210. An ambiguity, however, only arises where two reasonable meanings are possible. Hold, 736 So. 2d at 141. The Court finds that the extrinsic evidence pointed to by Harper does not reveal two reasonable meanings for the language of the Release, which unambiguously bars "any and all" claims except those specifically excluded. Harper instead seeks to contradict that language by reference to extrinsic evidence.

The counterclaim of defendant HCC against Harper, which involves issues related to Harper's claims against Defendants, remains pending, and the Court's ruling therefore does not dispose of all matters as between HCC and Harper. However, as to the HCC Sureties, all judicial labor is at an end and final summary judgment should therefore be entered for the HCC Sureties.

**BASED ON THE FOREGOING, IT IS HEREBY ORDERED** that

(1) Harper's motion for reconsideration is denied;

(2) Harper's motion for leave to amend is denied;

(3) the Court adheres to its January 24, 2008 ruling granting Defendants' motion for summary judgment as to all claims against them;

(4) final summary judgment is hereby entered in favor of the HCC Sureties, i.e., National Union Fire Insurance Company, Zurich American Insurance Company, Federal Insurance Company, Fidelity and Deposit Company of Maryland, United States Fidelity and Guaranty Company, St. Paul Fire and Marine Insurance Company, and American Home Assurance Company. Plaintiff shall take nothing by its suit against the HCC Sureties, who shall go hence without day.

11

**DONE AND ORDERED** in Chambers in Orlando, Florida, this 18th day of February, 2008.

_____
The Honorable Renee A. Roche
Circuit Court Judge

cc: Counsel of record