IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUNT CONSTRUCTION GROUP, INC.    *

      Plaintiff/Counter Defendant    *

v.    *  Civil Court Action No:    1:06CV1850
      Judge James Robertson

THE POOLE AND KENT    *
CORPORATION

      Defendant/Counter Plaintiff    *


\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**THE POOLE AND KENT CORPORATION'S**
**PRETRIAL STATEMENT**

Defendant/Counter Plaintiff The Poole and Kent Corporation ("Poole and Kent"), by its undersigned counsel, files this Pretrial Statement in accordance with Local Rule 16.5.  Trial in this matter is scheduled to commence on May 19, 2008.

**I.**    **Statement of the Case**

This case centers on the construction of a 380-room, fifteen-story Embassy Suites Hotel (the "Project") in the District of Columbia.  In October 2003, Plaintiff/Counter-Defendant Hunt Construction Group ("Hunt") entered into a contract (the "Prime Contract") with the owner of that property, 1000K, LLC (the "Owner") to act as general contractor.  Hunt in turn entered into numerous subcontracts with various construction trade subcontractors.  Hunt and Poole and Kent executed a subcontract dated June 16, 2004 (the "Subcontract") for construction services related to the installation of the heating, ventilating, air conditioning, and plumbing systems for the Project.

The Project suffered from delays almost before it began, as problems with the excavation work set the Project back six to eight weeks.  As discussed more fully *infra*. in the Statement of Claims and the Statement of Defenses, these problems were compounded by Hunt's mismanagement and its failure to sequence the work on the Project in a proper fashion.  As a result, Poole and Kent's work was significantly qualitatively and quantitatively different than the work contemplated at the execution of the Subcontract. But not only has Hunt failed to compensate Poole and Kent for its breaches, it has not even paid Poole and Kent for amounts due and owing under the original Subcontract, or for extra work that was performed by Poole and Kent and accepted by Hunt.  It has justified this by asserting undocumented and unsupportable backcharges.

Hunt filed suit in this case, seeking such backcharges from Poole and Kent. Poole and Kent responded by filing its Counterclaim.  Poole and Kent also filed a Third Party Complaint against Hunt's payment bond sureties, United States Fidelity and Guaranty Company and Federal Insurance Company.  The Third Party Complaint was severed and stayed by this Court earlier this year, and will not be the subject of the upcoming trial.

Hunt has moved for Summary Judgment on the Counterclaim.  Poole and Kent filed its Opposition thereto and the Court conducted a hearing on the motion on December 18, 2007.  The motion has not been ruled upon as of yet.

This Court has subject matter jurisdiction pursuant to 28 USC § 1332(a)(1) in that there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000. There is personal jurisdiction as to all parties because the Project is located in this district and the parties to the suit performed work on the Project site or, in the case of the severed sureties, provided bonds in relation to the Archives Project.

II.    **Statement of Claims**

Poole and Kent's claims result from Hunt's repeated breaches of its contractual duties to Poole and Kent, hindering the efficient performance of Poole and Kent work. As the D.C. Court of Appeals recognized in *Blake Construction Co., Inc. v. C.J. Coakley Co., Inc.*, 431 A.2d 569, 576 (D.C. 1981), every contract includes an implied duty that each party will not hinder or impede the performance by the other party of its contractual duties. There, Blake Construction, the general contractor for the construction of the Walter Reed Hospital, was found to have breached its subcontract with C.J. Coakley by hindering C.J. Coakley's performance when it "scheduled the on-site work in an unreasonable sequence; did not provide a job site in suitable condition for Coakley to perform its work; and did not cooperate with Coakley when necessary to assure Coakley's performance." 431 A.2d at 577 (footnote omitted).

The *Blake* court's description could equally apply to Hunt's actions – and its failures to act -- on the Project. Hunt failed to manage and sequence its subcontractors' work, resulting in near-constant delays and disruptions to Poole and Kent's work. In

the winter, it did not close in the building so as to protect Poole and Kent's work from the elements. Worse, it ignored Poole and Kent's schedule input, electing not to cooperate when necessary to assure Poole and Kent's efficient performance. Furthermore, Hunt has not paid over funds for work Poole and Kent performed under the Subcontract, nor has it paid for extra work that it has accepted. Poole and Kent's damages total $1,831,063.00: $472,879.00 for its extended overhead costs; $242,992.00 for costs incurred due to lost labor productivity; $617,102.00 for unpaid change orders; and $498,090.00 in remaining Subcontract funds.

### A. Poole and Kent's Extended Overhead Claim

The Project experienced significant delay throughout construction -- in the excavation phase, the concrete structure erection phase, the rough-in phase, the mechanical penthouse phase, and the finishes phase. Such delays to the project resulted from Hunt's mismanagement, manifested in its inability to control the pace and sequence of the work that its concrete, framing, drywall and architectural finish subcontractors performed. The delays to the Project were compounded by Hunt's continuous attempts to accelerate the project in a haphazard and uncontrolled manner. As a result of the foregoing, Poole and Kent incurred substantial increases in its field office and home office overhead expenses. Furthermore, the delays and disruptions forced the performance of Poole and Kent's contract work past the anniversary date for the local labor union's wage rate increase, thereby resulting in labor escalation costs. As

a consequence of the delay, Poole and Kent is entitled to recompense for its labor escalation costs and its extended overhead costs.

Poole and Kent's sub-subcontractors also experienced substantial cost impacts as a result of actions and inactions of Hunt. Montgomery Mechanical Services Inc. ("Montgomery") performed the HVAC piping and equipment systems installations throughout the project. Montgomery mobilized in the spring 2004, in accordance with the original December 2003 Project schedule. As a result of the aforementioned delays and disruptions, its work was not completed until October 2005. Regional Air Systems Inc. ("Regional") also mobilized during April 2004, in accordance with the Hunt December 2003 schedule, but was unable to complete its work until October 2005. Advanced Specialty Contracting ("Advanced") performed the insulation work on this Project. Its performance period was also extended, resulting in increased overhead costs. Advanced started the work approximately 1 month later than contemplated and completed the work in October 2005, 4 months later than contemplated. The late start was a result of the slow structural progress early in the project while the late completion was a result of delays in framing, building close-in and construction of the Terrace Dining area. This caused Advanced to staff the project for an extended period of time.

Poole and Kent paid both Montgomery and Regional for all costs incurred, including overhead costs for Hunt caused delays and disruption. Accordingly, Poole and Kent is entitled to compensation for both Montgomery's and Regional's increased costs. Poole and Kent has also incorporated the costs of Advanced for its extended

overhead costs as part of this claim; Advanced has agreed that Poole and Kent is only liable to it to the extent Hunt is liable for such costs.

Upon an analysis of the actual Project completion in comparison with the original as-planned Project schedule from late 2003, Poole and Kent has determined that it is entitled to 94 days of compensable delay. This results in $472,879.00 in damages to Poole and Kent.

**B. Poole and Kent's Productivity Impact Claim**

As a direct result of the delays on the Project and of Hunt's continuous and haphazard and uncontrolled attempts to accelerate the Project, Poole and Kent's ability to perform its work in an orderly and reasonable manner was severely impacted. Hunt's inability or unwillingness to manage, coordinate and control its subcontractors led to disruption and expenditures of additional money and labor hours to perform relatively standard and straightforward work. In addition, a substantial amount of Poole and Kent's additional work was performed on an overtime basis, resulting in increased premium and supervision costs.

**1.      Inserts and Sleeves.**

As part of any concrete structure project, the mechanical and plumbing subcontractor is required to layout a formed deck, utilizing the General Contractor's control lines, for installation of sleeves, anchors, box-outs and/or insert strips. This layout can only be performed after the formwork deck has been installed and stabilized. In fact, the general contractor must first establish its control lines on each deck in order

to ensure coordinated and accurate placement of all slab penetrations and embedded items. The industry standard is to allow the subcontractors sufficient time to layout its work and start its placements prior to placement of reinforcing steel. This allows for accurate, expedient and efficient layout process.  On a project of this size and complexity, the mechanical and plumbing layout would require 2 men 2 to 4 hours per pour area.  Properly coordinated, those layout personnel could start as the General Contractor completes its control lines.

During the layout and sleeving process on the basement and ground floor levels, Poole and Kent discovered that Hunt had a "bust" in the structural layout that placed many of its sleeves, box-outs and inserts in the wrong locations. This work was corrected to the extent possible during the following months after initial installation. However, slow progress of concrete placement, lack of proper subcontractor coordination along with lack of proper access for layout resulted in idle time, increased layout hours and increased placement hours on the basement level slabs.

Hunt's non-cooperative concrete subcontractor interfered with the ability of Poole and Kent to perform its work efficiently.  Hunt was either unable or unwilling to maintain control over its concrete subcontractor. For example, on many levels, Poole and Kent would be told decks would be available at a certain time, only to return at those times to find insufficient progress to perform its layout or worse yet, the rebar and post tensioned cables stockpiled and distributed on the deck. Generally, Poole and Kent

7

experienced the following difficulties that disrupted its ability to perform in an organized and productive factor.

- Concrete crews worked at their own pace never following a schedule
- Concrete crews would work overtime without notification to other subs
- Concrete crews would work weekends without notifying subcontractors
- Concrete crews would immediately load the decks with rebar and cable once deck formwork was placed and anchored with total disregard to the work of others
- Hunt did not properly coordinate access to and time on the formwork decks for layout of sleeves and inserts
- Hunt would issue directives to reassign personnel on short notice to complete sleeving without proper coordination or adequate time to complete.
- Hunt did not properly control its concrete subcontractor.
- Hunt directive to accelerate layout, sleeves and inserts
- Hunt directive to perform work on an overtime basis
- False starts to work as a result of Hunt's directives to start layout and sleeves when decks were not available

In response to these actions and inactions by Hunt and its concrete subcontractor, Poole and Kent took the following actions to respond and mitigate:

- Pulled personnel off other productive work and moved them to the upper decks
- Placed personnel in a standby mode during the normal work day while waiting for slabs to become available
- Mobilized crews, materials and equipment to decks only to discover the area was unavailable
- Called in personnel in for weekend work and require them to maintain a standby mode until the deck becomes available.
- Started crews at 3 a.m. and 4 a.m. along with working crews into the late evening to accommodate the haphazard manner in which the concrete subcontractor performed. This typically included substantial standby or wait time.
- Would layout its work in and around rebar placement resulting in less accurate layout and increased performance time.

Poole and Kent analyzed its labor reports and costs and determined the total amount of impact on an hourly basis associated with the sleeve and insert activity to be $36,137.70.

### 2.    Plumbing Rough-in

The Subcontract required that Hunt permit Poole and Kent input into the Project schedule.  In reliance upon this provision, Poole and Kent contemplated performing its plumbing rough-in in an orderly and productive manner as shown in the schedule input it provided to Hunt.  Each of the piping tasks on the guest room floors was to be performed in a continuous manner until substantially complete for duration of 2 to 15 days.  Work on a specific task was to be substantially completed prior to moving up to the next scheduled floor.  Hunt's schedule, provided at the time the Subcontract was executed, showed a similar sequence, though occasionally with shorter durations.

Hunt's schedule showed the specific rough-in and framing tasks for each guest room floor as being substantially complete prior to advancing those crews to a new floor.  This would provide for an orderly and sequential flow of crews working in a contiguous manner on each guest room floor.

However, as the work progressed, Poole and Kent was prevented from completing its sanitary and domestic water run-outs on any guest room floor in the contemplated duration.  Hunt failed to direct its framing subcontractor to frame all walls on a floor prior to moving to floors above.  That subcontractor's framing crews would typically install most walls in the back–to–back rooms on a floor, leaving sections

9

out and performing little to no framing in the 10 atypical north and south end suites on each guest room floor. The framing crews would then advance to another floor and perform in exactly the same manner, leaving large pockets of framing incomplete throughout the building.  The framing subcontractor's crews then jumped back multiple times to lower floors in order to complete the framing work.

The disruption caused by incomplete framing was compounded by the hopscotch manner in which the drywall subcontractor installed drywall at each tub. Without the drywall installation at the tubs, Poole and Kent was prevented from installing and anchoring the tubs, in turn delaying the connection of tub drains. Ultimately, Poole and Kent was forced to jump back onto floors many times to complete tubs and drains as best it could, in a haphazard order.  This lack of orderly framing progression vertically through the building, leaving a substantial percentage of the walls incomplete throughout a given floor, disrupting the orderly flow all parties agree is the proper manner to perform sanitary and domestic water piping run-out installation.

Additionally, due to delays on the Project, much of the rough-in and piping work was performed in winter weather conditions, rather than the autumn conditions anticipated.  Even worse, Hunt was not able to get the building closed-in properly, providing imperfect protection against the weather and cold temperatures and often preventing Poole and Kent from testing the sanitary lines it had installed.

The disruptions caused Poole and Kent to encountering the following inefficiencies, reducing its workers' productivity and increasing its labor expenditures:

- Periodic reassignment of personnel: Personnel were repetitively remobilized onto a floor previously worked for the same purpose.
- Stacking of trades: The framer, drywall, electrician and sprinkler subcontractors were working in similar manners throughout the floors
- Learning curve production: Poole and Kent should have experienced and enjoyed the opportunity of gained efficiencies through the performance of repetitive tasks.
- Multiple Remobilization into an area
- Crew size inefficiencies: Returning to performing the previously disrupted work disrupted
- Diluted Supervision: Examination of the as-built shows the number of floors that were active at any time. This would not have been the case under any of the original plans.

The total impact cost to plumbing rough-in is calculated by Poole and Kent to be $124,864.18.

### 3. Plumbing Fixtures

Because other subcontractors were performing work in a hopscotch and piecemeal manner, Poole and Kent was also prevented from installing the plumbing fixtures in the planned contiguous manner.  Plumbing fixture installation in each guest room consisted of trimming out one tub/shower, along with setting and connecting one toilet, one lavatory and one bar room sink.  Hunt's schedule showed the fixture installation occurring systematically from the north end to the south end with work being performed in a contiguous manner.  The necessarily precedent finishes were also shown as being completed on a floor in a contiguous manner, completing a floor prior to moving up to another floor.

11

The actual events surrounding the finish work on the Project deviated dramatically from that shown in any schedule. The causation of these disruptions is similar to that noted *supra.* Hunt's drywall subcontractor performed its installations in a disorderly manner on each floor, never completing all drywall on a given floor before moving to another floor. Casework, countertops and tile work were performed in a similarly disrupted pattern. Until these items were complete, the plumbing fixtures could not be completed. The tile work was at times only partially installed in many guest room bathrooms; weeks would pass before the work was complete. Some bathrooms were just skipped over entirely on a floor. Casework at the bar sinks encountered similar disrupted work patterns, as were the lavatory countertops. The lavatory countertops were first installed at the wrong height. Once the height issue was corrected it was discovered that the holes for the fixture were cut incorrectly requiring most to be re-cut.

The entire situation was compounded when the finishes for the north and south end suites were not completed concurrent with the back-to-back suites. This forced the relevant plumbing crews to mobilize at two different times for each floor, a substantial deviation from the planned sequence. Poole and Kent was never given the opportunity to complete an entire floor without significant disruption. The total impact cost to plumbing fixtures was $44,125.44. Poole and Kent's total Labor Productivity Impact claim is $242,992.19.

### C. Subcontract Balance and Unpaid Change Orders

With respect to the Subcontract balance, Hunt and Poole and Kent agree on the original amount of the Subcontract and the amount paid to Poole and Kent during the Project, however there is a dispute as to the amount of additions to the Subcontract price. Hunt adds in approximately $60,325.00 for change orders which it has independently valued and unilaterally approved. Poole and Kent does not agree with Hunt as to the amount of the change orders or the methodology for pricing the change orders, but notes that Hunt's approval indicates that the work represented by the specific change orders was performed and accepted by Hunt and that Poole and Kent is entitled to compensation for these items. Hunt's only relevant defense to these claims lies in its assertion of backcharges, address in Section III of this statement. These change orders are summarized on the spreadsheet attached hereto as **Appendix 1**.

### b.    Exhaust Duct Risers (PCO 070)

In negotiating the Subcontract, Hunt and Poole and Kent agreed to a change in Poole and Kent's scope of work that would reduce the cost of the Subcontract by replacing a ducted riser system with a sheetrock enclosed riser with sub ducts. The parties memorialized this change in Paragraph 34 of Section C (Specific Clarifications) Attachment II to the Subcontract, Subcontractor's Scope of Work. In the course of construction, however, Hunt changed its mind and required that Poole and Kent install the ducted riser system. This necessarily constitutes a change to the work for which

13

Poole and Kent is entitled to compensation under the Subcontract. The value of such additional work is $83,205.00. Having accepted the work, Hunt must compensate Poole and Kent.

### c.    Change Orders for which Poole and Kent Has Incurred Uncompensated Costs

In some cases, Hunt has chosen to accept Poole and Kent change order work without recognizing its obligation to pay for such work. PCO 080 is one example of this. Poole and Kent performed the work as ordered by Hunt on March 30, 2005. It and its subcontractors incurred costs in the amount of $77,432.00, and Poole and Kent submitted its change order request on April 29, 2005. More than a year later, Hunt rejected the change order on the grounds that this was to be a "no cost" change. But Poole and Kent never agreed to perform additional work for free. Rather, it did in fact incur extra costs, and it is entitled to compensation therefor under the Subcontract. Hunt accepted the work, did not deny that it was performed or provide any substantive basis on which to deny payment to Poole and Kent. Poole and Kent PCO Nos. 42, 48, 54, 61, 63, 66, 72, 99, 100 fall into this same category.

## III.    Statement of Defenses to Hunt

Hunt overstates its backcharges to Poole and Kent by more than $750,000.00. The largest backcharges lack even basic documentation and supporting information. Moreover, Hunt improperly values its deductions and incorrectly blames Poole and Kent for damages which were not its responsibility. The Hunt charges by and large seem to have been prepared mainly to arrive at a large number in order to scare Poole

and Kent off of its affirmative claims, distract attention from Hunt's poor management of this Project, and internally justify the large overages expended by Hunt on this Project.

### A. Lack of Documentation.

Almost $600,000 worth of Hunt backcharges, including three valued at more than $100,000 each, lack *any* substantive backup documentation whatsoever. Such lack of effort on Hunt's part signals that its view of their validity is the same as Poole and Kent's: these backcharges are asserted only as a bargaining position and bear little relation to any actual damages incurred by Hunt.

Hunt's SCO's 94, 95, 96, 97, 98, and 105 were presented to Poole and Kent as a single page change order setting forth the deduction amount, followed by one page of a financial ledger for which all entries but one have been redacted. For example, SCO 105, asserting a backcharge of $211,750.00 for clean-up, attaches as backup a ledger sheet for which all entries other than "Bkchg-Labor" have been removed. But the entries on that sheet do not even correspond with the numbers on the face of SCO 105. All that can be gleaned from the ledger sheet is that Hunt budgeted just $11,000.00 for clean-up and exceeded its budget by $642,437.00. It remains unclear how Hunt derived the $211,750.00 backcharged from this redacted ledger sheet.

Similarly, Hunt has provided no explanation whatsoever for other significant backcharges. In its Initial Disclosure, Hunt lists as additional backcharges: "Acceleration" ($109,497.00), "Additional Hunt Supervision" ($108,696.00), and

"Interest on charges" ($12,873.30). To date, Hunt has offered no explanation or method of computation relating to these new backcharges.

**B. Overstating Costs.**

The numbers Hunt uses to compute its backcharges are often excessive. For example, in SCO 105, the $75.00 hourly rate attributed to Hunt laborers for clean-up is about 300% of Poole and Kent's actual labor costs for laborers who perform clean-up tasks. It is not clear how Hunt arrived at $75/hour; presumably, this was simply an attempt to overstate SCO 105's value. Poole and Kent's actual labor costs can be derived from SCO 060, an additive change order for which Hunt and Poole and Kent appear to have no dispute. That change order was for the provision of one laborer to Hunt for clean-up from the Jan. 2005 fire. The recapitulation to the change order request lists a fully burdened laborer standard rate of $26.98/hour. Using that number instead of $75/hr. would result in a reduction of almost two-thirds of the value of SCO 105, even assuming, *arguendo*, that SCO 105 would be otherwise valid.

**C. Improper Overhead and Profit.**

Hunt also overstates its backcharges by asserting overhead and profit where it is not entitled to do so. SCO 84, for instance, values a credit for the **deletion** of work otherwise within Poole and Kent's scope of work, the provision of air-conditioning to a vault used by Pepco. The value of Poole and Kent's work is agreed to be $30,200.00. But Hunt also seeks ten percent overhead and ten percent profit. Such are not "costs" incurred by Hunt, and are not chargeable to Poole and Kent.

**D. Invalid Attribution to Poole and Kent.**

Hunt asserts backcharges for items that are facially not Poole and Kent's responsibility.  SCO 102 is replete with examples of this.  That change order attempts to charge to Poole and Kent a portion of Thelen Reid's attorney's fees incurred by Hunt relating to the Project.  The fees charged to Poole and Kent appear to be indicated by circles on Thelen Reid billing.  But those charges are often for items unrelated to Poole and Kent.  One such item is for 1.4 hours of Michael McNamara's time on August 31, 2005, valued at $392.00.  That entry reads "Meeting with L. Weisman and T. Vaughn regarding owner caused" (so in original).[1]  Whatever this entry was for, there is no indication this has anything to do with Poole and Kent.  In a similar vein, SCO 038 backcharges Poole and Kent for alleged remedial work plainly not its responsibility.  One of the Federal Painting[2] Work Tickets in that change order, No. 8873, expressly mentions PCI, not Poole and Kent, as responsible, and two others, 9587 and 9588, relate to sprinkler leaks for which there appears to be no reason to backcharge Poole and Kent because Poole and Kent did not install the sprinkler system.

**E. Job Acceleration and Poor Sequencing.**

Hunt's acceleration of work on the Project and its failure to sequence its subcontractors' work properly were the true proximate cause of many of the items for which Hunt seeks to backcharge Poole and Kent.  For example, Hunt complains of pipe leaks.  But Hunt's damages proximately result from the sequencing ordered by Hunt.

---

[1] A copy of the page with this entry is attached as **Exhibit 36**.
[2] Federal Painting was a subcontractor of Hunt.

17

Pipe leaks are an ordinary part of new construction. It takes some time after initial installation to test and do quality control and make fixes to any problems. On the normal job, this is not an issue, and Poole and Kent allots time for such fixes. What made this job unusual was not the existence of leaks, but the close time in which the drywall was installed, and delays to plumbing tests caused by Hunt's failure to obtain permanent water for the Project on a timely basis. The backcharged work is not the result of deficient pipe installation, but rather deficient scheduling and management of Hunt.

IV.    **Schedule of Witnesses**

**Witnesses Poole and Kent expects to present:**

**<u>*Tom MacPhee</u>**

On behalf of Poole and Kent, Mr. MacPhee was directly and personally involved with the Project. He visited the Project on numerous occasions periodically from May 2004 through September 2005. In addition, Mr. MacPhee was in regular contact with the Poole and Kent Project Management team for the Project throughout the duration of the Project, including the Project Executive, Project Manager and Project foremen through correspondence, meetings and conferences. Mr. MacPhee has reviewed the Poole and Kent project files, cost and accounting records, the documents attached as exhibits to each volume of the Expert Report, as well as select documents which were obtained in discovery from Hunt, the Owner and various subcontractors. Mr. MacPhee has also reviewed the deposition transcripts of Thomas Page, David Langhoff, Art Sheppard,

Jeff Lynch, Jerry Kerr, Tim Vaughn and Larry Weisman. Mr. MacPhee has reviewed the Complaint, Answer, Counterclaim, Responses to Requests for Admission, Poole and Kent's Answers to Interrogatories and Hunt's Answers to Interrogatories. Mr. MacPhee has also reviewed the alleged back-charges asserted by Hunt and the supporting documentation provided by Hunt.

Mr. MacPhee will testify based upon his personal knowledge, skill, training, education and experience, as well as the work he performed, documents reviewed, observations made, discussions with Poole and Kent personnel, information he reviewed and/or considered and applicable industry standards. Mr. MacPhee will testify as an expert regarding the mechanical and plumbing industry practice and standards in general with respect to planning, scheduling, sequencing and analysis of labor productivity, impact and costs. Mr. MacPhee will also testify regarding the general industry practice and standards for general contracting, project scheduling, project management, documentation of claims and costs, control, sequencing and coordination. Mr. MacPhee will testify regarding the fairness and reasonableness of the costs and expenses identified Hunt's alleged back-charges.

It is Mr. MacPhee's expert opinion, to a reasonable degree of certainty, that: (1) Hunt's alleged back-charges lack substantive supporting documentation such as proof of payment by Hunt, proof of Poole and Kent's liability for the alleged costs, and basic information as to the nature of the alleged back-charges; (2) Hunt's alleged backcharges are significantly overstated in amounts; (3) Hunt improperly adds non-contractual

mark-ups to its alleged back-charges; (4) Hunt improperly attributes backcharges to Poole and Kent for alleged costs that are not Poole and Kent's responsibility; (5) Hunt failed to provide contemporaneous notice of its alleged back-charges and as a result failed to mitigate its alleged damages; (6) Hunt's alleged back-charges are caused not by any alleged breach of contract by Poole and Kent but rather by Hunt's acceleration of the Project and/or Hunt's poor management and scheduling of the Project; and (7) Hunt's alleged back-charges include duplication of items and are improperly inflated. It is Mr. MacPhee's expert opinion, to a reasonable degree of certainty, that Hunt is not entitled to recover the amounts claimed by Hunt for its alleged backcharges. Poole and Kent anticipates that Mr. MacPhee's testimony on Poole and Kent's direct examination will take 8 hours.

### *Tom Kessler

Mr. Kessler is a licensed Master Plumber and Gas Fitter in Washington, D.C. and Virginia with over 29 years of experience in the plumbing industry. He is currently the Labor Manager for Poole and Kent responsible for supervising all plumbing and HVAC foremen on numerous Poole and Kent projects. Mr. Kessler may provide opinion testimony based upon his experience, knowledge, skill and training regarding the planning, supervising, sequencing and coordinating of plumbing labor; the installation, testing, inspecting, maintenance and repair of plumbing systems and the fairness and reasonableness of the costs and expenses associated with Hunt's alleged back-charges. Poole and Kent anticipates that Mr. Kessler's testimony on Poole and Kent's direct

examination will take 4 hours.

### *Donald Campbell

Mr. Campbell is a Vice President of Poole and Kent with over 26 years of experience in the construction industry. Mr. Campbell served as Project Executive on the Project commencing in August 2005. Mr. Campbell has significant experience in project management, particularly for the general contractor on a construction project. Mr. Campbell may provide opinion testimony based upon his experience, knowledge, skill, and training about the fairness and reasonableness of Hunt's alleged back-charges. It is expected that he will testify that Hunt failed to provide timely notice of its alleged back-charges, failed to properly mitigate the alleged back-charges, has substantially over-stated the alleged back-charges, has not properly documented the alleged back-charges, and has not established Poole and Kent's liability for the back-charges.  Poole and Kent anticipates that Mr. Campbell's testimony on Poole and Kent's direct examination will take 4 hours.

### Adam Snavely

Mr. Snavely is the President and CEO of Poole and Kent.  He is expected to testify as to communications with Hunt relating the Project schedule, his interactions with Hunt project management, payments from Hunt to Poole and Kent, and the submission of change orders for extra work performed by Poole and Kent.  Poole and Kent anticipates that Mr. Snavely's testimony on direct examination will take 2 hours.

**Matt Maltby**

Mr. Maltby was the Project Manager for Poole and Kent for the Project. He is expected to testify as to the performance of change order work by Poole and Kent, the nature and quality of Hunt's supervision and management of the Project, and the provision of notices and other documents to Hunt. Poole and Kent anticipates that Mr. Maltby's testimony on Poole and Kent's direct examination will take 6 hours.

**Advanced Specialty Contracting Designee**

A designee of Advanced Specialty is expected to testify as to its increased costs resulting from the extension of its performance period on the Project. Poole and Kent anticipates that such testimony on Poole and Kent's direct examination will take 2 hours.

**Stan Fleischer**

Mr. Fleischer is an employee of Seneca Test and Balance. He is expected to testify as to test and balance work performed by Seneca relating to the Project. Poole and Kent anticipates that Mr. Fleischer's testimony on Poole and Kent's direct examination will take 2 hours.

**Witnesses Poole and Kent may call if the need arises:**

Poole and Kent may call the following additional witness:

**<u>Richard Stewart</u>**

Mr. Stewart is the owner and president of Montgomery Mechanical.  He is expected to testify as to Montgomery's work on the Project.

Because Hunt has only this week produced a large volume of documents previously requested by Poole and Kent, Poole and Kent reserves the right to supplement its list of witnesses.

**VI.    Exhibits**

A separate list of exhibits is attached hereto.  Because Hunt has only this week produced a large volume of documents previously requested by Poole and Kent, Poole and Kent reserves the right to supplement its list of exhibits.

**VII.    Designation of Depositions**

None at this time.  Poole and Kent reserves the right to designate deposition testimony in response to any such designations by Hunt or for use in impeachment. Poole and Kent further reserves the right to designate the designee deposition transcripts for 1000K, LLC and Kite Realty, as well as any other deposition, for purposes of laying a foundation for the admission of documentary evidence at trial.

**VIII.    Itemization of Damages**

Poole and Kent's damages total $1,831,063.00.  That amount is broken down as follows: $617,102.00 for unpaid change orders; $472,879.00 for its extended overhead

costs; $242,992.00 for costs incurred due to lost labor productivity; and $498,090.00 in remaining Subcontract funds.

## IX.    Other Relief

Poole and Kent seeks judgment in its favor as to all claims asserted against it by Hunt and judgment against Hunt as to all claims asserted by Poole and Kent.

Respectfully submitted,

/s/ Robert F. Carney
Robert F. Carney (Bar No. 436999)
Michael A. Stover (Pro Hac Vice)
William P. Pearce (Pro Hac Vice)
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202
(410) 347-8700
Attorneys for The Poole and Kent Corporation

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this eighteenth day of April, 2008, a copy of the foregoing Pretrial Statement was served electronically to the following counsel of record:

>David T. Dekker, Esquire
>Jeffrey R. Gans, Esquire
>Laura Kamas, Esquire
>Thelen Reid Brown Raysmann Steiner, LLP
>701 Eighth Street, N.W.
>Washington, D.C. 20001
>
>Donna M. Crowe
>Bradley Arant Rose & White LLP
>1133 Connecticut Avenue, N.W., 12th Floor
>Washington, D.C.  20036
>
>  /s/ Robert F. Carney
>Robert F. Carney

*1788027*

25

| SCO# | Description | Hunt Amount | Poole and Kent Amount | P&K PCO# |
|---|---|---|---|---|
| | **Appendix A: Poole and Kent Change Orders for which Hunt concedes liability** | | | |
| | | | | |
| 58 | X-ray slab pene for kitchen changes and recoordination | $3,609.00 | $ 3,631.00 | 87 |
| 59 | Tie in north sanitary main to south and connect to manhole | $13,117.00 | $ 13,843.00 | 94 |
| 60 | General labor cleanup from fire 1/9/05 | $1,002.00 | $ 1,002.00 | 74 |
| 61 | Reroute 6" sanitary at ground floor to allow clearance at mezz | $2,237.00 | $ 2,196.00 | 90 |
| 62 | Relocate kitchen floor sink piping | $1,187.00 | $ 1,098.00 | 91 |
| 73 | Layout of deck, sleeves & insert roof slab | $2,357.00 | $ 3,111.00 | 79 |
| 74 | Layout of deck, sleeves & insert 15th floor | $2,350.00 | $ 2,702.00 | 83 |
| 75 | Layout of deck, sleeves & insert 11th floor | $892.00 | $ 1,025.00 | 84 |
| 76 | Layout of deck, sleeves & insert 10th floor | $342.00 | $ 393.00 | 85 |
| 77 | Layout of deck, sleeves & insert 9th floor | $432.00 | $ 496.00 | 86 |
| 78 | Layout of deck, sleeves & insert various floors | $9,937.00 | $ 7,402.00 | 93 |
| 81 | Install storm piping & correct roof drains (OT requested by Hunt 1/8/05) | $ 2,273.00 | $ 2,999.00 | 73 |
| 82 | X-ray slab penetration and OT | $4,317.00 | $ 4,563.00 | 60 |
| 83 | General labor cleanup and OT | $870.00 | $ 1,149.00 | 59 |
| 85 | B116 elevator machine room | $3,473.00 | $ 3,988.00 | 98 |
| 89 | Constructive Change Order #3, Kitchen Revisions | $11,082.00 | $11,082.00 | 36R |
| 91 | Relocation of Supply Grille in Room B141 | $848.00 | $ 848.00 | 97 |
| | | $60,325.00 | $ 61,528.00 | |

| Poole and Kent Exhibits | | | |
|---|---|---|---|
| | | | |
| Date | Description | Prefix | Bates |
| *Exhibits Poole and Kent Will Likely Use at Trial:* | | | |
| 8/14/2003 | Memo from Schnabel dated 8/14/03 | HU | 5141 |
| 12/3/2003 | Construction Schedule Run 12/3/03 | | |
| 2/3/2004 | NWC letter to Hunt | NWC | 99 |
| 2/6/2004 | 42132(Hunt) – 2-6-04 ltr from T. Page to Nat'l Wrecking | HU | 42132 |
| 2/6/2004 | 42133(Hunt) – 2-6-04 ltr from T. Page to Nat'l Wrecking re: delay resulting from repairs to NWC equipment. | HU | 42133 |
| 2/19/2004 | Letter from Hunt to NWC dated 2/19/04 re: backlagging | HU | 6464 |
| 2/19/2004 | Letter from Hunt to NWC dated 2/19/04 re: schedule | HU | 6472 |
| 2/19/2004 | 2-19-04 ltr from T. Page to Nat'l Wrecking re: backlagging; NWC's performance | HU | 42141-42142 |
| 2/19/2004 | NWC 2/19/04 letter to Hunt | 1000K | 5522-5532 |
| 2/20/2004 | NWC letter to Hunt (& attached chart) | NWC | 2849-58 |
| 2/23/2004 | Letter from Hunt to Kite dated 2/23/2004 | HU | 22624-22641 |
| 5/21/2004 | Construction Schedule Run May 21, 2004 | | |
| 6/3/2004 | Letter from Hunt to Kite dated June 3, 2004 | HU | 7468-7469 |
| 6/9/2004 | Letter from Hunt to Kite dated June 9, 2004 | HU | 7460-7461 |
| 6/16/2004 | Subcontract between Poole and Kent and Hunt for construction services related to the installation of the heating, ventilating, air conditioning, and plumbing systems for the Project. | | |
| 6/17/2004 | Hunt 6/17/04 letter to Kite | 1000K | 8307 |
| 6/22/2004 | Letter from Kite to Hunt dated June 22, 2004 | HU | 22738 |
| 6/30/2004 | 3542-3543(1000K) Hunt 6/30/04 letter to Kite | 1000K | 3542-3543 |
| 7/20/2004 | 3176(1000K) 7/20/04 Change Order No. 9 deducting $70,000 for fix | 1000K | 3176 |
| 7/26/2004 | Letter from Kite to Hunt dated July 26, 2004 | HU | 7661-7682 |
| 7/30/2004 | Letter from T. Page to A. Shepherd | 1000K | 8064; 8073- |
| 8/3/2004 | Transmittal of T. MacPhee's schedule analysis of 8/3/04 to Hunt. | HU | 15823-15828 |
| 8/4/2004 | Email from Adam Snavely to Page dated 8/4/2004 | HU | 18022-18029 |
| 8/11/2004 | Letter from Hunt to Kite dated August 11, 2004 | HU | 7727 |
| 8/26/2004 | Letter from Hunt to Kite | 1000K | 2953 |
| 8/26/2004 | Union Pipefitters Wage Rates for Washington, DC | | |
| 9/3/2004 | 9/3/04 Guattery Letter to Wage Compliance Manager | HU | 48492 |
| 10/7/2004 | 10/07/04 Regional Air letter to P&K | HU | 48478 |
| 10/12/2004 | Rapid Response letter to Hunt | B&D | 000864-68 |
| 10/15/2004 | Letter from Hunt to NWC dated 10/15/04 | HU | 6379 |
| 10/19/2004 | Letter from P&K to Hunt dated 10/19/04 re: layout and sleeving difficulties. | HU | 14972-75 |
| 10/19/2004 | Letter from P&K to Hunt dated 10/19/04 re: September payment application | HU | 14976-77 |
| 10/19/2004 | P&K 10/19/04 letter to Hunt re: impact caused by lack of coordination and acceleration | | |
| 10/26/2004 | P&K – MacPhee Structural, Plumbing and HVAC Progress inspection as of 10/26/04 | | |
| 11/15/2004 | Rough-in Schedule from Hunt | | |
| 11/22/2004 | E-mail from MacPhee to Maltby re: 11-04 schedule | | |
| 12/1/2004 | Table showing P&K PCO's relating to SPCO 1013 | HU | 48956 |

**Poole and Kent Exhibits**

| Date | Description | Prefix | Bates |
|---|---|---|---|
| 12/8/2004 | Letter from P&K to Hunt dated 12/8/04 re: schedule issues | HU | 14890-14892 |
| 12/9/2004 | Letter from Regional Air to P&K dated 12/9/04 | HU | 41024-41025 |
| 12/13/2004 | Fax to Hunt from P&K dated 12/13/04 | HU | 14862-14865 |
| 1/12/2005 | E-mail from Maltby to MacPhee | | |
| 1/13/2005 | Kite 1/13/05 letter to Hunt | 1000K | 2954-2956 |
| 1/19/2005 | 8639-8644(1000K) Hunt letter 1/19/05 to Kite | 1000K | 8639-8644 |
| 1/31/2005 | 2935(1000K) Hunt 1/31/05 letter to Kite | 1000K | 2935-2937 |
| 2/2/2005 | P&K 2/2/05 Review of Schedule & Job Site Progress from T. MacPhee | | |
| 2/9/2005 | 2940-2944(1000K) Kite 2/9/05 letter to Hunt | 1000K | 2940-2944 |
| 2/21/2005 | Letter from Hunt to PCI dated 2/21/05 | HU | 14030 |
| 2/22/2005 | Letter from PCI to Hunt | PCI | 995 |
| 2/28/2005 | 1090-1092(HROG) PK letter to Hunt 2/28/05 | HROG | 1090-1092 |
| 2/28/2005 | P&K 2/28/05 to Hunt | | |
| 3/11/2005 | Letter from P&K to Hunt dated 3/11/05 | HU | 15722-15728 |
| 4/29/2005 | 222(1000K) VIKA 4/29/05 letter to DCWASA | 1000K | 222 |
| 5/18/2005 | 229(1000K) E-mail chain between Delcher and A. Sheppard 5/18/05 | 1000K | 229 |
| 5/18/2005 | P&K 5/18/05 Job Site Review and Report from T. MacPhee | | |
| 5/20/2005 | Regional letter 5/20/05 | PK | 950 |
| 5/20/2005 | Letter from Hunt to Kite dated May 20, 2005 | HU | 7805-7806 |
| 5/25/2005 | May 25, 2005 letter from Maltby to T. Page re: May 10 Construction Schedule. | HU | 49176-49178 |
| 5/25/2005 | May 25, 2005 letter from Maltby to T. Page re: Delays and Interferences. | HU | 49179-49180 |
| 5/25/2005 | May 25, 2005 letter from Maltby to T. Page re: Acceleration for Building Cooling. | HU | 49181-49182 |
| 5/31/2005 | 5/31/05 P&K letter to Hunt | HU | 48498 |
| 6/8/2005 | P&K 6/8/05 Job site Review and Report from T. MacPhee | | |
| 7/6/2005 | 3619-3626(1000K) Hunt letter to Kite 7/6/05 | 1000K | 3619-3626 |
| 7/6/2005 | P&K 7/6/05 Job Site Review and Report | | |
| 7/6/2005 | P&K 7/6/05 Review of Schedule & Job Site Progress | | |
| 7/6/2005 | Embassy Suites Status as of July 6, 2005 | | |
| 7/8/2005 | Construction Schedule Run 7/08/05 | | |
| 7/19/2005 | July 19, 2005 letter (update of a letter dated June 8, 2005) from Jerry Shields, RAS to Maltby. | HU | 46066-46074 |
| 7/19/2005 | SPCO 1124 | | |
| 7/23/2005 | T. MacPhee Review Notes Associated with 7-23-05 Schedule | | |
| 8/9/2005 | P&K 8/9/05 Job Site Review and Report | | |
| 8/9/2005 | Embassy Suites Hotel -- Washington D.C. -- Status as of August 9, 2005 and as of July 6, 2005 | | |
| 9/14/2005 | PK letter to Hunt 9/14/05 | PK | 973 |
| | Poole and Kent Cost Reports | | |
| | Poole and Kent Labor Reports | | |
| | MacPhee Salary Sheet | | |
| | Montgomery Mechanical Cost Reports | | |
| 4/10/2006 | PK e-mail 4/10/06 | HROG | 965 |

| **Poole and Kent Exhibits** | | | |
|---|---|---|---|
| | | | |
| **Date** | **Description** | **Prefix** | **Bates** |
| 4/14/2006 | Advanced Specialty Contractors Submission for Reimbursement of Costs | | |
| 6/7/2006 | PK e-mail 6/7/06 | HROG | 945 |
| 10/24/2006 | P&K letter to Hunt 10/24/06 responding to Hunt letter of 9/22/06 | | |
| 2/10/2008 | Construction Schedule Run February 10, 2008 | | |
| No date | P&K/Hunt e-mails discussing balancing. | PK | 328-329 |
| No date | Hunt backcharges to National Wrecking | 1000K | 5548-5549 |
| No date | P&K extra work tickets signed by Hunt for dewatering repair work to pumps and piping on t&m basis | 1000K | 8123-8132 |
| No date | Regional letter regarding Hunt's clean-up backcharge | PK | 947-948 |
| No date | Letter from Hunt to NWC's surety (United States Surety Company) re: notice of default termination of NWC. | HU | 6391 |
| No date | Letter from CHW Solutions to Peter Guattery | HU | 7794-7795 |
| | Letter from Kite to Hunt re: Hotel Opening Schedule | HU | 27852 |
| | Letter from P&K to Hunt conveying letter from Regional Air re: installation of fiberglass ductwork | HU | 26188-26189 |
| | Poole and Kent PCO 36R -- Regional Air overtime work in guest suites - delays from others | | |
| | Poole and Kent PCO 40 -- Premium cost to install sleeve and insert work | | |
| | Poole and Kent PCO 48 -- Premium cost to install sleeve and insert work | | |
| | Poole and Kent PCO 54 -Relocate VAV #3 in corridor B142 | | |
| | Poole and Kent PCO 55 -- Duct-ceiling conflict on P1 level | | |
| | Poole and Kent PCO 56 -- Sleeves and insert work, watch concrete pour | | |
| | Poole and Kent PCO 57 -- Watch concrete pour 10/4/04 to 10/28/04 | | |
| | Poole and Kent PCO 58 -- Watch concrete pour 10/18/04 to 10/28/04 | | |
| | Poole and Kent PCO 59 -- Watch concrete pour 10/18/04 to 10/28/04 | | |
| | Poole and Kent PCO 60 -- General labor cleanup and OT | | |
| | Poole and Kent PCO 61 -- X-ray slab penetration and OT | | |
| | Poole and Kent PCO 62 -- Removal and re-installation of 10" storm line | | |
| | Poole and Kent PCO 63 -- Watch concrete pour 11/1//04 to 11/4/04 | | |
| | Poole and Kent PCO 64 -- Exercise room changes (Hunt PCO#071) | | |
| | Poole and Kent PCO 65 -- Watch concrete pour 11/15//04 to 11/22/04 | | |
| | Poole and Kent PCO 66 -- Premium cost only to layout 8th floor | | |
| | Poole and Kent PCO 70 -- Laborers for Hunt Construction use-time only, no markups | | |
| | Poole and Kent PCO 71 -- Regional Air additional costs for Toilet Exhaust | | |

| Poole and Kent Exhibits | | |
|---|---|---|
| | | |
| **Date** | **Description** | **Prefix** | **Bates** |
| | Poole and Kent PCO 72 -- Davis-Bacon Act enforcement | | |
| | Poole and Kent PCO 73 -- Storm wter piping/roof drain connections | | |
| | Poole and Kent PCO 74 -- Install storm piping & correct roof drains (OT requested by Hunt 1/8/05) | | |
| | Poole and Kent PCO 75 -- General labor cleanup from fire 1/9/05 | | |
| | Poole and Kent PCO 76 -- Layout of deck 10th floor.  Premium time only | | |
| | Poole and Kent PCO 77 -- Premium cost only to layout 12th floor | | |
| | Poole and Kent PCO 78 -- Premium cost only to layout 14th floor | | |
| | Poole and Kent PCO 79 -- Layout of deck 15th floor.  Premium time only | | |
| | Poole and Kent PCO 80 -- Layout of deck, sleeves & insert roof slab | | |
| | Poole and Kent PCO 81 -- Revise duct layout in the King Suites, 3rd revision | | |
| | Poole and Kent PCO 83 -- Penthouse acceleration impact cost | | |
| | Poole and Kent PCO 84 -- Layout of deck, sleeves & insert 15th floor | | |
| | Poole and Kent PCO 85 -- Layout of deck, sleeves & insert 11th floor | | |
| | Poole and Kent PCO 86 -- Layout of deck, sleeves & insert 10th floor | | |
| | Poole and Kent PCO 87 -- Layout of deck, sleeves & insert 9th floor | | |
| | Poole and Kent PCO 90 -- X-ray slab pene for kitchen changes and recoordination | | |
| | Poole and Kent PCO 91 -- Reroute 6" sanitary at ground floor to allow clearance at mezz | | |
| | Poole and Kent PCO 93: Relocate kitchen floor sink piping | | |
| | Poole and Kent PCO 94 -- Layout of deck, sleeves & insert various floors | | |
| | Poole and Kent PCO 96 -- Tie in north sanitary main to south and connect to manhole | | |
| | Poole and Kent PCO 97 -- Pool pricing | | |
| | Poole and Kent PCO 98 -- Relocation of Supply Grille in Room B141 | | |
| | Poole and Kent PCO 99-- B116 elevator machine room | | |
| | Poole and Kent PCO 100 -- Re-coordination exhaust air riser #15 | | |
| | Pay Application No. 1 from Poole and Kent to Hunt | | |
| | Pay Application No. 2 from Poole and Kent to Hunt | | |
| | Pay Application No. 3 from Poole and Kent to Hunt | | |

| Poole and Kent Exhibits | | | |
| --- | --- | --- | --- |
| | | | |
| Date | Description | Prefix | Bates |
| | Pay Application No. 4 from Poole and Kent to Hunt | | |
| | Pay Application No. 5 from Poole and Kent to Hunt | | |
| | Pay Application No. 6 from Poole and Kent to Hunt | | |
| | Pay Application No. 7 from Poole and Kent to Hunt | | |
| | Pay Application No. 8 from Poole and Kent to Hunt | | |
| | Pay Application No. 9 from Poole and Kent to Hunt | | |
| | Pay Application No. 10 from Poole and Kent to Hunt | | |
| | Pay Application No. 11 from Poole and Kent to Hunt | | |
| | Pay Application No. 12 from Poole and Kent to Hunt | | |
| | Pay Application No. 13 from Poole and Kent to Hunt | | |
| | Pay Application No. 14 from Poole and Kent to Hunt | | |
| | Pay Application No. 15 from Poole and Kent to Hunt | | |
| | Pay Application No. 16 from Poole and Kent to Hunt | | |
| | Pay Application No. 17 from Poole and Kent to Hunt | | |
| | Pay Application No. 18 from Poole and Kent to Hunt | | |
| | Pay Application No. 19 from Poole and Kent to Hunt | | |
| | Pay Application No. 20 from Poole and Kent to Hunt | | |
| | Pay Application No. 21 from Poole and Kent to Hunt | | |
| | Checks made in payment of Amounts Due Poole and Kent from Hunt | | |
| | Embassy Suites -- Extended Overhead Damages Calculations | | |
| | Poole and Kent 2004-2005 Home Office Overhead | | |
| | Labor Escalation Costs Spreadsheet | | |
| | Regional Air Systems -- Embassy Suites -- Cost Reports | | |
| | Montgomery Mechanical Extended Costs Spreadsheet | | |
| | Embassy Suites - Labor Productivity Damages Calculations | | |
| | Layout, Sleeve & Insert Labor Actual Hours Graph | | |
| | Insert & Sleeve Impact Analysis Spreadsheet | | |
| | Sleeve and Insert As-built Schedule | | |
| | Detailed Labor Report -- Embassy Suites -- Poole and Kent | | |
| | Summary of Detailed Labor Report -- Embassy Suites -- Poole and Kent | | |
| | Detailed Labor Report -- Supervision -- Embassy Suites -- Poole and Kent | | |
| | Asbuilt for Schedule of Activities Derived from Detailed Labor Report | | |
| | Detailed Labor Report -- Embassy Suites -- Poole and Kent -- Domestic, Sanitary Water & Tub Installation | | |
| | Mechanical Contractors Association of America Factors Affecting Labor Productivity | | |
| | Summary of Detailed Labor Report -- Embassy Suites -- Poole and Kent | | |
| | Bid Documents Relating to Drafting and Submission of Bid by Poole and Kent to Hunt | | |
| | Mechanical As-built for Schedule from Weekly Labor Reports | | |
| | | | |

| Poole and Kent Exhibits | | | |
|---|---|---|---|
| | | | |
| **Date** | **Description** | **Prefix** | **Bates** |
| ***Exhibits Poole and Kent May Use at Trial:*** | | | |
| 10/11/2003 | Contract between Hunt and Owner for construction of the Project | | |
| 9/29/2004 | 15404(1000K) P&K "Affidavit and Partial Waiver of Claims and Liens and Release of Rights" 9/29/04 | 1000K | 15404 |
| 11/17/2004 | 13020(1000K) P&K "Affidavit and Partial Waiver of Claims and Liens and Release of Rights" 11/17/04 | 1000K | 13020 |
| 1/31/2005 | TA Beach Lien release for Pay App No. 14 dated 1/31/05 HU00031998 | HU | 31998 |
| 3/30/2005 | TA Beach Lien release for Pay App No. 15 dated 3/30/05 HU00032598 | HU | 32598 |
| 5/5/2005 | Letter from Hunt to Poole and Kent | | |
| 5/26/2005 | Letter from Kite to Hunt dated 5/26/05 | HU | 17073 |
| 7/8/2005 | 16431(1000K) P&K "Affidavit and Partial Waiver of Claims and Liens and Release of Rights" 7/8/05 | 1000K | 16431 |
| 7/15/2005 | Letter from Hunt to Poole and Kent re: Second through Fifth Floors | | |
| 8/8/2005 | 25824(Hunt) -- P&K Form SF 330 "Affidavit and Partial Waiver of Claims and Liens and Release of Rights" executed 8-8-05 | HU | 25824 |
| 11/9/2005 | 249(PK) P&K "Affidavit and Partial Waiver of Claims and Liens and Release of Rights" 11/9/05 | PK | 249 |
| 11/23/2005 | 253(PK) P&K "Affidavit and Partial Waiver of Claims and Liens and Release of Rights" 11/23/05 | PK | 253 |
| 5/20/2006 | 239(PK) P&K "Affidavit and Partial Waiver of Claims and Liens and Release of Rights" 5/20/06 | PK | 239 |
| 1/27/2003 | Relevant Specifications for the Project | | |
| 10/7/2003 | 3594(1000K) Page 10/7/03 e-mail | 1000K | 3594 |
| 10/12/2003 | 2964(1000K) 10/12/03 Page e-mail | 1000K | 2964 |
| 12/17/2003 | CO No. 1 sent to NWC on 12/17/03 for contaminated soil in amount of $51,167 | HU | 6516-18 |
| 12/31/2003 | TA Beach Lien release for Pay App No. 1 dated 12/31/03 | HU | 31787 |
| 1/8/2004 | Clark letter to NWC regarding extended general conditions | NWC | 2952-53 |
| 1/8/2004 | Clark letter to NWC regarding project delays | | |
| 2/1/2004 | Letter from T. Page to A. Shepherd | 1000K | 4511 |
| 2/4/2004 | NWC letter to Hunt re: overtime | NWC | 2306 |
| 2/5/2004 | NWC letter to Hunt re: dewatering system | NWC | 2847 |
| 2/13/2004 | Letter from Clark Foundations to National Wrecking dated 2/13/2004 | HU | 12688 |
| 2/19/2004 | Hunt letter to NWC | NWC | 2799 |
| 2/19/2004 | Letter from Hunt to NWC dated 2/19/04 | HU | 6467 |
| 2/19/2004 | NWC letter to Clark | NWC | 1968-70 |
| 2/20/2004 | 2-20-04 ltr from T. Page to Nat'l Wrecking | HU | 42147-42148 |
| 2/20/2004 | Letter from Hunt to NWC dated 2/20/04 | HU | 6161-63 |
| 2/25/2004 | Letter from Hunt to NWC dated 2/25/04 | HU | 6453 |
| 3/17/2004 | NWC letter (and attached spreadsheet) to Hunt | NWC | 2803-17 |
| 3/23/2004 | TA Beach Daily Report, 3-23-04. | | |
| 3/23/2004 | Hunt 3/23/04 letter to National Wrecking | 1000K | 5541-5543 |
| 4/12/2004 | TA Beach Daily Report, 4-12-04. | | |

**Poole and Kent Exhibits**

| Date | Description | Prefix | Bates |
|---|---|---|---|
| 4/14/2004 | TA Beach Subcontractor Daily Report Form (Hunt Form), 4-14-04. | TA | 2627 |
| 4/27/2004 | TA Beach Daily Report, 4-27-04. | TA | 886 |
| 5/13/2004 | Letter from Hunt to NWC dated 5/13/04 | HU | 6440-45 |
| 5/19/2004 | 4452-4463(1000K) Hunt 5/19/04 letter to Kite | 1000K | 4452-4463 |
| 5/19/2004 | Letter from PCI to Hunt dated May 19, 2004 | HU | 9062-9073 |
| 5/28/2004 | TA Beach Daily Report, 5-28-04. | TA | 917 |
| 6/2/2004 | TA Beach notes of 6-2-04 Concrete Conference for Project. | TA | 575 |
| 6/15/2004 | 42178 (Hunt) Nat'l Wrecking 6-15-04 ltr to T. Page | HU | 42178 |
| 6/25/2004 | TA Beach Daily Report, 6-25-04. | TA | 945 |
| 6/30/2004 | TA Beach Lien release for Pay App No. 6 as of 6/30/04 HU00045652 | HU | 45652 |
| 7/1/2004 | 2950-2951(1000K) Hunt Inter-office Memo 7/1/04 | 1000K | 2950-2951 |
| 7/13/2004 | Letter to NWC from Hunt dated 7/13/04 re: default notice. | HU | 6382 |
| 7/13/2004 | Letter to NWC from Hunt dated 7/13/04 re: owner's letter that the project is six weeks behind schedule due to NWC. | HU | 6383 |
| 7/13/2004 | 46215(Hunt) – 7-13-04 ltr from Christy Heath to Hunt | HU | 46215 |
| 7/14/2004 | 287(PK) P&K internal e-mail 7/14/04 | PK | 287 |
| 7/15/2004 | Letter to RR from Hunt dated 7/15/04 | HU | 14592 |
| 7/15/2004 | PCI Lien Release for Pay App No. 9 & 10 as of 7/15/04 (concrete) HU00045654 | HU | 45654 |
| 7/22/2004 | TA Beach Daily Report, 7-22-04. | TA | 972 |
| 7/29/2004 | TA Beach Daily Report, 7-29-04. | TA | 979 |
| 7/30/2004 | Kite letter to Hunt 7/30/04 | 1000K | 7322 |
| 7/30/2004 | Lien Release for Pay App No. 11 (concrete) as of 7/30/04 | HU | 45655 |
| 7/31/2004 | TA Beach Lien Release for Pay App No. 7 dated 7/31/05. HU00044255 | HU | 44255 |
| 8/2/2004 | TA Beach Subcontractor Daily Report Form (Hunt Form), Aug. 2, 2004 | TA | 2545 |
| 8/12/2004 | TA Beach Daily Report, 8-12-04. | TA | 993 |
| 8/27/2004 | Letter from Hunt to PCI dated 8/27/04 | | |
| 8/31/2004 | Lien Release for Pay App No. 14 (Concrete) as of 8/31/04. HU00044258 | HU | 44258 |
| 8/31/2004 | TA Beach Lien release for Pay App No. 8 dated 8/31/04 HU00044684 | HU | 44684 |
| 9/4/2004 | Letter from RR to Hunt dated September 4, 2004 | HU | 9031-9032 |
| 9/16/2004 | Email from P&K to Hunt dated 9/16/04 | HU | 41038-40 |
| 9/20/2004 | Letter from Hunt to PCI | HU | 13864 |
| 9/20/2004 | 2938-2939(1000K) Kite 9/20/04 letter to Hunt | 1000K | 2938-2939 |
| 9/21/2004 | Letter from RR to Hunt | | |
| 9/23/2004 | Rapid Response letter to Hunt | B&D | 001066-68 |
| 9/24/2004 | TA Beach Daily Report, 9-24-04. | TA | 1028 |
| 9/30/2004 | TA Beach Lien release for Pay App No. 10 as of 9/30/04 HU00045128 | HU | 45128 |
| 10/1/2004 | Rapid Response letter to Hunt | B&D | 000952-53 |
| 10/2/2004 | Rapid Response letter to Hunt | B&D | 000943-45 |
| 10/5/2004 | TA Beach Notes of Sub Coordination Mtg held 10-05-04, in marginalia of minutes for 9-28-04 meeting. | TA | 0460-0463 |

| Poole and Kent Exhibits | | | |
|---|---|---|---|
| | | | |
| Date | Description | Prefix | Bates |
| 10/6/2004 | Oct. 6, 2004 memo from Tom Page to Subs | HU | 1444 |
| 10/15/2004 | Lien release for Pay App No. 17 (Concrete) as of 10/15/04 HU00045124 | HU | 45124 |
| 10/18/2004 | 48482 (Hunt) 10/18/04 Hunt email to P&K | HU | 48482 |
| 10/20/2004 | Oct. 20, 2004 memo from Tom Page to Subs | HU | 1443 |
| 10/26/2004 | TA Beach Daily Report, 10-26-04. | TA | 1060 |
| 11/2/2004 | Nov. 2, 2004 memo from Tom Page to Subs | HU | 1442 |
| 11/4/2004 | TA Beach Subcontractor Daily Report Form (Hunt Form), 11-4-04. | TA | 2468 |
| 11/12/2004 | TA Beach Daily Report, 11-12-04. | TA | 1077 |
| 11/16/2004 | TA Beach Subcontractor Daily Report Form (Hunt Form), 11-16-04. | TA | 2458 |
| 11/17/2004 | P&K internal e-mail from M. Maltby to T. MacPhee 11/17/04 | | |
| 12/1/2004 | Letter from PCI to Hunt dated 12/1/04 | HU | 29310 |
| 12/6/2004 | Dec. 6, 2004 memo from Tom Page to Subs | HU | 1441 |
| 12/10/2004 | TA Beach Daily Report, 12-10-04. | TA | 1105 |
| 12/23/2004 | TA Beach Daily Report, 12-23-04. | TA | 1114 |
| 1/3/2005 | P&K internal e-mail 1/3/05 | PK | 313 |
| 1/6/2005 | TA Beach Daily Report, 1-6-05. | TA | 1130 |
| 1/10/2005 | 3264(1000K) Cagley letter to Architect 1/10/05 | 1000K | 3264 |
| 1/11/2005 | TA Beach Daily Report, 1-11-05. | TA | 1135 |
| 1/14/2005 | Poole and Kent e-mail 1/14/05 re: concrete leveling | PK | 1142 |
| 1/24/2005 | 1439(Hunt) – Jan. 24, 2005 memo from Tom Page to Subs | HU | 1439 |
| 1/25/2005 | TA Beach Notes of Sub Coordination Mtg held 1-25-05, in marginalia of minutes for 1-18-05 meeting. | TA | 0226-0232 |
| 1/26/2005 | 18887(1000K) Kite letter to Hunt 1/26/05 | 1000K | 18887 |
| 1/26/2005 | 1-26-05 memo from Allglass to Hunt | HU | 11562-11563 |
| 1/28/2005 | Jan. 28, 2005 memo from Tom Page to Subs | HU | 1438 |
| 1/31/2005 | Hunt letter 1/31/05 to Kite | 1000K | 8722-8724 |
| 2/1/2005 | Hunt Payroll February 2005 | HU | 32019-32045/32173-32197/32287-32333 |
| 2/1/2005 | Contract Compliance Form February 2005 | HU | 32464-32467 |
| 2/7/2005 | 1437(Hunt) – Feb. 7, 2005 memo from Tom Page to Subs | HU | 1437 |
| 2/9/2005 | Letter from Monarch to Hunt dated 2/9/05 | HU | 28974-28977 |
| 2/14/2005 | 1435(Hunt) – Feb. 14, 2005 memo from Tom Page to Subs | HU | 1435 |
| 2/16/2005 | 11231(1000K) 2/16/05 Change Order No. 24 add $66,485.00 for restaurant revisions per drawings of 7/7/04 | 1000K | 11231 |
| 2/16/2005 | 2-16-05 memo to Hunt from Allglass | HU | 11494-11495 |
| 2/21/2005 | Feb. 21, 2005 memo from Tom Page to Subs | HU | 1434 |
| | Letter from BMI to Hunt dated re: washdown operations. | BMI | 205 |
| 2/24/2005 | Letter from TA Beach to Hunt dated 2/24/05 | TA | 1427 |
| 2/25/2005 | Letter from Hunt to PCI dated 2/25/05 | HU | 14025 |
| 2/28/2005 | February 28, 2005 memo from Tom Page to Subs | HU | 1433 |

| Poole and Kent Exhibits | | | |
|---|---|---|---|
| | | | |
| **Date** | **Description** | **Prefix** | **Bates** |
| 3/1/2005 | Hunt Payroll April 2005 | HU | 32623-32682/32857-32891/32978-33051 |
| 3/2/2005 | Mar. 2, 2005 letter from AIW to T. Page | HU | 1672 |
| 3/7/2005 | March 7, 2005 memo from Tom Page to Subs | HU | 1431 |
| 3/11/2005 | March 11, 2005 memo from Tom Page to Subs | HU | 1430 |
| 3/11/2005 | Letter from P&K to Hunt dated 3/11/05 | HU | 48594-48602 |
| 3/12/2005 | Composite Clean-Up Crew Sign-in Sheet for 3/12/05. | HU | 1511 |
| 3/17/2005 | Mar. 17, 2005 letter from T. Page to AIW | HU | 1673 |
| 3/18/2005 | March 18, 2005 memo from Tom Page to Subs | HU | 1429 |
| 3/18/2005 | Memo from TA Beach to Langhoff, Durden | TA | 1430 |
| 3/18/2005 | Letter from All Glass to Hunt dated 3/18/05 | HU | 41156 |
| 3/23/2005 | Mar. 23, 2005 letter from TA Beach to Cobbs, Langhoff | TA | 1420 |
| 3/24/2005 | Memo from TA Beach to Langhoff | TA | 1574 |
| 3/25/2005 | March 25, 2005 memo from Tom Page to Subs | HU | 1428 |
| 3/31/2005 | Lien Release dated 3/31/2005 – Pay App No. 8 (Drywall) | HU | 32594 |
| 3/31/2005 | Lien Release dated 3/31/2005 -- Pay App No. 23 (CONCRETE) | HU | 32595 |
| 4/1/2005 | Contract Compliance Form April 2005 | HU | 33209-33212 |
| 4/11/2005 | April 11, 2005 memo from Tom Page to Subs | HU | 1577 |
| 4/12/2005 | Letter from Hunt to Union Waterproofing dated 4/12/05 | HU | 30423 |
| 4/14/2005 | Hunt directs PCI on 4/14/05 to work weekend to finish drywall and ceiling framing from the 2nd floor and up. | HU | 14272 |
| 4/19/2005 | Composite Clean-Up Crew Sign-in Sheet for 4/19/05. | HU | 1513 |
| 4/19/2005 | Composite Clean-Up Crew Sign-in Sheet for 4/19/05. | HU | 1515 |
| 4/22/2005 | Hunt letter 4/22/05 to PK | HROG | 179 |
| 4/22/2005 | Home Depot receipt for various materials, 4/22/05. | HU | 1662 |
| 4/22/2005 | Hunt letter to Kite 4/22/05 | 1000K | 8748-8749 |
| 4/25/2005 | 4-25-05 letter from Allglass to Hunt | HU | 11446-11447 |
| 4/26/2005 | Composite Clean-Up Crew Sign-in Sheet for 4/26/05. | HU | 1514 |
| 4/27/2005 | Hunt letter 4/27/05 to PK | HROG | 188 |
| 4/27/2005 | Hunt directs PCI on 4/27/05 to work all possible overtime | HU | 14247 |
| 4/27/2005 | Email from Page to Warren-Ehret dated 4/27/05 | HU | 30388 |
| 4/27/2005 | 4-27-05 letter from T. Page to Nat'l Fire Protection | HU | 42111 |
| 5/2/2005 | Memo from All Glass to Hunt dated 5/2/05 | HU | 41087 |
| 5/5/2005 | TA Beach Daily Report, 5-5-05. | TA | 1222 |
| 5/5/2005 | NFP letter to Hunt dated 5/5/05 | HU | 26496 |
| 5/5/2005 | 5-5-05 letter from T. Page to Nat'l Fire Protection | HU | 42113 |
| 5/7/2005 | TA Beach Daily Report, 5-7-05. | TA | 1224 |
| 5/10/2005 | Composite Clean-Up Crew Sign-in Sheet for 5/10/05. | HU | 1512 |
| 5/10/2005 | Letter from P&K to Hunt dated 5/10/05 | HU | 26036 |
| 5/11/2005 | Kite letter 5/11/05 to Hunt | 1000K | 2933-2934 |
| 5/12/2005 | TA Beach Subcontractor Daily Report Form (Hunt Form), 5-12-05. | TA | 2323 |
| 5/12/2005 | Letter from P&K to Hunt dated 5/12/05 | HU | 26038 |
| 5/13/2005 | Project Schedule critique 5/13/05 | 1000K | 3540 |
| 5/14/2005 | 5-14-05 letter from T. Page to Nat'l Fire Protection | HU | 42115 |
| 5/16/2005 | Letter from NFP to Hunt dated 5/16/05 | HU | 28982 |

**Poole and Kent Exhibits**

| Date | Description | Prefix | Bates |
|---|---|---|---|
| 5/16/2005 | May 16, 2005 memo from Tom Page to Subs | HU | 42239-42240 |
| 5/19/2005 | Letter from P&K to Hunt dated 5/19/05 which includes letter from Regional Air re: fiberboard register sleeves | HU | 26031 |
| 5/19/2005 | 5-19-05 ltr from T. Page to Monarch | HU | 42346 |
| 5/19/2005 | Letter from P&K to Hunt dated 5/19/05 re: delay to Regional Air's work | | |
| 5/20/2005 | May 20, 2005 memo from D. Langhoff to Federal | HU | 1288 |
| 5/20/2005 | Letter from Kite to Hunt | HU | 8326 |
| 5/20/2005 | 1Schnabel letter to Kite 5/20/05 | 1000K | 11205-11207 |
| 5/23/2005 | Letter from P&K to Hunt dated 5/23/05 | HU | 26027 |
| 5/25/2005 | Poole and Kent e-mail to Hunt 5/25/05 | HROG | 1097 |
| 5/26/2005 | May 26, 2005 letter from T. Page to Federal | HU | 1303 |
| 5/26/2005 | 5-26-05 ltr from T. Page to Monarch | HU | 42350 |
| 5/28/2005 | Hunt letter 5/28/05 to PK | HROG | 198 |
| 5/28/2005 | Directive 5/28/05 to work weekend of 5/28/05 on completing guest suites, ground floor, and other work as per Hunt. | HU | 16117 |
| 5/31/2005 | Allglass CO Req No. ASI-0007A, dated 5-31-05 | HU | 10645 |
| 5/31/2005 | Letter from PCI to Hunt dated 5/31/05 | HU | 14195 |
| 5/31/2005 | Letter from PCI to Hunt | HU | 42560-42561 |
| 5/31/2005 | 5-31-05 ltr from Maltby to Ross | HU | 47081-47088 |
| 6/1/2005 | Memo to file from L. Weisman dated 6/1/05 | | |
| 6/3/2005 | June 3. 2005 e-mail from T. Page to A. Jones, PCI | HU | 1487-1494 |
| 6/7/2005 | TA Beach Daily Report, 6-7-05. | TA | 1244 |
| 6/7/2005 | June 7, 2005 memo to Subs from T. Page | HU | 1557 |
| 6/8/2005 | June 8, 2005 Memo from K. Brosnan, PCI to T. Page | HU | 1561 |
| 6/8/2005 | Regional Air letter to P&K dated 6/8/05 (updated 6/29/05) | HU | 26265-26272 |
| 6/14/2005 | Regional letter 6/14/05 | PK | 918 |
| 6/14/2005 | June 14, 2005 letter from T. Page to Federal | HU | 1302 |
| 6/16/2005 | Poole and Kent letter to Hunt 6/16/05 | HROG | 77 |
| 6/20/2005 | June 20, 2005 memo from T. Page to Federal | HU | 1289 |
| 6/21/2005 | Letter from Regional Air to Hunt dated 6/21/05 | HU | 26264 |
| 6/22/2005 | June 22, 2005 memo from T. Page to Federal | HU | 1290 |
| 6/23/2005 | Email from Maltby to Hunt dated June 23, 2005 | HU | 18067 |
| 6/28/2005 | June 28, 2005 letter from T. Page to Federal | HU | 1291 |
| 6/28/2005 | Hunt letter to Kite 6/28/05 | 1000K | 2925-2926 |
| 6/30/2005 | 6/30/05 Change Order No. 31 Model Room changes add $125,554.30 no time extension (need to see if subs identified extra time) | 1000K | 11172 |
| 7/6/2005 | N. Stock 7/6/05 e-mail to M. Blackburn – "someone turned on the water today not realizing some of the lines were not capped and rooms were flooded." | 1000K | 1155 |
| 7/7/2005 | Letter from Kite to Hunt dated July 7, 2005 | HU | 22545-22546 |
| 7/8/2005 | July 8, 2005 letter from Rich Cobbs to Federal | HU | 1254 |
| 7/11/2005 | July 11, 2005 letter from R. Cobbs to Federal | HU | 1292 |
| 7/14/2005 | TA Beach Subcontractor Daily Report Form (Hunt Form), July 14, 2005 | TA | 2276 |
| 7/18/2005 | July 18, 2005 letter from R. Cobbs to Federal | HU | 1293 |

| | Poole and Kent Exhibits | | |
|---|---|---|---|
| **Date** | **Description** | **Prefix** | **Bates** |
| 7/19/2005 | TA Beach Notes of Sub Coordination Mtg held 7-19-05, on minutes on 7-12-05 meeting | TA | 0032-0044 |
| 7/20/2005 | 1954(Hunt) – Memo from TA Beach to Hunt, dated 7/20/05 | HU | 1954 |
| 7/26/2005 | P/RCO 051C submitted to owner on July 26, 2005 regarding missing sewer main- non-civil construction related items. | HU | 8246-8254 |
| 8/1/2005 | 8-1-05 fax from Adina to Hunt | HU | 46681 |
| 8/3/2005 | Siemens e-mail to P&K 8/3/05 | PK | 318 |
| 8/5/2005 | Hunt letter 8/5/05 to all subs | PK | 981-982 |
| 8/11/2005 | TA Beach Subcontractor Daily Report Form (Hunt Form), August 11, 2005. | TA | 2252 |
| 8/12/2005 | Aug. 12, 2005 letter from T. Page to Property Loss Consultants, Inc. | HU | 2083-2189 |
| 8/18/2005 | Letter from PCI to Hunt | PCI | 961 |
| 8/18/2005 | Letter from Warren-Ehret to Hunt dated 8/18/05 | HU | 30265 |
| 8/24/2005 | 3274-3313(1000K) 8/24/05 Change Order No. 25 add $138,819.00 for Presidential Suite changes | 1000K | 3274-3313 |
| 8/24/2005 | 3375, 3394-3406, 3408(1000K) 8/24/05 Change Order No. 21 add $71,837.00 for restaurant revisions | 1000K | 3375; 3394-3406 |
| 8/25/2005 | Letter to PCI from Vaughn | PCI | 1089 |
| 8/31/2005 | Letter to Federal Painting from Hunt | HU | 17344 |
| 9/6/2005 | Letter from P&K to Hunt dated 9/6/2005 | HU | 15966 |
| 9/8/2005 | Hunt (Decker) e-mail to PK (Snavely) 9/8/05 | PK | 326 |
| 9/14/2005 | Letter from Paddock to Hunt dated 9/14/05 | HU | 17068-70 |
| 9/14/2005 | Letter from Warren-Ehret to Hunt dated 9/14/05 | | |
| 9/26/2005 | Sept. 26, 2005 letter from Rapid Response to Warren-Ehret | HU | 1852 |
| 10/8/2005 | Memo from TA Beach to Cobbs, Vaughn | TA | 1582 |
| 10/24/2005 | Agreement between P&K and WDG dated 10/24/05. | | |
| 1/23/2006 | 2660-2693(Hunt) -- Unexecuted Change Order No. 6 to Federal Painting, with backup documentation in the form of Federal Painting Work Tickets. Dated Jan. 23, 2006. $27,523.00. | HU | 2660-2693 |
| 1/23/2006 | 2711-2722(Hunt) – Unexecuted Change Order No. 18 to Federal, dated 1-23-06, with backup documentation in the form of Federal Work Tickets. $4,340.00. | HU | 2711-2722 |
| 1/23/2006 | 2723-2725(Hunt) – Unexecuted Change Order No. 19 to Federal Painting, dated 1-23-06, with backup documentation. $173.00. | HU | 2723-2725 |
| 2/9/2006 | 1860-1887(Hunt) – Unexecuted Change Order No. 11 to TA Beach, dated 2/9/06, with backup documentation -- $29,608.00. | HU | 1860-1887 |
| 2/23/2006 | Unexecuted change order no. 45 to PCI for Mold Remediation, dated February 23, 2006. No backup documentation. | HU | 48957 |
| 3/1/2006 | 2567(Hunt) – Mar. 2006 e-mail chain among Jami Chew, Larry Weisman, Joseph Palumbo | HU | 2567 |
| 4/4/2006 | Letters to/from Hunt and BMI dated 4/20/06 | BMI | 00168-174 |
| 6/14/2006 | Hunt Co. No. 22 to PCI -- Cleanup backcharge settlement | PCI | 44 |
| 6/16/2006 | Email from BMI to Hunt | BMI | 140 |

| **Poole and Kent Exhibits** | | | |
|---|---|---|---|
| **Date** | **Description** | **Prefix** | **Bates** |
| 6/29/2006 | Email chain between Steffanie Peters from Hunt and BMI | BMI | 143 |
| 8/16/2006 | P&K letter 8/16/06 to Hunt | | |
| 9/15/2006 | Email from Weisman to BMI | BMI | 152 |
| 9/26/2006 | Executed Change Order No. 27 from Hunt to PCI.  $6,134.00.  Dated April 3, 2006, but not executed until September. | PCI | 002595-002597 |
| 9/26/2006 | Executed Change Order No. 29 from Hunt to PCI.  $4,935.00.  Dated April 3, 2006, but not executed until September. | PCI | 002602-002604 |
| 9/26/2006 | Executed Change Order No. 30 from Hunt to PCI.  $1,806.00.  Dated April 3, 2006, but not executed until September. | PCI | 002605-002607 |
| 9/26/2006 | Executed Change Order No. 38 from Hunt to PCI.  $1,264.00.  Dated April 3, 2006, but not executed until September. | PCI | 002630-002632 |
| 9/26/2006 | Executed Change Order No. 99 from Hunt to PCI.  $3300.00.  Dated June 12, 2006, but not executed until September. | PCI | 002929-002932 |
| 9/26/2006 | Executed Change Order No. 104 from Hunt to PCI.  $720.00.  Dated June 12, 2006, but not executed until September. | PCI | 002948-002951 |
| 9/26/2006 | Executed Change Order No. 132 from Hunt to PCI.  $932.00.  Dated June 12, 2006, but not executed until September. | PCI | 003162-003163 |
| 9/26/2006 | Executed Change Order No. 138 from Hunt to PCI.  Dated June 12, 2006, but not executed until September. | PCI | 003226-003231 |
| 9/26/2006 | Executed Change Order No. 166 from Hunt to PCI.  $5,938.00.  Dated June 29, 2006, but not executed until September. | PCI | 003476-003485 |
| 9/26/2006 | Executed Change Order No. 169 from Hunt to PCI.  $15,054.00.  Dated June 29, 2006, but not executed until September. | PCI | 003493-003495 |
| | PCI Lien Release for Pay App No. 2 | HU | 45125 |
| n/a | NWC handwritten notes re: days lost to rain in October 2003 | NWC | 55 |
| n/a | NWC handwritten notes outlining weather days lost by Clark in Nov. and Dec. 03. | NWC | 56 |
| n/a | NWC October issue list – loss of progress and production October 03 – "10th Street Permit" | NWC | 65 |
| n/a | NWC handwritten notes "Completion – 2/12/03 – is slipping due to weather" – notes on weather delays | NWC | 206 |
| n/a | NWC handwritten notes regarding delays/issues experienced in October | NWC | 0062-63 |
| No date | P&K internal e-mail noting re: bldg. leaks of 11/17/05 | PK | 465 |
| No date | 8085(1000K) Schedule comparison between 10/1/03-8/1/04-8/31/04 | 1000K | 8085 |
| No date | 11098(Hunt) – Letter from Allglass to Hunt | HU | 11098 |
| No date | Owner's Meeting Minutes No. 51 | | |
| No date | PCI Lien Release for Pay App No. 1 (Drywall) | HU | 44265 |

| Poole and Kent Exhibits | | | |
|---|---|---|---|
| | | | |
| **Date** | **Description** | **Prefix** | **Bates** |
| No date | PCI Lien Release  for Pay App No. 15 (Concrete) | HU | 44679 |
| No date | PCI Lien Release for Pay App No. 16 (Concrete) | HU | 44680 |
| No date | 48974(Hunt) – Unexecuted Change Order No. 42 to PCI for "Miscellaneous Repair and Patch." | HU | 48974 |
| No date | 48979(Hunt) – Unexecuted Change Order No. 64 to PCO for "Repair and Patch." | HU | 48979 |
| No date | 48980(Hunt) – Unexecuted Change Order No. 63 to PCO for "Repair and Patch." | HU | 48980 |
| No date | 48990(Hunt) – Unexecuted Change Order No. 59 to PCO for "Repair and Patch." | HU | 48990 |
| No date | July e-mail chain re: Allglass claims for add'l monies due to delay/poor sequencing. | HU | 10621-10622 |
| No date | P&K letter to Hunt | 1000K | 11073-11084 |
| No date | Unexecuted Change Order 38 to Federal, for the repair of water leaks. Work tickets attached as backup. | HU | 1479-1486 |
| No date | Handwritten notebook | HU | 17230-17278 |
| No date | Letter from Kite to Hunt re: window issue. | HU | 27809-27810 |
| No date | Contents of Hunt Folder entitled, "Clean-up Replies" | HU | 41697-41710 |
| No date | P/RCO 002 submitted to owner regarding Dewatering costs above the $70K allowance. | HU | 7968-8016 |
| No date | Hunt Laborers Clean-up Recovery Spreadsheet | PK | 803-805 |
| No date | Spreadsheet summarizing backcharges to PCI Concrete, Jan.-Apr. 2005, for Hunt labor | HU | 1559 |
| No date | Letter from Hunt to PCI & RR re: lack of concrete and impact theref. | HU | 41839 |
| Various dates | Certificates of Partial Substantial Completions signed by Kite | HU | 28671 - 28693 |
| | | | |
| | Subcontract between Montgomery Mechanical and Poole and Kent | | |
| | Subcontract between Regional Air and Montgomery Mechanical | | |