UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUNT CONSTRUCTION GROUP, INC.,  :
:
    Plaintiff,  :
:
v.  : Civil Action No. 06-1850 (JR)
:
THE POOLE AND KENT CORPORATION,  :
:
    Defendant.  :

### MEMORANDUM ORDER

    This non-jury construction dispute is set for final pretrial conference on 4/29/08, and for trial on 5/19/08. Before the Court is the motion of plaintiff Hunt Construction Group, Inc., for summary judgment as to the counterclaims of defendant Poole and Kent Corporation ("P&K"). For the reasons set forth below, that motion is **granted in part** and **denied in part**.

    Hunt served as the general contractor for the construction of an Embassy Suites Hotel in Washington, D.C. P&K began performing mechanical and plumbing work on the project in February 2004, formally executed a subcontract four months later, [Dkt. 34, Ex. A], and substantially completed its work by the end of October 2005.

    The working relationship between Hunt and P&K appears to have been strained through much of the project; P&K repeatedly notified Hunt that it was dissatisfied with the manner in which the project was being managed. See, e.g., [Dkt. 37, Exs. 16-19 & 22]. That dissatisfaction did not prevent P&K from submitting

payment applications waiving a number of potential claims against Hunt. As part of one such application, P&K Project Manager Matthew Maltby signed, on October 26, 2005, an "SF 330 Affidavit and Partial Waiver of Claims and Liens and Release of Rights" containing the following language:

> [F]or and in consideration of the amounts and sums received, the undersigned hereby waives, releases and relinquishes any and all claims, rights or causes of action whatsoever arising out of or in the course of the work performed on the above-mentioned project, contract or event transpiring prior to the date hereof, excepting the right to receive payment for work performed and properly completed and retainage, if any, after the date of the above-mentioned payment application or invoices or change proposals and time and material tickets.

[Dkt. 34, Ex. E]. P&K asserts that this waiver provision cannot be read apart from language included in the subcontract providing that the SF 330 waiver would be modified to read:

> [F]or and in consideration of the amounts and sums received, the undersigned hereby waives, releases and relinquishes any and all claims, rights or causes of action whatsoever arising out of or in the course of the work performed on the above-mentioned project, contract or event transpiring prior to the date hereof, excepting the right to receive payment for work performed and properly completed and retainage, if any, after the date of the above-mentioned payment application or invoices or <u>unpaid extras or change orders, or claims submitted in accordance with the Contract Documents</u>.

<u>See</u> Subcontract, Attachment IV [Dkt. 34, Ex. A].

Hunt initiated this suit on October 20, 2006, complaining of breach of contract and breach of the implied duty of good faith and fair dealing. Hunt alleges that P&K performed defective work and failed to meet deadlines, exposing Hunt to additional expenses and third-party delay claims. [Dkt. 1. at ¶ 12]. P&K has counterclaimed for breach of contract, breach of the implied duty of good faith and fair dealing, quantum meruit (two counts), and unjust enrichment.

## **Analysis**

Poole and Kent's counterclaim seeks damages (not including interest) that total $1,831,063. This sum is comprised of four sub-categories: 1) the remaining subcontract balance of $498,090; 2) an "Extended Overhead" claim of $472,879; 3) a "Labor Productivity" claim of $242,992; and 4) pending change orders totaling $617,102. Hunt argues that P&K's claims are barred both by the October 26, 2005, waiver and by waiver provisions contained in the subcontract itself.

Extended Overhead and Labor Productivity

P&K asserts that the subcontract required Hunt to incorporate P&K's feedback, that Hunt did not do so, and that Hunt is liable for the delay-related costs that P&K incurred. See Subcontract, Attachment II, Clarification 42.B. P&K's $472,879 Extended Overhead claim and the $242,992 Labor

Productivity claim are made up of extra costs that "would not have been incurred had Hunt sequenced the job by incorporating Poole and Kent's scheduling input."  [Dkt. 37 at 26].

To the extent that any portion of the Extended Overhead and Labor Productivity claims are for work done prior to August 9, 2005, those claims are barred by the waiver P&K signed on October 26.  The result would be the same regardless of whether the amendment contained in Attachment IV applied, preserving "claims submitted in accordance with the Contract Documents," because P&K has made no attempt to show that it complied with the subcontract's rigid time limits and documentation requirements for claims submission.  <u>See</u> Subcontract Sections 10.2, 21, & 34.2.

<u>Pending Change Orders</u>

Whether P&K has waived some or all of its pending change orders presents a triable question of fact.  This is so because of ambiguity in the wording of the October 26 waiver, making it unclear whether the waiver allows recovery on change proposals, regardless of when they were filed, or only allows payment on change proposals filed after the date of the payment application.  Moreover, if, as P&K contends, the Attachment IV language should control, then P&K may not have waived

compensation for "unpaid . . . change orders." These are questions of the parties' intent to be resolved at trial.

Hunt is, however, entitled to summary judgment as to one specific pending change order: P&K is not entitled to the $174,574 that it seeks for Davis Bacon Act compliance. The general contract obligated Hunt to comply with the Davis Bacon Act, [Dkt. 35, Ex. B at § A(17)(j)], and P&K was required to comply with the Act as a result of Section 3.4 of the subcontract, which bound P&K to the same obligations that Hunt owed under the general contract. In preparing its bid, P&K's own subcontractor, Regional Air, had not known that Davis Bacon compliance would be required, but, after being awarded the subcontract, it had to pay higher wages. [Dkt. 37, Ex. 29 (Feb. 20, 2005 letter)]. At Regional Air's request, the project owner eventually allowed the use of a less expensive category of workers. P&K asserts that the owner did so after "specifically f[inding] that the wage rates used by Regional Air in bidding on the Project complied with the Prime Contract's Davis Bacon requirements." [Dkt. 37 at 31]. But there is no explicit support for this version of events -- in the letter that P&K cites, the owner's labor consultant decided that the use of less expensive workers was acceptable under a particular bargaining agreement. [Dkt. 37, Ex. 29 (Mar. 21, 2005 letter)]. No reference is made to the question of whether the use of so-called

"R-workers" -- the less expensive workers that Regional Air had planned to use -- would have been consistent with Davis Bacon. As a result, P&K's claim fails because 1) the subcontract required payment of Davis Bacon wages and 2) P&K has not shown that R-workers would have been Davis Bacon compliant. The record merely shows that, for whatever reason, the owner eventually allowed the use of such workers.

<u>Subcontract Balance</u>

Hunt argues that P&K has waived any right to collect the remaining subcontract balance because it did not comply with the procedures for "claim" submission set out in Section 34.2. P&K rightly responds that it was not required to submit a Section 34 "claim" for payment of the subcontract balance, but should instead submit a "payment application" under the procedures set forth in Section 5. Hunt has not shown that P&K has waived its right to file an application for final payment once the total balance is finalized through the resolution of all pending change orders.

## Conclusion

Hunt's motion for summary judgment [Dkt. 34] is **granted** as to P&K's claims for 1) labor productivity and extended overhead damages resulting from work performed prior to August 9, 2005 and 2) the pending change order for Davis Bacon Act

compliance.  The motion is **denied** as to 1) all other pending change orders and 2) the subcontract balance.


                                    JAMES ROBERTSON
                              United States District Judge