IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUNT CONSTRUCTION GROUP, INC.          *

      Plaintiff/Counter Defendant          *

v.                                     *    Civil Court Action No:        1:06CV1850
                                            Judge James Robertson
THE POOLE AND KENT                     *
CORPORATION

      Defendant/Counter Plaintiff          *


\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**THE POOLE AND KENT CORPORATION'S**
**<u>MOTION IN LIMINE</u>**

Defendant/Counter-Plaintiff The Poole and Kent Corporation ("Poole and Kent"), by its undersigned counsel, respectfully submits this Motion in Limine as to statements of Lawrence Hazen, Plaintiff/Counter-Defendant Hunt Construction Company's ("Hunt") alleged expert witness, that attempt to interpret or apply the provisions of the contract between Hunt and Poole and Kent as inadmissible and improper opinion testimony.  As grounds therefor, Poole and Kent submits the attached Memorandum of Law in support of this Motion.

WHEREFORE, The Poole and Kent Corporation respectfully requests that this Court exclude the opinion testimony of Lawrence Hazen as to the interpretation and/or application of the provisions of the contract between Hunt and Poole and Kent from evidence at trial in this case.

Respectfully submitted,


/s/ Robert F. Carney
Robert F. Carney (Bar No. 436999)
William P. Pearce (Pro Hac Vice)
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202
(410) 347-8700
Attorneys for The Poole and Kent Corporation

## <u>LOCAL RULE 7(m) STATEMENT</u>

Pursuant to Local Rule 7(m), counsel for The Poole and Kent Corporation telephonically conferred with counsel for Hunt Construction Group, Inc. on May 12, 2008 regarding the filing of this Motion.  Hunt Construction Group, Inc. does not consent to the relief sought in this Motion.

<u>/s/ Robert F. Carney</u>
Robert F. Carney

3

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this twelfth day of May, 2008, copies of the Poole and Kent Corporation's Motion in Limine were served electronically and by first class mail to the following counsel of record:

David T. Dekker, Esquire
Jeffrey R. Gans, Esquire
Laura Kamas, Esquire
Thelen Reid Brown Raysmann Steiner, LLP
701 Eighth Street, N.W.
Washington, D.C. 20001

Donna M. Crowe
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, N.W., 12th Floor
Washington, D.C.  20036

 /s/Robert F. Carney
Robert F. Carney

*1792783*

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUNT CONSTRUCTION GROUP, INC.       *

      Plaintiff/Counter Defendant       *

v.                                                          *    Civil Court Action No:       1:06CV1850
                                                                 Judge James Robertson

THE POOLE AND KENT                              *
CORPORATION

      Defendant/Counter Plaintiff       *


   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**THE POOLE AND KENT CORPORATION'S**
**<u>MEMORANDUM IN SUPPORT OF MOTION IN LIMINE</u>**

      Defendant/Counter-Plaintiff The Poole and Kent Corporation ("Poole and

Kent"), by its undersigned counsel, respectfully submits this Motion in Limine as to

statements of Lawrence Hazen ("Hazen"), Plaintiff/Counter-Defendant Hunt

Construction Company's ("Hunt") alleged expert witness, that attempt to interpret or

apply the provisions of the contract between Hunt and Poole and Kent as inadmissible

and improper opinion testimony.

**I.     Factual Background**

      This case centers on the construction of a 380-room, fifteen-story Embassy Suites

Hotel (the "Project") in the District of Columbia.  In October 2003, Plaintiff/Counter-

Defendant Hunt Construction Group ("Hunt") entered into a contract (the "Prime

Contract") with the owner of that property, 1000K, LLC (the "Owner") to act as general

contractor.  Hunt in turn entered into numerous subcontracts with various construction

trade subcontractors.  Hunt and Poole and Kent executed a subcontract dated June 16, 2004 (the "Subcontract") for construction services related to the installation of the heating, ventilating, air conditioning, and plumbing systems for the Project.  In late 2006, Hunt filed its Complaint in this case.  Poole and Kent filed a Counterclaim, requesting that it be awarded the balance due on the Subcontract and payment for change orders and other damages relating to the Project.  Trial is scheduled to begin May 19, 2008.

Hunt designated Hazen, who is employed by Greyhawk North America, as an alleged expert witness as to claims made by Poole and Kent relating to additional costs resulting from schedule delays and sequencing failures on the part of Hunt and others relating to the Project.  Both his expert report and his testimony at deposition indicate that a large portion of Hazen's "expert" conclusions as to such claims result from Hazen's interpretation and attempted application of the Subcontract.  For example, at his deposition, he referred to "my opinion that my interpretation of the contract was correct…My interpretation of the specification – the sections that I discuss in my expert report."  (Hazen Dep.[1] at 22).  He also noted, "I have my opinion based on experience in the construction industry and working with construction contracts as to what the construction contracts mean to the parties involved."  (Hazen Dep. at 39).  Hazen acknowledged that he would not be more qualified than the Court to interpret the Subcontract.  (Hazen Dep. at 38).  In fact, he does not do a particularly good job of

---

[1] The transcript of the deposition of Lawrence M. Hazen, conducted November 15, 2007.  A true and accurate copy of the cited portions of that transcript is attached hereto as **Exhibit 1**.

2

interpreting the Subcontract.  Instead of reading it as a whole, as D.C. courts mandate, *see 1010 Potomac Assocs. v. Grocery Mfrs. of Am.*, 485 A.2d 199, 205 (1984), he looks exclusively at particular provisions, ignoring the bulk of the Subcontract.

Moreover, Mr. Hazen made it clear at his deposition what he will *not* offer expert testimony on, stating, "[T]he job finished late and I'm not offering an opinion as to why."  (Hazen Dep. at 34-35). As to the construction schedules relating to the Project: "I did nothing with them.  I mean, I looked at them, I couldn't even tell you how many activities are in them."  (Hazen Dep. at 35).   Furthermore, Mr. Hazen is not offering an opinion as to Poole and Kent's rights as to the balance of the Subcontract amount, amounts due under pending change orders, or amounts due as retainage.  (Hazen Dep. at 61).  Mr. Hazen also is not offering any opinion to support Hunt's affirmative claims. (Hazen Dep. at 60-61).

**II.    Argument**

Because Hazen's proffered expert conclusions on the interpretation and application of the provisions of the Subcontract are conclusions of law, a matter normally reserved for the expertise of this Court, his testimony thereon will not assist this Court in understanding the evidence of this case or determining a fact in issue.  *See* Fed. R. Evid. 702.  Therefore, such opinions are inadmissible.  *Id.*

The D.C. Circuit applies a two-prong test as to the admissibility of expert testimony under Rule 702.  "[T]he witness (1) must be qualified and (2) must be capable of assisting the trier of fact" as to understanding the evidence or determining a fact in

3

issue  *Burkhart v. WMATA*, 112 F.3d 1207, 1211 (D.C. Cir. 1997) (citing *Exum v. General*

*Elec. Co.*, 819 F.2d 1158, 1163 (D.C. Cir. 1987)).  Proffered expert testimony consisting of

legal conclusions provides no such assistance to the trier of fact in determining *facts*,

instead usurping the Court's role in determining issues of *law*.  *See Burkhart*, 112 F.3d at

1212.  *See also Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert

testimony is not proper for issues of law"); *United States v. Rogers*, 2006 WL 5249745, *9

(D.D.C. July 17, 2006) ("Generally, expert testimony as to a conclusion of law is 'well

beyond the bounds of permissible expert testimony'") (quoting *Housing Works, Inc. v.*

*Turner*, 362 F. Supp. 2d 434, 448 (S.D.N.Y. 2005)).  As the *Burkhart* court noted, "Each

courtroom comes equipped with a 'legal expert,' called a judge."  112 F.3d at 1212.

Indeed, Hazen acknowledges as much, answering, "I don't think I'm more qualified

than a judge, no" when asked if he had more expertise than the Court in interpreting

the Subcontract.  (Hazen Dep. at 38).

Because the interpretation and application of the provisions of a contract

constitutes an issue of law, *see United States v. John McShain, Inc.*, 258 F.2d 422, 424 (D.C.

Cir. 1958), expert testimony thereon is of no help to the trier of fact and hence

inadmissible.  *See Crow Tribe*, 87 F.3d at 1045.  *Accord United States ex rel. Compton v.*

*Midwest Specialties, Inc.*, 142 F.3d 296, 301-02 (6th Cir. 1998); *Marx & Co., Inc. v. Diners'*

*Club, Inc.*, 550 F.2d 505, 510 (2d Cir. 1977) ("The special legal knowledge of the judge

makes the witness' testimony superfluous") (citations omitted).  *Cf. Rogers,* 2006 WL

5248743 at *9 (excluding expert testimony purporting to interpret a power of attorney).

If Hunt wishes to make a legal argument as to the meaning of the Subcontract, it can and should do so via legal memoranda submitted by its counsel.

The exclusion of Hazen's testimony as to his legal conclusions on the interpretation and application of the provisions of the Subcontract will conserve this Court's resources. While it may be true that the fact that this will be a bench trial will serve to lessen any prejudice to Poole and Kent from such evidence, such reduced prejudice is hardly reason to waste this Court's time. "Expert" conclusions of law, such as the interpretation and application of the provisions of a contract, are not admissible under the Federal Rules of Evidence and should be excluded from the evidence in this case.

WHEREFORE, The Poole and Kent Corporation respectfully requests that this Court exclude the opinion testimony of Lawrence Hazen as to the interpretation and/or application of the provisions of the Subcontract from evidence at trial in this case.

Respectfully submitted,


/s/Robert F. Carney
Robert F. Carney (Bar No. 436999)
William P. Pearce (Pro Hac Vice)
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202
(410) 347-8700
Attorneys for The Poole and Kent Corporation

*1791834*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUNT CONSTRUCTION GROUP, INC.     *

      Plaintiff/Counter Defendant     *

v.                                *   Civil Court Action No:     1:06CV1850
                                      Judge James Robertson

THE POOLE AND KENT               *
CORPORATION

      Defendant/Counter Plaintiff/     *
      Third Party Plaintiff

    *   *   *   *   *   *     *   *   *   *   *

**ORDER GRANTING THE POOLE AND KENT CORPORATION'S
<u>MOTION IN LIMINE</u>**

Upon consideration of the Motion in Limine filed by Defendant/Counter-

Plaintiff, The Poole and Kent Corporation; any opposition thereto and oral arguments

of the parties, if any, it is this ___ day of _____ 2008, in the United States

District Court for the District of Columbia, hereby

ORDERED that the Motion be and it is hereby GRANTED, and it is further

ORDERED that the opinion testimony of Lawrence Hazen as to the

interpretation and/or application of the provisions of the contract between Hunt and

Poole and Kent shall be EXCLUDED from evidence at trial in this case.

_____
James Robertson
United States District Court
Judge

Copies to:
Robert F. Carney
William P. Pearce
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street
Baltimore, MD 21202-1636

David T. Dekker
Jeffrey R. Gans
Laura Kamas
Thelen Reid & Priest, LLP
701 Eighth Street, N.W.
Washington, D.C. 20001

Donna M. Crowe
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, N.W., 12th Floor
Washington, D.C.  20036

*1792786*

DEPOSITION OF LAWRENCE M. HAZEN
CONDUCTED ON THURSDAY, NOVEMBER 15, 2007

Page 1

1            IN THE UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF COLUMBIA

3

4    - - - - - - - - - - - - - - - x

5    HUNT CONSTRUCTION GROUP,           :

6            Plaintiff,               : Civil Court Action

7        vs.                          : No.:  1:06CV1850

8    THE POOLE AND KENT CORPORATION, :

9            Defendant.               :

10   - - - - - - - - - - - - - - - x

11

12

13            Deposition of LAWRENCE M. HAZEN

14                  Washington, D.C.

15            Thursday, November 15, 2007

16                    9:50 a.m.

17

18

19

20   Job No.:  1-115133

21   Pages:  1 - 142

22   Reported by:  Sarah M. Bickel

DEPOSITION OF LAWRENCE M. HAZEN
CONDUCTED ON THURSDAY, NOVEMBER 15, 2007

Page 2

1               Deposition of LAWRENCE M. HAZEN, held at

2      the offices of:

3

4               WHITEFORD, TAYLOR & PRESTON LLP

5               1025 Connecticut Avenue, Northwest

6               Suite 400

7               Washington, D.C. 20036

8               (202) 659-6800

9

10

11

12

13

14

15               Pursuant to agreement, before Sarah M.

16      Bickel, Court Reporter and Notary Public in and for

17      the District of Columbia.

18

19

20

21

22

DEPOSITION OF LAWRENCE M. HAZEN
CONDUCTED ON THURSDAY, NOVEMBER 15, 2007

Page 3

```
 1               A P P E A R A N C E S

 2      ON BEHALF OF THE PLAINTIFF:

 3              LAURA A. KAMAS, ESQUIRE

 4              Thelen, Reid, Brown, Raysman & Steiner

 5              701 Eighth Street, Northwest, 8th Floor

 6              Washington, D.C. 20001

 7              (202) 508-4000

 8

 9

10

11

12      ON BEHALF OF THE DEFENDANT:

13              ROBERT F. CARNEY, ESQUIRE

14              Whiteford, Taylor & Preston LLP

15              Seven Saint Paul Street

16              Baltimore, Maryland 21202

17              (401) 347-8700

18

19

20

21      ALSO PRESENT:  Thomas MacPhee

22
```

DEPOSITION OF LAWRENCE M. HAZEN
CONDUCTED ON THURSDAY, NOVEMBER 15, 2007

```
 1              Q   And what page was missing?

 2              A   Meaning what page was missing in the

 3   version that was exhibits to the expert report?

 4              Q   Yes.

 5              A   Page 5 appears to have been missing.

 6   There's a page 5 elsewhere where there's a copy of

 7   the document, it has the same first four pages and

 8   then there's no page 5 in what was the exhibit.

 9              Q   Was that document of any significance to

10   you?

11              A   Yes.

12              Q   How so?

13              A   It somewhat bolstered my opinion that my

14   interpretation of the contract was correct.

15              Q   Which interpretation?

16              A   My interpretations of the

17   specification -- the sections that I discuss in my

18   expert report.

19              Q   And how did it bolster your opinion that

20   you were correct?

21              A   The document appears to reflect the same

22   opinions.  The same opinions as the ones that I
```

DEPOSITION OF LAWRENCE M. HAZEN
CONDUCTED ON THURSDAY, NOVEMBER 15, 2007

Page 34

1          Q   And what was the task that you were given?

2          A   To respond to the expert report of Poole &

3     Kent.

4          Q   Okay.  That expert report contained a

5     delay analysis, correct?

6          A   Not that I'm aware of.

7          Q   Okay.  Let me rephrase that.

8              It included a claim for extended overhead

9     as a result of delays on the project, correct?

10         A   It included a claim for extended overhead,

11    yes.

12         Q   But you do not feel you needed to do an

13    analysis -- a schedule analysis to respond to that

14    claim?

15         A   There was no schedule analysis contained,

16    again, in the claim, in the expert report.  So I

17    didn't -- no, it wasn't necessary to do one to

18    respond to an analysis that didn't exist.

19         Q   So you're not offering any opinions as to

20    the extent or cause of any delays on the project; is

21    that correct?

22         A   That's basically correct.  The job -- the

DEPOSITION OF LAWRENCE M. HAZEN
CONDUCTED ON THURSDAY, NOVEMBER 15, 2007

Page 35

1    job finished late and I'm not offering an opinion as

2    to why.

3              Q    Why then did you request

4    copies -- electronic copies of the schedules?

5              A    It is something that we typically do.

6              Q    Did you review them?

7              A    I only looked at a few of them.  I think I

8    opened two of them.

9              Q    What did you do with them after you opened

10   them?

11             A    I did nothing with them.  I mean, I looked

12   at them, I couldn't even tell you how many activities

13   are in them.  It was decided that we would not pursue

14   a delay analysis.  There was no longer a reason to

15   review them or work with them.

16             Q    Do you feel that you are better qualified

17   than Larry Weisman is to testify about Poole & Kent's

18   claims?

19                  MS. KAMAS:  Object to form.

20                  THE WITNESS:  Can you rephrase that or ask

21   it again.

22                  BY MR. CARNEY:

DEPOSITION OF LAWRENCE M. HAZEN
CONDUCTED ON THURSDAY, NOVEMBER 15, 2007

Page 37

```
 1              A   Just what was included in his resumé or CV

 2      in his expert report.

 3              Q   Do you feel that you're better qualified

 4      than he is to testify about Poole & Kent's claims?

 5              A   Again, can you rephrase the question.   I

 6      mean, I'm testifying on behalf of Hunt.   He's

 7      testifying on behalf of Poole & Kent.   I don't think

 8      I'm more qualified to testify on behalf of Poole &

 9      Kent, if that's what you're asking me.

10              Q   No.   I'm asking if you -- do you feel you

11      have better qualifications than Mr. MacPhee to

12      testify as an expert?

13              A   I don't recall what all of his

14      qualifications are, but I am confident that I am

15      qualified to testify.

16              Q   Do you feel you're confident to testify as

17      to the interpretation of the subcontract between the

18      parties?

19              A   Relative to how they would be viewed and

20      used in the construction industry, yes.   I've worked

21      with contracts, I have the experience, I've written

22      clauses of contracts to be incorporated into various
```

DEPOSITION OF LAWRENCE M. HAZEN
CONDUCTED ON THURSDAY, NOVEMBER 15, 2007

1    owners contracts.  Recommendations for changes, I

2    reviewed them from the construction industry and how

3    they are traditionally interpreted, from that

4    respect, yes.

5         Q  But you're not better qualified than the

6    judge in our case to interpret the contract, are you?

7              MS. KAMAS:  Object to form.

8              THE WITNESS:  For a legal interpretation?

9              BY MR. CARNEY:

10        Q  Yes.

11        A  I don't think I'm more qualified than a

12   judge, no.

13        Q  Do you feel that you're more qualified

14   than our judge is to make a determination of

15   liability in this case?

16             MS. KAMAS:  Object to form.

17             THE WITNESS:  I don't understand the

18   question.

19             BY MR. CARNEY:

20        Q  Well, you start your report by stating

21   that there are three requirements for Poole & Kent to

22   prove, the first being liability, the second being

05/12/2008 16:38 FAX 410 539 0026    W.F.P. S.E.L.P.    ☑009

DEPOSITION OF LAWRENCE M. HAZEN
CONDUCTED ON THURSDAY, NOVEMBER 15, 2007

```
 1    causation and the third being damages, correct?

 2        A   That's correct.

 3        Q   Okay.  Do you feel you're more qualified

 4    than the judge in our case to make a determination as

 5    to whether Poole & Kent has proven Hunt's liability

 6    for the claims?

 7        A   I am giving an interpretation from the

 8    construction point of view.  I'm not a lawyer, so the

 9    judge is going to view it, I would assume, from

10    points of the law.  So I don't think in that respect

11    that I'm more qualified than a judge would be, but I

12    have my opinion based on experience in the

13    construction industry and working with construction

14    contracts as to what the construction contracts mean

15    to the parties involved.  The judge could have a

16    completely different view.

17        Q   If the judge has a completely different

18    view, how is your interpretation going to help the

19    judge decide the issues in this case?

20            MS. KAMAS:  Object to form.

21            THE WITNESS:  Well, I'm going to give them

22    my interpretation from the construction field's point
```

DEPOSITION OF LAWRENCE M. HAZEN
CONDUCTED ON THURSDAY, NOVEMBER 15, 2007

Page 60

1          Q   Other than that general understanding,

2    though, were the drawings of any value to you in

3    rendering your opinions?

4          A   No, they really didn't come into play.

5          Q   Did you read Poole & Kent's counterclaim?

6          A   What document are you talking about -- are

7    you speaking of with the counterclaim?

8          Q   Hunt sued Poole & Kent and Poole & Kent

9    filed a counterclaim against Hunt seeking damages

10   under various legal theories.  Does that sound

11   familiar to you at all?

12         A   Is this ongoing, separate from

13   Mr. MacPhee's expert report and the May 2006 --

14         Q   Yes, it's one of the pleadings that would

15   have been filed in the court in this matter.  Like

16   Hunt's complaint that was filed in the court, our

17   counterclaim would have been filed in the court as

18   well.

19         A   I received several, you know, four, five,

20   six-page legalese documents that may have been that

21   complaint or may not have.  I haven't seen anything,

22   be it expert report or a claim.  So I'm not going to

DEPOSITION OF LAWRENCE M. HAZEN
CONDUCTED ON THURSDAY, NOVEMBER 15, 2007

1    say I haven't seen them, but I have no recollection

2    of -- I can't speak to them.

3            Q   Okay.  Sorry about that.

4            Are you offering any opinions as to Poole

5    & Kent's entitlement to recover its remaining

6    contract balance?

7            A   No, I'm not offering an opinion.

8            Q   Are you offering -- I'm sorry, are you

9    finished with your answer?

10           A   I'm not offering an opinion on their

11   request for their contract balance.

12           Q   Are you offering any opinions on Poole &

13   Kent's entitlement to any pending change orders?

14           A   No, I'm not offering an opinion on the

15   change orders.  Those two portions of the expert

16   report, which I think has four or five different

17   categories, and those are two of them.  I am not

18   offering an opinion on those.

19           Q   Are you offering any opinions on Poole &

20   Kent's entitlement to its retainage?

21           A   No, I'm not.

22           It's getting very loud.